ANNETTE L. HURST (State Bar No. 148738)
TRACY S. TODD (State Bar No. 172884)
DANIEL N. KASSABIAN (State Bar No. 215249)
ELENA M. DIMUZIO (State Bar No. 239953)
HELLER EHRMAN LLP
333 Bush Street
San Francisco, California 94104-2878
Telephone: +1.415.772.6000
Facsimile: +1.415.772.6268
E-mail:    Annette.Hurst@HellerEhrman.com
           Tracy.Todd@HellerEhrman.com
           Daniel.Kassabian@HellerEhrman.com
           Elena.DiMuzio@HellerEhrman.com

Attorneys for Plaintiffs
CANTER & ASSOCIATES, LLC, and
LAUREATE EDUCATION, INC.

E-filing

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CANTER & ASSOCIATES, LLC, and LAUREATE EDUCATION, INC., | Case No.: |
| Plaintiffs, | C 07 3225 |
| v. | **COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES** |
| TEACHSCAPE, INC., | **JURY DEMAND** |
| Defendant. | **CERTIFICATE OF INTERESTED PARTIES** |

Plaintiffs Canter & Associates, LLC (formerly Canter & Associates, Inc. and hereinafter referred to as "Canter") and Laureate Education, Inc. (hereinafter referred to as "Laureate") (hereinafter referred to collectively as "Plaintiffs") allege as follows:

## JURISDICTION AND VENUE

1.    The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338, and supplemental jurisdiction over the related state law claims alleged herein

Heller
Ehrman LLP

pursuant to 28 U.S.C. § 1367 because they form part of the same case or controversy as the claims for false or misleading advertising under the Lanham Act and copyright infringement under the Copyright Act.

2.    Venue is proper pursuant to 28 U.S.C. § 1391(b), because the Northern District of California is a judicial district in which a substantial part of the events giving rise to the claims alleged herein occurred, and because Defendant Teachscape, Inc. ("Teachscape") has its principal place of business in this judicial district.

**INTRADISTRICT ASSIGNMENT**

3.    Because this action is an Intellectual Property Action within the meaning of Civil Local Rule 3-2(c), the action is to be assigned on a district-wide basis.

**THE PARTIES**

4.    Canter is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Los Angeles, California. Canter is indirectly owned by Laureate. Laureate is a corporation organized and existing under the laws of the State of Maryland, with its principal place of business in Baltimore, Maryland.

5.    Plaintiffs are informed and believe that Teachscape is a Delaware corporation with its principal place of business in San Francisco, California.

**FACTUAL BACKGROUND COMMON TO ALL CLAIMS**

6.    Laureate is a leader in the post-secondary education market and offers online degree programs throughout the United States and internationally. One of Laureate's main focuses is on the development and marketing of distance-delivered education master's degree programs and graduate courses for teachers. Canter is a subsidiary of Laureate that provides such degree programs and graduate courses.

7.    After approximately April 2004, Teachscape hired, or contracted with, at least twelve former employees of Canter (collectively "Canter's Former Employees"), including:

(1)    Valerie Cameron, who was formerly employed by Canter as its Marketing Manager, Distance Learning Masters Program and who, upon information and

belief, afterward was or is currently employed by, or is an independent contractor of, Teachscape;

(2)     Anna Crupi, who was formerly employed by Canter as its Marketing Manager, Distance Learning Masters Program and who, upon information and belief, afterward was or is currently employed by, or is an independent contractor of, Teachscape;

(3)     Barbara DeHart, who was formerly employed by Canter as its Program Specialist in Product Development and who, upon information and belief, afterward was or is currently employed by Teachscape;

(4)     Suddie Gossett, who was formerly employed by Canter as its Distance Learning Masters Field Representative and who, upon information and belief, afterward was or is currently employed by, or is an independent contractor of, Teachscape;

(5)     Melissa Jaivin, who was formerly employed by Canter as its Vice President, Distance Learning Masters Programs and who, upon information and belief, afterward was or is currently employed by Teachscape as a Vice President, Higher Education;

(6)     Hae Young Kim, who was formerly employed by Canter as its Vice President, Graduate Courses and who, upon information and belief, afterward was or is currently employed by Teachscape as Vice President, Sales & Marketing, Higher Education;

