GAYLE M. ATHANACIO (SBN 130068)
gathanacio@sonnenschein.com
SONNENSCHEIN NATH & ROSENTHAL LLP
525 Market Street, 26th Floor
San Francisco, CA 94105-2708
Telephone: (415) 882-5000
Facsimile: (415) 882-0300

Attorneys for Defendant
TEACHSCAPE, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| CANTER & ASSOCIATES, LLC, and LAUREATE EDUCATION, INC., | Case No. C 07-3225 RS |
| Plaintiffs. | **DEFENDANT TEACHSCAPE, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS AND/OR STRIKE COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| v. | |
| TEACHSCAPE, INC., | **CONCURRENTLY FILED HEREWITH:** |
| Defendant. | **REQUEST FOR JUDICIAL NOTICE AND DECLARATION OF GAYLE M. ATHANACIO** |
| | **Date: September 26, 2007**<br>**Time: 9:30 a.m.**<br>**Courtroom: 4, Fifth Floor**<br>**Honorable Richard Seeborg** |

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

1

## TABLE OF CONTENTS

2

3

I.    INTRODUCTION AND SUMMARY OF ARGUMENT.................................................1

II.   STATEMENT OF FACTS........................................................................................2

      A.    Background Allegations Related To The Parties ....................................2

      B.    Plaintiffs' Claims....................................................................................4

III.  LEGAL STANDARDS...........................................................................................7

IV.   ARGUMENT ........................................................................................................8

      A.    Laureate's Copyright Claim Must Be Dismissed.....................................8

      B.    The Copyright Claim Relates Only To Derivative Works. ...................11

      C.    Plaintiffs' Lanham Act Claim Must Be Dismissed. ..............................12

      D.    The Dismissal Of The Copyright And Lanham Act Claims Warrants
            Dismissal Of The Entire Action. ..........................................................14

      E.    Canter's False Advertising Claim Under Bus. & Prof. Code Section
            17500 Fails As A Matter of Law...........................................................15

      E.    Canter's Misappropriation Of Trade Secrets Claim Fails As A Matter
            of Law...................................................................................................16

            1.    The Materials Alleged Are Not "Trade Secrets."........................16

            2.    Canter Did Not, And Cannot, Allege Any Improper
                  Acquisition, Disclosure Or Use Of Canter's Purported "Trade
                  Secrets."....................................................................................19

      F.    Canter's Claim For Intentional Interference With Prospective
            Economic Advantage Claim Fails As A Matter of Law. .......................20

      G.    Canter's Intentional Interference With Contract Claim Fails. .............22

      H.    Plaintiffs' Unfair Competition Claim Must Be Dismissed. .................23

      I.    Plaintiffs' Claim for "Restitution" Under Bus. & Prof. Code Section
            17200 and 17500 Should be Stricken.....................................................24

V.    CONCLUSION ...................................................................................................25

26

27

28

-i-

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Acri v. Varian Associates, Inc.*, 114 F.3d 999 (9th Cir. 1997) .................................................. 15

*Bayer Corp. v. Roche Molecular Syst., Inc.*, 72 F. Supp. 2d 1111 (N.D. Cal. 1999)................. 20

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007)............................................................ 7

*Brown v. Adidas Int.*, 938 F. Supp. 628 (S.D. Cal. 1998) .......................................................... 8

*In re Century 21-RE/MAX Real Estate Advertising Claims Litigation*, 882 F. Supp. 915
(C.D. Cal. 1994) ............................................................................................................. 13, 14

*Christian v. Mattel, Inc.*, 286 F.3d 1118 (9th Cir. 2002) ......................................................... 10

*Cook Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*,
911 F.2d 242 (9th Cir. 1990)....................................................................................... 12, 13, 14, 16

*Eon-Net, L.P. v. Flagstar Bancorp, Inc.*, 239 F.R.D. 609 (W.D. Wash. 2006) ........................ 10

*Epstein v. Washington Energy Co.*, 83 F.3d 1136 (9th Cir. 1996).............................................. 7

*Executive Software North America, Inc. v. U.S. District Ct.*,
24 F.3d 1545 (9th Cir. 1994) ...................................................................................................... 15

*Facebook, Inc. v. ConnectU LLC*, 489 F. Supp. 2d 1087 (N.D. Cal. 2007)............................... 7

*Globespan, Inc. v. O'Neill,* 151 F. Supp. 2d 1229 (C.D. Cal. 2001)................................... 19, 20

*Hazleton v. Alameida*, 358 F. Supp. 2d 926 (C.D. Cal. 2005) .................................................... 9

*Hoffman-LaRoche Inc. v. Invamed Inc.*, 213 F.3d 1359 (Fed. Cir. 2000)................................. 10

*Hsu v. OZ Optics, Ltd.*, 211 F.R.D. 615 (N.D. Cal. 2002) ........................................................ 21

*Intamin v. Magnetar Tech. Corp.*, 483 F.3d 1328 (Fed. Cir. 2007) .......................................... 11

*Interactive Products Corp. v. a2z Mobile Office Solutions, Inc.*,
326 F.3d 687 (6th Cir. 2003)...................................................................................................... 14

*Judin v. U.S.*, 110 F.3d 780 (Fed. Cir. 1997) ........................................................................... 10

*MAI Systems Corp. v. UIPS*, 856 F. Supp. 538 (N.D.Cal. 1994) .............................................. 24

*Max Daetwyler Corp. v. Input Graphics, Inc.*, 608 F. Supp. 1549 (ED. Pa. 1985) ................... 13

*Newborn v. Yahoo! Inc.*, 391 F. Supp. 2d 181 (D.D.C. 2005) ................................................... 8

TEACHSCAPE'S MOTION TO DISMISS/STRIKE COMPLAINT

*Pacific Oxygen Sales Co. v. Union Carbide Corp.*,
930 F.2d 28, 1991 WL 42150, at *2 (9th Cir. Mar. 21, 1991) .................................... 22

*Parrino v. FHP, Inc.*, 146 F.3d 699 (9th Cir. 1998)................................................; ...... 9

*Refac International v. Hitachi, Ltd.*, 141 F.R.D. 281 (C.D. Cal. 1991) ...................................... 10

*Rickards v. Canine Eye Registration Foundation, Inc.*, 704 F.2d 1449 (9th Cir. 1983)............. 20

*S.O.S. Inc. v Payday, Inc.*, 886 F.2d 1081 (9th Cir. 1989) ......................................... 11

*Safeway Stores, Inc. v. National Union Fire Insurance Co. of Pittsburgh*,
64 F.3d 1282 (9th Cir. 1995)...................................................................... 8

*Scott v. Snelling & Snelling, Inc.*, 732 F. Supp. 1034 (N.D. Cal. 1990) ........................... 17

*Silicon Knights, Inc. v. Crystal Dynamics, Inc.*,
983 F. Supp. 1303 (N.D. Cal. 1997)...................................................... 7, 9-10, 21-23

*Silverman v. CBS, Inc.*, 870 F.2d 40 (2d Cir. 1989) ............................................... 11

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134 (9th Cir. 1997) ....................... 12

*Summit Tech., Inc. v. High-Line Medical Instruments, Co.*,
933 F. Supp. 918 (C.D. Cal. 1996) .......................................................... 14

*Tele Atlas N.V. v. Navteq Corp.*, 397 F. Supp. 2d 1184 (N.D. Cal. 2005) .................... 21

*Williams v. Gerber Products Co.*, 439 F. Supp. 2d 1112 (S.D. Cal. 2006)................... 15

## STATE CASES

*AdvantaCare Health Partners, LP v. Access IV, Inc.*,
2003 WL. 23883596 (N.D. Cal. Oct. 24, 2003)................................................ 17

*Atari Corp. v. 3DO Co.*, 1994 WL. 723601 (N.D. Cal. 1994) .................................... 13

*Berryman v. Merit Property Management Inc.*,
62 Cal. Rptr. 3d 177, 2007 WL. 1567050 (Cal. App. May 31, 2007)........................... 23

*Borden & Barton Enterprise, Inc. v. Warner Brothers Broadcasting Corp.*,
222 P.2d 463 (Cal. Ct. App. 1950)............................................................ 8

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telegraph Co.*,
20 Cal. 4th 163 (1999)...................................................................... 23

*City of Oakland v. Comcast Corp.*, 2007 WL 518868 (N.D. Cal. Feb. 14, 2007) .............. 22

*Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351 (2003) .................. 16

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376 (1995)................................. 21

*Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244 (1968) ...................................................... 16

*Ernst Paper Products Inc. v. Mobil Chemical Co.*,
1997 WL. 33483520 (C.D. Cal. Dec. 2, 1997).............................................................. 24

*Giannini v. Schering-Plough Corp.*,
2007 WL. 1839789 (N.D. Cal. Jun. 26, 2007) .............................................................. 14

*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134 (2003)............................ 22, 24

*Livnat v. Lavi*, 1997 WL 566097 (S.D.N.Y. 1997) ............................................................. 8

*Madrid v. Perot Syst. Corp,.*, 130 Cal. App. 4th 440 (2005) ........................................... 24

*McCann v. Lucky Money, Inc.*, 129 Cal. App. 4th 1382 (2005)......................................... 15

*Paulus v. Bob Lynch Ford, Inc.*, 139 Cal. App. 4th 659 (2006)........................................ 23

*Pinnacle System, Inc. v. XOS Techs., Inc.*,
2003 WL. 21397845 (N.D. Cal. May 19, 2003) ........................................................... 14

*Posdata Co. Ltd. v. Kim*, 2007 WL. 1848661 (N.D. Cal. Jun. 27, 2007)............................... 20

*Quelimane Co. v. Stewart Title Guaranty Co.*, 19 Cal. 4th 26 (1998) ............................... 22

*Reeves v. Hanlon*, 33 Cal. 4th 1140 (2004)...................................................................... 22

*Rigging International Maintenance Co. v. Gwin*, 128 Cal. App. 3d 594 (1982) ................. 17, 19

*Sargent Fletcher, Inc. v. Able Corp.*, 110 Cal. App. 4th 1658 (2003) ............................... 16

*Softchoice Corp. v. EnPointe Techs., Inc.*, 2006 WL. 3350798 (Cal. Sup. Nov. 13, 2006) ....... 24

*Tom Kelley Studios Inc. v. International Collectors Society*, 1997 WL. 598461 ( S.D.N.Y.
1997) ................................................................................................................... 8

*Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443 (2002)...........................................17-18,20

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

TEACHSCAPE'S MOTION TO DISMISS/STRIKE COMPLAINT

## STATUTES

17 U.S.C. § 411(a)......................................................................................................... 11

28 U.S.C. § 1367(c).....................................................................................................14-15

Cal. Bus. & Prof. Code § 17200.............................................................................. 1, 6, 24

Cal. Civ. Code § 3426.1......................................................................................1, 4, 16, 19

Cal. Civ. Code § 3426.7.................................................................................................. 24

Fed. R. Civ. P. 12(b)(6)..................................................................................................... 7

Fed. R. Civ. P. 12(f) .......................................................................................................... 8

17 U.S.C. § 501).............................................................................................................. 1

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

TEACHSCAPE'S MOTION TO DISMISS/STRIKE COMPLAINT

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on September 26, 2007, at 9:30 a.m., or as soon thereafter as counsel may be heard, in Courtroom 4 of the United States District Court for the Northern District of California, located at 280 S. 1st Street, San Jose, California, Defendant Teachscape, Inc. ("Teachscape") will, and hereby does, move, pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(f) to dismiss with prejudice and/or strike Plaintiffs Canter & Associates, LLC ("Canter") and Laureate Education, Inc.'s ("Laureate") (collectively, "Plaintiffs") Complaint For Injunctive Relief And Damages ( "Cmplt."). Specifically, Teachscape moves for an Order dismissing with prejudice and/or striking the following claims made against Teachscape for failure to state a claim:

- First Claim for Relief for Misappropriation of Trade Secrets (Civil Code section 3426)
- Second Claim for Relief for Intentional Interference with Prospective Advantage under California Law
- Third Claim for Relief for Intentional Interference with Contract under California Law
- Fourth Claim for Relief for Violation of Cal. Bus & Prof. Code § 17500 et seq. (False or Misleading Advertising)
- Fifth Claim for Relief for Violation of Cal. Bus & Prof. Code § 17200 et seq. (Unfair Competition Law)
- Sixth Cause of Action for Violation of Lanham Act § 43(a), 15 U.S.C. § 1125 (a) (False or Misleading Advertising)
- Seventh Cause of Action for Copyright Infringement (17 U.S.C. § 501)

Teachscape's motion will be and is based upon this Notice, the Memorandum of Points and Authorities, Declaration of Gayle M. Athanacio, and Request for Judicial Notice filed herewith, and all pleadings, records and documents on file herein, and such additional evidence and argument as may be properly introduced in support of the motion.

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

In this action, Plaintiff Laureate, a self-professed "leader in the post-secondary education market [which] offers online degree programs throughout the United States," and its subsidiary, Canter, seek injunctive relief, damages, restitution and attorneys' fees against defendant Teachscape, a competitor in the higher education market. Asserting claims for copyright infringement, false advertising, interference with contract and prospective advantage, and unfair competition, Plaintiffs' Complaint, while replete with hyperbole and baseless attacks against Teachscape, contains no substantive allegations that support any of its claims.

Indeed, a careful reading of the Complaint makes it abundantly clear that the only alleged *facts* underlying *all* of Plaintiffs' claims—including a specious claim for 40 alleged acts of copyright infringement—relate solely to two alleged series of events:

1. In 2004, Teachscape hired or contracted with certain employees or independent contractors who previously worked for Canter (Cmplt., ¶ 7); and

2. In or about September 2006, Teachscape announced its plan to partner with Marygrove College to provide Marygrove's graduate degree programs in 2007 when Canter allegedly had a preexisting relationship with Marygrove College. (Cmplt., ¶¶ 15-17.)

These manifestly innocuous "facts" reflect no wrongdoing by Teachscape and fail to sustain any of Plaintiffs' claims. Plaintiffs' ex-employees and consultants admittedly had every right to work for Teachscape, and Plaintiffs do not legitimately allege any conduct by Teachscape that constitutes actionable wrongdoing in entering into a relationship with Marygrove College and conducting its business in an open market.

Plaintiffs' federal claims for alleged violations of the United States Copyright Act and the Lanham Act — the only bases for subject matter jurisdiction[1]—do not withstand even minimal scrutiny. Plaintiffs improperly lump into one conclusory claim an assertion that Teachscape willfully infringed 40 separate works (comprised of audiovisual and online teaching

---

[1] There is no diversity jurisdiction and the state claims should be dismissed in the absence of federal question jurisdiction.

TEACHSCAPE'S MOTION TO DISMISS/STRIKE COMPLAINT

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

course materials) registered for copyright protection in April 2007. Plaintiffs undeniably did not (nor can they) allege the key element of a *single* copyright claim— substantial similarity of protectable expression between content in a specific work of Teachscape's and content in a specific work of Plaintiffs. Their purported justification for this wholesale failure to state a valid claim is their conclusory assertion that Teachscape "unreasonably" denied them access "to the materials in dispute." This allegation is demonstrably false and in all events, cannot justify their filing of a copyright claim with no factual predicate. Neither case law nor common sense support the proposition that a party may file a federal action alleging willful infringement based on its mere *suspicion* that there is substantial similarity in some unidentified work of a competitor. To the contrary, such action gives rise to sanctions under Federal Rule of Civil Procedure 11.

Plaintiffs' claim for false or misleading advertising under the Lanham Act (and California statute) is predicated solely on the alleged advertisement of Marygrove's degree program offered in 2007 through Teachscape in which the program is apparently described as "updated." Yet, there is nothing actionable about the use of the single word "updated" in Marygrove's degree program advertisement.

Plaintiffs' state law claims for misappropriation of trade secrets, unfair competition, and wrongful interference with contract or prospective advantage are equally devoid of merit as the properly pleaded "facts" and case law do not support these claims. Teachscape's motion to dismiss should be granted.

## II.    STATEMENT OF FACTS

### A.    Background Allegations Related To The Parties

Laureate alleges that it is "a leader in the post-secondary education market and offers online degree programs throughout the United States and internationally" through partnerships with university and colleges. Canter is a subsidiary of Laureate providing such degree programs and graduate courses. Cmplt., ¶ 6. One of Canter's partners is Marygrove College ("Marygrove"), through which it offered a Marygrove master's degree program with a focus on Curriculum, Instruction and Assessment ("CIA"). *Id.* at ¶ 14.

