1  ANNETTE L. HURST (State Bar No. 148738)
2  DANIEL N. KASSABIAN (State Bar No. 215249)
   ELENA M. DIMUZIO (State Bar No. 239953)
3  HELLER EHRMAN LLP
   333 Bush Street
4  San Francisco, California 94104-2878
5  Telephone: +1.415.772.6000
   Facsimile: +1.415.772.6268
6  E-mail:    Annette.Hurst@HellerEhrman.com
7             Daniel.Kassabian@HellerEhrman.com
              Elena.DiMuzio@HellerEhrman.com
8
   Attorneys for Plaintiffs
9  CANTER & ASSOCIATES, LLC, and
   LAUREATE EDUCATION, INC.
10

11                UNITED STATES DISTRICT COURT

12                NORTHERN DISTRICT OF CALIFORNIA

13                      SAN JOSE DIVISION

14  CANTER & ASSOCIATES, LLC, and          Case No. C 07-3225 RS
15  LAUREATE EDUCATION, INC.,
                                           **PLAINTIFFS CANTER &**
16                            Plaintiffs,   **ASSOCIATES, LLC'S, AND**
                                           **LAUREATE EDUCATION, INC.'S**
17        v.                                **MEMORANDUM IN OPPOSITION**
                                           **TO MOTION TO DISMISS AND/OR**
18  TEACHSCAPE, INC.,                      **STRIKE COMPLAINT**
19
                              Defendant.    Judge:  The Honorable Richard Seeborg
20                                          Ctrm.:  4 (5th floor)
21                                          Date:   September 26, 2007
                                           Time:   9:30 a.m.
22

23

24

25

26

27

28

Heller
Ehrman LLP

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

STATEMENT OF FACTS .............................................................................................. 2

I.    LAUREATE'S AND CANTER'S POSITION IN THE
      MARKETPLACE BEFORE TEACHSCAPE'S WRONGFUL
      CONDUCT. ........................................................................................................... 2

II.   CANTER'S FORMER EMPLOYEES WORK FOR
      TEACHSCAPE USING CANTER'S TRADE SECRETS AND
      LAUREATE'S COPYRIGHTED COURSE MATERIALS. ................................. 3

III.  TEACHSCAPE INTERFERES WITH CANTER'S
      LONGSTANDING RELATIONSHIP WITH MARYGROVE. ........................... 4

IV.   TEACHSCAPE DENIES ITS INTERFERENCE WAS
      INTENTIONAL AND REFUSES TO TURN OVER DRAFTS OF
      ITS COURSE MATERIALS WHEN LAUREATE AND CANTER
      INVESTIGATE ITS CONDUCT. ........................................................................ 5

ARGUMENT ................................................................................................................... 7

I.    TEACHSCAPE MISREADS THE STANDARD IN *TWOMBLY* AS
      REQUIRING MORE THAN NOTICE PLEADING. ........................................... 7

II.   LAUREATE'S COPYRIGHT INFRINGEMENT CLAIM IS
      PROPERLY PLED IN LIGHT OF THE FACTS AND
      CIRCUMSTANCES ALLEGED. ........................................................................ 8

      A.    The Court Should Reject Teachscape's Attempt to Shield
            Itself From Copyright Liability By Refusing Access To Its
            Infringing Materials. .................................................................................. 8

            1.    Laureate has pled copyright infringement per the
                  requirements of the Ninth Circuit. ................................................ 8

            2.    The claim of infringement is plausible given the facts
                  alleged. .......................................................................................... 9

            3.    Teachscape's refusal to produce drafts of its materials
                  should not serve as a basis to dismiss Laureate's
                  infringement claim. ..................................................................... 10

      B.    Laureate's Registration Of Derivatives of Its Copyrighted
            Works Is Sufficient Because It is The Owner Of The Original
            Works Contained Therein. ....................................................................... 11

III.  LAUREATE'S AND CANTER'S COMPLAINT MORE THAN MEETS THE REQUIREMENT OF A SHORT AND PLAIN STATEMENT GIVING TEACHSCAPE NOTICE OF THEIR CLAIMS. ................................................................ 12

A.  Canter's Trade Secret Misappropriation Claim Is Adequately Pled. ................................................................ 12

1.  Trade secrets should not be specified in a public complaint. ................................................................ 12

2.  Canter sufficiently provided notice of its trade secrets. ................... 13

3.  Teachscape mischaracterizes Canter's trade secrets. ...................... 14

4.  Canter sufficiently alleges Teachscape's misuse of trade secrets. ................................................................ 15

5.  Plaintiff's legal authority is inapposite. ............................ 16

B.  Canter's Claims For Unlawful Interference Are Adequately Pled. ................................................................ 17

1.  Teachscape cannot feign ignorance to contradict the Complaint. ................................................................ 18

2.  Teachscape avoids facts pled in moving to dismiss for lack thereof. ................................................................ 18

3.  At least one prospective economic relationship has been pled. ................................................................ 19

4.  Canter has pled that damages have been sustained. ........................ 20

C.  Canter's Claims For False Advertising Are Adequately Pled. ................... 21

1.  Teachscape applies an incorrect, heightened standard of pleading. ................................................................ 21

2.  Teachscape's advertisement is a false comparison, not puffery. ................................................................ 22

D.  Laureate and Canter Have Properly Asserted A Claim For Unfair Competition Pursuant To Section 17200, And Properly Seek Restitution For Teachscape's Unfair Competition. ................................................................ 24

CONCLUSION ................................................................ 25

Heller
Ehrman LLP

# TABLE OF AUTHORITIES

**Page**

**Cases**

*AdvantaCare Health Partners v. Access IV, Inc.,*
No. 03-4496, 2003 WL 23883596 (N.D. Cal. Oct. 24, 2003)........................................ 16

*Advante Int'l Corp. v. Mintel Learning Tech.,*
No. 05-1022, 2006 WL 3371576 (N.D. Cal. Nov. 21 2006) ........................................ 12

*Bayer Corp. v. Roche Molecular Sys.,*
72 F. Supp. 2d 1111 (N.D. Cal. 1999)........................................................................... 16

*Bell Atlantic Corp. v. Twombly,*
127 S. Ct. 1955 (2007) ......................................................................................... passim

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,*
20 Cal. 4th 163 (1999)................................................................................................... 24

*Columbia Pictures Tel. v. Krypton Broad. of Birmingham, Inc.,*
106 F.3d 284 (9th Cir. 1997),
*rev'd on other grounds sub nom. Feltner v. Columbia Pictures Tel., Inc.,*
523 U.S. 340, 118 S. Ct. 1279 (1998) .............................................................................. 8

*Computer Assocs. Int'l, Inc. v. Altai, Inc.,*
775 F. Supp. 544 (E.D.N.Y. 1991),
*aff'd in part and vacated in part on other grounds,* 982 F.2d 693 (2d Cir. 1992)........ 12

*Cytosport, Inc. v. Nature's Best, Inc.,*
No. 06-1799, 2007 WL 1345379 (E.D. Cal. May 8, 2007 ........................................... 21

*Denbicare U.S.A. Inc. v. Toys "R" Us, Inc.,*
84 F.3d 1143 (9th Cir. 1996)........................................................................................ 21

*Diodes, Inc. v. Franzen,*
260 Cal. App. 2d 244 (1968).................................................................................. 12, 16

*Effects Assocs., Inc. v. Cohen,*
817 F.2d 72 (9th Cir. 1987).............................................................................................. 8

*Elektra Entm't Group v. Avery,*
No. 06-2541, 2007 WL 2023545 (E.D. Cal. July 11, 2007) ........................................... 8

*Erickson v. Pardus,*
127 S. Ct. 2197 (2007) .................................................................................................... 7

*Fiest Publ'ns, Inc. v. Rural Tel. Serv. Co.,*
499 U.S. 340, 111 S. Ct. 1282 (1991) ............................................................................. 8

*Globespan, Inc. v. O'Neill,*
151 F. Supp. 2d 1229 (C.D. Cal. 2001)........................................................................ 17

*Greenwich Film Prods., S.A. v. DRG Records, Inc.,*
833 F. Supp. 248 (S.D.N.Y. 1993) ................................................................................ 11

Heller
Ehrman LLP

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS AND/OR STRIKE          Case No. C 07-3225 RS

*Hoffman-LaRoche Inc. v. Invamed Inc.*,
213 F.3d 1359 (Fed. Cir. 2000) ........................................................................ 11

*Hollingsworth Solderless Terminal Co. v. Turley*,
622 F.2d 1324 (9th Cir. 1980) .......................................................................... 16

*In re Century 21-RE/MAX Real Estate Advertising Claims Litigation*,
882 F. Supp. 915 (C.D. Cal. 1994) .................................................................. 24

