1  ANNETTE L. HURST (State Bar No. 148738)
2  DANIEL N. KASSABIAN (State Bar No. 215249)
   ELENA M. DIMUZIO (State Bar No. 239953)
3  HELLER EHRMAN LLP
   333 Bush Street
4  San Francisco, California  94104-2878
5  Telephone: +1.415.772.6000
   Facsimile: +1.415.772.6268
6  E-mail:    Annette.Hurst@HellerEhrman.com
              Daniel.Kassabian@HellerEhrman.com
7             Elena.DiMuzio@HellerEhrman.com
8
   Attorneys for Plaintiffs
9  CANTER & ASSOCIATES, LLC and
   LAUREATE EDUCATION, INC.
10

11                   UNITED STATES DISTRICT COURT

12                  NORTHERN DISTRICT OF CALIFORNIA

13                          SAN JOSE DIVISION

14 | CANTER & ASSOCIATES, LLC and       | Case No. C 07-3225 RS
15 | LAUREATE EDUCATION, INC.,          |
                                        | **DECLARATION OF KATHLEEN**
16 |                        Plaintiffs, | **WINBERRY IN SUPPORT OF**
                                        | **PLAINTIFFS' MOTION FOR ENTRY**
17 |        v.                          | **OF PROTECTIVE ORDER**
18 | TEACHSCAPE, INC.,                  |
                                        | Judge:  The Honorable Richard Seeborg
19 |                                    | Ctrm.:  4 (5th floor)
20 |                        Defendant.  | Date:   January 2, 2007
                                        | Time:   9:30 a.m.
21

22

23

24

25

26

27

28

Heller
Ehrman LLP

DECLARATION OF KATHLEEN WINBERRY IN SUPPORT OF PLAINTIFFS' MOTION FOR ENTRY OF
PROTECTIVE ORDER                                                    Case No. C 07-3225 RS

I, Kathleen Winberry, declare:

1. I am currently employed as Senior Vice President of Product Planning by Canter & Associates, LLC ("Canter"). Prior to 2004, my job title at Canter was General Manager, Executive Vice President and I was primarily responsible for decision making regarding education, including master's degrees in education. I began working for Canter in 1980.

2. Canter's policy requires employees to sign a confidentiality agreement stating that any non-public information learned or accessed as a result of their jobs is confidential information, and cannot be disclosed outside Canter without Canter's permission.

3. I have extensive experience with Canter's confidential and trade secret information, including its proprietary customer database, its 3-Year Strategic Plans, its Corporate Investment Proposals, details of Canter's contracts regarding education master's degrees with third parties such as Marygrove College, and financial information such as costs, revenues, and profits relating to its various products including online distance-learning master's degrees in education. All of this information is valuable to Canter's business, in part, because it is not generally known.

4. Canter's customer database is extremely valuable to Canter's business. The database is very highly customized, and contains information resulting from complex analyses of the results of Canter's and Laureate Education, Inc.'s promotional efforts in different geographic regions of the United States. This information is maintained in the strictest confidence by Canter.

5. If the information in Canter's customer database were made public, it would severely undermine Canter's competitive advantage in the field of distance-delivered education master's degrees by making it possible for Canter's competitors to quickly and easily benefit from the fruits of Canter's labor, including its research and development, at no cost to the competitor. This would enable Canter's competitors to target Canter's promotional efforts and course development, and to make well-informed strategic decisions of their own without any investment. Release of this information would also allow

competitors to anticipate Canter's strategic business decisions and thereby undercut Canter's hard-earned competitive edge and market share.

6. I was personally involved in the development of the 3-Year Strategic Plans and the Corporate Investment Proposals. These materials were developed by a small group of Canter employees brainstorming and strategizing together; some of the group members are former Canter employees who later went on to work for Teachscape. Mike Soules, Hae Young Kim, and Melissa Jaivin contributed to the 3-Year Strategic Plan development; Melissa Jaivin contributed to the Corporate Investment Proposal development. These materials describe Canter's strategic goals for developing and promoting programs in specific subject areas, and similar strategic information. This information is maintained in the strictest confidence by Canter.

7. Public exposure of Canter's 3-Year Strategic Plans and Corporate Investment Proposals would be very damaging to Canter's business. These documents contain Canter's most confidential, high-level business strategy for development and growth of its educational master's degrees programs. This information would give Canter's competitors a road map of its planned actions in the future, including growth targets, new subject matter, and planned course updates. In the hands of Canter's competitors, this information would make it exceptionally easy to anticipate and disrupt Canter's business plans, and to destroy any competitive advantage Canter might otherwise have enjoyed as a result of developing the 3-Year Strategic Plans and the Corporate Investment Proposals.

8. I was personally involved in negotiating several of the agreements between Canter and Marygrove College regarding distance education master's degrees. The terms of these agreements are strictly confidential and the confidentiality of these agreements has always been maintained by Canter. This information is valuable in part because it is not known to our competitors.

9. The public release of the confidential information in Canter's agreements with its university partners, and other contracts, would severely undermine Canter's bargaining position with future potential partners. If competitors have complete information about the

terms of Canter's previous contracts, the competitors will be at a significant advantage while negotiating with Canter's prospective partners, while Canter will be at a disadvantage as it will have no information about the terms of its competitors' deals. In addition, this will weaken Canter's bargaining position with prospective partners as it will enable these partners to review existing contracts, hampering Canter's ability to negotiate.

10. I am aware that Canter maintains financial records relating to its master's degree programs, including records of development costs, total revenues, and estimated profits. Canter does not report this type of detailed financial information publicly. This information is maintained in the strictest confidence by Canter.

11. Public exposure of Canter's financial information would be very damaging to Canter's business. This information reveals Canter's strategy in developing certain courses by showing the dollar value Canter assigned to various different projects (including development, advertising and promotion). It also reveals Canter's profit margins, and the different salaries and wages paid to different Canter employees. In addition to exposing Canter's business strategy and thereby undercutting its competitive advantage, this information could strain Canter's relationship with its employees by making all salary and wage figures known.

I declare under penalty of perjury pursuant to the laws of the United States that the foregoing is true and correct of my own knowledge and that this declaration is executed on November 19, 2007 in Los Angeles, California.

*/s/ Kathleen Winberry*
KATHLEEN WINBERRY