# EXHIBIT A

ANNETTE L. HURST (State Bar No. 148738)
DANIEL N. KASSABIAN (State Bar No. 215249)
ELENA M. DIMUZIO (State Bar No. 239953)
HELLER EHRMAN LLP
333 Bush Street
San Francisco, California 94104-2878
Telephone: +1.415.772.6000
Facsimile: +1.415.772.6268
E-mail:     Annette.Hurst@HellerEhrman.com
            Daniel.Kassabian@HellerEhrman.com
            Elena.DiMuzio@HellerEhrman.com

Attorneys for Plaintiffs
CANTER & ASSOCIATES, LLC and
LAUREATE EDUCATION, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CANTER & ASSOCIATES, LLC and LAUREATE EDUCATION, INC.,<br><br>            Plaintiffs,<br><br>    v.<br><br>TEACHSCAPE, INC.,<br><br>            Defendant. | Case No. C 07-3225 RS<br><br><br>Judge:  The Honorable Richard Seeborg<br>Ctrm.:  4 (5th floor)<br>Date:   September 26, 2007<br>Time:   9:30 a.m. |

**Transcript of Audio Recording of Oral Argument**

**Teachscape's Motion to Dismiss, September 26, 2007**

Heller
Ehrman LLP

1  **Court Clerk**:  Calling Case No. C 07-03225 RS Canter & Associates, et al. v. Teachscape,

2  Inc.  Will the Plaintiffs come forward please and state your cases?

3  **Daniel Kassabian:**  Good morning, Your Honor.  Appearing on behalf of Plaintiffs Canter

4  & Associates, Daniel Kassabian. With me are Annette Hurst and Elena DiMuzio.

5  **The Court**:  Good Morning.

6  **Gale Athanacio:**  Good morning, Your Honor, Gale Athanacio on behalf of Defendant

7  Teachscape.

8  **The Court:**  Good morning.  Let me give you my tentative thoughts and we will go from

9  there.  Let me address the federal claims first, the claim for copyright infringement and then

10  also for Lanham Act advertising issues and I think that's claims for only six and seven.

11  And I address those first for the obvious reason that that's the linchpin for federal

12  jurisdiction in the case.  We do operate, and I think everyone agrees, under the notice

13  pleading statement that we find in Rule 8 and not the more detailed fact pleading that is

14  prevalent in state court.  That said, on the copyright claim – I have some concerns about the

15  copyright claim.  I do think that even with the understanding that we have notice pleading

16  we do need to – or the parties need to at least provide notice of what particular materials are

17  allegedly protected under copyright and then what specific materials allegedly infringe

18  those copyright rights. And you know general references, which is what I find in the

19  complaint to audiovisual online course materials and then some allegations that former

20  employees now have shifted their allegiance.  I'm concerned that that's not sufficient.  I am

21  familiar within the briefing the arguments that somehow there has been a failure to provide

22  materials for purposes of doing some comparisons.  I will likely hear why final course

23  materials aren't sufficient, which I understand are available; why the comparison to

24  determine whether or not there is copyright infringement can't be based upon a comparison

25  with those materials.  The long and short of it is, and I'll tell you what my tentative thoughts

26  are on that particular claim, I'm actually inclined to do something like dismissing those

27  claims without prejudice and perhaps having some sort of accelerated discovery period for

28  purposes of having some comparison – giving the Plaintiff the opportunity to take a look at

1  the materials that they're looking for and then make the decision on whether or not they

2  have a basis to re-plead that claim.   But the claim as it stands, as I said, I have some

3  problems with.  The Lanham Act claim I'm, I have a different view to some extent.  I know

4  that the moving party says "claim updated" is just a term, puffery and it's not enough to say

5  that there is some misleading going on for purposes of the advertising claim and this is, as I

6  understand it, in connection with the Marygrove course offerings.  I tend to think that the

7  arguments that go to whether or not it's sufficient, that, in and of itself is sufficient to make

8  out such a claim is an issue for later in the case.  I think for purposes of pleading, I think

9  that, I'm inclined to think that they have plead out in the Lanham Act claim.  With respect

10  to the other claims, the state claims for trade secrets and interference; and we got two

11  interference claims, an unfair competition claim, a state claim with respect to the

12  advertising.  I think for purposes of ruling pleading that those are sufficiently pled and I

13  think most of the arguments that I see are arguments that go to issues down the line that will

14  be battled about either on summary judgment or, with respect of the trade secret claim,

15  some further fleshing out of those under 2019, but I don't see it as a basis for dismissal.  So

16  that's where I am.  I don't know who wants to jump up and address it first.  Probably the

17  moving party.

