# EXHIBIT C

ANNETTE L. HURST (State Bar No. 148738)
TRACY S. TODD (State Bar No. 172884)
DANIEL N. KASSABIAN (State Bar No. 215249)
ELENA M. DIMUZIO (State Bar No. 239953)
HELLER EHRMAN LLP
333 Bush Street
San Francisco, California 94104-2878
Telephone: +1.415.772.6000
Facsimile: +1.415.772.6268
E-mail:    Annette.Hurst@HellerEhrman.com
           Tracy.Todd@HellerEhrman.com
           Daniel.Kassabian@HellerEhrman.com
           Elena.DiMuzio@HellerEhrman.com

Attorneys for Plaintiffs
CANTER & ASSOCIATES, LLC., and
LAUREATE EDUCATION, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CANTER & ASSOCIATES, LLC, and LAUREATE EDUCATION, INC., | Case No.: |
| Plaintiffs, | **COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES** |
| v. | **JURY DEMAND** |
| TEACHSCAPE, INC., | |
| Defendant. | **CERTIFICATE OF INTERESTED PARTIES** |

Plaintiffs Canter & Associates, LLC (formerly Canter & Associates, Inc. and hereinafter referred to as "Canter") and Laureate Education, Inc. (hereinafter referred to as "Laureate") (hereinafter referred to collectively as "Plaintiffs") allege as follows:

## JURISDICTION AND VENUE

1.    The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338, and supplemental jurisdiction over the related state law claims alleged herein

Heller
Ehrman LLP

1  pursuant to 28 U.S.C. § 1367 because they form part of the same case or controversy as the

2  claims for false or misleading advertising under the Lanham Act and copyright infringement

3  under the Copyright Act.

4          2.      Venue is proper pursuant to 28 U.S.C. § 1391(b), because the Northern

5  District of California is a judicial district in which a substantial part of the events giving rise

6  to the claims alleged herein occurred, and because Defendant Teachscape, Inc.

7  ("Teachscape") has its principal place of business in this judicial district.

8                          **INTRADISTRICT ASSIGNMENT**

9          3.      Because this action is an Intellectual Property Action within the meaning of

10 Civil Local Rule 3-2(c), the action is to be assigned on a district-wide basis.

11                                **THE PARTIES**

12         4.      Canter is a corporation organized and existing under the laws of the State of

13 Delaware, with its principal place of business in Los Angeles, California.  Canter is

14 indirectly owned by Laureate.  Laureate is a corporation organized and existing under the

15 laws of the State of Maryland, with its principal place of business in Baltimore, Maryland.

16         5.      Plaintiffs are informed and believe that Teachscape is a Delaware corporation

17 with its principal place of business in San Francisco, California.

18            **FACTUAL BACKGROUND COMMON TO ALL CLAIMS**

19         6.      Laureate is a leader in the post-secondary education market and offers online

20 degree programs throughout the United States and internationally.  One of Laureate's main

21 focuses is on the development and marketing of distance-delivered education master's

22 degree programs and graduate courses for teachers.  Canter is a subsidiary of Laureate that

23 provides such degree programs and graduate courses.

24         7.      After approximately April 2004, Teachscape hired, or contracted with, at least

25 twelve former employees of Canter (collectively "Canter's Former Employees"), including:

26         (1)     Valerie Cameron, who was formerly employed by Canter as its

27 Marketing Manager, Distance Learning Masters Program and who, upon information and

28

Heller
Ehrman LLP

COMPLAINT FOR INJUNCTIVE RELIEF & DAMAGES; JURY DEMAND; CERTIFICATION

1  belief, afterward was or is currently employed by, or is an independent contractor of,
2  Teachscape;

3         (2)    Anna Crupi, who was formerly employed by Canter as its Marketing
4  Manager, Distance Learning Masters Program and who, upon information and belief,
5  afterward was or is currently employed by, or is an independent contractor of, Teachscape;

6         (3)    Barbara DeHart, who was formerly employed by Canter as its Program
7  Specialist in Product Development and who, upon information and belief, afterward was or
8  is currently employed by Teachscape;

9         (4)    Suddie Gossett, who was formerly employed by Canter as its Distance
10  Learning Masters Field Representative and who, upon information and belief, afterward
11  was or is currently employed by, or is an independent contractor of, Teachscape;

12         (5)    Melissa Jaivin, who was formerly employed by Canter as its Vice
13  President, Distance Learning Masters Programs and who, upon information and belief,
14  afterward was or is currently employed by Teachscape as a Vice President, Higher
15  Education;

16         (6)    Hae Young Kim, who was formerly employed by Canter as its Vice
17  President, Graduate Courses and who, upon information and belief, afterward was or is
18  currently employed by Teachscape as Vice President, Sales & Marketing, Higher
19  Education;

20         (7)    Stacey McNalley, who was formerly employed by Canter as its
21  Director of Enrollment Advisors and Director of Business Development and, upon
22  information and belief, afterward was or is currently employed by Teachscape;

23         (8)    Romario Pineda, who was formerly employed by Canter as its Manager
24  of Operations, Distance Learning Masters and who, upon information and belief, afterward
25  was or is currently employed by, or is an independent contractor of, Teachscape;

26         (9)    Brenda Pope-Ostrow, who was formerly employed by Canter as its
27  Director, Editorial Services and who, upon information and belief, afterward was or is
28  currently employed by Teachscape;

1        (10)    Mike Soules, who was formerly employed by Canter as its Vice

2  President, Business Development and who, on information and belief, afterward was or is

3  currently employed by Teachscape as General Manager, Higher Education;

4        (11)    Chip Swalley, who was formerly employed by Canter as its Course

5  Materials Coordinator, Inventory Planning & Fulfillment Services and who, upon

6  information and belief, was or is currently employed by, or is an independent contractor of,

7  Teachscape; and

8        (12)    Simone Vilandre, who was formerly employed by Canter as its

9  Distance Learning Masters Field Representative and who, upon information and belief,

10  afterward was or is currently employed by Teachscape.