(7)     Stacey McNalley, who was formerly employed by Canter as its Director of Enrollment Advisors and Director of Business Development and, upon information and belief, afterward was or is currently employed by Teachscape;

(8)     Romario Pineda, who was formerly employed by Canter as its Manager of Operations, Distance Learning Masters and who, upon information and belief, afterward was or is currently employed by, or is an independent contractor of, Teachscape;

(9)     Brenda Pope-Ostrow, who was formerly employed by Canter as its Director, Editorial Services and who, upon information and belief, afterward was or is currently employed by Teachscape;

Heller
Ehrman LLP

3

1    (10) Mike Soules, who was formerly employed by Canter as its Vice

2 President, Business Development and who, on information and belief, afterward was or is

3 currently employed by Teachscape as General Manager, Higher Education;

4    (11) Chip Swalley, who was formerly employed by Canter as its Course

5 Materials Coordinator, Inventory Planning & Fulfillment Services and who, upon

6 information and belief, was or is currently employed by, or is an independent contractor of,

7 Teachscape; and

8    (12) Simone Vilandre, who was formerly employed by Canter as its

9 Distance Learning Masters Field Representative and who, upon information and belief,

10 afterward was or is currently employed by Teachscape.

11  8. Among Canter's Former Employees are several of Canter's long term, key

12 employees who were integral to the development of Canter's education master's degree

13 programs and graduate courses for teachers. While employed there, Canter's Former

14 Employees were instrumental in every aspect of Canter's degree program development,

15 including contract negotiations, partnership development, market research, product

16 marketing, product development, and recruiting efforts with respect to Plaintiffs' teaching

17 degrees and graduate courses.

18  9. Soon after its engagement of Canter's Former Employees, but unbeknownst to

19 Plaintiffs, Teachscape began to develop and market distance-delivered master's degree

20 programs and graduate courses for teachers that appear to be very similar, if not identical, to

21 those offered by Canter. Teachscape's marketing efforts appear to have been directed

22 solely at Canter's long-term university partners. Teachscape had no degree program or

23 graduate course business prior to its engagement of Canter's Former Employees.

24  10. Canter invested years of market research and substantial financial resources

25 into an analysis of the educational marketplace. As part of this investment, Canter

26 developed two three-year strategic plans, with the assistance of some of Canter's Former

27 Employees. The strategic plans contained information regarding lucrative markets, as well

28 as those market segments that Canter had determined were not profitable to pursue. Also

Heller
Ehrman LLP

COMPLAINT FOR INJUNCTIVE RELIEF & DAMAGES; JURY DEMAND; CERTIFICATION

1    included in the strategic plan were methods for increasing enrollment and thus the

2    profitability of Canter's long-term relationships with various educational institutions.

3    Within months of formulating the most recent three-year plan, however, the majority of the

4    individuals responsible for its development had obtained positions at Teachscape.

5        11.     Although it had never before offered teachers' graduate level courses or

6    master's degrees in teaching, Teachscape began to negotiate agreements to offer these

7    programs to Canter's most profitable customers within months of hiring Canter's Former

8    Employees. The programs Teachscape offered also were in the same areas as those offered

9    by Canter. By using Canter's confidential information, Teachscape was able to focus only

10    on the partnerships and course offerings and programs that were profitable, thereby

11    avoiding the waste of time and resources on markets and programs that, through years of

12    research and analysis, Canter had already learned were not profitable. Overnight,

13    Teachscape was able to enter a market that Canter had spent years to develop—by utilizing

14    the knowledge of Canter's Former Employees.

15        12.     In the course of developing relationships with its graduate course and

16    distance-delivered education master's degree program partners, Canter learned, at great cost

17    and effort, the particular requirements and preferences of each partner. This information

18    was not generally known to the public, and Canter went to great lengths to keep this

19    information confidential. Canter's Former Employees had access to this information during

20    their employment with Canter.

21        13.     Canter developed various Corporate Investment Proposals, incorporating

22    proprietary and confidential research that it had done regarding the importance of targeting

23    Reading, Literacy and Mathematics as degree program growth areas. The access to this

24    information by Canter's Former Employees resulted solely from their employment with

25    Canter. In addition, Canter developed several programs for master's degrees with

26    concentrations in Math and Reading ("Math and Reading degrees"). The development of

27    the Math and Reading degrees was accomplished at great cost and effort to Canter.