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

According to the Complaint, in April 2004, Teachscape began hiring, or contracting with, twelve former Canter employees. *Id.*, ¶ 7. Some of these former employees were supposedly long term key employees who helped develop Canter's education master's degree programs and who had access to Canter's alleged trade secrets and confidential information. *Id.*, ¶ 9. Canter does not suggest that Teachscape wrongfully solicited or hired any of these employees.

Canter alleges that it invested years of market research and substantial financial resources into developing its business plan and knowledge of the industry to create and market degree programs to create relationships with master's degree university partners. *Id.*, ¶ 10. However, the only relationship Canter identifies is with Marygrove College: At some unspecified time, Canter allegedly entered into a confidential agreement with Marygrove College, whereby Canter would promote and develop Marygrove's CIA degree program, and which also allegedly guaranteed Canter the right of first refusal if Marygrove decided to offer additional degree programs (including Math and Reading programs). *Id.*, ¶ 51. No other university "partnerships" are identified in the Complaint.

Canter alleges that "overnight" Teachscape was able to enter Canter's market. *Id.*, ¶ 11. However, while Canter suggests that Teachscape began negotiating agreements to offer competing programs to Canter's "most profitable customers," (none of which are identified), other than Marygrove, there is no allegation that Teachscape actually entered into any contract with any Canter customer. Critically, Canter's customers are publicly known universities and colleges, reflected on Plaintiffs' website pages. *See* Request for Judicial Notice ("RFJN"), Exhs. C, E.

As to Marygrove, Canter admits that the only allegedly competing courses ever offered by Teachscape were to begin in 2007. Specifically, Canter alleges that in September 2006, it learned that Teachscape would be offering a CIA program, and Math and Reading degrees, in partnership with Marygrove in 2007. *Id.*, ¶¶ 14-16. Tellingly, Canter claims that when it contacted Teachscape (and Marygrove) about the Marygrove programs Teachscape intended to offer, Teachscape did not deny its relationship with Marygrove; rather, Teachscape "claimed that it was unaware that its intended offerings in any way interfered with any contractual

TEACHSCAPE'S MOTION TO DISMISS/STRIKE COMPLAINT

obligations between Canter and Marygrove." *Id.*, ¶ 20.  Canter nonetheless asserts that *Teachscape* must have known of the precise terms of Canter/Marygrove contracts *"by virtue of the Canter Former Employees' employment with Canter"*. *Id.*, ¶ 52.  Canter admits that after being apprised of Canter's claim that the CIA offering was contrary to Marygrove's contract with Canter, Teachscape withdrew its CIA program for 2007. *Id.*, ¶ 21.

In April 2007, Plaintiffs obtained forty copyright registrations with the U.S. Copyright Office. *Id.*, ¶ 24; RFJN, Ex. A.  Each of these registrations are for derivative works (newer editions of previous works).

### B.    Plaintiffs' Claims

In their Complaint, Plaintiffs allege seven causes of action.  In its first cause of action for misappropriation of trade secret (violation of California Civil Code § 3426), Canter alleges that it was in possession of trade secrets which consisted of "among other things, a proprietary methodology for identifying appropriate markets for its products, information regarding market segmentation, design of distance learning degree programs and methods for their accreditation, enrollment systems, and specific customer contacts and preferences." Cmplt., ¶ 29.  Canter alleges these "trade secrets" had economic value to Canter which while made known to its former employees, were subject to confidentiality agreements. *Id.*, ¶ 30.  Canter then alleges in conclusory fashion that Teachscape misappropriated these trade secrets by taking Canter's proprietary knowledge about lucrative markets and using that knowledge without permission to market Teachscape's competing services to Canter's current educational partners. *Id.*, ¶ 32.  No particular marketing efforts or current educational partners are identified, except to the extent that Canter incorporates by reference its allegations about Teachscape's relationship and alleged marketing of Marygrove's degree program in September 2006. *See id.*, ¶¶ 29-32.  Canter claims it will suffer "irreparable harm" if Teachscape, as well as all its employees and persons acting in concert with them, are not enjoined. *Id.*, ¶ 34.  Canter claims Teachscape's conduct was so willful and malicious, that an award of punitive damages and attorneys' fees is appropriate. *Id.*, ¶ 36-37.

In its second claim, Canter accuses Teachscape of intentionally interfering with its

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

prospective economic relationships "with a number of educational institutions." *Id.*, ¶ 39. Canter suggests that Teachscape "knew or had reason to know of these relationships with its partners" and in some unspecified manner used confidential information to actually disrupt these relationships. *Id.*, ¶¶ 39-43. Canter does not identify any third party with which Canter had such a relationship, or any act by Teachscape with any of Canter's unidentified prospective relationships, except to suggest that Teachscape induced at least one of Canter's existing partners to reject a Canter program and to replace it with a "substantially similar" program offered by Teachscape. *Id.*, ¶¶ 39-41. No particular partner or "substantially similar program" is identified, and while the Complaint does mention Marygrove's degree program, Plaintiffs admit that they have never seen Teachscape's course materials (*id.*, ¶ 26) and have no idea if the programs are actually similar at all.

Cantor's third claim asserts that Teachscape intentionally interfered with the Canter/ Marygrove contract. Premised on the notion that Teachscape "knew of these contracts" by virtue of Teachscape having employed some of Canter's former employees, Canter alleges that Teachscape wrongfully interfered with the Canter/Marygrove contract[2] as Canter believes Marygrove does not intend to renew its contract for the provision of the CIA degree with Canter, and/or that Teachscape induced Marygrove to attach (unstated) conditions to Marygrove's Math and Reading degree programs that would be "unacceptable" to Canter such that Canter would not want to provide that program for Marygrove. *Id.*, ¶¶ 51-60. Canter also alleges that Teachscape falsely advertised its version of Marygrove's CIA program as "updated." *Id.*, ¶¶ 56-57. Canter does not allege any *facts* that identify any act by Teachscape designed to induce or disrupt any contract, or how exactly Canter suffered any damages.

Canter also brings claims for allegedly misleading advertising, both under California Business & Professions Code section 17500(fourth claim) and the Lanham Act (sixth claim for relief). Canter, however, does not specify any particular advertisement(s) that allegedly are

---

[2] Canter refers "a contract" and "contracts" with Marygrove. Teachscape cannot discern from the complaint whether a single or multiple contracts with Marygrove were allegedly interfered with.

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

TEACHSCAPE'S MOTION TO DISMISS/STRIKE COMPLAINT

misleading. Rather, it generally references alleged advertising of Marygrove's CIA degree program offering by Teachscape as "updated." *Id.*, ¶¶ 65-66. This single word alone is alleged to give rise to liability as it supposedly implied a "long-term successful partnership with Marygrove" and falsely suggests the Teachscape courses offered at Marygrove were "updated courses" when in actuality the prior courses were previously prepared by Canter. *Id.*, ¶ 66. Although Canter acknowledges the CIA course offering was withdrawn, it seeks "restitution for the benefits improperly garnered by Teachscape" under the California statute and unspecified damages under the Lanham Act. *Id.*, ¶¶ 68, 81.

Laureate and Canter both bring claims alleging the acts (such as they are) of misuse of Canter's confidential information to further develop Teachscape's competing business and that its "advertising" constitutes unfair competition in violation of Cal. Bus. & Prof. Code § 17200, the Unfair Competition Law ("UCL"). *Id.*, ¶ 70. Canter additionally claims these practices are "immoral and unscrupulous" and have been undertaken in violation of unstated policies established in the California Civil Code and Labor Code. *Id.*, ¶ 71. Plaintiffs claim they are entitled to "restitution of the benefit improperly garnered by Teachscape", disgorgement of all "ill-gotten profits" and an injunction. *Id.*, ¶¶ 73-74.

Laureate asserts the seventh claim for relief for Copyright Infringement, alleging on information and belief that "at least as of January 2007, Teachscape has deliberately and willfully infringed" 40 copyrighted works identified in the Complaint. *Id.*, ¶ 84. Laureate asserts Teachscape copied Canter's course materials. However, Laureate admits it has no facts or evidence to support or define the copyright claim. *Id.*, ¶¶ 26, 85. Indeed, there is no reference to a specific passage or portion of any of the 40 copyrights (all for derivative works) listed in the Complaint, nor any reference to any specific Teachscape course. Rather, it asserts that Teachscape "refuse[d] to provide access to the materials at issue despite demand" such that it is has a "reasonable basis" to "infer" Teachscape's deliberate and willful infringement. *Id.*, ¶ 85. Laureate, however, admits an exchange of materials was offered by Teachscape (and/or that the materials may be obtained directly online from Marygrove), but suggests that Teachscape placed "unreasonable conditions" on an exchange of materials. *Id.*, ¶¶ 26, 27, 85.