*In re Indep. Serv. Orgs. Antitrust Litig.*,
964 F. Supp. 1469 (D. Kan. 1997) ................................................................... 11

*Intamin, Ltd. v. Magnetar Techs. Corp.*,
483 F.3d 1328 (Fed. Cir. 2007) ....................................................................... 11

*Iqbal v. Hasty*,
490 F.3d 143 (2d Cir. 2007) ............................................................................... 7

*Juarez v. Arcadia Fin., Ltd.*,
152 Cal. App. 4th 889 (2007) ........................................................................... 25

*Kelly v. Arriba Soft Corp.*,
336 F.3d 811 (9th Cir. 2003) .............................................................................. 8

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal. 4th 1134 (2003) ...................................................................... 17, 19, 25

*Marvel Enters., Inc. v. NCSoft Corp.*,
No. 04-9253, 2005 WL 878090 (C.D. Cal. Mar. 9, 2005) ................................. 8

*Mintel Learning Tech., Inc. v. Beijing Kaidi Educ. & Tech. Dev. Co.*,
No. 06-7541, 2007 WL 2288329 (N.D. Cal. Aug. 9, 2007) .................... passim

*Pacific Oxygen Sales Co. v. Union Carbide Corp.*,
No. 89-16366, 1991 WL 42150 (9th Cir. Mar. 21, 1991) ................................ 19

*Pinnacle Sys., Inc. v. XOS Techs., Inc.*,
No. 02-3804, 2003 WL 21397845 (N.D. Cal. May 19, 2003) ......................... 21

*Posdata Co. v. Kim*,
No. 07-2504, 2007 WL 1848661 (N.D. Cal. Jun. 27, 2007) ........................... 16

*Reid-Ashman Mfg. v. Swanson Semiconductor Serv., L.L.C.*,
No. 06-4693, 2007 WL 1394427 (N.D. Cal. May 10, 2007) ........................... 19

*Rigging Int'l Maint. Co. v. Gwin*,
128 Cal. App. 3d 594 (1982) ............................................................................ 16

*Scott v. Snelling and Snelling, Inc.*,
732 F. Supp. 1034 (N.D. Cal. 1990) ................................................................ 17

*Sega Enters. Ltd. v. Accolade, Inc.*,
977 F.2d 1510 (9th Cir. 1992) .......................................................................... 10

*Sigma Dynamics, Inc. v. E.Piphany, Inc.*,
No. 04-0569, 2004 WL 2533220 (N.D. Cal. Nov. 8, 2004) ...................... 21, 22

*Silicon Image, Inc. v. Analogix Semiconductor, Inc.*,
No. 07-0635, 2007 WL 1455903 (N.D. Cal. May 16, 2007) .................... 17, 18

Heller
Ehrman LLP

*Silicon Knights, Inc. v. Crystal Dynamics, Inc.*,
   983 F. Supp. 1303 (N.D. Cal. 1997) ....................................................... 19, 20

*Silverman v. CBS, Inc.*,
   870 F.2d 40 (2d Cir. 1989) ............................................................... 12

*Southland Sod Farms v. Stover Seed Co.*,
   108 F.3d 1134 (9th Cir. 1997) ........................................................... 22

*Streetwise Maps, Inc. v. Vandam, Inc.*,
   159 F.3d 739 (2d Cir. 1998) ............................................................. 11

*Summit Tech., Inc. v. High-Land Med. Insts. Co.*,
   933 F. Supp. 918 (C.D. Cal. 1996) ..................................................... 21

*Tele Atlas N.V. v. Navteq Corp.*,
   397 F. Supp. 2d 1184 (N.D. Cal. 2005) ............................................... 20

*Telemasters Inc. v. Vintage Club Masters Ass'n*,
   No. 05-5139, 2006 WL 4599670 (C.D. Cal. Jan. 9, 2006) ...................... 13

*U2 Home Entm't, Inc. v. Kylin TV, Inc.*,
   No. 06-2770, 2007 WL 2028108 (E.D.N.Y. July 11, 2007) ....................... 9

*Walker v. Univ. Books, Inc.*,
   602 F.2d 859 (9th Cir. 1979) ............................................................ 10

*Walt Disney Prods. v. Filmation Assocs.*,
   628 F. Supp. 871 (C.D. Cal. 1986) ..................................................... 10

*Whyte v. Schlage Lock Co.*,
   101 Cal. App. 4th 1443 (2002) ..................................................... passim

*Williams v. Gerber Prods. Co.*,
   439 F. Supp. 2d 1112 (S.D. Cal. 2006) ............................................... 23

*Xoom, Inc. v. Imageline, Inc.*,
   323 F.3d 279 (4th Cir. 2003) ............................................................ 11

## Statutes

17 U.S.C. § 106 ........................................................................... 10

17 U.S.C. § 411 ........................................................................... 11

17 U.S.C. § 501 ........................................................................... 10

17 U.S.C. §§ 502-04 ..................................................................... 10

Cal. Civ. Code § 3426.1 ............................................................. 13, 15

Cal. Civ. Proc. Code § 2019.210 ....................................................... 12

## Rules

Fed. R. Civ. P. 8 ......................................................................... 11

Fed. R. Civ. P. 9 ......................................................................... 18

Fed. R. Civ. P. 11 ........................................................................ 11

Fed. R. Civ. P. 84 ......................................................................... 8

Heller
Ehrman LLP

1

**<u>Other Authorities</u>**

2

Melville B. Nimmer & David Nimmer, <u>Nimmer on Copyright</u>

(Matthew Bender: 2006)............................................................................ 10, 12

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Heller
Ehrman LLP

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS AND/OR STRIKE          Case No. C 07-3225 RS

## INTRODUCTION

Defendant Teachscape, Inc. ("Teachscape") has brought a meritless Motion to Dismiss And/Or Strike Complaint (the "Motion") by using a heightened standard for pleading the claims asserted in contravention of the law, and by ignoring and contesting many of the facts alleged in the Complaint for Injunctive Relief and Damages (the "Complaint") by Plaintiff Laureate, Inc. ("Laureate") and its subsidiary, Plaintiff Canter & Associates LLC ("Canter").  On a motion to dismiss for failure to state a claim, however, Teachscape cannot ignore or deny the following, critical facts pled by Laureate and Canter: (1) that many of Canter's employees went to work for Teachscape; (2) that these employees not only had access to, but in some instances developed, Laureate's and Canter's distance learning degree programs; (3) that these employees also knew critical details about (a) Canter's contractual relationships with its partners, such as Marygrove College, to implement these degree programs, (b) Canter's research about the distance learning market, and (c) Canter's strategies for succeeding in that market; (4) that only after these employees arrived at Teachscape, did it develop master's degree programs and graduate courses similar to Laureate's and Canter's; and (5) that Marygrove breached its agreement with Laureate and Canter for their delivery of master's degree programs, while at the same time Teachscape announced through advertisements that it would begin offering the same graduate degree program through Marygrove as "updated;" (6) that, when approached by Laureate and Canter about its inducement of Marygrove's breach, Teachscape withdrew the graduate degree program with the exact same name as Canter's, but also refused to provide the course materials, with draft versions, of its programs so that they could determine whether Laureate's materials were used and copied by Teachscape.  All of these facts must be accepted as true.  As such, Laureate and Canter's claims that Teachscape copied Laureate's and Canter's course offerings, misappropriated Canter's confidential information, intentionally interfered with Canter's partner relationships, and engaged in false advertising and unfair competition, are plausible under *Twombly*.  Consequently, the Complaint meets the federal rules' notice pleading standard and the Motion must be denied.

## STATEMENT OF FACTS

### I.    LAUREATE'S AND CANTER'S POSITION IN THE MARKETPLACE BEFORE TEACHSCAPE'S WRONGFUL CONDUCT.

Laureate is a market leader in the online graduate degree market.  Compl. ¶ 6.  Canter, a Laureate subsidiary, provides distance-delivered master's degree programs—e.g., Master in the Art of Teaching, Master in Education, and Master of Science in Education—and graduate courses in the field of education for teachers through partnerships with accredited universities.  *Id.*  Canter has achieved and maintained its market leadership position through extensive efforts to understand the specific needs of each of its partner universities and the school teachers that enroll in its master's degree programs and graduate level courses through those universities.  *Id.* ¶¶ 6, 10 & 12.  One example of this was the creation of the Master in the Art of Teaching ("MAT") with a focus on Curriculum, Instruction and Assessment ("CIA") degree program that came at great cost and effort to Laureate and Canter.  *Id.* ¶ 14.