18  **Ms. Athanacio:**  Gale Athanacio again on behalf of Defendant Teachscape.  With regard to

19  Your Honor's observation on the copyright claim, we believe that Your Honor is absolutely

20  correct.  We understand that the pleading requirement of the Rule 8 is notice pleading.  We

21  certainly have not been given notice in this instance.  But Your Honor, with regard to

22  whether or not they have stated a claim and whether or not it would be appropriate to allow

23  them to maintain this action and conduct discovery, we believe that that is not appropriate in

24  this instance.  We believe that the *Bell Atlantic* case is on all fours because in this instance

25  Your Honor, the representation made in the complaint was that we flatly refused to provide

26  the final course materials, we placed unreasonable restrictions.  By virtue of the fact of them

27  injecting that into this matter, we were appropriately able to show the correspondence that

28  transpired between the parties and literally all we asked for was the information that was

1   contained in the copyright registrations and nothing more and we would exchange the actual

2   course materials.

3   **The Court:**  Why can't we do that now?

4   **Ms. Athanacio:**  Your Honor, I'm not saying that you can't but we were told that that was

5   unreasonable.  We have now been forced to file a motion to dismiss.

6   **The Court:**  If I say now that it is reasonable and I dismiss the claim, and say what you say

7   you were prepared to do before is what ought to be done.  Isn't your argument at that point

8   simply, well, "Why didn't you do it earlier?"  I mean, I'm not sure what the argument is.

9   Your argument to me now is that I should dismiss this with prejudice.  This is the first that

10  I've seen of this claim and you're saying right out of the box you're saying it should be

11  dismissed with prejudice and even though we were prepared at one point to share some

12  materials because of the back and forth, now we don't even think that should happen.  You

13  should just throw this claim out.  Isn't that inconsistent with the notion that a party has an

14  opportunity, in the general course, if they can re-plead, they're given the opportunity to re-

15  plead at the very least once and sometimes they'll ask more than once but you know, isn't it

16  a bit draconian at this stage, "Oh, you're out.  We won't even entertain re-pleading."

17  **Ms. Athanacio:**  No, Your Honor, I don't think it is because they had an affirmative

18  obligation prior to filing a lawsuit and inflicting this burden upon the defendant to conduct a

19  reasonable investigation into the claim.  And the question is as the matter stands now,

20  "Have they stated the claim?"  And they have not and they have conceded that they have

21  not stated a claim because they have not been able to identify a single, substantial similarity

22  and the infringing work whatsoever.  The fact of the matter is they have filed a piece of

23  litigation deliberately to impose burdens on us above and beyond what we were prepared to

24  do to forestall any litigation.  In this instance, they now have from what we can tell, and we

25  don't even know Your Honor, that's part of the problem, they have registered after we

26  raised the issue with them, three years after the employee supposedly was up.  That's when

27  they registered the copyright infringement claims.  Now, apparently, they have identified

28  everything in their course materials.  Now, they are suggesting that we are obligated to

Heller
Ehrman LLP

TEACHSCAPE MOTION TO DISMISS ORAL ARGUMENT, SEPTEMBER 26, 2007    Case No. C 07-3225 RS

1  produce all of our course material whether or not (and it's unclear again) whether or not it

2  pertains to Marygrove or not and all drafts.  And that is an incredibly burdensome task.  As

3  I understand it, based on representations made by Plaintiff's counsel when we were going

4  through this needless negotiations, just the actual course material, some subset of it was

5  more than twenty boxes.  And Your Honor to suggest that they have the ability to, you

6  know, shoot first and then ask questions later, is not the purpose of federal litigation.  This

7  is exactly was *Twombly* has indicated a litigator should not be able to do.  I'm not saying

8  that the parties may not engage in some sort of discussions to try to resolve these particular

9  issues, but that is not the appropriate — the Court is not the appropriate vehicle.  Litigation,

10  prior to knowing whether or not you have a claim flatly rejecting a patently . . . .

11  **The Court:**  What you are essentially saying, almost, and you denote, you are almost

12  saying that it is a sanction for what you deem to be improper pre-litigation discussion.  That

13  the claim should be tossed.  What I'm looking out is, I'm trying to get a handle on the

14  merits to the claim.  Is there a  claim for copyright or not?  I agree with you that I think, as

15  pled at the moment, it is not sufficient, but you're saying that in addition to that because of

16  this pre-filing activity they should be precluded from an opportunity to determine whether

17  or not there is a claim there that they can make out or not.  And that's a fairly harsh remedy

18  and I understand you know *Bell Atlantic*.  I know what your argument is there, but again it

19  seems a bit harsh to say that well, "You can't even attempt to re-plead it."  I mean I assume

20  that if I was to say well, "I'm not going to allow discovery to occur now but I am going to

21  let you have a chance to see if you can re-plead it with a bit more specificity.  I wouldn't see

22  where you would have any objection to that.  I mean there is not basis at this stage as far as

23  I can see to say, "It should be a dismissal with prejudice."  Other than this argument that

24  somehow, again almost on a Rule 11 basis, where you haven't done a sufficient pre-filing

25  investigation but some of the materials they would want are in your hands.

26  **Ms. Athanacio:**  Right, but also some of the materials are in their hands, which they have

27  refused to produce to us.

28

4

1 **The Court:** That's why I've given you the right to re-plead. I'm mean that we do all of the

2 time. Whey shouldn't they have the right to re-plead?