11        8.     Among Canter's Former Employees are several of Canter's long term, key

12  employees who were integral to the development of Canter's education master's degree

13  programs and graduate courses for teachers. While employed there, Canter's Former

14  Employees were instrumental in every aspect of Canter's degree program development,

15  including contract negotiations, partnership development, market research, product

16  marketing, product development, and recruiting efforts with respect to Plaintiffs' teaching

17  degrees and graduate courses.

18        9.     Soon after its engagement of Canter's Former Employees, but unbeknownst to

19  Plaintiffs, Teachscape began to develop and market distance-delivered master's degree

20  programs and graduate courses for teachers that appear to be very similar, if not identical, to

21  those offered by Canter. Teachscape's marketing efforts appear to have been directed

22  solely at Canter's long-term university partners. Teachscape had no degree program or

23  graduate course business prior to its engagement of Canter's Former Employees.

24        10.    Canter invested years of market research and substantial financial resources

25  into an analysis of the educational marketplace. As part of this investment, Canter

26  developed two three-year strategic plans, with the assistance of some of Canter's Former

27  Employees. The strategic plans contained information regarding lucrative markets, as well

28  as those market segments that Canter had determined were not profitable to pursue. Also

Heller
Ehrman LLP

COMPLAINT FOR INJUNCTIVE RELIEF & DAMAGES; JURY DEMAND; CERTIFICATION

1   included in the strategic plan were methods for increasing enrollment and thus the

2   profitability of Canter's long-term relationships with various educational institutions.

3   Within months of formulating the most recent three-year plan, however, the majority of the

4   individuals responsible for its development had obtained positions at Teachscape.

5          11.    Although it had never before offered teachers' graduate level courses or

6   master's degrees in teaching, Teachscape began to negotiate agreements to offer these

7   programs to Canter's most profitable customers within months of hiring Canter's Former

8   Employees.  The programs Teachscape offered also were in the same areas as those offered

9   by Canter.  By using Canter's confidential information, Teachscape was able to focus only

10  on the partnerships and course offerings and programs that were profitable, thereby

11  avoiding the waste of time and resources on markets and programs that, through years of

12  research and analysis, Canter had already learned were not profitable.  Overnight,

13  Teachscape was able to enter a market that Canter had spent years to develop—by utilizing

14  the knowledge of Canter's Former Employees.

15         12.    In the course of developing relationships with its graduate course and

16  distance-delivered education master's degree program partners, Canter learned, at great cost

17  and effort, the particular requirements and preferences of each partner.  This information

18  was not generally known to the public, and Canter went to great lengths to keep this

19  information confidential.  Canter's Former Employees had access to this information during

20  their employment with Canter.

21         13.    Canter developed various Corporate Investment Proposals, incorporating

22  proprietary and confidential research that it had done regarding the importance of targeting

23  Reading, Literacy and Mathematics as degree program growth areas.  The access to this

24  information by Canter's Former Employees resulted solely from their employment with

25  Canter.  In addition, Canter developed several programs for master's degrees with

26  concentrations in Math and Reading ("Math and Reading degrees").  The development of

27  the Math and Reading degrees was accomplished at great cost and effort to Canter.

28  Although before hiring Canter's Former Employees, Teachscape had not offered a master's

Heller
Ehrman LLP

COMPLAINT FOR INJUNCTIVE RELIEF & DAMAGES; JURY DEMAND; CERTIFICATION

1  program in teaching, within months of employing them, Teachscape offered graduate level

2  courses and then a Masters in the Art of Teaching degree with a concentration in Reading

3  and Literacy and a concentration in Mathematics.  Plaintiffs are informed and believe that

4  Teachscape relied upon and/or otherwise used information obtained by Canter's Former

5  Employees as a result of their employment with Canter in creating the course program and

6  corresponding materials.

7        14.    Canter also developed a master's degree with a focus on Curriculum,

8  Instruction and Assessment (the "CIA degree").  The development of the CIA degree was

9  also accomplished at great cost and effort to Canter.  Although before hiring Canter's

10  Former Employees, Teachscape had not offered a master's degree program in teaching,

11  within months of employing them, Teachscape announced its intention to offer a graduate

12  level course and then a Masters in the Art of Teaching degree with a concentration in

13  Curriculum, Instruction and Assessment.  Plaintiffs are informed and believe that

14  Teachscape relied upon and/or otherwise used information obtained by Canter's Former

15  Employees as a result of their employment with Canter in creating this course and its

16  materials.

17        15.    Furthermore, upon information and belief, Teachscape immediately offered its

18  new programs to one of Canter's long-term partners, Marygrove College ("Marygrove").