28    Although before hiring Canter's Former Employees, Teachscape had not offered a master's

Heller
Ehrman LLP

COMPLAINT FOR INJUNCTIVE RELIEF & DAMAGES; JURY DEMAND; CERTIFICATION

1  program in teaching, within months of employing them, Teachscape offered graduate level

2  courses and then a Masters in the Art of Teaching degree with a concentration in Reading

3  and Literacy and a concentration in Mathematics.  Plaintiffs are informed and believe that

4  Teachscape relied upon and/or otherwise used information obtained by Canter's Former

5  Employees as a result of their employment with Canter in creating the course program and

6  corresponding materials.

7       14.    Canter also developed a master's degree with a focus on Curriculum,

8  Instruction and Assessment (the "CIA degree").  The development of the CIA degree was

9  also accomplished at great cost and effort to Canter.  Although before hiring Canter's

10 Former Employees, Teachscape had not offered a master's degree program in teaching,

11 within months of employing them, Teachscape announced its intention to offer a graduate

12 level course and then a Masters in the Art of Teaching degree with a concentration in

13 Curriculum, Instruction and Assessment.  Plaintiffs are informed and believe that

14 Teachscape relied upon and/or otherwise used information obtained by Canter's Former

15 Employees as a result of their employment with Canter in creating this course and its

16 materials.

17      15.    Furthermore, upon information and belief, Teachscape immediately offered its

18 new programs to one of Canter's long-term partners, Marygrove College ("Marygrove").

19 The terms of the agreement between Marygrove and Canter were confidential.  Canter is

20 informed and believes that Teachscape and Canter's Former Employees misused Canter's

21 confidential information to offer Masters of Art in Teaching degree programs in partnership

22 with Marygrove.  Canter is further informed and believes that Teachscape and Canter's

23 Former Employees misused the confidential contract terms between Canter and Marygrove

24 to negotiate with Marygrove on more favorable terms.

25      16.    In or about September of 2006, Canter learned that Teachscape had

26 announced it would offer Math and Reading degrees through a partnership with Marygrove

27 beginning in 2007.  The contract between Canter and Marygrove required Marygrove to

28 first offer any such opportunity to Canter on the same terms that it proposed to offer to a

Heller
Ehrman LLP

COMPLAINT FOR INJUNCTIVE RELIEF & DAMAGES; JURY DEMAND; CERTIFICATION

1    third party.  As no such offer had or ever did occur, this announcement reflected a breach by

2    Marygrove of its agreement with Canter.  Moreover, at least one of Canter's Former

3    Employees was fully aware of this requirement in the terms of the Canter-Marygrove

4    contract.

5          17.    On or about September 2006, Canter also learned that Teachscape was

6    preparing to offer a CIA degree through Marygrove.  This directly contravened the terms of

7    the Canter-Marygrove contract, which specified that the CIA degree would be supplied to

8    Marygrove exclusively by Canter during the contract's term.  Jaivin and perhaps others

9    among Canter's Former Employees were fully aware of this term of the contract as a result

10   of their employment with Canter.

11         18.    Indeed, though it had never offered any master's degree programs before,

12   Teachscape marketed its CIA degree offered through Marygrove as "updated."

13         19.    By marketing a degree offered through Marygrove College as "updated,"

14   Teachscape's advertising was untrue and misleading and likely to deceive the public in that

15   it implied that Teachscape's courses were updates or improvements of courses previously

16   offered at Marygrove.  In fact, the only degree courses previously offered through

17   Marygrove were those offered in partnership with Canter.  Thus, any reference to "updated"

18   Teachscape materials was untrue and misleading.

19         20.    As a result of the conduct alleged above, Plaintiffs contacted both Teachscape

20   and Marygrove and inquired about the degree offerings Teachscape intended to launch

21   through Marygrove in early 2007.  Marygrove denied the existence of any relationship

22   between Marygrove and Teachscape.  Marygrove further stated that it had no knowledge of

23   any degree offerings by Teachscape through Marygrove that would be launched in 2007.

24   Teachscape, on the other hand, did not deny the relationship, but claimed that it was

25   unaware that its intended degree offerings through Marygrove in any way interfered with

26   any contractual obligations between Canter and Marygrove, despite the fact that several of

27   its key employees involved in the Marygrove transaction had negotiated the very terms at

28   issue.