TEACHSCAPE'S MOTION TO DISMISS/STRIKE COMPLAINT

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

1

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

## III.    LEGAL STANDARDS

A complaint may be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Dismissal may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable theory. *Facebook, Inc. v. ConnectU LLC,* 489 F. Supp. 2d 1087 (N.D. Cal. 2007). In considering a motion to dismiss, "the court need not accept as true conclusory allegations or legal characterizations cast in the form of factual allegations." *Silicon Knights, Inc. v. Crystal Dynamics, Inc.,* 983 F.Supp. 1303, 1307 (N.D. Cal. 1997) (citation omitted).

Thus, while the complaint is construed in the light most favorable to plaintiff and its allegations must be taken as true, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.... Factual allegations must be enough to raise a right to relief above the speculative level... [T]he pleading must contain something more ... than ... a statement of facts that merely creates a *suspicion* [of] a legally cognizable right of action." *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted) (emphasis added). "'[C]onclusory allegations of law and unwarranted inferences,' however, 'are insufficient to defeat a motion to dismiss for failure to state a claim.'" *Facebook, Inc.,* 489 F. Supp. 2d at 1090 (quoting *Epstein v. Washington Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996).

As the Supreme Court recently observed, "something beyond the mere possibility of loss causation must be alleged, lest a plaintiff with "'a largely groundless claim'" be allowed to "'take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value.'" *Twombly*, 127 S. Ct. at 1966 (quoting *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 741, 95 S. Ct. 1917, 44 L. Ed. 2d 539 (1975)). As the Court observed, "a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Id.* at 1967.

Further, Federal Rule of Civil Procedure 12 (f) provides that a court "may order stricken from any pleading any insufficient . . . redundant, immaterial, impertinent, or scandalous

matter." Fed. R. Civ. P. 12(f).  A motion to strike is the appropriate means of eliminating, among other things, an improper claim for relief.  *Safeway Stores, Inc. v. National Union Fire Ins. Co. of Pittsburgh*, 64 F.3d 1282, 1290 (9th Cir. 1995).

## IV.    ARGUMENT

### A.    Laureate's Copyright Claim Must Be Dismissed.

Any pleading asserting a copyright infringement claim must satisfy Federal Rule of Civil Procedure 8(a) and broad legal conclusions do not sufficiently state a claim of copyright infringement.  *See, e.g., Brown v. Adidas Int.*, 938 F. Supp. 628, 635-36 (S.D. Cal. 1998).

Moreover, a complaint must allege "*'by what acts* during what time the defendant infringed the copyright.'" *Tom Kelley Studios Inc. v. International Collectors Society*, 1997 WL 598461 at *1( S.D.N.Y. 1997) (emphasis added) (citations omitted) ("complaint fails to satisfy …minimum pleading requirements…. there are no allegations of specific *acts* of infringement with respect to *specific* copyrights owned by plaintiffs".)  *See also Borden & Barton Enter., Inc. v. Warner Bros. Broadcasting Corp.*, 222 P.2d 463 (Cal. Ct. App. 1950) (plaintiff failed to state a claim as he did not, *inter alia,* identify the exact similarity between plaintiff's and defendants' radio shows or what portions of plaintiff's show were copied by defendants); *Livnat v. Lavi,* 1997 WL 566097 at *2 (S.D.N.Y. 1997) ("In a copyright claim the plaintiff must, at minimum, allege by what specific acts the defendant infringed the copyright….The allegedly infringing acts committed by the [] Defendants must be set forth with sufficient specificity to permit an adequate opportunity for defense"); *Newborn v. Yahoo! Inc.,* 391 F.Supp.2d 181, 187, 189 (D.D.C. 2005)( "Although Rule 8 requires only a short plain statement, this statement must be sufficient to provide the defendants notice of the claims alleged against them.").

While claiming forty (or more) acts of copyright infringement, Laureate does not and cannot identify one specific work or part of a work by Teachscape that contains any infringing content relative to any of these forty works.  Laureate's bold allegation that Teachscape "deliberately and willfully infringed Laureate's copyrights in the Audiovisual and Online Course Materials by making copies and derivative works therefrom" (Cmplt., ¶ 84) is not supported by any *facts* describing any allegedly infringing act by Teachscape whatsoever.  There is no

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

1    reference to any specific content whatsoever, and no identification of the manner of any

2    infringement save for Laureate's conclusory assertions. Notably, the Complaint contains no

3    factual description of any violation by Teachscape of any of the five exclusive rights of a

4    copyright holder found in Section 106 of the Copyright Act. Clearly, Teachscape cannot

5    evaluate Laureate's infringement claim on 40 works when Laureate itself does not (as it cannot)

6    provide any information as to what exactly is the allegedly infringed upon and infringing

7    material.

8          Laureate tacitly recognizes its wholesale failure to state a claim when it alleges it has met

9    its obligation to conduct a reasonable inquiry into its copyright claim because Teachscape

10   allegedly insisted upon "unreasonable conditions" to a review of any allegedly offending

11   materials (Cmplt., ¶ 12) and that such alleged refusal provided Laureate with a "reasonable basis

12   to infer that Teachscape is deliberately and willfully infringing on Laureate's registered

13   copyrights." (Cmplt., ¶ 85). To the contrary, Teachscape was willing to engage in an exchange

14   of any allegedly infringing material. Teachscape asked Laureate to identify the courses it

15   suspected (without basis) were "copied" and proposed an "apples to apples" comparison of the

16   parties' final course materials by counsel. *See* Declaration of Gayle M. Athanacio ("Athanacio

17   Decl.", Exs. B, C, E .)[3] Plaintiffs, in the process of hastily filing copyright applications for 40

18   works for the first time, chose to ignore this offer, and instead filed this omnibus copyright

19   infringement claim without basis. They compounded their frivolous filing by falsely alleging

20   that they had no opportunity to view any of Teachscape's courses, and that the only way

---

[3] Documents such as these letters, which the Complaint relies upon for its copyright claim in
paragraphs 26, 27, and 85, may be considered on a motion to dismiss. "[A] district court ruling
on a motion to dismiss may consider a document the authenticity of which is not contested, and
upon which the plaintiff's complaint necessarily relies." *Parrino v. FHP, Inc.,* 146 F.3d 699,
705-06 (9th Cir. 1998). *See also Hazleton v. Alameida,* 358 F. Supp. 2d 926, 928 (C.D. Cal.
2005) ("Even documents that are not physically attached to the complaint may be considered [on
a motion to dismiss] if their authenticity is not contested and the complaint 'necessarily relies'
on them.") (citations omitted). Should the Court not be inclined to consider the unquestionably
authentic correspondence between Plaintiffs' and Defendant's counsel, the Court should then
disregard the factually and legally conclusory allegations by Plaintiff that any conditions on an
exchange were "unreasonable."

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

Plaintiffs could get the course materials was through a pretext it deemed inappropriate, *i.e.* by posing as a student and signing up for a Teachscape masters degree program. Cmplt., ¶ 26. Yet this course material is precisely the same final course material that Teachscape offered to exchange. *See* Athanacio Decl., Ex. E.

Fundamentally, Plaintiffs' copyright claim is based entirely and improperly on speculation and suspicion. Yet, a mere suspicion or belief that intellectual property is being infringed does not constitute a reasonable basis for filing a complaint. *See Christian v. Mattel, Inc.*, 286 F.3d 1118 (9th Cir. 2002) (plaintiff's attorney's failure to investigate allegedly infringing copyright warranted Rule 11 sanctions). For example, in *Judin v. U.S.*, 110 F.3d 780 (Fed. Cir. 1997), the court held the failure of patentee's attorney to make a reasonable inquiry before filing its complaint warranted Rule 11 sanctions.[4] *See also Eon-Net, L.P. v. Flagstar Bancorp, Inc.*, 239 F.R.D. 609, 614-15 (W.D. Wash. 2006) (finding an inadequate pre-filing inquiry because the plaintiff "brought suit without even deciding what products or functionality infringed...[i]t is implicit that identification of the accused device is a necessary prerequisite to determining infringement"); *Refac Int'l v. Hitachi, Ltd.,* 141 F.R.D. 281, 286-88 (C.D. Cal. 1991) (plaintiff's failure to examine or reverse engineer accused products prior to complaint warranted Rule 11 sanctions).