A key part of Canter's market research included gathering non-public information regarding lucrative markets, as well as determinations regarding market segments that were not profitable to pursue.  *Id.* ¶ 10.  Canter also developed specialized marketing methods for increasing school teacher enrollment and profitability of its relationships with its partner universities.  These market research and development methods were summarized in highly confidential "three-year plans" for the growth of Canter's online degree business.  *Id.*

In addition, Canter invested in research regarding targeting certain subject areas for its online graduate degrees.  *Id.* ¶ 13.  Canter's research revealed that school teachers enrolling in its programs needed courses targeting Reading, Literacy and Mathematics.  *Id.*  Canter's market research and methodology for taking advantage of the state of the distance-delivered teaching degree market was summarized in various highly confidential Corporate Investment Proposals.  *Id.*  Based on these proposals, Laureate and Canter further invested in the development of master's degrees in the areas of Reading and Math, including the creation of video and written materials supporting degrees in these areas.  *Id.* ¶¶ 13 & 24.

One of Laureate's and Canter's accredited university partners is Marygrove. *Id.*
¶ 15. As part of their longstanding relationship, Canter and Marygrove entered into a
contract for the provision of the MAT degree in CIA. *Id.* As with Canter's partnerships
generally, although the existence of this partnership is public, the terms of the contract with
Marygrove are not publicly known and subject to confidentiality. *Id.*

## II.    CANTER'S FORMER EMPLOYEES WORK FOR TEACHSCAPE USING CANTER'S TRADE SECRETS AND LAUREATE'S COPYRIGHTED COURSE MATERIALS.

Starting April 2004, a group of employees left Canter and subsequently were
employed by, or contracted with, Teachscape. *Id.* ¶ 7. These former employees had held
various positions at Canter, from executive management to product development, including:
(1) Vice President of the Distance Learning Masters Programs—Melissa Jaivin; (2) Vice
President of Graduate Courses—Hae Young Kim; (3) Vice President of Business
Development—Mike Soules; (4) Marketing Managers of the Distance Learning Masters
Program—Valerie Cameron and Anna Crupi; (5) Program Specialist in Product
Development—Barbara DeHart; and (6) Director of Editorial Service—Brenda Pope-
Ostrow. *Id.* Each of these individuals played a key role at Canter and, depending on their
position, these persons were instrumental in, among other things: (1) performing the market
research summarized in the highly confidential three-year plans and the Corporate
Investment Proposals; (2) negotiating the confidential terms of the contract with
Marygrove; (3) identifying and cultivating relationships with university partners like
Marygrove; (4) marketing Canter's products to university partners and to potential students;
(5) developing master's degree programs in CIA, Reading, and Math. *Id.* ¶ 8. These former
employees signed confidentiality agreements upon commencing work with Canter, and thus
were obligated to keep the confidentiality of the various non-public aspects of Canter's
business. *Id.* ¶ 23.

As evidenced by Teachscape's dealings with Marygrove after these persons joined
Teachscape, these persons' knowledge of and familiarity with Laureate's and Canter's
confidential market research, highly confidential strategic business plans and proposals, and

course materials for the existing CIA and new Math and Reading programs, enabled Teachscape to rapidly penetrate the market in master's degree and graduate course programs, in which it had no prior standing. *Id.* ¶¶ 13-15. Teachscape was able to focus only on the partnerships, course offerings, and programs that were profitable for Canter, thereby avoiding the waste of time and resources on markets and programs that, through years of research and analysis, Canter had already learned were not profitable. *Id.* ¶ 11. It took Canter years to establish its prominence in the marketplace, knowledge of that market and customer relationships in the master's degree and graduate course areas, and to develop and fine-tune its course materials. By contrast, Teachscape was able to effectively undermine Canter by marketing directly to Canter's profitable partners with similar, if not identical, program and course offerings and market expertise in a relatively short time after the first former Canter employee joined it. *Id.* ¶¶ 9, 11 & 15-16. Based on this and other information, Laureate and Canter believe that Teachscape used Laureate's copyrighted course materials without permission, and used Canter's confidential information even though it knew that these former employees had a continuing duty of confidentiality towards Canter because it was so advised by Laureate and Canter. *Id.* ¶¶ 23 & 25.

## III.    TEACHSCAPE INTERFERES WITH CANTER'S LONGSTANDING RELATIONSHIP WITH MARYGROVE.

Teachscape's entry into the master's degree market was premised on disrupting Canter's long-term university partnerships. *Id.* ¶ 9. The programs Teachscape offered were in the same focus areas as those offered by Canter. *Id.* ¶ 11. One example is Teachscape's attempt to supplant Canter in delivering those programs for Marygrove and to the school teachers enrolling in Canter's master's degrees through Marygrove. Only after employing Canter's former employees, Teachscape announced and advertised its intention to offer a graduate level course through Marygrove. *Id.* ¶ 14. Then, in or around September 2006, Teachscape also announced and advertised a MAT degree in CIA through Marygrove scheduled to begin in early 2007 even though Canter was, at that time, offering the same MAT degree with the same focus in CIA. *Id.* ¶¶ 14, 17 & 20. Even though it had never

previously offered any such program, Teachscape marketed it as:

**Master in the Art of Teaching with a Focus on Curriculum, Instruction & Assessment (updated)**

*Id*. ¶ 18.  Teachscape also announced that it would offer masters degrees in Math and Reading through a partnership with Marygrove beginning in 2007.  *Id.* ¶ 16.

All of these offerings by Teachscape were in direct contravention of the contract between Canter and Marygrove.  *Id*. ¶¶ 16-17.  First, the contract specified that the MAT degree in CIA would be supplied to Marygrove exclusively by Canter during its term.  *Id*. ¶ 17.  Melissa Jaivin and perhaps others among Canter's former employees were fully aware of this as a result of their employment with Canter.  *Id*.  Second, the contract provided Canter a right of first refusal for any further MAT degree offerings on the same terms that Marygrove would offer to a third party.  *Id*. ¶ 16.  Again, at least one of Canter's former employees was aware of this contractual term.  *Id*.  Despite these terms, Teachscape and Canter's former employees misused their knowledge of other confidential terms in the Marygrove contract to negotiate with Marygrove and to supplant Canter.  *Id*. ¶ 15.  Canter has information to believe that Teachscape has engaged in similar conduct with respect to Canter's other profitable university partnerships.  *Id*. ¶ 22.

## IV.    TEACHSCAPE DENIES ITS INTERFERENCE WAS INTENTIONAL AND REFUSES TO TURN OVER DRAFTS OF ITS COURSE MATERIALS WHEN LAUREATE AND CANTER INVESTIGATE ITS CONDUCT.

Once they were alerted to Teachscape's interference with Canter's contract with Marygrove, Laureate and Canter contacted both Teachscape and Marygrove and inquired about the degree offerings Teachscape intended to launch through Marygrove in early 2007. *Id*. ¶ 20.  Marygrove denied the existence of any relationship between itself and Teachscape.  *Id*.  Marygrove further stated that it had no knowledge of any degree offerings by Teachscape that would be launched through it in 2007.  *Id.*  Teachscape, on the other hand, could not deny the relationship because it already had advertised these degree offerings.  Instead, Teachscape claimed that it was unaware that its intended degree offerings through Marygrove in any way interfered with any contractual obligations

between Canter and Marygrove, <u>despite</u> the fact that certain of Teachscape's key employees involved in the Marygrove transaction also had negotiated the Marygrove-Canter contract at issue while at Canter.  *Id.*  Despite its denial of any wrongdoing, Teachscape thereafter withdrew its offering of the MAT degree in CIA program for the year 2007, implicitly acknowledging that this offering was a breach of the Marygrove-Canter contract.  *Id.* ¶ 21.

Also as part of their investigation, Laureate and Canter sought an "inspection of all course-related materials, *including drafts thereof*, that [Teachscape] intend[ed] to use in connection with its degree program offerings with Marygrove."  Decl. of Gayle M. Athanacio in Supp. of Def.'s Mot. to Dismiss / Strike Compl. ("Athanacio Decl.") Ex. A, at 3 (emphasis added).  Teachscape's counsel initially rebuffed the request completely, and then conditioned providing any course materials on Laureate and Canter specifying a slew of information regarding Laureate's copyrighted materials in addition to providing those materials in exchange.  *Id.* Ex. B, at 2; *id.* Ex. C, at 3.  Those onerous and unnecessary terms aside, Teachscape <u>refused to provide the drafts</u> as requested.  *Id.* Ex. C, at 3.  A second request for these materials was rebuffed, again, with only a counteroffer to exchange final course materials.  *Id.* Ex. D, at 2; *id.* Ex. E, at 1.  Thus Teachscape repeatedly imposed unreasonable terms on Laureate's access to final materials, which were already in the hands of teachers enrolled in Teachscape's programs and courses through Marygrove.  More importantly, Teachscape absolutely refused to provide drafts of its materials, in which any evidence of direct copying likely existed, so as to prevent Laureate from evaluating its copyright claim.  *See* Compl. ¶ 26.