3 **Ms. Athanacio:** Your Honor, I'm not suggesting that they should not have the right to re-

4 plead necessarily.

5 **The Court:** Okay.

6 **Ms. Athanacio:** But what I am concerned about is the notion that they made very clear

7 both in their papers and their prior dealings with us that they are looking to engage in

8 extensive, very burdensome, very time-consuming, very distracting discovery. We make an

9 offer and I don't know, I would recommend to my client that we engage in a type of apples-

10 to-apples comparison with the case dismissed without prejudice giving them a time to re-

11 plead. But what I do object to is them being burdened with all of the other issues in so far

12 as….

13 **The Court:** Well, we can talk about the scope of discovery that I would allow which is, I

14 understand your point. And that's sort of a timing question. What they could explore

15 initially to make the determination of whether or not they have a copyright claim to go

16 forward, but now going to their other claims to the extent that I deny your motion with

17 respect to some of these other claims, some of this discovery may be relevant to those so

18 you probably ought to – I encourage you to now move from copyright and talk about the

19 other claims.

20 **Ms. Athanacio:** Yes, Your Honor, and what I would focus in on is in particular the

21 Lanham Act thing because that is the only other predicate to this Court's jurisdiction and if

22 neither of those claims stand, there is no basis in which to burden this Court with this

23 particular litigation because truly it is, these claims, as I understand them are state law-

24 based claims. With regard to the Lanham Act, Your Honor has indicated that, at least your

25 initial feeling is that for notice pleading purposes that a mere reference to "updated" is

26 sufficient. The problem that I have with the ability for them to proceed is that they haven't

27 identified specifically the advertisement that they're referring to. They haven't presented to

28 this Court the full context. What they have done is, in their complaint, they've done

Heller
Ehrman LLP

1  nothing more than say that the Marygrove – and they've articulated it in three or four or five

2  different ways depending on where it is in their complaint, that they have identified the

3  Marygrove degree program has been updated.  It is indisputable and I don't believe

4  plaintiff's counsel would suggest that the degree is issued by Canter or the degree is issued

5  by Morret or the degree is issued by Teachscape.  It is Marygrove's degree program.

6  **The Court:**  Yes, but unlike their copyright claim you know what they're contending.

7  Their contending they've told you at least with respect, they may argue that it's more

8  extensive than this, but at the very least they've said, "The use of the term 'updating' is

9  what we say, with respect to the Marygrove program, is what results in being deceptive and

10  false advertising."  You may have a bazillion arguments as to why that's not going to

11  prevail and you may also say, "Well, they haven't fleshed it out by telling us which specific

12  course materials that Marygrove put out that has this reference or whatever."  But those are

13  summary judgment type of issues.  Those are not issues, unlike the copyright claim, you

14  know what they're contending.  You may not think much of it, but you know what they're

15  contending and to argue that they have to set forth each advertisement and the date of each

16  advertisement.  I think it's a different situation than with respect to the copyright claim.  I

17  think you're on notice.  You may not think much of the claim and you may well be able to

18  dispatch it, but you're on notice as to what it is.

19  **Ms. Athanacio:**  Actually, Your Honor, we're not because the only advertisements that are

20  referenced or made reference to are apparently Marygrove advertisement on its website and

21  published materials.

22  **The Court**:  Yes.

23  **Ms. Athanacio**:  I don't know.  My client doesn't know exactly what they're referring to

24  that we in particular did that's distinct from Marygrove.  I don't know why they're trying to

25  suggest that we're vicariously liable?  That's certainly not pled in this case.

26  **The Court**:  Right.

27  **Ms. Athanacio**:  And then in so far as, Your Honor, we cited to cases and they don't

28  dispute that assessment of a Lanham Act claim is appropriate to resolve on the motion to

Heller
Ehrman LLP

1  dismiss on the pleadings. You can make that determination as a matter of law. One of the

2  fundamental predicates is you look at in context. And in the complaint it just says updated.

3  Then in their moving paper, excuse me, their opposing papers they reference a Marygrove

4  degree that says it is updated in parens. Your Honor, you are not in a position nor are we

5  are not in a position to bring that matter to the court's attention. I am not aware of any case

6  where there is a suggestion that where there is a claim that there has been an advertisement

7  where there has been a false statement of fact. But they don't have to say what the

8  advertisement is. In all the cases that we cite you talk about you assess that in the context of

9  the full advertisement. In general and in theory Your Honor can conceive of ways why an

10 update may or may not be recovery. We're not given the opportunity because we don't

11 know what exactly what it is they are referring to nor does Your Honor to say "ok now you

12 understand, Your Honor." Now you can look at it and say "of course this is puffery."

13 **The Court:** Okay. Before we talk about state claims if we get there let me ask you Mr.

14 Kasbian. Kasabian. I am pronouncing that right?

15 **Mr. Kassabian:** Kassabian.

16 **The Court:** Kassabian, thank you.

17 **Mr. Kassabian:** Let me try to address the concerns you raised at the beginning and try to

18 hit in response to defendant's counsel on the way here. With respect to the copyright claim.