19  The terms of the agreement between Marygrove and Canter were confidential.  Canter is

20  informed and believes that Teachscape and Canter's Former Employees misused Canter's

21  confidential information to offer Masters of Art in Teaching degree programs in partnership

22  with Marygrove.  Canter is further informed and believes that Teachscape and Canter's

23  Former Employees misused the confidential contract terms between Canter and Marygrove

24  to negotiate with Marygrove on more favorable terms.

25        16.    In or about September of 2006, Canter learned that Teachscape had

26  announced it would offer Math and Reading degrees through a partnership with Marygrove

27  beginning in 2007.  The contract between Canter and Marygrove required Marygrove to

28  first offer any such opportunity to Canter on the same terms that it proposed to offer to a

Heller
Ehrman LLP

6

1  third party. As no such offer had or ever did occur, this announcement reflected a breach by

2  Marygrove of its agreement with Canter. Moreover, at least one of Canter's Former

3  Employees was fully aware of this requirement in the terms of the Canter-Marygrove

4  contract.

5      17.    On or about September 2006, Canter also learned that Teachscape was

6  preparing to offer a CIA degree through Marygrove. This directly contravened the terms of

7  the Canter-Marygrove contract, which specified that the CIA degree would be supplied to

8  Marygrove exclusively by Canter during the contract's term. Jaivin and perhaps others

9  among Canter's Former Employees were fully aware of this term of the contract as a result

10 of their employment with Canter.

11     18.    Indeed, though it had never offered any master's degree programs before,

12 Teachscape marketed its CIA degree offered through Marygrove as "updated."

13     19.    By marketing a degree offered through Marygrove College as "updated,"

14 Teachscape's advertising was untrue and misleading and likely to deceive the public in that

15 it implied that Teachscape's courses were updates or improvements of courses previously

16 offered at Marygrove. In fact, the only degree courses previously offered through

17 Marygrove were those offered in partnership with Canter. Thus, any reference to "updated"

18 Teachscape materials was untrue and misleading.

19     20.    As a result of the conduct alleged above, Plaintiffs contacted both Teachscape

20 and Marygrove and inquired about the degree offerings Teachscape intended to launch

21 through Marygrove in early 2007. Marygrove denied the existence of any relationship

22 between Marygrove and Teachscape. Marygrove further stated that it had no knowledge of

23 any degree offerings by Teachscape through Marygrove that would be launched in 2007.

24 Teachscape, on the other hand, did not deny the relationship, but claimed that it was

25 unaware that its intended degree offerings through Marygrove in any way interfered with

26 any contractual obligations between Canter and Marygrove, despite the fact that several of

27 its key employees involved in the Marygrove transaction had negotiated the very terms at

28 issue.

21.     Despite taking the strategy of denying any wrongdoing, Teachscape nonetheless thereafter withdrew its offering of the CIA program for the year 2007, implicitly acknowledging that the offering of the CIA degree program was a breach of the Canter-Marygrove contract.  Upon information and belief, Teachscape also wrongfully induced Marygrove to breach its contract with Canter by agreeing to offer the Math and Reading programs on terms other than those offered to Canter, in violation of the parties' right of first refusal provision.

22.     Upon information and belief, Plaintiffs further believe that Teachscape has engaged in the conduct alleged herein with respect to some or all of Plaintiffs' other profitable contractual relationships.

23.     Canter's Former Employees were well aware of their duty of confidentiality to Canter.  Each and every one of Canter's Former Employees signed Confidentiality Agreements upon commencing work with Canter.  Furthermore, Teachscape knew or had reason to know that Canter's Former Employees had a continuing duty of confidentiality towards Canter, in part because it was so advised by Plaintiffs.

24.     The distance-delivered education master's degree programs and graduate courses developed by Laureate contain wholly original material and are copyrightable subject matter under the laws of the United States.  The following copyrights (hereinafter referred to collectively as "AudioVisual and Online Course Materials") are duly owned by and issued to Laureate:

(1)     Title: Elementary Mathematics: Data Analysis and Probability; Class: Literary Work; Registration No. TX 6-524-253; Registration Date: April 10, 2007;

(2)     Title: Number and Operations, Grades 6-8; Class: Literary Work; Registration No. TX 6-524-254; Registration Date: April 10, 2007;

(3)     Title: Geometry and Measurement, Grades 6-8; Class: Literary Work; Registration No. TX 6-524-255; Registration Date: April 10, 2007;

(4)     Title: Data Analysis and Probability, Grades 6-8; Class: Literary Work; Registration No. TX 6-524-256; Registration Date: April 10, 2007;

Heller
Ehrman LLP

8

COMPLAINT FOR INJUNCTIVE RELIEF & DAMAGES; JURY DEMAND; CERTIFICATION

1    (5)    Title: Algebra, Grades 6-8; Class: Literary Work; Registration No. TX
2  6-524-257; Registration Date: April 10, 2007;

3    (6)    Title: Designing Curriculum, Instruction and Assessment, Part 1;
4  Class: Literary Work; Registration No. TX 6-524-258; Registration Date: April 10, 2007;

5    (7)    Title: Elementary Mathematics: Algebra; Class: Literary Work;
6  Registration No. TX 6-524-259; Registration Date: April 10, 2007;

7    (8)    Title: Elementary Mathematics: Geometry and Measurement; Class:
8  Literary Work; Registration No. TX 6-524-260; Registration Date: April 10, 2007;

9    (9)    Title: Designing Curriculum, Instruction and Assessment, Part 2;
10 Class: Literary Work; Registration No. TX 6-524-261; Registration Date: April 10, 2007;