Heller
Ehrman LLP

7

COMPLAINT FOR INJUNCTIVE RELIEF & DAMAGES; JURY DEMAND; CERTIFICATION

21.     Despite taking the strategy of denying any wrongdoing, Teachscape nonetheless thereafter withdrew its offering of the CIA program for the year 2007, implicitly acknowledging that the offering of the CIA degree program was a breach of the Canter-Marygrove contract.  Upon information and belief, Teachscape also wrongfully induced Marygrove to breach its contract with Canter by agreeing to offer the Math and Reading programs on terms other than those offered to Canter, in violation of the parties' right of first refusal provision.

22.     Upon information and belief, Plaintiffs further believe that Teachscape has engaged in the conduct alleged herein with respect to some or all of Plaintiffs' other profitable contractual relationships.

23.     Canter's Former Employees were well aware of their duty of confidentiality to Canter.  Each and every one of Canter's Former Employees signed Confidentiality Agreements upon commencing work with Canter.  Furthermore, Teachscape knew or had reason to know that Canter's Former Employees had a continuing duty of confidentiality towards Canter, in part because it was so advised by Plaintiffs.

24.     The distance-delivered education master's degree programs and graduate courses developed by Laureate contain wholly original material and are copyrightable subject matter under the laws of the United States.  The following copyrights (hereinafter referred to collectively as "AudioVisual and Online Course Materials") are duly owned by and issued to Laureate:

(1)     Title: Elementary Mathematics: Data Analysis and Probability; Class: Literary Work; Registration No. TX 6-524-253; Registration Date: April 10, 2007;

(2)     Title: Number and Operations, Grades 6-8; Class: Literary Work; Registration No. TX 6-524-254; Registration Date: April 10, 2007;

(3)     Title: Geometry and Measurement, Grades 6-8; Class: Literary Work; Registration No. TX 6-524-255; Registration Date: April 10, 2007;

(4)     Title: Data Analysis and Probability, Grades 6-8; Class: Literary Work; Registration No. TX 6-524-256; Registration Date: April 10, 2007;

Heller
Ehrman LLP

8

(5)    Title: Algebra, Grades 6-8; Class: Literary Work; Registration No. TX 6-524-257; Registration Date: April 10, 2007;

(6)    Title: Designing Curriculum, Instruction and Assessment, Part 1; Class: Literary Work; Registration No. TX 6-524-258; Registration Date: April 10, 2007;

(7)    Title: Elementary Mathematics: Algebra; Class: Literary Work; Registration No. TX 6-524-259; Registration Date: April 10, 2007;

(8)    Title: Elementary Mathematics: Geometry and Measurement; Class: Literary Work; Registration No. TX 6-524-260; Registration Date: April 10, 2007;

(9)    Title: Designing Curriculum, Instruction and Assessment, Part 2; Class: Literary Work; Registration No. TX 6-524-261; Registration Date: April 10, 2007;

(10)    Title: Elementary Mathematics: Number and Operations; Class: Literary Work; Registration No. TX 6-524-262; Registration Date: April 10, 2007;

(11)    Title: Supporting the Struggling Reader; Class: Literary Work; Registration No. TX 6-524-263; Registration Date: April 10, 2007;

(12)    Title: Planning and Managing the Classroom Literacy Program; Class: Literary Work; Registration No. TX 6-524-264; Registration Date: April 10, 2007;

(13)    Title: Instructional Models and Strategies; Class: Literary Work; Registration No. TX 6-524-265; Registration Date: April 10, 2007;

(14)    Title: Foundation of Reading and Literacy Development; Class: Literary Work; Registration No. TX 6-524-266; Registration Date: April 10, 2007;

(15)    Title: Strategies for Literacy Instruction, Part 1; Class: Literary Work; Registration No. TX 6-524-267; Registration Date: April 10, 2007;

(16)    Title: Strategies for Literacy Instruction, Part 2; Class: Literary Work; Registration No. TX 6-524-268; Registration Date: April 10, 2007;

(17)    Title: Teacher As Professional; Class: Literary Work; Registration No. TX 6-524-269; Registration Date: April 10, 2007;

(18)    Title: Collaborative Action Research; Class: Literary Work; Registration No. TX 6-524-270; Registration Date: April 10, 2007;