No doubt recognizing its vulnerability on this point, in its complaint, Laureate cites two cases to suggest its filing does not violate Rule 11. Cmplt., ¶27. Neither case—both of which are patent, not copyright cases—justifies the filing of Laureate's copyright claim here or insulates Plaintiffs from exposure under Rule 11. In *Hoffman-LaRoche Inc. v. Invamed Inc.*, 213 F.3d 1359 (Fed. Cir. 2000), the plaintiff knew (and could allege with certainty) that the defendant was selling a generic version of a drug it was manufacturing. It had a sample of the drug but did not have access to the manufacturing process. The plaintiff was compelled ultimately to dismiss its infringement claim, and the defendant thereafter sought Rule 11

---

[4] The plaintiff initiated the patent infringement claim against the Postal Service for an optical scanning device, without having actually examined the allegedly infringing device. The court held that the plaintiff could have been "much better informed before filing the complaint" and did not make the required effort to obtain the device.

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

1    sanctions. The court declined to issue sanctions because the defendant had "refused to disclose

2    the manufacturing process," and the court could not "imagine what else [the plaintiffs] could

3    have done to obtain facts relating to [the defendant's] alleged infringement of their process

4    patents." *Id.* at 1363-1364. Similarly, in *Intamin v. Magnetar Tech. Corp.*, 483 F.3d 1328, 1338

5    (Fed. Cir. 2007), the *technology* of the patent—which would have required cutting open metal

6    casing on magnets, or doing chemical tests to investigate—"presented the patentee with

7    unreasonable obstacles to any effort to obtain a sample...." 483 F.3d at 1338.

8        These two cases provide no support for Laureate's bold attempt to bypass its pleading

9    obligations. Laureate's copyright claim does not involve a patent or any unique manufacturing

10   process—it involves written and audiovisual materials that consist of academic courses in the

11   English language. No good faith basis exists for Laureate's filing of a copyright claim involving

12   forty separate works comprising what appears to be the totality of Laureate's "Audio Visual and

13   Online Course Materials" (*see* Cmplt., ¶ 24) when it admits it has never even seen the allegedly

14   infringing material(s). The correspondence regarding the offered exchange of material alluded

15   to but not presented to the court by Laureate shows it had ample opportunity to a conduct a

16   reasonable investigation into any suspected copyright claim, but instead hurriedly registered its

17   forty works with the U.S. Copyright Office (all registered on April 10, 2007) and filed this

18   action in bad faith.

19       **B.    The Copyright Claim Relates Only To Derivative Works.**

20       Before filing suit for copyright infringement and statutory damages, a plaintiff must have

21   registered the allegedly infringed material with the U.S. Copyright Office. 17 U.S.C. § 411(a);

22   *S.O.S. Inc. v Payday, Inc.* 886 F.2d 1081, 1085 (9th Cir. 1989). As reflected on the registrations,

23   each of Laureate's 40 works is a derivative work based upon an underlying work identified as

24   previously created but unregistered. The only material registered by each of these forty

25   registrations is the *new material* added to the "previously published edition." A copyright in a

26   derivative work protects only the *additional original* contributions of the author of the latest

27   edition. It does not protect the original work. *See, e.g., Silverman v. CBS, Inc.*, 870 F.2d 40, 49

28   (2d Cir. 1989) ("[T]he fundamental copyright principle applicable to this case is that a copyright

affords protection only for original works of authorship and, consequently, copyrights in the derivative works secure protection only for the incremental additions of originality contributed by the authors of the derivative works").

There is no mention in the Complaint about the original editions, including any allegation of ownership thereof, and the infringement claim is not (and may not be) based upon the underlying unregistered works. The claim relates solely to some unspecified aspect of the newly added material in the 40 works, and the Complaint offers no information as to the difference between the newly added content versus the original content of any work.[5]

When one considers the complete lack of factual support for Laureate's copyright claim, its disingenuous attempt to suggest it could not review the suspected infringing material, and its failure to identify the differences relative to its derivative works, it is clear that Laureate is not seeking to protect any intellectual property but instead attempting to force Teachscape to suffer expense and unwarranted and burdensome discovery. This Court should reject Laureate's effort.

### C.    Plaintiffs' Lanham Act Claim Must Be Dismissed.

Under section 43(a) of the Lanham Act, an actionable claim for false advertising includes the following elements: (1) a false statement of fact in a commercial advertisement; (2) evidence that the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception must be material (*i.e.*, likely to influence potential customers); (4) evidence the defendant caused the statement to enter interstate commerce; and (5) proof of injury incurred by the plaintiff. *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).

As courts may resolve whether a statement is actionable on a motion to dismiss (*Cook Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 245 (9th Cir. 1990)), a certain degree of detail must be pled:

> While a Lanham Act claim is not subject to the strict pleading requirements of
> Rule 9 fraud claims, "the policies which underlie Rule 9's requirement that the

---

[5] By failing to provide any notice of what material has been added to each of the forty works, there also is no way to assess what, if any, new material is protectible expression versus facts or ideas used in connection with academic courses on math and reading.

TEACHSCAPE'S MOTION TO DISMISS/STRIKE COMPLAINT

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

nature of an alleged misrepresentation be pleaded with specificity are equally applicable to the type of misrepresentation claims presented in [a] Lanham Act claim. In litigation in which one party is charged with making false statements, it is important that the party charged be provided with sufficiently detailed allegations regarding the nature of the alleged falsehoods to allow him to make a proper defense."

*In re Century 21-RE/MAX Real Estate Advertising Claims Litig.*, 882 F. Supp. 915, 927 (C.D. Cal. 1994) (*quoting Max Daetwyler Corp. v. Input Graphics, Inc.*, 608 F. Supp. 1549, 1556 (ED. Pa. 1985). Canter's claim fails to meet the requirements in several material respects.

First, Canter has failed to plead the allegedly offending advertisement (or advertisements) in any detail whatsoever, let alone with any particularity. Rather, Canter generally complains about the use of the term "updated" in connection with some unidentified advertising of a Marygrove course (or courses) Teachscape was offering. Cmplt., ¶¶ 65-66. Canter, however, does not attach or even quote in full any allegedly false advertising. This lack of specificity in and of itself is fatal to Canter's Lanham Act claim.

Second, not only is there no specific factual assertion made, there is no statement of fact that reasonably would deceive the reader. Canter's contention that the word "updated" somehow deceptively states as a fact that Teachscape is responsible for the prior coursework prepared by Canter, ignores the "fact" that the degree programs, whether offered by Teachscape or Canter, are *Marygrove's* degree programs. Hence, the "updated" reference is true as the more recent program is newer or "updated". Thus, Canter's construction of the word "updated" as false and misleading is unwarranted.

In all events, a mere statement that a course is "updated" is not a specific factual assertion that can give rise to liability. *See, e.g., Cook, Perkiss & Liehe*, 911 F.2d at 245 ("The advertisement does not contain the kind of detailed or specific factual assertions that are necessary to state a false advertising cause of action under the [Lanham] Act."); *Atari Corp. v. 3DO Co.*, 1994 WL 723601 (N.D. Cal. 1994) (holding the slogan "'the most advanced home gaming system in the universe' is a general assertion of superiority and 'not the kind of detailed or specific factual assertion' that is required to state a false advertising cause of action under the Lanham Act") (internal citations omitted).

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

TEACHSCAPE'S MOTION TO DISMISS/STRIKE COMPLAINT

Indeed, at most, the vague reference to "updated"—albeit devoid of any context—falls squarely within the definition of unactionable "puffery." *See Interactive Prods. Corp. v. a2z Mobile Office Solutions, Inc.,* 326 F.3d 687, 700 (6th Cir. 2003) (advertising a product as "redesigned and improved" not actionable.); *In re Century 21-RE/MAX Real Estate Advertising Claims Litig.,* 882 F. Supp. 915 (C.D. Cal. 1994) (holding the words "number one" and largest "volume" real estate company are too vague to be deceptive under the Lanham Act); *Summit Tech., Inc. v. High-Line Med. Instruments, Co.,* 933 F. Supp. 918 (C.D. Cal. 1996) ("The Court agrees that Hi-Line's statement that the used Excimer lasers are 'perfectly reliable' is mere puffery, not actionable under the Lanham Act."); *Pinnacle Sys., Inc. v. XOS Techs., Inc.,* 2003 WL 21397845, at *5 (N.D. Cal. May 19, 2003) ("A statement that XOS's products are 'inferior' is vague, generalized, and just the sort of outrageous statement consumers expect in advertising"). As these cases demonstrate, use of the word "updated" is not actionable under the Lanham Act.