In light of the circumstances and armed with the facts of Teachscape's knowing interference, misuse of Canter confidential information, and refusal to provide course materials for evaluation on reasonable terms, Laureate and Canter filed suit.  In response, Teachscape filed this Motion that denies wrongdoing by trying to explain away the facts Laureate and Canter have presented, with the goal of shielding other facts from discovery by bringing this suit to a premature conclusion.

1

## **ARGUMENT**

2

3

### I.    TEACHSCAPE MISREADS THE STANDARD IN *TWOMBLY* AS REQUIRING MORE THAN NOTICE PLEADING.

4      The Court should reject the "Legal Standard" in Teachscape's Motion because it is

5   an attempt to heighten the pleading requirements beyond those promulgated by Rule 8 and

6   the cases applying it.  Tellingly, Teachscape omits the very beginning of the holding in *Bell*

7   *Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) ("*Twombly*"), in which the United Stated

8   Supreme Court confirmed that:

9          Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain
           statement of the claim showing that the pleader is entitled to relief," in order
10         to "give the defendant fair notice of what the . . . claim is and the grounds
           upon which it rests," *Conley v. Gibson*  . . . . .

11

12   *Id*. at 1959.  In accord with its misreading of *Twombly*, Teachscape's Motion seeks specific

13   facts supporting each and every element of Laureate's and Canter's claims.  As confirmed

14   by the United States Supreme Court, however, "[s]pecific facts are not necessary."

15   *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (citing to *Twombly*).  In analyzing

16   whether *Twombly* did more than change the pleading requirement for the antitrust claim

17   being litigated in that case, the Second Circuit stated:

18         [T]he Court is not requiring a universal standard of heightened fact pleading,
           but is instead requiring a flexible "plausibility standard," which obliges a
19         pleader to amplify a claim with some factual allegations in those contexts
           where such amplification is needed to render the claim *plausible*.
20

21   *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007).

22      Thus, *Twombly* does not enable a defendant, like Teachscape, to demand the

23   pleading of specific facts that it ultimately contests to avoid liability.  As explained below,

24   Laureate and Canter have pled facts that both render their claims plausible and provide

25   Teachscape with notice of their basis, which is just what *Twombly* requires.

26

27

28

Heller
Ehrman LLP

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS AND/OR STRIKE          Case No. C 07-3225 RS

II.  **LAUREATE'S COPYRIGHT INFRINGEMENT CLAIM IS PROPERLY PLED IN LIGHT OF THE FACTS AND CIRCUMSTANCES ALLEGED.**

A.  **The Court Should Reject Teachscape's Attempt to Shield Itself From Copyright Liability By Refusing Access To Its Infringing Materials.**

1.  **Laureate has pled copyright infringement per the requirements of the Ninth Circuit.**

Laureate should be able to proceed with their claim of copyright infringement on the facts pled.  The elements of a copyright infringement claim are: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.  *Fiest Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S. Ct. 1282 (1991).  In the Ninth Circuit, it is sufficient that a complaint alleges ownership and infringement of copyrights, and seeks relief under the Copyright Act.  *See Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 817 (9th Cir. 2003); *Columbia Pictures Tel. v. Krypton Broad. of Birmingham, Inc.*, 106 F.3d 284, 288 (9th Cir. 1997), *rev'd on other grounds sub nom. Feltner v. Columbia Pictures Tel., Inc.*, 523 U.S. 340, 118 S. Ct. 1279 (1998); *Effects Assocs., Inc. v. Cohen*, 817 F.2d 72, 73 (9th Cir. 1987).  As stated by one court in this Circuit:

> Copyright claims need not be pled with particularity, and complaints which allege present copyright ownership by the plaintiff, proper registration, and infringement by defendant have been held sufficient.  *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 167 F. Supp. 2d 1114, 1120 (C.D. Cal. 2001). Plaintiffs are not required to specify each and every instance of infringement. *Id*.  Therefore, Plaintiffs need not, as Defendants would suggest, identify the times, similarities, or other details of the alleged infringements in their pleadings.

*Marvel Enters., Inc. v. NCSoft Corp.*, No. 04-9253, 2005 WL 878090, at *1 (C.D. Cal. Mar. 9, 2005); *see also Elektra Entm't Group v. Avery*, No. 06-2541, 2007 WL 2023545, *1 (E.D. Cal. July 11, 2007); *accord* Fed. R. Civ. P. 84 & Appx. of Forms No. 17 (Compl. for Infringem't of Copyright and Unfair Comp.).

In keeping with the requirements of the Federal Rules and the Ninth Circuit, Laureate has alleged ownership of its copyrights in its AudioVisual and Online Course Materials that have been duly registered.  *See* Compl. ¶ 24.  In addition, Laureate has alleged, based on the facts set forth in its Complaint, that "at least as of January 2007,

Heller
Ehrman LLP

8

Teachscape has deliberately and willfully infringed Laureate's copyrights in the AudioVisual and Online Course Materials by making copies and derivative works therefrom." *Id*. ¶ 84.  This is all that is needed to allege copyright infringement.

### 2.    The claim of infringement is plausible given the facts alleged.

Teachscape complains that Laureate's allegation of infringement "is not supported by any *facts* describing any allegedly infringing act by Teachscape whatsoever."  Mot., at 8:27-28.  However, Teachscape's refusal to provide the basis for alleging specific facts of copying—i.e., drafts and final copies of its materials so that Laureate can allege substantial similarity between its works and Teachscape's materials—does not warrant ignoring all the other facts pled in support of this allegation, and does not render it wholly conclusory.  As with other claims, the "flexible plausibility standard" set forth in *Twombly* applies.  *See U2 Home Entm't, Inc. v. Kylin TV, Inc.*, No. 06-2770, 2007 WL 2028108, at *5 (E.D.N.Y. July 11, 2007) (applying *Twombly* and *Iqbal*, *supra* to motion to dismiss copyright claim).

In this case, Laureate's copyright infringement claim is plausible in light of the facts alleged.  Teachscape hired twelve former employees of Canter, some of whom developed and edited Laureate's and Canter's AudioVisual and Online Course Materials, and all of whom had access to them.  *See* Compl. ¶¶ 7-8.  These AudioVisual and Online Course Materials are for master's degrees and graduate level courses in the field of teaching.  *See id*. ¶ 24.  Within months of these former employees of Canter joining it, Teachscape began to offer, for the first time, graduate level courses and then master's degree programs in the field of teaching.  *See id*. ¶¶ 9 & 11.  Specifically, Teachscape offered master's degrees, with focuses in (1) Reading and Literacy, (2) Mathematics, and (3) CIA, all three of which on their face are similar to offerings through Laureate's copyrighted AudioVisual and Online Course Materials.  *See id*. ¶¶ 13 & 24.  Indeed, as to the MAT degree in CIA, Teachscape marketed its degree offering as "updated," implying that it is a newer version of the same offering by Canter through its partner, Marygrove.  *See id*. ¶¶ 17-18.  Finally, before filing the Complaint, Laureate and Canter sought to review Teachscape's materials used in connection with its master's degree programs, including all drafts and final product,

to determine whether there was substantial similarity with Laureate's materials. *See id.*
¶ 26. Teachscape refused, thus raising the likelihood of infringement, and supporting a
more-than-plausible assertion of infringement in light of the circumstances. *See id.* In sum,
there was enough smoke for Laureate to allege there's a fire.

### 3. Teachscape's refusal to produce drafts of its materials should not serve as a basis to dismiss Laureate's infringement claim.

Teachscape should not be allowed to hide behind its refusal to provide drafts of its
materials, while trumpeting its offering of final course materials on unreasonable terms, so
as to avoid a charge of infringement. Teachscape's statement that it "was willing to engage
in an exchange of *any allegedly infringing material*" is belied by their offer of only "*final
course materials.*" Mot., at 9:13-16 (emphasis added). Laureate's repeated requests for
drafts of these materials and Teachscape's refusal to provide them is not trivial. *See* Compl.
¶ 26. It goes to the heart of the dispute between the parties. Laureate's rights extend to <u>any</u>
copies made of its work by Teachscape and its employees and contractors, including copies
that are drafts, intermediate, or transitory versions of Teachscape's final course materials, as
long as those copies are in a fixed medium. *See* 17 U.S.C. §§ 106 & 501(a); *Sega Enters.
Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1518 (9th Cir. 1992) ("the Copyright Act does not
distinguish between unauthorized copies of a copyrighted work on the basis of what stage of
the alleged infringer's work the unauthorized copies represent."); *Walker v. Univ. Books,
Inc.*, 602 F.2d 859, 863-64 (9th Cir. 1979); *Walt Disney Prods. v. Filmation Assocs.*, 628
F. Supp. 871, 875-76 (C.D. Cal. 1986); 2 Melville B. Nimmer & David Nimmer, <u>Nimmer
on Copyright</u> § 8.02C (Matthew Bender: 2006). Any such infringement and then further
derivation of final works therefrom entitles Laureate to damages, injunctive relief, and the
impounding of those derivative works. *See* 17 U.S.C. §§ 106 & 502-04.