19 First off it is our position that it is sufficiently pled on the facts alleged. One fact that was

20 not emphasized in the briefs and I think we'll turn back to it again in the Lanham Act claim

21 is the fact that Teachscape and this is in the pleadings, Teachscape advertised at least one of

22 its programs as updated and given the accompanying allegation that there was no prior

23 program at all at Teachscape, that that update is a reference, is a comparison to Canter's

24 preexisting program.

25 **The Court:** So that's your Lanham Act rather than the copyright argument?

26 **Mr. Kassabian:** That is primarily Lanham Act. It is the primary theory under which our

27 Lanham Act claim lies but also speaks to the factual underpinnings of the copyright claim.

28

Heller
Ehrman LLP

7

1  Now as Your Honor is aware, we weren't given access to the course material. Now I'll talk

2  a little about the …

3  **The Court:** Some of it is in the public domain, isn't it? Some of this course material?

4  **Mr. Kassabian: No.** That is exactly the problem, Your Honor. In terms of the final

5  materials, which I'll elaborate as being course materials that are being used right now by

6  teachers who are engaged in these programs. Those are only available to those persons

7  once they are registered for the program.

8  **The Court:** Okay.

9  **Mr. Kassabian:** So we have to engage in some sort of pretext.

10  **The Court:** Okay. Let me put aside the back and forth on whether or not you got access or

11  not. As the copyright claim 6 at the moment. At the very minimum even with notice

12  pleading you would expect and require that somebody identify what are the materials that

13  are infringing? I mean to simply say everything must infringe. We have these copyright

14  rights over a host of unspecified course materials and they are in the same business so they

15  must infringe. That's not enough.

16  **Mr. Kassabian:** Your Honor, let me suggest that first off we're not talking about

17  everything Teachscape does. This is a particular marketplace. We've specified these

18  materials as relating to distance learning masters degree and graduate courses in the field of

19  education.

20  **The Court:** I don't know as it sits now. Is it five, ten, twenty-five million? I don't know

21  what. That's a nice, generic, very generic description of a type of course material. I have

22  not any idea nor would I expect them to know what particular things they have that you say

23  infringe. Now if your argument is "well we don't know," then I mean, why you don't know

24  and I understand and I've looked at the case law that talks about you being in that situation.

25  The bottom line is it doesn't provide. For whatever reason it doesn't provide adequate

26  notice. I don't have a clue what this claim is really going at. The copyright claim.

27  **Mr. Kassabian:** Well, Your Honor, I turn to the point you were making that to the extent

28  we don't know because we don't have access and what here defense counsel is trying to do

1 is precluding inquiry into that area by saying you failed to state a claim and so circularly we

2 don't have to provide you with that information so you can never state a claim.

3 **The Court**:  Well, they – the argument is, as I understand it, more what you think you

4 needed to take a look at to make the inquiry to do this analysis, and they're indicating to me

5 that the final course materials at one point in time they were prepared to provide to you.

6 Why do you need – for purposes of the copyright claim – why do you need drafts and the

7 like?  The copyright analysis is, there's materials out there, course materials in this instance,

8 and those are either similar or they're identical and they infringe our copyright rights.

9 Whatever, however they developed it is more a trade secret issue, whether or not they took

10 your trade secrets to develop it in terms of drafts.

11 **Mr. Kassabian:**  Um . . .

12 **The Court**:  Why do you need the drafts for purposes of copyright infringement analysis?

13 **Mr. Kassabian:**  Your honor, I'm glad you raised that question.  The drafts are

14 fundamental because the drafts themselves – we can call them drafts but ultimately they are

15 themselves copies that subject each state to copyright liability.  And so, separate and apart

16 from what the final course materials are, those drafts, and the fact that they, those drafts

17 might in fact be copies of our materials as a starting point, there's infringement there.  And

18 then it's a question of . . . .

19 **The Court**:  Wait a minute.  If I go and there's a copyrighted material and I make a copy of

20 it and I make a bunch of notes and I never, it never sees the light of day and it stays in my

21 office, am I infringing your copyright rights?

22 **Mr. Kassabian:**  Under the *Walker* case and its progeny, it's clear that any unauthorized

23 use, or copying I should say, and that is, it's not a matter of holding it in your hand, having

24 an unauthorized copy and holding it in your hand and taking notes that's wrong, it's the

25 copying of it in an unauthorized fashion – that is infringement.  And in those progeny,

26 typically the defense raised is fair use.  Here there is no fair use defense available to them.

27 And so, folks seen back in on the drafts – we can call them drafts, but ultimately they're

28 also copies, and that's the allegation on which – we need to cement that that can be

1  copyright infringement and therefore there's liability. And their refusal to discuss drafts,

2  exchange drafts or whatnot is a further indication to us that there's a likelihood of

3  infringement, and hence that in the pleading.