11    (10)    Title: Elementary Mathematics: Number and Operations; Class:
12 Literary Work; Registration No. TX 6-524-262; Registration Date: April 10, 2007;

13    (11)    Title: Supporting the Struggling Reader; Class: Literary Work;
14 Registration No. TX 6-524-263; Registration Date: April 10, 2007;

15    (12)    Title: Planning and Managing the Classroom Literacy Program; Class:
16 Literary Work; Registration No. TX 6-524-264; Registration Date: April 10, 2007;

17    (13)    Title: Instructional Models and Strategies; Class: Literary Work;
18 Registration No. TX 6-524-265; Registration Date: April 10, 2007;

19    (14)    Title: Foundation of Reading and Literacy Development; Class:
20 Literary Work; Registration No. TX 6-524-266; Registration Date: April 10, 2007;

21    (15)    Title: Strategies for Literacy Instruction, Part 1; Class: Literary Work;
22 Registration No. TX 6-524-267; Registration Date: April 10, 2007;

23    (16)    Title: Strategies for Literacy Instruction, Part 2; Class: Literary Work;
24 Registration No. TX 6-524-268; Registration Date: April 10, 2007;

25    (17)    Title: Teacher As Professional; Class: Literary Work; Registration No.
26 TX 6-524-269; Registration Date: April 10, 2007;

27    (18)    Title: Collaborative Action Research; Class: Literary Work;
28 Registration No. TX 6-524-270; Registration Date: April 10, 2007;

Heller
Ehrman LLP

9

(19)    Title: Habits of Mind: Thinking Skills to Promote Self-Directed Learning; Class: Literary Work; Registration No. TX 6-524-271; Registration Date: April 10, 2007;

(20)    Title: Effective Teaching Using Learning Styles and Multiple Intelligences; Class: Literary Work; Registration No. TX 6-524-272; Registration Date: April 10, 2007;

(21)    Title: Habits of Mind: Thinking Skills to Promote Self-Directed Learning; Class: Performing Arts; Registration No. PA 1-367-170; Registration Date: April 10, 2007;

(22)    Title: Collaborative Action Research; Class: Performing Arts; Registration No. PA 1-367-171; Registration Date: April 10, 2007;

(23)    Title: Effective Teaching Using Learning Styles and Multiple Intelligences; Class: Performing Arts; Registration No. PA 1-367-172; Registration Date: April 10, 2007;

(24)    Title: Teacher As Professional; Class: Performing Arts; Registration No. PA 1-367-173; Registration Date: April 10, 2007;

(25)    Title: Instructional Models and Strategies; Class: Performing Arts; Registration No. PA 1-367-174; Registration Date: April 10, 2007;

(26)    Title: Foundations of Reading and Literacy; Class: Performing Arts; Registration No. PA 1-367-175; Registration Date: April 10, 2007;

(27)    Title: Strategies for Literacy Instruction, Part 1; Class: Performing Arts; Registration No. PA 1-367-176; Registration Date: April 10, 2007;

(28)    Title: Strategies for Literacy Instruction, Part 2; Class: Performing Arts; registration number PA 1-367-177; Registration Date: April 10, 2007;

(29)    Title: Supporting the Struggling Reader; Class: Performing Arts; Registration No. PA 1-367-178; Registration Date: April 10, 2007;

(30)    Title: Planning and Managing the Classroom Literacy Program; Class: Performing Arts; Registration No. PA 1-367-179; Registration Date: April 10, 2007;

Heller
Ehrman LLP

10

1    (31)   Title: Designing Curriculum, Instruction, and Assessment, Part 2;

2    Class: Performing Arts; Registration No. PA 1-367-180; Registration Date: April 10, 2007;

3    (32)   Title: Elementary Mathematics: Number and Operations, Grades K-5;

4    Class: Performing Arts; Registration No. PA 1-367-181; Registration Date: April 10, 2007;

5    (33)   Title: Elementary Mathematics: Geometry and Measurement, Grades

6    K-5; Class: Performing Arts; Registration No. PA 1-367-182; Registration Date: April 10,

7    2007;

8    (34)   Title: Algebra, Grades K-5; Class: Performing Arts; Registration No.

9    PA 1-367-183; Registration Date: April 10, 2007;

10    (35)   Title: Elementary Mathematics: Data Analysis and Probability, Grades

11    K-5; Class: Performing Arts; Registration No. PA 1-367-184; Registration Date: April 10,

12    2007;

13    (36)   Title: Number and Operations, Grades 6-8; Class: Performing Arts;

14    registration number PA 1-367-185; Registration Date: April 10, 2007;

15    (37)   Title: Geometry and Measurement, Grades 6-8; Class: Performing

16    Arts; Registration No. PA 1-367-186; Registration Date: April 10, 2007;

17    (38)   Title: Algebra, Grades 6-8; Class: Performing Arts; Registration No.

18    PA 1-367-187; Registration Date: April 10, 2007;

19    (39)   Title: Data Analysis and Probability, Grades 6-8; Class: Performing

20    Arts; Registration No. PA 1-367-188; Registration Date: April 10, 2007; and

21    (40)   Title: Designing Curriculum, Instruction, and Assessment, Part 1;

22    Class: Performing Arts; Registration No. PA 1-367-790; Registration Date: April 10, 2007.

23    25.   Teachscape does not have authorization, consent, or license to reproduce,

24    make derivative works of, or otherwise utilize Laureate's copyrighted AudioVisual and

25    Online Course Materials described in paragraph 24 above.

26    26.   Teachscape's course materials are not available to the general public.  Instead,

27    they are available only to those students who are admitted to the Marygrove degree

28    programs or graduate courses.  Absent consent, the only means by which Laureate could

Heller
Ehrman LLP

11

1  obtain such materials was through a pretext, which Laureate deemed inappropriate.