Heller
Ehrman LLP

(19)    Title: Habits of Mind: Thinking Skills to Promote Self-Directed Learning; Class: Literary Work; Registration No. TX 6-524-271; Registration Date: April 10, 2007;

(20)    Title: Effective Teaching Using Learning Styles and Multiple Intelligences; Class: Literary Work; Registration No. TX 6-524-272; Registration Date: April 10, 2007;

(21)    Title: Habits of Mind: Thinking Skills to Promote Self-Directed Learning; Class: Performing Arts; Registration No. PA 1-367-170; Registration Date: April 10, 2007;

(22)    Title: Collaborative Action Research; Class: Performing Arts; Registration No. PA 1-367-171; Registration Date: April 10, 2007;

(23)    Title: Effective Teaching Using Learning Styles and Multiple Intelligences; Class: Performing Arts; Registration No. PA 1-367-172; Registration Date: April 10, 2007;

(24)    Title: Teacher As Professional; Class: Performing Arts; Registration No. PA 1-367-173; Registration Date: April 10, 2007;

(25)    Title: Instructional Models and Strategies; Class: Performing Arts; Registration No. PA 1-367-174; Registration Date: April 10, 2007;

(26)    Title: Foundations of Reading and Literacy; Class: Performing Arts; Registration No. PA 1-367-175; Registration Date: April 10, 2007;

(27)    Title: Strategies for Literacy Instruction, Part 1; Class: Performing Arts; Registration No. PA 1-367-176; Registration Date: April 10, 2007;

(28)    Title: Strategies for Literacy Instruction, Part 2; Class: Performing Arts; registration number PA 1-367-177; Registration Date: April 10, 2007;

(29)    Title: Supporting the Struggling Reader; Class: Performing Arts; Registration No. PA 1-367-178; Registration Date: April 10, 2007;

(30)    Title: Planning and Managing the Classroom Literacy Program; Class: Performing Arts; Registration No. PA 1-367-179; Registration Date: April 10, 2007;

Heller
Ehrman LLP

COMPLAINT FOR INJUNCTIVE RELIEF & DAMAGES; JURY DEMAND; CERTIFICATION

(31)    Title: Designing Curriculum, Instruction, and Assessment, Part 2;
Class: Performing Arts; Registration No. PA 1-367-180; Registration Date: April 10, 2007;

(32)    Title: Elementary Mathematics: Number and Operations, Grades K-5;
Class: Performing Arts; Registration No. PA 1-367-181; Registration Date: April 10, 2007;

(33)    Title: Elementary Mathematics: Geometry and Measurement, Grades
K-5; Class: Performing Arts; Registration No. PA 1-367-182; Registration Date: April 10, 2007;

(34)    Title: Algebra, Grades K-5; Class: Performing Arts; Registration No.
PA 1-367-183; Registration Date: April 10, 2007;

(35)    Title: Elementary Mathematics: Data Analysis and Probability, Grades
K-5; Class: Performing Arts; Registration No. PA 1-367-184; Registration Date: April 10, 2007;

(36)    Title: Number and Operations, Grades 6-8; Class: Performing Arts;
registration number PA 1-367-185; Registration Date: April 10, 2007;

(37)    Title: Geometry and Measurement, Grades 6-8; Class: Performing
Arts; Registration No. PA 1-367-186; Registration Date: April 10, 2007;

(38)    Title: Algebra, Grades 6-8; Class: Performing Arts; Registration No.
PA 1-367-187; Registration Date: April 10, 2007;

(39)    Title: Data Analysis and Probability, Grades 6-8; Class: Performing
Arts; Registration No. PA 1-367-188; Registration Date: April 10, 2007; and

(40)    Title: Designing Curriculum, Instruction, and Assessment, Part 1;
Class: Performing Arts; Registration No. PA 1-367-790; Registration Date: April 10, 2007.

25.    Teachscape does not have authorization, consent, or license to reproduce,
make derivative works of, or otherwise utilize Laureate's copyrighted AudioVisual and
Online Course Materials described in paragraph 24 above.

26.    Teachscape's course materials are not available to the general public.  Instead,
they are available only to those students who are admitted to the Marygrove degree
programs or graduate courses.  Absent consent, the only means by which Laureate could

Heller
Ehrman LLP

11

COMPLAINT FOR INJUNCTIVE RELIEF & DAMAGES; JURY DEMAND; CERTIFICATION