Finally, for much the same reason, even if the statement that the course was "updated" was some assertion of a detailed or specific fact (which it was not), such a statement as a matter of law is not the type that would be considered "material", that is, one that would "likely to influence the purchasing decision." *In re Century 21-RE/MAX Real Estate Advertising Claims Litig.,* 882 F. Supp. at 923. (quoting *Cook, supra,* 911 F.2d at 244).

In sum, Canter's Lanham Act claim is devoid of merit. Teachscape's motion should be granted.

## D.    The Dismissal Of The Copyright And Lanham Act Claims Warrants Dismissal Of The Entire Action.

Courts may decline to exercise supplemental jurisdiction over a claim if the district court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3); *Burnett v. Twentieth Century Fox Film Corp.,* --- F. Supp. 2d ---, 2007 WL 1662343, at *10 (C.D. Cal. Jun. 4, 2007) (court dismissed state law claims after dismissing federal copyright and Lanham Act claims). The Ninth Circuit uses a two-part test to determine whether it is appropriate to decline supplemental jurisdiction. *Giannini v. Schering-Plough Corp.,* 2007 WL 1839789, *4 (N.D. Cal. Jun. 26, 2007). First, a court must look to whether it falls under one of the four

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

-14-

1    enumerated circumstances under 28 U.S.C. § 1367(c), which includes the dismissal of all claims

2    over which the court has original jurisdiction; second, the court must consider whether the

3    values of economy, convenience, fairness and comity will be served by exercising jurisdiction.

4    *See Acri v. Varian Assocs., Inc.,* 114 F.3d 999, 1000 (9th Cir. 1997).  "When the balance of

5    [judicial economy, convenience, fairness and comity] indicate that a case properly belongs in

6    state court, as when the federal claims have dropped out of the lawsuit in its early stages, the

7    federal court should decline the exercise of jurisdiction." *Executive Software North America,*

8    *Inc. v. U.S. Dist. Ct.,* 24 F.3d 1545, 1552 (9th Cir. 1994).

9        Teachscape submits that under these enumerated factors, dismissal of the entire action is

10    appropriate.  Plaintiffs' federal claims should be dismissed; this case is at the pleading stage; and

11    Plaintiffs' state claims should be brought in San Francisco County, where Teachscape is located,

12    which would not disadvantage Canter, a Los Angeles corporation, and Laureate, a Maryland

13    corporation. *See* Cmplt. ¶¶ 4, 5.

14        Should this Court, however, be inclined to further consider the state law claims asserted

15    by Plaintiffs, dismissal with prejudice of the entire action is warranted in any event.

16    **E.    Canter's False Advertising Claim Under Bus. & Prof. Code Section**
      **17500 Fails As A Matter of Law.**

17        Canter's false and misleading advertising claim under Bus. & Prof. Code § 17500 is

18    predicated on the same factual allegations of its Lanham Act claim.  For the same reasons that

19    Canter's Lanham Act claims fail, its Section 17500 claim also fails.

20        California's false advertising law prohibits advertising property or services with untrue

21    or misleading statements. *McCann v. Lucky Money, Inc.,* 129 Cal. App. 4th 1382, 1388 (2005).

22    A statement is false or misleading if members of the public are *likely* to be deceived. *Id.*

23    (emphasis added).  The term "likely" means that the deception is probable, not merely possible.

24    *Williams v. Gerber Products Co.,* 439 F. Supp. 2d 1112, 1117 (S.D. Cal. 2006).  Consumer

25    reliance is induced by specific rather than general assertions. *Id.*  Advertising that merely states

26    in general terms that one product is superior is not actionable. *Id.*

27        Here, as previously noted, there is nothing false or misleading in the description of

28    Marygrove's degree program as "updated".  Further, "updated" is simply too vague to be

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

-15-

actionable. *See Cook Perkiss & Liehe,* 911 F.2d at 245 (statement "we're the low cost commercial collection experts" non-actionable puffery*); Consumer Advocates v. Echostar Satellite Corp.,* 113 Cal. App. 4th 1351, 1361 (2003) (advertisement that system provided "crystal clear picture" and "CD quality" sound found to be non-actionable puffery). Advertising something as "updated" is merely a "boast[], all-but-meaningless superlative[] ... a claim which no reasonable consumer would take as anything more weighty than an advertising slogan." *Id.* at 1361.

    Indeed, even if one accepts Canter's attenuated inference that by using the term "updated," Teachscape falsely implied a long-term relationship with Marygrove (and one should not), Canter's far-reaching interpretation is at best only "one possible interpretation," and that it not the standard. *Williams,* 439 F. Supp. 2d at 1117. Rather, the standard is whether it is *probable* that a statement will deceive a reasonable consumer, not merely that it is possible. *Id.* Nothing about a vague reference to Marygrove's degree program offering being "updated" could conceivably deceive a reasonable consumer about anything factual. Canter's fourth claim for relief should therefore be dismissed.

### E.    Canter's Misappropriation Of Trade Secrets Claim Fails As A Matter Of Law.

    In order to establish a claim for misappropriation of trade secrets under the Uniform Trade Secret Act, a plaintiff must demonstrate that it owned a trade secret and that the defendant acquired, disclosed, or used the plaintiff's trade secret through improper means. Cal. Civ. Code § 3426.1; *Sargent Fletcher, Inc. v. Able Corp.,* 110 Cal. App. 4th 1658, 1665 (2003). Canter has failed to properly plead both of these requirements.

#### 1.    The Materials Alleged Are Not "Trade Secrets."

    A "trade secret" includes only information that "derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use...." Cal. Civ. Code § 3426.1. To avoid a motion to dismiss, the plaintiff must allege *facts* showing the existence of a trade secret; an averment that the information is "secret" will not suffice. *Diodes, Inc. v. Franzen,* 260 Cal. App. 2d 244, 252 (1968). Thus, a party seeking to protect trade secrets must describe the subject

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

1    matter of the trade secret with sufficient particularity to separate it from matters of general

2    knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and

3    to permit the defendant to ascertain at least the boundaries within which the secret lies. *Whyte v.*

4    *Schlage Lock Co.,* 101 Cal. App. 4th 1443, 1453 (2002) ("new product information" was too

5    broad, as it does not differentiate between truly secret information, such as formulas and product

6    design, and new product information which had been publicly disclosed).

7         Market research does not enjoy blanket trade secret protection, particularly if it relates to

8    the needs of a buyer "that is presumably aware of its own needs." *See id.* at 1456. Information

9    that is readily obtainable through public sources such as directories also does not derive the

10   independent economic value necessary to the existence of a trade secret. *Scott v. Snelling &*

11   *Snelling, Inc.,* 732 F. Supp. 1034, 1044 (N.D. Cal. 1990). Information which is not exclusive or

12   which is generally in use by good faith competitors also cannot be classified as a trade secret.

13   So, too, information that is discoverable to those in the industry is not a trade secret.

14   *AdvantaCare Health Partners, LP v. Access IV, Inc.,* 2003 WL 23883596, at *2 (N.D. Cal. Oct.

15   24, 2003). Moreover, information, including customer lists, that are based on an employee's

16   personal knowledge and prior business contacts are not trade secrets. *Scott,* 732 F.Supp. at

17   1044. This reflects the public policy that an employee's skill and knowledge of a particular

18   business constitute the means by which he earns a living and the courts should not hastily brand

19   them as confidential where this will deprive him of employment opportunities. *Rigging Int'l*

20   *Maint. Co. v. Gwin,* 128 Cal. App. 3d 594, 606-07 (1982).

21        Here, Canter boldly asserts that *all* information regarding its method "for identifying

22   appropriate markets for its products, information regarding market segmentation, design of

23   distance learning degree programs and methods for their accreditation, enrollment systems, and

24   specific customer contacts and preferences" are worthy of trade secret protective. Cmplt., ¶ 29.

25   Canter vaguely summarizes all of this information as "knowledge about lucrative markets." *Id.,*

26   ¶ 32. However, these conclusory allegations, in the context of the "products" being offered and

27   the "customers" at issue, as well as the alleged misappropriation, belie Canter's contention.