That Laureate cannot point specifically to the substantial similarity between each of
its copyrighted materials and each of Teachscape's materials, because Teachscape refused
access to all its materials, should not preclude this case from proceeding so that the
materials are obtained in discovery. "All pleadings shall be so construed as to do

substantial justice." Fed. R. Civ. P. 8(f).  The cases cited in the Complaint stand for the proposition that because the infringing act or physical subject matter was not ascertainable by the intellectual property holder, other circumstances made the assertion of infringement reasonable.  *See Intamin, Ltd. v. Magnetar Techs. Corp.,* 483 F.3d 1328, 1338 (Fed. Cir. 2007); *Hoffman-LaRoche Inc. v. Invamed Inc.*, 213 F.3d 1359, 1363-64 (Fed. Cir. 2000). Contrary to Teachscape's assertion, this doctrine should apply as much to copyright infringement as it does to patent, such that an infringer cannot shield itself from liability by keeping its infringement hidden or because it is out of plain view.  Otherwise, intellectual property holders would be put in the precarious position of using pretext or otherwise engaging in violations of other laws to capture an infringer's hidden transgressions.[1]

### B.    Laureate's Registration Of Derivatives of Its Copyrighted Works Is Sufficient Because It is The Owner Of The Original Works Contained Therein.

Teachscape omits the applicable law in arguing that Laureate has not complied with the requirement of copyright registration before filing suit in 17 U.S.C. § 411(a) because its registrations are for derivative works.  *See* Mot., at 11:20-12:13.  As held by the Second Circuit and other courts:

> because [plaintiff] is the owner of the copyright of both the derivative and pre-existing work, the registration certificate relating to the derivative work in this circumstance will suffice to permit it to maintain an action for infringement based on defendants' infringement of the pre-existing work. That plaintiff need not produce a separate registration relating to the pre-existing work is a proposition which finds support in other courts and in the writings of scholarly commentators.

*Streetwise Maps, Inc. v. Vandam, Inc.*, 159 F.3d 739, 747 (2d Cir. 1998); *see also Xoom, Inc. v. Imageline, Inc.*, 323 F.3d 279, 283-84 (4th Cir. 2003); *In re Indep. Serv. Orgs. Antitrust Litig.*, 964 F. Supp. 1469, 1473-74 (D. Kan. 1997); *Greenwich Film Prods., S.A. v. DRG Records, Inc.*, 833 F. Supp. 248, 250-51 (S.D.N.Y. 1993); *Computer Assocs. Int'l, Inc.*

---

[1] Teachscape's attempt to weave-in an argument that Laureate's copyright infringement claim does not meet the requirements of Rule 11 is improper because it should not be presented as part of a Rule 12 motion to dismiss.  *See* Fed. R. Civ. P. 11(c)(1)(A).  Nor does Laureate's indication in the Complaint that it is in compliance with Rule 11, and cases cited in support thereof, somehow make the issue the proper subject for a motion to dismiss.

1    *v. Altai, Inc.*, 775 F. Supp. 544, 555-57 (E.D.N.Y. 1991), *aff'd in part and vacated in part*

2    *on other grounds*, 982 F.2d 693 (2d Cir. 1992); 2 Nimmer on Copyright § 7.16[B][2][c].

3    The case cited by Teachscape is inapposite.  It holds that a registration of a derivative

4    work is insufficient when the plaintiff is not the owner of the underlying work.  *See*

5    *Silverman v. CBS, Inc.*, 870 F.2d 40, 49-50 (2d Cir. 1989).  In this case, however, Laureate

6    is the owner of the original and derivative works subject to the registrations at issue.  *See*

7    Compl. ¶ 24.  Thus, Teachscape's argument fails as a matter of law.

8    **III.    LAUREATE'S AND CANTER'S COMPLAINT MORE THAN MEETS THE**
     **REQUIREMENT OF A SHORT AND PLAIN STATEMENT GIVING**
9    **TEACHSCAPE NOTICE OF THEIR CLAIMS.**

10   **A.    Canter's Trade Secret Misappropriation Claim Is Adequately Pled.**

11   **1.    Trade secrets should not be specified in a public complaint.**

12   Teachscape's attempt to require Canter to plead extensive details about the

13   "boundaries" of its market research analysis, or the specifics of its course designs, is

14   inappropriate.  Obviously, doing so in the public pleading would endanger the

15   confidentiality of those secrets.  Even under the state court "heightened pleading" standard,

16   a plaintiff alleging trade secret theft "does not have to spell out the details of the trade secret

17   to avoid a demurrer to a complaint.  To so require would mean that the complainant would

18   have to destroy the very thing for which he sought protection by making public the secret

19   itself."  *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 252 (1968).  Of course, Canter later

20   will provide, as part of the discovery process and pursuant to a protective order, a detailed

21   description of trade secret information before discovery regarding the misappropriation

22   begins.  *See* Cal. Civ. Proc. Code § 2019.210.  This Court has noted that the Section

23   2019.210 disclosure, while " not itself a pleading . . . functions like one in a trade secret

24   case because it limits the scope of discovery in much the same way as the allegations of a

25   complaint limit discovery in other types of civil actions."  *Advante Int'l Corp. v. Mintel*

26   *Learning Tech.*, No. 05-1022, 2006 WL 3371576, at *3 (N.D. Cal. Nov. 21 2006); *accord*

27   *Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1453 (2002).  Thus, Teachscape's

28   demand for additional details about Laureate's and Canter's trade secrets is, at best,

Heller
Ehrman LLP

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS AND/OR STRIKE          Case No. C 07-3225 RS

1  premature at the pleadings stage.

2           **2.        Canter sufficiently provided notice of its trade secrets.**

3           Teachscape correctly notes that Canter must plead that it "owned a trade secret" and

4  that Teachscape "acquired, disclosed, or used" this secret "through improper means."  Mot.,

5  at 16:18-20.  Canter has done so.  A trade secret is defined broadly as "formula, pattern,

6  compilation, program, device, method, technique, or process" which is valuable in part

7  because it is not generally known, when efforts have been made to maintain its

8  confidentiality.  Cal. Civ. Code § 3426.1(d).  The standard for pleading trade secrets is the

9  same as for any non-fraud claim under the Federal rules: "'fair notice of the claim and the

10  grounds upon which it rests.'"  *Mintel Learning Tech., Inc. v. Beijing Kaidi Educ. & Tech.*

11  *Dev. Co.*, No. 06-7541, 2007 WL 2288329, at *2 (N.D. Cal. Aug. 9, 2007).

12           The Complaint states that Canter's trade secret information included: (1) Canter's

13  three-year strategic plans; (2) the Corporate Investment Proposals regarding master's

14  degrees in Reading, Literacy and Math; (3) the particular requirements and preferences of

15  each of its accredited university partners; and (4) the confidential details about the

16  agreement and relationships between Canter and their partners, such as Marygrove.  *See*

17  Compl. ¶¶ 10-14, 17 & 28-37.  Thus, Canter has adequately alleged trade secret information

18  here.  *See Mintel*, 2007 WL 2288329 at *6-*7 (finding allegations of trade secrets as source

19  code, a database, and sound files, maintained with confidentiality through firewall and

20  password, as adequately pled); *accord Telemasters Inc. v. Vintage Club Masters Ass'n*,

21  No. 05-5139, 2006 WL 4599670, at *4-*5 (C.D. Cal. Jan. 9, 2006) (holding that complaint

22  referring to "'specialized knowledge and expertise and the development of unique plans,

23  procedures and processes, including but not limited to computer programs and routines'"

24  sufficiently alleged trade secrets under the state court heightened pleading standard); *accord*

25  *Whyte*, 101 Cal. App. 4th at 1452-53 (holding, in the context of an appeal of the grant of a

26  TRO, that pleadings descriptions such as "[Plaintiff's] market research data" and

27  "[Plaintiff's] 1, 3 and 5 year strategic plan documents" were sufficiently detailed under the

28  heightened state court pleading standard).  Finally, the Complaint details that Canter has

Heller
Ehrman LLP

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS AND/OR STRIKE          Case No. C 07-3225 RS

made substantial efforts to keep this information confidential, including having its former

employees sign confidentiality agreements, and notifying Teachscape of these

confidentiality obligations soon after the former employees joined Teachscape.  *See* Compl.

¶ 23.  Canter has thus met all the requirements for pleading that it possesses trade secrets.

*See Mintel*, 2007 WL 2288329 at *6-*7.