4  **The Court**: For purposes of whether or not there is a real, actionable copyright

5  infringement claim here, putting aside the theoretical concept of whether or not if they make

6  a – if this draft consists of a copy that's maintained in their office or whatever – for

7  purposes of your claim, what you need to know is whether or not they're out in the

8  marketplace with course materials that infringe your copyright. I mean, otherwise it's all

9  rather theoretical and it's not going to be the basis of a cognizable copyright claim. So the

10 idea that you're going to get to plumb the depths of these drafts and all the rest – at least for

11 the purposes of whether or not you're going to be able to craft a claim – I'm not very

12 convinced. I think that these drafts, to some extent, if the case goes forward here, it's

13 somewhat an academic argument, because I think you probably will get the drafts for

14 purposes of analyzing your trade secret claim and the like. So, it's a question of when not

15 whether. But I just don't see you needing to get to the extent of the materials that you say

16 that you need for purposes of determining whether or not you've got a viable copyright

17 claim.

18 **Mr. Kassabian:** Well, Your Honor, I'll turn to the development process, and basically you

19 can have a set of drafts here based on our materials from which have spawned course

20 materials and may spawn future course materials, and we are entitled to injunctive relief to

21 get that out of their hands and have them stop using those drafts. And to the extent that

22 they've used them in the past, that's a question of whether there's a sufficient tie between

23 that use and their final course materials such that damages ensue. But I do think that the

24 drafts themselves do subject the defendant to copyright liability if they are copies. And we

25 can't, under the *Walker* cases you can't just sort of scrub the process along the way and say,

26 "oh well, you can forget about drafts because the final course materials don't meet the

27 substantial similarity test or whatever the copyright infringement test is." The draft

28 themselves is an unauthorized use, from there, the question becomes what do you do with

1  that? Does it lead to damages? Is there injunctive relief available at this point? And that's

2  a separate question as to whether there's liability.

3  **The Court**: Okay, why don't you address in more detail the Lanham Act claim.

4  **Mr. Kassabian:** With respect to the Lanham Act claim, Your Honor, I think Your Honor

5  already alluded to Your Honor's thoughts that there had been sufficient facts pled, and I did

6  already note. But in our complaint, and in particular I just point out to one allegation,

7  paragraph 19. We have alleged that it was Teachscape's advertisement that was untrue or

8  misleading, or and misleading, and likely to deceive the public. And so, under the current,

9  the present standard for the motion to dismiss, that has to be taken as true, and, again,

10 defendant is trying to argue that it's untrue by saying this was Marygrove's advertisement,

11 and it's not. It's Teachscape's advertisement that is referenced in the pleading. And, Your

12 Honor, we have provided sufficient context, facts and description of the course for which

13 we had a preexisting course by the exact same name at the time that this advertisement

14 came up with the reference to updated. And as I already explained to Your Honor, the term

15 "updated," though it's one short word, isn't puffery. It means something. By the very

16 dictionary definition it means that there's a preexisting – something's out there – there's

17 been additions, changes to bring it up to date. And so, in that is a comparison, and then we

18 have to go through the process of seeing if it's a true comparison which, if it is a true

19 comparison, that actually substantiates the copyright claim. If they say, well, actually we

20 did take your materials and update them, then you have a greater likelihood of copyright.

21 But putting that aside, if it's not true, whether it's false, whether it's false by implication,

22 and then whether there's confusion, as Your Honor stated earlier. Those are fact questions

23 that at best could be subject to a summary judgment motion. The claim has been pled with

24 enough facts that it gives defendant notice. I'm also a little shocked that what they're

25 coming with is, we don't know what they're talking about. It's their advertisement.

26 And . . .

27

28

1  **The Court**:  Well, you now identify the particular paragraph where you say you have

2  identified an advertisement.  But they were suggesting that it appeared that your focus was

3  on Marygrove's advertising as opposed to your own advertising.

4  **Mr. Kassabian**:  No, the clarification there, Your Honor, is that, again as part of the

5  context, the degree program that the advertisers updated was through Marygrove College.

6  We are in agreement that it's the colleges and universities that ultimately offer the degree

7  once the program is completed.

8  **The Court**:  Right.

9  **Mr. Kassabian**:  It's plaintiffs and defendant that create the program, including the

10  underlying course materials, and so, in this case, it's also the plaintiff and defendant that

11  provide the advertising materials.  As far as we can tell, the defendant does that, has

12  provided one in this context, has indicated that one of its course offerings through

13  Marygrove has the exact same title as Cantor's while Cantor's was existing, and then

14  referred to it as updated.  And so that, I think that gives them sufficient notice to go back to

15  their client and say, is this true?  Did we put out an advertisement about our programs

16  through Marygrove that are updated, and then go from there.  And then, obviously as, Your

17  Honor has indicated, there is discovery from which there is contention interrogatories,

18  document requests, all those things can – these factual details can be ferreted out.