2  Laureate therefore has repeatedly requested that Teachscape provide to Plaintiffs, pursuant

3  to a confidentiality agreement if necessary, copies of its materials, including all drafts and

4  final product, to be used in its education master's degree programs and graduate courses for

5  teachers.  The purpose of the request was to allow Plaintiffs to evaluate whether there has

6  been an infringement of Laureate's copyrighted materials.  Teachscape has consistently

7  refused to provide any drafts, or to provide any final course materials upon reasonable

8  terms.  Instead, Teachscape has repeatedly insisted upon unreasonable conditions to such a

9  review.

10      27.      Accordingly, and particularly in light of the false advertising, trade secret

11  misappropriation, and other torts of Teachscape, Laureate has conducted a reasonable

12  pre-filing inquiry into the similarity of Teachscape's materials to its own copyrighted

13  works.  Counsel for Laureate attempted to negotiate with counsel for Teachscape to obtain

14  copies and drafts of the various course materials.  Teachscape provided only vague and

15  limited responses that conditioned any consideration of an exchange of materials upon

16  Laureate meeting such unreasonable and unnecessary demands, that it was tantamount to a

17  refusal to provide reasonable access to the materials.  Laureate has therefore met its duty of

18  reasonable inquiry imposed by Federal Rule of Civil Procedure 11.  *See Hoffman-LaRoche*

19  *Inc. v Invamed Inc.*, 213 F.3d 1359 (Fed. Cir. 2000); *Intamin, Ltd. v. Magnetar Techs.*

20  *Corp.*, No. 05-1546, -1579 (Fed. Cir. Apr. 18, 2007).

21

22                    **FIRST CLAIM FOR RELIEF**

23  **(By Canter Against Teachscape For Misappropriation Of Trade Secrets
    In Violation Of California Civil Code §§ 3426 *et seq.*)**

24      28.      Paragraphs 1 through 27 above are hereby incorporated by reference.

25      29.      Canter was in possession of trade secrets which consisted of, among other

26  things, a proprietary methodology for identifying appropriate markets for its products,

27  information regarding market segmentation, design of distance learning degree programs

28  and methods for their accreditation, enrollment systems, and specific customer contacts and

preferences. All of these trade secrets provided Canter with both short- and long-term advantages in the marketplace and were of substantial economic value to Canter.

30. Canter took great efforts to protect these valuable trade secrets, including but not limited to requiring employees to sign agreements not to disclose Canter's confidential information without express permission.

31. Canter's Former Employees had access to these trade secrets solely as a result of their employment with Canter.

32. During its engagement of Canter's Former Employees, Teachscape misappropriated the above-described trade secrets of Plaintiff by taking Canter's proprietary knowledge about lucrative markets and using that knowledge without permission to market Teachscape's competing services to Canter's current educational partners.

33. As a proximate result of the above-described misappropriations, Teachscape was, and is being, unjustly enriched at the expense of Canter.

34. As a direct and proximate result of Teachscape's misappropriation of Canter's trade secrets, Canter has suffered irreparable harm and will continue to suffer irreparable injury that cannot be adequately remedied at law. Accordingly, Plaintiffs pray that Teachscape, and its officers, agents, and employees, and all persons acting in concert with it, be enjoined from engaging in any further such conduct.

35. Teachscape knew that its conduct would directly affect and impinge upon Canter and its business, reduce its profits, and that it was certain that Canter would suffer harm. Teachscape knew that Canter would rely upon Canter's Former Employees' purported loyalty and confidentiality agreements not to misuse the confidential, proprietary information of Canter, and knew that it was in the best position to know the consequences of its intended actions, and knew that injuries would likely be suffered by Canter. Notwithstanding this knowledge, Teachscape, in willful and conscious disregard of the rights of Canter, repeatedly and intentionally misappropriated and misused Canter's confidential, trade secret information to cause Canter harm and to advance Teachscape's own pecuniary and other interests.

36.    Teachscape's acts and omissions were so willful and malicious, and in such reckless and conscious disregard of the rights of Canter so as to justify the award of exemplary and punitive damages against Teachscape pursuant to California Civil Code § 3426.3, in an amount to be determined at trial, but sufficient to punish such actions and to deter such actions by Teachscape in the future.

37.    Teachscape's acts and omissions were so willful and malicious, and in such reckless and conscious disregard of the rights of Canter so as to justify the award of Canter's reasonable attorneys' fees, pursuant to California Civil Code § 3426.4.

## SECOND CLAIM FOR RELIEF

**(By Canter Against Teachscape For Intentional Interference With Prospective Economic Relationship In Violation Of California Law)**

38.    Paragraphs 1 through 27 above are hereby incorporated by reference.

39.    Canter maintains client relationships and other economic relationships, including prospective client relationships, with a number of educational institutions.  These relationships hold the probability of future economic benefit to Canter.

40.    Teachscape knew or had reason to know of Canter's relationships with its partners.

41.    Teachscape used Canter's confidential information about its relationships with its business partners to gain an unlawful competitive advantage, and to induce at least one of Canter's existing partners to reject a Canter program and to replace it with a substantially similar program offered by Teachscape.