28        As a preliminary matter, these purported "trade secrets" are not sufficiently pled so as to

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

separate them from matters of general knowledge in the trade of developing, marketing and

providing graduate degree programs, and does not allow Teachscape, or anyone else, to ascertain

the boundaries within which the "secret" lies. *See Whyte*, 101 Cal. App. 4th at 1453. For

example, with respect to Canter's "methodology for identifying appropriate markets for its

programs" and "market segmentation," Canter merely provides that is "invested years of market

research and substantial financial resources into an analysis of the educational marketplace."

Cmplt., ¶ 10. Yet, Canter does not explain what may have been included in this analysis, nor

does Canter provide Teachscape with any information that instructs Teachscape as to the

boundaries of this alleged "methodology." With respect to the assertion that Canter's

"design"of distance learning programs is a trade secret, Canter provides no information as to

what it asserts is encompassed in this "design," leaving Teachscape without an understanding of

the boundaries of this alleged trade secret.

Even assuming that the purported trade secrets are sufficiently defined (which they are

not), Canter's claim ignores the fact that its "market" and "customers" are universities,

"education partners" which can offer degrees. (Cmplt., ¶ ¶ 6, 10.) Tellingly, the relationship

with the sole customer as to which Canter specifically complains, Marygrove College, is a

matter of public record and even advertised by Plaintiffs (along with Plaintiffs' other

"relationships") *on Plaintiffs' own websites. See* RFJN, Exh. C. Thus, Canter's conclusory

allegation that its unspecified market research is entitled to trade secret protection is belied by

Canter's own market definition and publications, which show that the "market" is readily

identifiable, available to anyone with an interest, and generally discoverable.

Thus, Canter suggestion that customer contacts are "trade secrets" is without merit.

While Canter does not define what encompasses "customer contacts," information such as the

names, location, and telephone number of Canter's educational partners is, again, readily

available. *See* RFJN, Exhs. C, E.[6] Even if this information were not publicly available, and it is,

---

[6] For example, Canter's website indicates that its educational partners include Laureate's wholly
owned affiliate Walden University, and third party institutions such as the University of New
England, Olivet Nazarene University and Marygrove College. RFJN, Exh. C. Contact
information for these educational providers can be found on their respective websites; indeed, on

-18-

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

1  customer information that is based on an employee's personal knowledge is not a trade secret.

2  *See Rigging Internat.*, 128 Cal.App.3d at 606-07.  Accordingly, Canter has not pled that its

3  "knowledge about lucrative markets" is entitled to trade secret protection.

4  Critically, the sole identifiable complaint alleged by Canter is that Teachscape began a

5  relationship for an online post-secondary degree program with Marygrove.  Suggesting in its

6  complaint that it partners with other universities for such online programs, Canter necessarily

7  tethers its claim that this research into potential online partners has independent economic value

8  to Canter.  However, as Canter's own website demonstrates, Canter is abandoning all "partners"

9  for online degree programs and instead opting to offer such online programs exclusively through

10  Laureate's wholly owned subsidiary, Walden University.  *See* RJFN, Exhs. B, D.  This simple

11  fact, of which judicial notice may be taken, shows that information regarding universities is a

12  matter of public knowledge and that Plaintiffs supposed trade secrets regarding potential online

13  customers, contacts and their supposed preferences, is of no independent economic value to

14  Canter.  Canter has failed to plead any protectable "trade secrets."

15          **2.      Canter Did Not, And Cannot, Allege Any Improper Acquisition,
                      Disclosure Or Use Of Canter's Purported "Trade Secrets."**
16
17  In order for a plaintiff to establish misappropriation of trade secrets, the plaintiff must

18  allege that the defendant either acquired, disclosed or used the plaintiff's trade secret

19  improperly.  Cal. Civ. Code § 3426.1.  "Improper means" includes theft, bribery,

   misrepresentation, breach or inducement of a breach of duty to maintain secrecy, or espionage
20
   through electronic or other means.  *Id.*  Mere solicitation of an employee to leave and associate
21
   with a competitor is not improper.  *Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d
22
23  1324, 1337-38 (9th Cir. 1980).  A motion to dismiss will be granted where the alleged actions

   leading to the misappropriation do not implicate the defendant.  *See Globespan, Inc. v. O'Neill*,
24
   151 F. Supp. 2d 1229, 1235-36 (C.D. Cal. 2001).
25
26  Here, Canter's claim is predicated on the allegation that Teachscape "hired" or

27
28  the University of New England's website, a full directory of the university's personnel is
   available, which includes the name, contact information and title of each member of its staff.
   [www.une.edu/hr/pdf/personneldirectory.pdf.]

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

-19-

"contracted" with certain former Canter employees. Cmplt., ¶¶ 7, 32. Tellingly, while Plaintiffs allege these employees were bound by confidential agreements (unidentified and undefined), Plaintiffs do not allege (nor can they) that Teachscape wrongfully solicited these employees. *See Posdata Co. Ltd. v. Kim*, 2007 WL 1848661, at *7 (N.D. Cal. Jun. 27, 2007). Rather, it merely suggests, without any factual support, that because certain of its former employees work (or worked) for Teachscape, these employees must have breached some unspecified confidentiality agreement with Canter. Cmplt. ¶¶ 31, 32.[7] However, the suggestion demonstrates that Canter's claim is entirely predicated on the "inevitable disclosure doctrine." Yet, this doctrine—which would allow plaintiff to plead a trade secret misappropriation claim by simply demonstrating the defendant's new employment will inevitably lead him to rely on the plaintiff's trade secrets—has been soundly rejected in California. *Whyte*, 101 Cal. App. 4th at 1458, 1461-62; *Globespan*, 151 F. Supp. 2d at 1235; *Bayer Corp. v. Roche Molecular Syst., Inc.*, 72 F. Supp. 2d 1111, 1120 (N.D. Cal. 1999).

There are no properly alleged *facts* to support Canter's misappropriation of trade secrets. Teachscape's motion should be granted.

### F. Canter's Claim For Intentional Interference With Prospective Economic Advantage Claim Fails As A Matter of Law.

To support a cause of action for interference with prospective economic advantage, a plaintiff must plead and prove: "(1) the existence of a specific economic relationship between [plaintiff] and third parties that may economically benefit [plaintiff]; (2) knowledge by the [defendants] of this relationship; (3) intentional acts by the [defendants] designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) damages to the [plaintiff]." *Silicon Knights*, 983 F. Supp. at 1310 (quoting *Rickards v. Canine Eye Registration Found., Inc.*, 704 F.2d 1449, 1456 (9th Cir. 1983). The California Supreme Court has also stated that a plaintiff seeking to recover for alleged interference with prospective economic relations has the burden of pleading and proving that the defendant's interference was wrongful "by some measure beyond

---

[7] While Canter makes vague and wholly unsubstantiated claims that Teachcape "overnight" entered the market, the only "facts" alleged shows that it was more than *two years* after Canter's employees first left that Teachscape first actually offered any program with Marygrove.

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

the fact of the interference itself." *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 392 (1995).

Moreover, the law precludes recovery for overly speculative expectancies by initially requiring proof that the business relationship contained the *probability* of a future economic relationship. *Silicon Knights,* 983 F. Supp. at 1311. Where a party fails to specifically identify the "third parties" with which it had prospective contractual relationships, courts will dismiss the claim. *See Tele Atlas N.V. v. Navteq Corp.*, 397 F. Supp. 2d 1184, 1194 (N.D. Cal. 2005) (plaintiff vaguely alleged that defendant interfered with prospective contractual relationships with "third parties"); *see also Silicon Knights,* 983 F. Supp. at 1312 (claim that "[d]efendants induced and/or caused customers and potential customers not to purchase ... products ... from Silicon Knights" dismissed.)

Here, Canter vaguely claims that it maintains prospective client relationships with a "number of educational institutions," but fails to identify any specific prospective relationship with which Teachscape allegedly interfered. By doing so, Canter effectively deprives Teachscape of minimal notice of the scope of Canter's claim. Indeed, Canter admits as much when it alleges that Teachscape "knew *or had reason to know* of Canter's relationships with its [educational] partners." Cmplt., ¶ 40 (emphasis added). Teachscape does not know what Canter thinks it should know.