### 3.    Teachscape mischaracterizes Canter's trade secrets.

In addition to arguing that more particularity is needed, Teachscape further

misconstrues the trade secrets alleged as public information not subject to trade secret

protection.  *See* Mot., at 18:13-19:14.  It does this, in part, by misstating the law by

selectively quoting *Whyte* to argue that market research—i.e., knowledge of particular

customers' needs—is not subject to trade secret protection because a buyer "is presumably

aware of its own needs."  Mot., at 17:7-8.  However, the holding in *Whyte* was more

limited—it found that trade secret protection was inappropriate for the plaintiff's knowledge

"'relat[ing] to a *single prominent buyer* that is presumably aware of its own needs.'"

*Whyte*, 101 Cal. App. 4th at 1456 (emphasis added and citation omitted).  Teachscape then

misstates the facts by arguing that Canter is alleging trade secrets in the very existence of its

partner relationships or "customer contacts" in order to analogize this case to ones where

courts did not find secrets to lie in publicly available information.  *See* Mot., at 18:22-19:3.

In actuality, Canter alleges that the confidential nature of its dealings with its partners, its

knowledge of the particular requirements and preferences of each of its many partners, its

specific market strategies in working with these partners, and its profitability in its dealings

with these partners, are secrets.  *See* Compl. ¶¶ 12 & 15.[2]

---

[2] Teachscape's unfounded assertion, and request for judicial notice in support, that that no
trade secret lies because "Canter is abandoning all 'partners' for online degree programs,"
should be rejected as an improper (and factually unsupported) assertion to contest the truth
of Plaintiffs' allegations.  Teachscape itself acknowledges that Canter' web sites show
master's degree and graduate course programs through the University of New England,
Olivet Nazarene University, and Marygrove, and these sites in no way indicate that any
partners are being "abandoned."  *Compare* Mot. at 19:8-10 *with id.* at 18 n.6.

In addition to its weak attempt to devalue the very specialized and confidential knowledge of Canter's partners that it misused, Teachscape's professed failure to understand the plain explanation of the market at issue, and Canter's trade secrets with respect to the same, is just as easily rectified. The Complaint explains that the market for which Teachscape has misused Canter's trade secrets to compete is "distance-delivered master's degree programs and graduate courses for teachers . . . ." Compl. ¶ 9. The market is not simply "universities, 'education partners' which can offer degrees" as Teachscape suggests despite having notice (and knowing) otherwise. *See* Mot., at 18:13-21. As explained in the Complaint, "Canter invested years of market research and substantial resources into an analysis of the educational marketplace" and further elaborates about the nature of that investment, and how Teachscape misused that knowledge, taking it from the hands of Canter's former employees. *See* Compl. ¶¶ 10-11. Under the appropriate inquiry here, Teachscape's attempt to undermine Canter's factual allegations about the nature of its trade secrets should be rejected as both improper and ineffective, because those factual allegations must be taken as true. *See Twombly*, 127 S. Ct. at 1965 ("all the [factual] allegations in the complaint are true (even if doubtful in fact)").

### 4. Canter sufficiently alleges Teachscape's misuse of trade secrets.

The Complaint also adequately pleads the misappropriation of these secrets. Misappropriation is the wrongful acquisition or use of trade secrets. *See* Cal. Civ. Code § 3426.1(b). The Complaint points out the specific individuals who were exposed to confidential information relating to Canter's relationship with Marygrove, and who joined Teachscape shortly before it began offering graduate courses and master's degrees in the same focus areas identified as "growth areas" by Canter, through Marygrove. *See* Compl. ¶¶ 7-10. Canter likewise alleges that its former employees and Teachscape used Canter's trade secrets, including information about the Marygrove contract, in order to negotiate with Marygrove "on more favorable terms" than those in the contract. *Id*. ¶ 15. Canter further alleges that its former employees and Teachscape used trade secret information to create master's degrees in CIA, Reading, and Math, which Teachscape began to offer through

1    Marygrove.  *Id*. ¶¶ 14-15.  These facts more than adequately plead that Canter's former

2    employees and Teachscape have misused Canter's trade secrets.  *See Mintel*, 2007 WL

3    2288329 at *6 (holding that allegations of trade secret use for the benefit of a competing

4    company adequately pled trade secret misappropriation).

5                      **5.        Plaintiff's legal authority is inapposite.**

6            Teachscape relies upon a number California state court cases to argue that Canter has

7    not pled sufficient facts.  *See* Mot., at 16:23-20:15 (citing to *Diodes*, 260 Cal. App. 2d  244,

8    (1968); *Whyte v. Schlage Lock Co*., 101 Cal. App. 4th 1443 (2002); *Rigging Int'l Maint. Co.*

9    *v. Gwin*, 128 Cal. App. 3d 594 (1982)).  Only one of these cases addresses a pleading

10   standard at all, and in doing so interprets the state court pleading standard, not the standard

11   required by the Federal Rules.  As even Teachscape's cited authority notes, "[t]he federal

12   cases since the adoption of the federal rules are not helpful on the pleading questions in an

13   action brought in a state court in California, because federal cases use 'notice pleading,'

14   whereas California uses 'fact pleading.'"  *Diodes*, 260 Cal. App. 2d at 250.  For the same

15   reason, Teachscape's citation to California cases applying state court pleading standards is

16   not helpful.

17           In addition, Teachscape relies on federal authority that does not touch on the

18   adequacy of the complaint, but on the merits of whether the trade secrets alleged were in

19   fact trade secrets or were misappropriated.  *See Hollingsworth Solderless Terminal Co. v.*

20   *Turley*, 622 F.2d 1324, 1327 (9th Cir. 1980) (review of motion for summary judgment and

21   preliminary injunction); *Posdata Co. v. Kim*, No. 07-2504, 2007 WL 1848661, at *3-*4

22   (N.D. Cal. Jun. 27, 2007) (motion for temporary restraining order); *AdvantaCare Health*

23   *Partners v. Access IV, Inc*., No. 03-4496, 2003 WL 23883596, at *1-*2 (N.D. Cal. Oct. 24,

24   2003) (motion for preliminary injunction); *Bayer Corp. v. Roche Molecular Sys*., 72

25   F. Supp. 2d 1111, 1112 (N.D. Cal. 1999) (motion for preliminary injunction); *Scott v.*

26   *Snelling & Snelling, Inc.*, 732 F. Supp. 1034, 1037 (N.D. Cal. 1990) (motion for summary

27   judgment).  Reliance on these cases is not only inappropriate, but reveals that Teachscape's

28   motion is really a premature summary judgment motion and not one directed to whether the

Heller
Ehrman LLP

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS AND/OR STRIKE          Case No. C 07-3225 RS

claim is plausible.  *See* Mot., at 16:10-17, 19:20-25 & 20:1-13.

Teachscape cites only <u>one</u> case where a federal court dismissed a claim of trade secret misappropriation at the pleading stage.  *See Globespan, Inc. v. O'Neill*, 151 F. Supp. 2d 1229, 1235-36 (C.D. Cal. 2001).  But in *Globespan*, the plaintiff failed to allege that the defendants had actually used any of its trade secrets; rather, plaintiff alleged that, due to the nature of its secrets and the former employee's new job, its trade secrets would inevitably be disclosed by the departing employee.  *See id.*  Here, Canter did not file a claim of trade secret misappropriation by asserting "inevitable disclosure" when twelve of its key former employees left for Teachscape starting in April 2004.  Instead, Canter asserted its claim once it found that Teachscape <u>actually</u> was using its trade secret information known to those former employees.  Consequently, Canter has alleged the trade secrets actually at issue and has alleged how they were misused.  *See* Compl. ¶¶ 8-15.  That a misappropriation claim may not be premised on inevitable disclosure does not prevent a plaintiff from alleging and then proving actual misappropriation to obtain relief.  *See Whyte*, 101 Cal. App. 4th at 1458.

**B.    Canter's Claims For Unlawful Interference Are Adequately Pled.**

Laureate and Canter have pled facts showing that: (1) Teachscape acted intentionally to disrupt Canter's relationship with Marygrove, including an existing transaction regarding the provision of a MAT degree in CIA and prospective transactions with degrees in Reading and Math; (2) the relationship with Marygrove was in fact disrupted by Teachscape seeking to take over the degree in CIA and offering Reading degrees in place of Canter; and (3) Canter has suffered damages as a result because its longstanding and profitable relationship with Marygrove has been damaged.  *See* Compl. ¶¶ 15-17, 60.  Canter need not do more to successfully state a claim for intentional interference with contract.  *See Silicon Image, Inc. v. Analogix Semiconductor, Inc.*, No. 07-0635, 2007 WL 1455903, at *4 (N.D. Cal. May 16, 2007); *see also Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1159 (2003).