19  **The Court**:  Okay.  With respect to the state claims, I think that the – I think it's apparent to

20  you that at the very least, and I'm going to consider this further, but at the very least I'm

21  going to dismiss the copyright claim such that I would anticipate either – you're going to be

22  put to the decision of whether or not to replead it, and you've given the argument's both

23  sides with respect to the state claims.  I don't propose to have discussion about that.  I am

24  going to focus first on the question of the adequacy of the federal claims, and then I have

25  your arguments with respect to state claims and I can simply rule on the motion to dismiss

26  after we get through the process of whether or not the federal claims are in a proper state

27  that it can go forward.  So, in other words, there's going to be another day where that will

28  come up, and I'm not proposing that we need to spend time on that today.  Let me ask –

Heller
Ehrman LLP

12

1   let's assume for a moment that I do dismiss without prejudice the copyright claim and I will

2   allow some limited discovery during a period of time before the point at which re-pleading

3   would be required to determine whether or not there is a copyright claim to be presented

4   here.  Talk to me a moment about that scope issue that you had brought up before that you

5   think what plaintiff wants is far too broad.

6   **Ms. Athanacio:**  Your Honor, I believe it's far too broad because frankly we don't have a

7   firm understanding as to exactly what it is.  If they are interested in the final course

8   materials that they claim are infringing that is we're doing the same courses that they were

9   doing to Marygrove.  If they can identify that course and what their course material is for

10  attorneys-eyes only and we would do the same for attorneys-eyes only so we could then

11  literally line them up and sit down.  It's my belief and I think the correspondence suggests

12  that the suspicion.  And it is a suspicion.  And in our minds nothing more than that

13  obviously they disagree that we basically took their course material, changed the name and

14  put it out with Marygrove.  That is the driver of this entire case.  It really is.  And if we

15  could agree to identify exactly what the course materials are.  What are the courses or the

16  degrees that they take issue with and engage in exchange of those and stay the action as to

17  everything else and then have the parties either among themselves or before the Court once

18  there is an assessment to whether there is any there there.  That would be the appropriate

19  thing to do.

20  **The Court:**  Now they are contending that they don't as I understand it they don't know

21  exactly what your course offerings are so asking them to identify to you which courses they

22  are focused upon.  They need to know what your courses are.

23  **Ms. Athanacio:**  I apologize Your Honor.  I was not clear.  I believe that those particular

24  degree programs which within that have certain course materials.

25  **The Court:**  Okay.

26  **Ms. Athanacio:**  They can say this is the degree program that we have that we think you've

27  taken our course material and copied or have created something that is substantially similar

28

1   based on essentially copied then we sit down and try to have a reasonable discussion about

2   whether or not their fears have any validity.

3   **The Court:**  Right.  Mr. Kassabian.

4   **Mr. Kassabian:**  Your Honor, this suggestion I think doesn't get us where we need to be

5   and part of what was just alluded to was the fact that we need to identify our materials that

6   we believe they infringed with more particularity before they show us anything.  And I

7   think there's a couple of problems.  First off, with respect to the final course materials, that

8   term in and of itself is somewhat ambiguous because we do have materials that we could

9   consider final and they are in teachers hands now.  But beyond that, again in context of the

10  advertisement and the particular course that they termed "updated" those final course

11  materials as we understand it presently those aren't in teachers' hands.  And there's an

12  entire program there that it's the masters in the art of teaching with a focus on curriculum,

13  instruction and assessment.  That's pretty clear on its face what it is and it's in the pleading

14  for which they could articulate once we get into this process that Your Honor's directing us

15  to that those aren't final course materials.  These are all — there's a core program here Your

16  Honor of masters in this field of education around which there's areas of focus and those are

17  slight changes of courses and materials.  We're not talking about five different degrees each

18  with ten different courses.  At least that's our understanding.  Again that's our

19  understanding as to how our own materials work and based on our understanding of how

20  their materials work on what limited information we have.

21  **The Court:**  The problem is the more you articulate for me how much in the dark you are.

22  And you say it is because of their hiding the ball.  But how much in the dark you are it

23  really emphasizes that you don't have a clue whether or not they are violating your

24  copyrights.  That's the problem.  I mean you are saying this is no different than in any other

25  business where perhaps there's a certain level of distress with your client that employees

26  have left and gone elsewhere.  Not an unusual circumstance.  And you are saying they're in

27  the same business we are.  They have their own employees.  They must be violating our

28  intellectual property rights.  They must be.  Well, I hear nothing more than "must be."  And

1  the idea that well, we should be allowed to rummage around in all that they do in order to

2  figure out whether or not they violate our copyrights is you're going on a wing and a prayer

3  here. And that's where the more you tell me that you're in the dark, the less I'm convinced

4  you have a copyright claim. Or whether or not you know you have a copyright claim. That

5  concerns me.

6  **Mr. Kassabian:**      Well, Your Honor.

7  **The Court:**  And that concerns me to then say before you have a stronger understanding of

8  whether or not your copyrights are violated, to then say you're going to get to discovery

9  before you've formulated a viable claim, does run right into *Bell Atlantic*. And, I mean,

10  that's a problem.

11  **Mr. Kassabian**:  Well, Your Honor, I do want to address quickly that, first off, we don't

12  believe a stay of the rest of the claims which Your Honor has indicated have been

13  appropriately pled, those should be stayed while we proceed with the copyright.