42.    These acts were intentional and wrongful, and designed to disrupt Canter's relationship with its clients and prospective clients.

43.    Canter's economic relationship with such clients and prospective clients were actually disrupted as a result of Teachscape's wrongful acts.

44.    As a direct and proximate result of Teachscape's intentional, wrongful, and unjustified conduct, Canter's business prospects and relationships with clients have been

1  damaged. Canter has accordingly suffered and will continue to suffer damages directly and

2  proximately caused by Teachscape's conduct in an amount to be proven at trial.

3      45.    As a direct and proximate result of Teachscape's interference with Canter's

4  prospective business, Canter has suffered irreparable harm and will continue to suffer

5  irreparable injury that cannot be adequately remedied at law. Accordingly, Canter prays

6  that Teachscape, and its officers, agents and employees, and all persons acting in concert

7  with it, be enjoined from engaging in any further such conduct.

8      46.    Teachscape's actions as described above comprise a series of intentional

9  breaches of Canter's confidences with the intention on the part of Teachscape of thereby

10  depriving Canter of property or legal rights or otherwise causing injury to Canter.

11  Teachscape's conduct as described above was despicable conduct that subjected Canter to

12  cruel and unjust hardship, and that was carried out by Teachscape with a willful and

13  conscious disregard of the rights of Canter, notwithstanding Teachscape's knowledge of its

14  intended actions and the damages that would be suffered by Canter as a result of the

15  conduct of Teachscape.

16      47.    Teachscape knew that its conduct would directly affect and impinge upon

17  Canter and its business, reduce its profits, and that it was certain that Canter would suffer

18  harm. Teachscape knew that Canter would rely upon Canter's Former Employees'

19  purported loyalty and agreement not to misuse the confidential, proprietary information of

20  Canter, and knew that Teachscape itself was in the best position to know the consequences

21  of its intended actions, and knew that injuries would likely be suffered by Canter.

22  Notwithstanding this knowledge, Teachscape, in willful and conscious disregard of the

23  rights of Canter, repeatedly and intentionally misappropriated and misused Canter's

24  confidential, trade secret information to cause Canter harm and to advance Teachscape's

25  own pecuniary and other interests.

26      48.    Teachscape's acts and omissions were so willful and malicious, and in such

27  reckless and conscious disregard of the rights of Canter so as to justify the award of

28  exemplary and punitive damages against Teachscape pursuant to California Civil Code

Heller
Ehrman LLP

15

COMPLAINT FOR INJUNCTIVE RELIEF & DAMAGES; JURY DEMAND; CERTIFICATION

1 § 3426.3, in an amount to be determined at trial, but sufficient to punish such actions and to

2 deter such actions by Teachscape in the future.

3       49.     Teachscape's acts and omissions were so willful and malicious, and in such

4 reckless and conscious disregard of the rights of Canter so as to justify the award of

5 Canter's reasonable attorneys' fees, pursuant to California Civil Code § 3426.4.

6

7                            **THIRD CLAIM FOR RELIEF**

8            **(By Canter Against Teachscape For Intentional Interference**
             **With Contract In Violation Of California Law)**

9       50.     Paragraphs 1 through 27 above are hereby incorporated by reference.

10      51.     Canter and Marygrove had entered into a contract for provision of the CIA

11 degree.  This contract guaranteed Canter the right of first refusal if Marygrove decided to

12 offer additional degree programs, which would include Math and Reading programs.  In or

13 about 2005, Marygrove and Canter were in fact exploring the possibility of offering a

14 Reading degree program.  Marygrove abruptly withdrew from those negotiations.

15 Subsequently, Canter learned that Teachscape would be offering this degree in partnership

16 with Marygrove.

17      52.     Teachscape knew of these valid contracts between Canter and Marygrove, and

18 was in possession of confidential information about the terms of these contracts by virtue of

19 the Canter's Former Employees' employment with Canter.

20      53.     Teachscape used Canter's confidential information in order to disrupt the

21 contractual relationship between Canter and Marygrove, by inducing Marygrove to attach

22 unacceptable conditions to any offer for Canter to partner with Marygrove in the offering of

23 Math and Reading degree programs.

24      54.     Canter and Marygrove had entered into a contract for provision of CIA

25 degrees.

26      55.     Canter was informed that Marygrove would offer a CIA degree, offered by

27 Teachscape, starting in January of 2007.

28

Heller
Ehrman LLP

COMPLAINT FOR INJUNCTIVE RELIEF & DAMAGES; JURY DEMAND; CERTIFICATION

56.    The CIA degree offered by Marygrove was described as "updated" in Marygrove's published materials and on its website, and Canter is informed and believes that Teachscape's degree essentially copies the program offered by Canter.

57.    Canter questioned Marygrove about the "updated" CIA degree program, and was informed that it knew nothing about the CIA degree being marketed by Teachscape.

58.    Canter questioned Teachscape about the CIA degree program it was apparently offering through Marygrove, and was told that it was unaware that such offering would violate the terms of any contract between Marygrove and Canter.

59.    These misrepresentations and falsehoods, perpetrated by Marygrove and Teachscape, have damaged Canter.

60.    Upon information and belief, Marygrove does not intend to renew its contract for the provision of the CIA degree with Canter.