Further, when one strips Plaintiffs' complaint of its unwarranted factual and legal conclusions and inferences, it becomes evident that Canter is really complaining about the alleged interference itself.[8] This, however, is not actionable. *See Hsu v. OZ Optics, Ltd.*, 211 F.R.D. 615, 620-21 (N.D. Cal. 2002); *Della Penna,* 11 Cal. 4th at 393 (1995). Where, as here, the sole action plaintiff alleges defendant committed is directing a customer to reject entering

---

[8] As previously noted, while Canter alleges that Teachscape "used Canter confidential information about its relationships with its business partners to gain an unlawful advantage and to induce at least one of Canter's existing partners to reject a Canter program and to replace it with a substantially similar program offered by Teachscape" (Cmplt., ¶ 41), Canter does not allege any *facts* that identify any "confidential information" or how it was allegedly used to gain an alleged "unlawful" advantage in some wrongful manner. That Marygrove offers graduate degree programs, was not a secret.

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

into a relationship with the plaintiff, a claim for interference with prospective economic advantage should be dismissed. *City of Oakland v. Comcast Corp.,* 2007 WL 518868, at *8 (N.D. Cal. Feb. 14, 2007) (only action City alleged is that Comcast directed third party to reject franchise renewal ordinance with City).

### G. Canter's Intentional Interference With Contract Claim Fails.

To establish a claim for intentional interference with contract, the plaintiff must plead: (1) the defendant's intentional acts designed to induce a breach or disruption of a valid contractual relationship; (2) actual breach or disruption of the contractual relationship; and (3) resulting damage. *Reeves v. Hanlon*, 33 Cal.4th 1140, 1148 (2004). Canter has failed to sufficiently plead any of these requirements.

As to the first element, plaintiff must allege the defendant's knowledge that the interference was certain or substantially certain to occur as a result of his or her action. *See Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal. 4th 1134, 1157 (2003); *Quelimane Co. v. Stewart Title Guar. Co.,* 19 Cal. 4th 26, 56 (1998). Here, not only does Canter fail to plead *facts* to suggest that Teachscape intentionally induced breach or disruption of any contractual relationship, Canter actually pleads facts to show that Teachscape was *not* aware that Marygrove's offering of a CIA degree through Teachscape would violate any terms of a Marygrove/Teachscape contract. Indeed, once Canter raised the issue with Teachscape, the offering was withdrawn. Cmplt., ¶ 21. While Canter would suggest the withdrawal of the offering infers an admission of guilty, the only basis for asserting this contrary inference is Canter's suggestion that since its former employees knew of the contract, Teachscape must have known about the contract too. But again, this allegation, based on the "inevitable disclosure" doctrine, cannot salvage Canter's otherwise unsupportable claim.

Equally fatal to Canter's claim is that it alleges, upon information and belief, that Marygrove "does not intend to renew its contract for the provision of the CIA degree with Canter." Cmplt., ¶ 60. A decision not to renew does not give rise to a claim for interference with an existing contract. *Pacific Oxygen Sales Co. v. Union Carbide Corp.,* 930 F.2d 28, 1991 WL 42150, at *2 (9th Cir. Mar. 21, 1991) .

-22-

To the extent Canter also alleges that Teachscape induced Marygrove to attach "unacceptable conditions" to an offer to Canter for Math and Reading degree programs, these allegations amount to nothing more than conclusions without any factual support and cannot support a claim.

Finally, Canter fails to properly plead it suffered damages as a result of Teachscape's alleged interference under Rule 8(a) pleading requirements. Canter conclusorily alleges that Teachscape's interference with a contractual relationship has "damaged" it. Cmplt. ¶ 61. Conclusory claims of damages with no factual predicate on which to support the allegation are insufficient. *See Silicon Knights*, 983 F. Supp. at 1310. Here, Canter did not (and based on its announced intention to provide online degree programs exclusively through its subsidiary university cannot in good faith) claim that but-for Teachscape's purported interference, it would have accepted the terms Marygrove offered for its Math and Reading program, and similarly, would have secured an extension of the existing online CIA degree program. As such, it has plead no valid claim of damages. Consequently, Canter's third claim should be dismissed.

## H. Plaintiffs' Unfair Competition Claim Must Be Dismissed.

A plaintiff alleging unfair business practices under the unfair competition statutes must state with reasonable particularity the facts supporting the statutory elements of the violation. *Silicon Knights*, 983 F.Supp. at 1316. Further, "[w]here the UCL plaintiff alleges that the defendant (who is a competitor) has committed an 'unfair' act or practice, the test of whether the UCL's 'unfair' prong has been satisfied is whether the 'conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition.'" *Paulus v. Bob Lynch Ford, Inc.,* 139 Cal. App. 4th 659, 679 (2006) (quoting *Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.,* 20 Cal. 4th 163, 187 (1999)). Where the facts as pled do not state a claim that because of the wrongful conduct of the defendant, plaintiff suffered a substantial, unavoidable injury, dismissal is warranted. *Berryman v. Merit Property Mgmt. Inc.,* 62 Cal. Rptr. 3d 177, 2007 WL 1567050, at *7 (Cal. App. May 31, 2007).

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

Here, Plaintiffs claim that Teachscape's acts of unfair competition were its "efforts to misappropriate and use Canter's confidential" information and its engaging in "untrue or misleading advertising." Cmplt., ¶¶ 32, 41, 53, 65. As demonstrated above, Plaintiffs' claim of misappropriation of confidential information and false advertising fail as a matter of law and provide no support for any unfair competition claim.[9] Plaintiffs also conclusorily allege that Teachscape's actions are "immoral and unscrupulous and have been undertaken in violation of policies established in the California Civil Code and California Labor Code." Cmplt., ¶¶ 70-72. This conclusory allegations, wholly lacking in any factual specificity, provide no support for this claim. *See Silicon Knights*, 983 F.Supp. at 1316. Plaintiffs' unfair competition claim must be dismissed.

### I. Plaintiffs' Claim for "Restitution" Under Bus. & Prof. Code Section 17200 and 17500 Should be Stricken.

Even if Plaintiffs' had some viable claim under Section 17200 or 17500, which they do not, they are not entitled to the monetary relief they seek. Restitution under Section 17500 and 17200 is the "return money obtained through an unfair business practice to those persons in interest from whom the property was taken." *Korea Supply,* 29 Cal. 4th at 1149. "Compensation for a lost business opportunity is a measure of damages and not restitution to the alleged victims." *Id.* at 1151 (quoting *MAI Systems Corp. v. UIPS,* 856 F.Supp. 538, 542 (N.D.Cal. 1994)). Thus, "disgorgement is not an available remedy." *Madrid v. Perot Syst. Corp,*. 130 Cal. App. 4th 440, 460 (2005).

Here, Plaintiffs' claim to be "entitled to restitution for the benefits improperly garnered by Teachscape..." and for disgorgement of all "ill-gotten profits." Cmplt. ¶ 68. Clearly, such relief is not recoverable under either Section 17200 or Section 17500. These claims for relief should be stricken.

---

[9] To the extent Plaintiffs' claim is based upon on the same nucleus of facts as the plaintiff's claim for misappropriation for trade secrets, it is preempted. *See* Cal. Civ. Code § 3426.7; *Softchoice Corp. v. EnPointe Techs., Inc.,* 2006 WL 3350798, at *1 (Cal. Sup. Nov. 13, 2006); *Ernst Paper Prods. Inc. v. Mobil Chem. Co.,* 1997 WL 33483520, at *7 (C.D. Cal. Dec. 2, 1997).

1

## V.    CONCLUSION

2      At its core, the present action represents nothing more than the legal equivalent of "shoot

3  first, ask questions later" mentality.  The "shot": this incredibly expansive action asserting

4  unfounded claims of copyright infringement, misappropriation of trade secrets, unfair

5  competition and interference with business relationship. The way to "ask questions later":

6  Intrusive, unwarranted, distracting and expensive discovery.  Not surprisingly, well-settled case

7  law holds that this approach to litigation will not be tolerated.

8      Teachscape's motion to dismiss is well-founded on both the law and the undisputed

9  properly pleaded facts.  Teachscape respectfully submits its motion should be granted.

10  Dated: August 3, 2007                    SONNENSCHEIN NATH & ROSENTHAL LLP

11

12

13                          By _____

14                             GAYLE M. ATHANACIO

15                             Attorney for Defendant Teachscape, Inc.

16

17  27273914

18

19

20

21

22

23

24

25

26

27

28

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000