**1.    Teachscape cannot feign ignorance to contradict the Complaint.**

Teachscape argues that because it did not know about the Marygrove contract when

confronted by Laureate and Canter, no knowledge of the Marygrove contract has been pled. *See* Mot., at 22:11-23.  This contradiction of Canter's factual assertion that Teachscape had knowledge is not appropriate.  *See Twombly*, 127 S. Ct. at 1965 ("all the [factual] allegations in the complaint are true (even if doubtful in fact)").  Moreover, Canter's factual allegation as to Teachscape's knowledge may be averred to generally, and it is plausible because knowledge of a contract may be inferred from other facts being pled.  *See* Fed. R. Civ. P. 9(b) ("knowledge . . . may be averred generally.");  *Silicon Image*, 2007 WL 1455903, at *4 (holding that knowledge of contract may be inferred from other facts, such as general knowledge in the industry).  Here, Canter has alleged that: (1) at least Melissa Jaivin—one of Canter's former employees who is now Teachscape's Vice President of Higher Learning—had knowledge of Canter's contract with Marygrove because, among other things, she participated in its negotiation; and (2) only after she joined Teachscape did it seek a relationship with Marygrove so as to offer, on more favorable terms, the exact same MAT degrees that Canter were offering.  *See* Compl. ¶ 13, 15, 16, 20 & 21.  Canter's factual allegation must be taken as true, and if Teachscape wishes to rebut this assertion by showing that, somehow, its executive or other employees or contractors with knowledge of the confidential specifics of Canter's relationship with Marygrove in no way assisted and did not otherwise warn Teachscape that its acts would interfere with an existing contract, then Teachscape cannot use a motion to dismiss to present this counterview.

          **2.**        **Teachscape avoids facts pled in moving to dismiss for lack thereof.**

        Teachscape's characterization of Canter's claims as stemming from "a decision not to renew" by Marygrove misstates the Complaint's allegations.  *See* Mot., at 22:24-23:4.  The Complaint alleges that the agreement with Marygrove regarding the CIA degrees was disrupted by Teachscape "during the contract's term," and that Marygrove failed to give an offer of first refusal to Canter when the contract entitled Canter to such an offer.  *See* Compl. ¶¶ 16, 17 & 51-54.  The Court should ignore Teachscape's argument in this respect, including its citation to an inapposite unpublished and non-citable opinion (*see* 9th Cir. R. 36-3(c) & N.D. Cal. Civ. L.R. 3-4(e)) holding that where a contract has already expired, the

proper cause of action for disruption of a renewal agreement is interference with prospective contract. *See Pacific Oxygen Sales Co. v. Union Carbide Corp.*, No. 89-16366, 1991 WL 42150, at \*2 (9th Cir. Mar. 21, 1991).

     **3.    At least one prospective economic relationship has been pled.**

Canter's claim regarding prospective economic relationship requires an additional allegation that Teachscape's interference was wrongful beyond the interference itself. *Reid-Ashman Mfg. v. Swanson Semiconductor Serv., L.L.C.*, No. 06-4693, 2007 WL 1394427, at \*11-\*12 (N.D. Cal. May 10, 2007); *see also Korea Supply*, 29 Cal. 4th at 1158. In addition to pleading that Teachscape has interfered with its other relationships in offering graduate level degree programs and courses, Canter has met this requirement by alleging that Teachscape, by using confidential information about the Marygrove agreement obtained from Ms. Jaivin and possibly other employees, not only caused Marygrove to abruptly withdraw from negotiations regarding the Reading degree, but also did not offer Canter the first refusal right it was due. *See* Compl. ¶¶ 15-16. Canter specifically points to Teachscape's use of the confidential terms of the Marygrove contract to "negotiate with Marygrove on more favorable terms." *Id.* ¶ 15. In addition, an independently actionable misdeed, such as Teachscape's misuse of Canter's trade secrets as part of Teachscape's negotiations with Marygrove, satisfies the requirement of an additional allegation of wrongdoing. *See Korea Supply*, 29 Cal. 4th at 1159; *Reid-Ashman*, 2007 WL 1394427, at \*12.

Teachscape's argument that this claim is inadequately pled ignores and mischaracterizes the very cases it relies upon. Teachscape relies upon *Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F. Supp. 1303 (N.D. Cal. 1997), but in that case, the plaintiff made "no allegations . . . from which the court or defendants could infer the probable disruption of an actual economic relationship." *Id.* at 1312. Here, Canter has pled disruption of the Marygrove relationship, specifically regarding the Reading degree that was already the subject of negotiations and a contract clause between Marygrove and Canter. *See* Compl. ¶ 16. Teachscape more egregiously misstates the law in citing *Tele Atlas N.V.*

*v. Navteq Corp.*, 397 F. Supp. 2d 1184 (N.D. Cal. 2005). Rather than supporting its position, this case affirms that Canter's allegations are sufficient, holding "[c]ourts often require a plaintiff to identify *at least one* such 'third party' to state a claim." *Id.* at 1194 (emphasis added). Again, Canter has identified (and described in detail) the disruption of its longstanding relationship with Marygrove, and this is sufficient at the pleading stage.

### 4. Canter has pled that damages have been sustained.

Teachscape's argument that Canter has failed to plead damages lacks any merit because Canter has pled that Marygrove's breach of its contract with Canter was due to Teachscape's interference, which resulted in damage to Canter. Unlike in *Silicon Knights*, the only case that Teachscape cites in support, Canter has alleged the factual predicate of actual disruption of its relationship with Marygrove. *Compare* Compl. ¶ 16 *with Silicon Knights*, 983 F. Supp. at 1310. Moreover, Canter has further alleged that its "economic relationship with such clients and prospective clients were actually disrupted as a result of Teachscape's wrongful acts" and that the conduct "impinge[d] upon Canter and its business, reduce[d] its profits" and caused it to suffer harm. Compl. ¶ 43 & 47. Again, these factual allegations must be taken as true, and they show that Canter's interference claims are plausible. Indeed, Teachscape's Motion does not really contest the adequacy of these allegations. Instead, it tries to refute them by arguing without any support from the Complaint or otherwise that "Canter did not (and based on its announced intention to provide online degree programs *exclusively through its subsidiary university* cannot in good faith) claim . . . damages." Mot., at 23:9-14 (emphasis added). This tack is not appropriate for a motion to dismiss for failure to state a claim. *See Twombly*, 127 S. Ct. at 1965 ("all the [factual] allegations in the complaint are true (even if doubtful in fact)").

### C. Canter's Claims For False Advertising Are Adequately Pled.

#### 1. Teachscape applies an incorrect, heightened standard of pleading.

The word "update" would often not be misleading, especially if used truthfully. However, in the context of offering a "Masters in the Art of Teaching with a Focus in Curriculum, Instruction and Assessment" at Marygrove, when such a degree had only ever

been offered at Marygrove by Canter in the past, by labeling the program with the exact same name as "updated" in advertising it, the use of this word is both untrue and highly likely to lead to consumer (school teacher) confusion. Regarding its claims of false advertising, Canter "need only plead that the statement is false or that consumers find it misleading." *Cytosport, Inc. v. Nature's Best, Inc.*, No. 06-1799, 2007 WL 1345379, at *1 (E.D. Cal. May 8, 2007). Teachscape's argument to the contrary not withstanding, this Court has twice stated that there is no heightened pleading requirement for Lanham Act claims; rather, the same "short, plain statement" will suffice, and Lanham Act claims do "not require the plaintiff to set forth specific allegations or evidentiary facts." *Sigma Dynamics, Inc. v. E.Piphany, Inc*., No. 04-0569, 2004 WL 2533220, *4 (N.D. Cal. Nov. 8, 2004) (citing *Summit Tech., Inc. v. High-Land Med. Insts. Co.*, 933 F. Supp. 918, 937 (C.D. Cal. 1996)); *see also Mintel*, 2007 WL 2288329, at *9 ("[Defendants] provide no persuasive authority for their claim that this cause of action [for false advertising under the Lanham Act] is subject to a heightened pleading standard."). In raising the same panoply of arguments as to Canter's Section 17500 claim, Teachscape again improperly relies on state court cases that do not apply the notice pleading standard. *See* Mot., at 15:20-16:17. For the Section 17500 claim, the Court should employ the same notice pleading standard as for the parallel false advertising claim under the Lanham Act. *See, e.g.*, *Pinnacle Sys., Inc. v. XOS Techs., Inc.*, No. 02-3804, 2003 WL 21397845, at *5-*6 (N.D. Cal. May 19, 2003) (analyzing sufficiency of pleading of Lanham Act & Section 17500 claims together); *cf. Denbicare U.S.A. Inc. v. Toys "R" Us, Inc.*, 84 F.3d 1143, 1152 (9th Cir. 1996) (finding Lanham Act and Section 17500 false advertising claims rise and fall together).