14  **The Court**:  Well, I have to determine whether or not you're properly in this Court. And

15  that's why it's a little different than – if you were in a circumstance where one claim is

16  tenuous and needs to, the party needs to take a look to see whether or not they can replead,

17  but I know they can go forward with the other claims, that would be a different ball game.

18  But here, and again, what complicates it is, as I've indicated, I'm more inclined to think the

19  Lanham Act claim can go forward, and if that can go forward, then you're going to be here,

20  and in that circumstance, maybe things shift. But let's put that aside for a moment. I have

21  to make the initial determination of whether or not you're properly in federal court. And

22  that's why there's a basis for saying, we've got to get that determination made first. So it's

23  different than the ordinary case where we all know in this place you're going to go forward

24  with x number of claims. So, we don't have to stay anything, just go to it. It may be you're

25  in state court doing battle on some of these claims. So that's why I think it is – the Lanham

26  Act claim being a bit of a complication in that, but . . . .

27  **Mr. Kassabian**:  Well, Your Honor, I guess I jumped to the conclusion that we were on sort

28  of one side with respect to Lanham Act versus the copyright . . and I understand that . . . .

1  **The Court**:  No, I'm still _____.

2  **Mr. Kassabian**:  . . . but getting back to the main issue of here of how we move forward

3  with the copyright claim and our opportunity to articulate it through getting some initial

4  discovery, I tried to articulate specific programs by name, and those are referenced in the

5  complaint, and we're talking about final materials in the hands of teachers, that's one thing.

6  But I don't want to have that lost in the shuffle of other programs that, again in particular

7  this curriculum instruction and assessment focus where just because they're not in the hands

8  of teachers now they're not considered final.  And that they're . . . .

9  **The Court**:  Well, but my view is if you take a look at what's  -- however you want to

10  characterize it, what's deemed as final – you look at it, and you can't bring a copyright

11  claim based on that material, whether or not subsequent discovery, more extensive

12  discovery at some moment in time could give you a basis to bring that claim, that's just too

13  bad.  If you're not – if the basic materials that are out there are not going to be enough for

14  you to bring a copyright claim, I'm not much concerned about the fact that if you've got to

15  rummage around for a long, long time in every piece of paper they have maybe you could

16  come up with something, I mean, it's going to live or die on those materials.  Now, once

17  you've convinced me that you can bring a copyright claim, then discovery will be, you

18  know, more extensive and you can go into some of these issues and perhaps, you know, see

19  whether or not your claim is stronger than you initially thought it was.  But you've got to

20  convince me first you've got a claim there before I let you look at all the discovery that you

21  would look at in a case that's otherwise already properly before me.  I mean, you want to

22  put the cart before the horse here, and I'm not inclined to let you do that.  So, you need to

23  convince me a bit more that there's a copyright claim here.  Because until you do that, it's

24  not open sesame on the other side's materials.

25  **Mr. Kassabian**:  I understand, Your Honor.  Again, the one point I would emphasize is,

26  with the drafts, we do hold firm to the position that the drafts in and of themselves can

27  constitute infringement, and in moving forward, if Your Honor feels that you should

28  dismiss the copyright claim now but provide some limited avenue of discovery, we need to

Heller
Ehrman LLP

16

1  be clear on what goes forward.  And we're not looking to rummage through every scrap of

2  paper, but the question becomes what is a final and what is a draft?  And I can see them

3  taking an extremely narrow view in hoping to shield themselves from liability by focusing

4  on certain things and not on other things which would show infringement.

5  **The Court**:  Okay.  All right, go ahead.

6  **Ms. Athanacio**:  If I may, Your Honor, because I think my impression is, Your Honor,

7  fairly firm in the belief that as presently pled the copyright infringement claim does not

8  state a claim and you're inclined to dismiss that.  With regard to the Lanham Act, if that is

9  again the only other potential predicate, counsel for the plaintiffs have now articulated again

10  a different theory as to what is the advertisement.  As I understood it, and please correct me

11  if I'm wrong, the advertisement now is not something that Teachscape put together or put

12  on their website, what have you, but rather what they're talking about is, and it's the only

13  one that's identified in the complaint is that there's a reference to an advertisement on

14  Marygrove's published materials.

15  **The Court**:  Well, but . . . .

16  **Ms. Athanacio**:  And on Marygrove's website.

17  **The Court**:  Yes.

18  **Ms. Athanacio**:  Now, I understand, from what he said, they're suggesting that somehow

19  we had some influence on that or were partners with that.

20  **The Court**:  Right.

21  **Ms. Athanacio**:  However, number one, that is not in and of itself pled in this, that's not

22  what the claim is.

23  **The Court**:  What they plead, I'm looking at the paragraph that counsel has referred me to .

24  . . .

25  **Ms. Athanacio**:  Mm-hmm?