61.    Teachscape's interference with a contractual relationship has damaged Canter in an amount to be proven at trial.

62.    Teachscape's acts and omissions were so willful and malicious, and in such reckless and conscious disregard of the rights of Canter so as to justify the award of exemplary and punitive damages against Teachscape pursuant to California Civil Code § 3426.3, in an amount to be determined at trial, but sufficient to punish such actions and to deter such actions by Teachscape in the future.

63.    Teachscape's acts and omissions were so willful and malicious, and in such reckless and conscious disregard of the rights of Canter so as to justify the award of Canter's reasonable attorneys' fees, pursuant to California Civil Code § 3426.4.

## FOURTH CLAIM FOR RELIEF

**(By Canter Against Teachscape For Untrue or Misleading Advertising
In Violation Of California Business & Professions Code §§ 17500 *et seq.*)**

64.    Paragraphs 1 through 27 above are hereby incorporated by reference.

65.    The acts described above constitute untrue or misleading advertising by Teachscape in violation of California Business & Professions Code §§ 17500 *et seq.*

Specifically, beginning on or about September 2006, Teachscape engaged in advertising to the public its offering of "updated" courses through Marygrove. Thereafter and through the present, Teachscape has described its new relationship with Marygrove in an untrue or misleading way for the purpose of misleading the public to believe that it has a long and successful track record in offering these programs through Marygrove, when in fact it does not.

66. By marketing the programs as "updated" and by implying a long-term successful partnership with Marygrove, Teachscape's advertising was untrue and misleading and likely to deceive the public in that it states that Teachscape's courses were updated courses previously offered at Marygrove. Upon information and belief, Teachscape's false and misleading advertising aroused suspicions that Teachscape was actually using Canter's intellectual property and/or leveraging off its brand name. Upon information and belief, Teachscape's false and misleading advertising caused actual confusion to prospective and current Marygrove students.

67. In making and disseminating the statements herein alleged, Teachscape knew, or by exercise of reasonable care should have known, that the statements were untrue or misleading and so acted in violation of California Business & Professions Code §§ 17500 *et seq.*

68. Canter is entitled to restitution for the benefits improperly garnered by Teachscape as a direct and proximate result of its acts of untrue or misleading advertising.

## FIFTH CLAIM FOR RELIEF

**(By Laureate And Canter Against Teachscape For Unfair Competition In Violation Of California Business & Professions Code §§ 17200 *et seq.*)**

69. Paragraphs 1 through 27 above are hereby incorporated by reference.

70. The acts described above constitute unfair competition by Teachscape in violation of California Business & Professions Code §§ 17200 *et seq.* Specifically, Teachscape's actions constitute efforts to misappropriate and misuse Canter's confidential

1  and proprietary information in furtherance of Teachscape's efforts to develop a competing

2  business.

3      71.    Furthermore, Teachscape's advertising, as alleged above, constitutes unfair

4  competition in violation of California Business & Professions Code §§ 17200 *et seq.*

5      72.    Teachscape has engaged in and continues to engage in unlawful, fraudulent

6  and unfair business practices.  Teachscape's business practices as set forth above constitute

7  unfair competition within the meaning of Business & Professions Code §§ 17200 *et seq.*  In

8  addition, these practices are immoral and unscrupulous and have been undertaken in

9  violation of policies established in the California Civil Code and California Labor Code.

10  Further, Teachscape's business practices serve no legitimate business purpose, and if any

11  purpose were found, the benefit to any alleged legitimate business interests of Teachscape is

12  far outweighed by the substantial harm to Plaintiffs that has resulted from the practices.

13      73.    Plaintiffs are entitled to restitution for the benefits improperly garnered by

14  Teachscape as a direct and proximate result of its acts of unfair competition.

15      74.    As a direct and proximate result of Teachscape's unfair conduct described

16  above, Plaintiffs have suffered irreparable harm, and will continue to suffer irreparable

17  injury that cannot be adequately remedied at law.  Accordingly, Plaintiffs pray that

18  Teachscape be enjoined from engaging in any further such acts of unfair competition, and

19  that Teachscape be ordered to disgorge all ill-gotten profits to Plaintiffs and make

20  restitution to Plaintiffs.

21

22  **SIXTH CLAIM FOR RELIEF**

23  **(By Canter Against Teachscape For False Or Misleading Advertising
    Pursuant To The Lanham Act § 43(a), 15 U.S.C. § 1125(a) )**

24      75.    Paragraphs 1 through 27 above are hereby incorporated by reference.

25      76.    Teachscape's advertising of the CIA degree courses was false and misleading

26  in that they characterized as "updated" courses which had never previously been offered by

27  Marygrove.

28

Heller
Ehrman LLP

19

77.    The false and misleading advertising occurred in interstate commerce in connection with the commercial advertising of services offered by Teachscape and Canter.

78.    Teachscape's description of the degree offerings was likely to and in fact did mislead the public regarding the courses offered, through Marygrove, by Canter.

79.    Canter has been damaged by the false and misleading advertisements disseminated by Teachscape, as alleged above.

80.    In making and disseminating the statements herein alleged, Teachscape knew, or by exercise of reasonable care should have known, that the statements were untrue or misleading and so acted in violation of the Lanham Act § 43(a), 15 U.S.C. § 1125(a).