Canter in this case has pled specific facts relating to its Lanham Act and Section 17500 false advertising claims as to Teachscape's promotion in September 2006 of its program offering, through Marygrove, by naming it a MAT degree with a focus on CIA and advertising it as "updated," <u>even though it never previously offered such a degree or focus whereas Canter had</u>. *See* Compl. ¶¶ 17-19. Canter need not prove that the advertisement or the word "updated" in Teachscape's advertisement is absolutely false in order to prevail; it

need only show that that the word was misleading when used as Teachscape used it. *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1140 (9th Cir. 1997).  Like in *Sigma*, the Complaint "explicitly states the alleged false statements at issue, who made them, and when they were made."  *Sigma*, 2004 WL 2533220 at *4.  Further, these facts show that Teachscape's advertisements were likely to confuse teachers, by falsely implying that Teachscape's MAT degree in CIA program was a continuation of, or affiliated with, Canter's MAT degree in CIA program.  *Cf. Mintel*, 2007 WL 2288329, at *8 (finding as sufficient the allegation that "the misrepresentations deceive the public because they create a false impression that [defendant] is selling [plaintiff's] products and offering technical support with [plaintiff's] permission, when in fact [plaintiff] long since terminated its relationship with [defendant].")  In light of the facts pled, Teachscape is left to argue (without legal support) that Canter should attach an example of Teachscape's own misleading advertisement to the Complaint.  *See* Mot., at 13:8-13.  Given the notice already provided, this is unnecessary.

### 2.    Teachscape's advertisement is a false comparison, not puffery.

Desperate to avoid liability, Teachscape argues that its advertisement is true in fact <u>and</u> is a vague and outrageous statement that amounts to puffery, even though these arguments are inconsistent.  *See* Mot., at 13:8-14:18 & 15:27-15:15.  Teachscape also throws in an argument that the statement was not material, because it is unlikely to influence the purchasing decision.  *See id.* at 14:14-18.  None of these should persuade the Court because they really seek to undermine Canter's factual allegations, which must be taken as true.  *See Twombly*, 127 S. Ct. at 1965 ("all the [factual] allegations in the complaint are true (even if doubtful in fact)").  Here, Canter has alleged that:

> Teachscape engaged in advertising to the public its offering of "updated" courses through Marygrove.  Thereafter and through the present, Teachscape has described its new relationship with Marygrove in an untrue or misleading way for the purpose of misleading the public to believe that it has a long and successful track record in offering these programs through Marygrove, when in fact it does not.

Compl. ¶ 65; *see also id.* ¶ 19 ("By marketing a degree . . . as 'updated,' Teachscape's

advertising was untrue and misleading and likely to deceive the public in that it implied that Teachscape's courses were updates or improvements of courses previously offered at Marygrove."). Teachscape's counterpoint that its own advertisement was in reference to "*Marygrove's* degree programs" is better left to decide upon evidence of whether Teachscape's promotion of its MAT program in CIA as "updated" was understood by teachers as <u>the same as</u> Canter's offering through Marygrove, or instead understood it to mean <u>different from</u> Canter's offering. Similarly, given the sufficiency of the allegations in the Complaint in providing notice to Teachscape, presentation of evidence as to whether its advertisement and its use of the term "updated" influenced the teachers' decision to purchase should be left for another day. Finally, Teachscape's argument that Canter must ultimately prove that it is probable that the statement will deceive is beside the point—at this stage, Canter has set forth enough facts to show that these false advertising claims, including deception by consumers, are plausible.

Moreover, calling its CIA program "updated" is not on its face puffery that consumers would readily discount, such as calling its course "#1" or "the best." Rather, Teachscape's statement intentionally obscures the source of the program, as alleged by Canter. Unlike the cases regarding puffery that Teachscape cites, when a defendant makes false statements suggesting it is selling products from a source other than itself, this is actionable false advertising. *See Mintel*, 2007 WL 2288329 at *7-*9 (holding that plaintiff has stated a claim for false advertising claim when complaint states that defendant's website states that it sells plaintiff's products, when in fact it does not).

Teachscape's reliance on *Williams v. Gerber Products Co.*, 439 F. Supp. 2d 1112 (S.D. Cal. 2006) is misplaced. The court in *Williams* focused on the overall context of the allegedly misleading statements. *Id.* at 1117 (holding that the words "all natural" were not misleading when taken in context). Teachscape also mischaracterizes *In re Century 21-RE/MAX Real Estate Advertising Claims Litigation*, 882 F. Supp. 915 (C.D. Cal. 1994), where the court actually differentiated between puffery—i.e., advertisement stating defendant had "beaten the odds and become #1"—from comparisons with a competitor—as

1   is the case here—finding that "alleg[ing] falsities regarding average sales per agent" would

2   have enabled the Plaintiffs in that case to bring a Lanham Act claim based on an

3   advertisement stating that a competitor's agents outsold the competition "3 to 1." *Id*. at 923

4   & 927.

5       **D.    Laureate and Canter Have Properly Asserted A Claim For Unfair**
           **Competition Pursuant To Section 17200, And Properly Seek Restitution**
6           **For Teachscape's Unfair Competition.**

7       Teachscape's argument to dismiss Laureate's and Canter's unfair competition claim

8   fails because this argument is premised on the success of its other arguments.  Teachscape

9   correctly asserts that, per *Cel-Tech Communications, Inc. v. Los Angeles Cellular*

10  *Telephone Co.*, 20 Cal. 4th 163 (1999), Laureate and Canter, being competitors of

11  Teachscape, must allege "conduct that threatens an incipient violation of an antitrust law, or

12  violates the policy or spirit of one of those laws because its effects are comparable to or *the*

13  *same as a violation of the law*" to state a claim under Section 17200.  *Id*. at 187 (emphasis

14  added).  However, Teachscape then swings for the fences by asserting that because

15  Laureate's and Canter's other claims fail, no violation has been asserted.  *See* Mot., at 24:1-

16  5.  As demonstrated above, Laureate and Canter claims (including Canter's Section 17500

17  claim which is specific violation of Section 17200) are adequately pled and thus

18  Teachscape's basis for moving to dismiss the Section 17200 claim fails.  Moreover,

19  Teachscape's knowing use of Canter's confidential information and methods in the hands of

20  its former employees and inducement of breaches of Canter's agreements with its former

21  employees to maintain the confidentiality of that information also constitute violations of

22  policies established in the California Civil Code (*e.g.*, §§ 1549 *et seq*.) and California Labor

23  Code (*e.g.*, §§ 2860 & 2870).  *See* Compl. ¶¶ 23 & 72.

24      Likewise, Teachscape's argument that restitution is unavailable to Laureate and

25  Canter should be rejected.  Teachscape argues that *Korea Supply* limits restitutionary relief

26  under Section 17200 only to the return of money that was once in Laureate's and Canter's

27  possession.  *See* Mot., at 24:13-20.  However, as noted in *Korea Supply* and its progeny, a

28  defendant's profits are not immune from recovery *per se* because "restitution is broad

Heller
Ehrman LLP

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS AND/OR STRIKE          Case No. C 07-3225 RS

enough to allow a plaintiff to recover money or property in which he or she has a vested interest." *Korea Supply*, 29 Cal. 4th at 1149; *Juarez v. Arcadia Fin., Ltd.*, 152 Cal. App. 4th 889, 915 (2007) ("the plaintiffs arguably have an ownership interest in any profits Arcadia may have gained through interest or earnings on the plaintiffs' money that Arcadia wrongfully held."). In this case, Laureate and Canter have alleged numerous violations of law by Teachscape that also constitute unfair competition so as to displace Laureate and Canter from their receipt of profits from long-established relationships with Canter's partners, such as Marygrove, and with ongoing expectancies per the contracts with their partners. *See* Compl. ¶¶ 9, 11, 15-16, 19, 21 & 73-74. Thus, unlike money sought by plaintiff in *Korea Supply* that was a <u>contingent</u> expectancy of payment from a third party from a <u>potential</u> contract, here existing contracts afforded Laureate and Canter non-contingent and identifiable profits, which were taken away by Teachscape through its unfair and improper means of using Canter's existing business relationships. Put in another way, Teachscape's improper methods in entering the market for master's degree and graduate course program guaranteed it profits—the profits to which Laureate and Canter were entitled through their existing contracts.

## CONCLUSION

For the reasons stated above, the Court should deny Teachscape's motion to dismiss.

Dated: August 28, 2007                Respectfully submitted,

HELLER EHRMAN LLP

By _____/s/ DANIEL N. KASSABIAN_____
Attorneys for Laureate and Canter
CANTER AND ASSOCIATES, LLC and
LAUREATE EDUCATION, INC.