26  **The Court**:  "By marketing a degree offered through Marygrove as updated, Teachscape's

27  advertising was untrue and misleading and likely to deceive the public in that it implied that

28  Teachscape's courses were updates or improvements of courses previously offered."  Okay.

1  You may be able to say that that's totally absurd and you will be able to prevail that there

2  are no disputed facts that they did not indeed have advertising along the lines of the way it's

3  pled.  But that's the way it's pled.  You know.  You know what they're alleging, so I don't

4  understand why you think that that's deficient.

5  **Ms. Athanacio**:  Because every single case, there's not a single case that I'm aware of, nor

6  that I look that they cited to where you can say that somebody did an advertisement but you

7  can't say what that advertisement is.  Just saying we advertise it, we don't know if it's one

8  or ten.  And what they've articulated, in fact, is that it's an advertisement that is . . . .

9  **The Court**:  But your argument in response to their allegation is you want me to consider, it

10  sounds like, some factual argument you're making that you didn't have any advertisements.

11  Well, that's for another day.  They have pled, and they have an obligation to do so in good

12  faith, that you have advertising which is yours that is offered through Marygrove, so it may

13  say Marygrove on it but it's your advertising, they're alleging that Teachscape put it

14  together and that then Marygrove has it out there and it's reflected as updated.  Now, they

15  made that allegation.  And I can't get behind the allegation and consider your factual

16  argument.  The question is, does that put you on notice of what they're contending?  That's

17  the issue.  Not whether or not it's right or wrong or it's going to be proven in the end or not.

18  But it's unlike a copyright situation in my mind where you don't even know what materials

19  are that they say.  Here, they're saying you've got advertising and that advertising was

20  untrue and misleading.  Okay, well, if you show us in the case that you don't, so be it.

21  **Ms. Athanacio**:  But, Your Honor, the fundamental problem is, you can't – and there isn't a

22  case that supports the proposition.  You can't just say you advertised something.  You can't

23  . . . .

24  **The Court**:  You're talking about a specific advertisement that says updated, and your

25  argument is, that's not their advertisement, that's Marygrove's advertisement.  That's a fact

26  issue.

27  **Ms. Athanacio**:  Your Honor, but they had clarified, and they've stated in their own

28  complaint something that's factually inconsistent, and that's something that the pleading

1  requirement does not allow them to do.  They can take legally inconsistent positions, but

2  they cannot allege . . . .

3  **The Court**:  What's the inconsistency?

4  **Ms. Athanacio**:  The inconsistency is when they talk about in paragraph 56, the updated is

5  on Marygrove's website.  The CNA degree offered by Marygrove was described as updated

6  in Marygrove's published materials and on its website.

7  **The Court**:  Right.  You know they're saying that – they've told me a few moments ago –

8  that they will be on Marygrove website but the advertisement was theirs.  You may be able

9  to show that that's just totally wrong.  But you know what they're contending.

10  **Ms. Athanacio**:  Well, but, Your Honor, the problem with that – now that they – now that –

11  if in fact that is what they're saying, first of all, I'm entitled to brief it because I didn't know

12  that it was part of this, and there are cases that so – you can't just allege that you're

13  responsible for an advertisement that somebody else did.  This is Marygrove's website.

14  This is Marygrove's published materials.  There was case law that says you can't just say

15  well, you're responsible for it.  That's not sufficient to state a claim.

16  **The Court**:  On a motion to dismiss.

17  **Ms. Athanacio**:  On a motion to dismiss.  And I can find it for you.  But it wasn't

18  something that I was aware of that we were required to do.  But equally importantly . . .

19  **The Court**:  Why?  I mean, I see this as – I don't find this to be as confusing as you do.

20  They're making an allegation.  They're saying it's through Marygrove College.  Through

21  Marygrove College.  It means that they – as I read it – they claim that the advertisement was

22  put together and then the conduit for getting the advertisement out there is Marygrove

23  College.  I don't find that particularly confusing.  It may be wrong, but I don't find it

24  confusing.

25  **Ms. Athanacio**:  Well, then, that's perfectly fine.  But if that's the case, if that is in fact the

26  case, then I respectfully disagree with the Court's conclusion that you cannot find as a

27  matter of law that it is not actionable.  On a Marygrove website, of its degree program,

28  again, its degree, that its degree program is updated.  That is a completely different issue

than the suggestion that Teachscape had said that Cantor's courses or underlying data is, in fact, something different. That's a very different claim. And that, and the case law that we have shown, is very clear on that. That, one, on its face is true because Marygrove did have a degree program. There's no question about it. That was on the exact same subject. To be said that it's new, it's updated, it doesn't to suggest substantial similarity. The cases that we cite to, Your Honor, specifically talk about suggesting that something's improved, or new and improved, is not actionable. It is puffery at a minimum as a matter of law.

**The Court**:  Okay.  All right, I've heard what I need to hear and thank you very much.  I'll take it back and take a look at it and give you all an order.

**Mr. Kassabian**:  Thank you, Your Honor.

**Ms. Athanacio**:  Thank you, Your Honor.

**The Court**:  Thank you very much.

**END OF AUDIO RECORDING**

Heller
Ehrman LLP

20