81.    Canter has been directly and proximately damaged by Teachscape's actions.

82.    Canter is entitled to damages in an amount to be proven at trial.

## SEVENTH CLAIM FOR RELIEF

### (By Laureate Against Teachscape For Copyright Infringement Pursuant To The Copyright Act, 17 U.S.C. §§ 501 *et seq.*)

83.    Paragraphs 1 through 27 above are hereby incorporated by reference.

84.    Laureate is informed and believes and thereon alleges that, at least as of January 2007, Teachscape has deliberately and willfully infringed Laureate's copyrights in the AudioVisual and Online Course Materials by making copies and derivative works therefrom.

85.    Due to Teachscape's refusal to provide access to the materials at issue despite demand, combined with other acts alleged herein, Laureate has a reasonable basis to infer that Teachscape is deliberately and willfully infringing on Laureate's registered copyrights, pursuant to the Copyright Act, 17 U.S.C. §§ 101 *et seq.*

86.    The acts of Teachscape infringe, and will continue to infringe, Laureate's copyrights in and relating to the AudioVisual and Online Course Materials.

87.    Teachscape's conduct has deprived, and continues to deprive, Laureate of the benefits of licensing the AudioVisual and Online Course Materials.  Teachscape has further

1  been unjustly enriched by its copying and use of the AudioVisual and Online Course

2  Materials, and works derived therefrom in its business.

3      88.    By reason of Teachscape's acts alleged herein, Laureate has suffered damage

4  in an amount to be proved at trial.

5      89.    Teachscape threatens to continue to do the acts complained of herein, and

6  unless restrained and enjoined will continue to do so, all to Laureate's irreparable damage.

7  Laureate does not have an adequate remedy at law to compensate it for injuries threatened.

8  Laureate is therefore entitled to an injunction restraining Teachscape, its officers, agents and

9  employees, and all persons acting in concert with it, from engaging in further acts in

10 violation of copyright law.

11     90.    Laureate is informed and believes and thereon alleges that Teachscape's

12 infringement of Laureate's copyrights was and is willful and deliberate, entitling Laureate

13 to recover enhanced damages and its attorneys' fees.

14                          **PRAYER FOR RELIEF**

15     91.    WHEREFORE, Plaintiffs pray as follows:

16     A.    For a preliminary and permanent injunction prohibiting Teachscape

17 from directly or indirectly using, selling, offering to sell, licensing, offering to license,

18 disclosing or distributing in any manner Plaintiffs' confidential, proprietary information and

19 trade secrets, or making any derivative works therefrom;

20     B.    For a preliminary and permanent injunction prohibiting Teachscape

21 from wrongfully interfering with Plaintiffs' business relations;

22     C.    For injunctive relief prohibiting Teachscape from continuing to engage

23 in the unlawful conduct alleged herein;

24     D.    For a preliminary and permanent injunction prohibiting Teachscape

25 and all persons or entities acting in concert with it, from infringing Laureate's copyrights,

26 including reproducing or distributing materials which infringe Laureate's copyrights in the

27 AudioVisual and Online Materials, and making derivative works thereof;

28

Heller
Ehrman LLP

                                    21

1        E.     For entry of relief immediately impounding all copyright infringing

2    articles in Teachscape's possession;

3        F.     For general and special damages according to proof at trial;

4        G.     For disgorgement of all profits;

5        H.     For restitution of ill-gotten gains;

6        I.     For a finding that the copyright infringement by Teachscape was

7    willful, and for an additional award for its willful infringement;

8        J.     For an award to Plaintiffs of their actual damages and additional profits

9    of the infringer, or statutory damages resulting from Teachscape's copyright infringement;

10       H.     For exemplary and punitive damages;

11       I.     For attorneys' fees and costs of suit incurred as a result of this lawsuit;

12   and

13       J.     Award of such other, further, and different relief as the Court deems

14   proper under the circumstances.

15   Dated: June 19, 2007          Respectfully submitted,

16                        HELLER EHRMAN LLP

17

18                        By _Mary D. Todd_____

19                           TRACY S. TODD

                     Attorneys for Plaintiffs

20                        CANTER AND ASSOCIATES, LLC and
                     LAUREATE EDUCATION, INC.

21

22

23

24

25

26

27

28

## DEMAND FOR JURY TRIAL

In accordance with Federal Rule of Civil Procedure 38(b), Plaintiffs Canter & Associates, LLC and Laureate Education, Inc. demand a trial by jury on all issues triable by a jury.

Dated: June 19, 2007

Respectfully submitted,

HELLER EHRMAN LLP

By _____
TRACY S. TODD
Attorneys for Plaintiffs
CANTER AND ASSOCIATES, LLC and
LAUREATE EDUCATION, INC.

## CERTIFICATE OF INTERESTED ENTITIES OR PERSONS

In accordance with Civil Local Rule 3-16, the undersigned certifies that the following listed persons, associations of persons, firms, partnerships, corporations (including parent corporations) or other entities (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding:

Plaintiff Canter & Associates, LLC is a wholly owned subsidiary of Plaintiff Laureate Education, Inc.; and Plaintiff Laureate Education, Inc. is a publicly traded company without any individual or entity owning 10% or greater.

Dated: June 19, 2007

Respectfully submitted,

HELLER EHRMAN LLP

By _____
TRACY S. TODD
Attorneys for Plaintiffs
CANTER AND ASSOCIATES, LLC and
LAUREATE EDUCATION, INC.

Heller
Ehrman LLP

23

COMPLAINT FOR INJUNCTIVE RELIEF & DAMAGES; JURY DEMAND; CERTIFICATION