# EXHIBIT H

ENDORSED
F I L E D
San Francisco County Superior Court

JAN 2 5 2008

GORDON PARK-LI, Clerk
BY:    CRISTINA E. BAUTISTA
Deputy Clerk

CASE MANAGEMENT CONFERENCE SET

JUN 2 7 2008 - 9:00 AM

DEPARTMENT 212

1  ANNETTE L. HURST (State Bar No. 148738)
   DANIEL N. KASSABIAN (State Bar No. 215249)
2  ELENA M. DIMUZIO (State Bar No. 239953)
3  HELLER EHRMAN LLP
   333 Bush Street
4  San Francisco, California  94104-2878
   Telephone:  +1.415.772.6000
5  Facsimile:  +1.415.772.6268
6  E-mail:    Annette.Hurst@HellerEhrman.com
              Daniel.Kassabian@HellerEhrman.com
7              Elena.DiMuzio@HellerEhrman.com

8  Attorneys for Plaintiff
9  CANTER & ASSOCIATES, LLC

10        SUPERIOR COURT OF THE STATE OF CALIFORNIA

11           CITY AND COUNTY OF SAN FRANCISCO

12              (Unlimited Civil Case)          CGC08-471311

13
   CANTER & ASSOCIATES, LLC,          Case No.:
14  a Delaware corporation,
15                                      COMPLAINT FOR INJUNCTIVE
                          Plaintiff,    RELIEF, RESTITUTION AND
16                                      DAMAGES ARISING FROM:
                                        (1) MISAPPROPRIATION OF
17        v.                                TRADE SECRETS;
                                        (2) INTENTIONAL
18  TEACHSCAPE, INC., a Delaware corporation,      INTERFERENCE
    and DOES 1-15, inclusive,              WITH PROSPECTIVE
19                                          ECONOMIC RELATIONSHIP;
                                        (3) INTENTIONAL
20                        Defendants.       INTERFERENCE WITH
                                            CONTRACT;
21
22                                      (4) UNTRUE OR MISLEADING
                                            ADVERTISING; AND
23                                      (5) UNFAIR COMPETITION;

24                                      Business Tort/Unfair Business Practice
25
26                                      *Amount Demanded Exceeds $25,000*
27
28

Heller
Ehrman LLP

COMPLAINT FOR INJUNCTIVE RELIEF, RESTITUTION & DAMAGES

1    Plaintiff Canter & Associates, LLC ("Canter") alleges:

2                                **THE PARTIES**

3        1.    Canter, formerly Canter & Associates, Inc. is, and at all times mentioned in

4    the complaint has been, a corporation organized and existing under the laws of the State of

5    Delaware and qualified to do business in California, with its principal place of business in

6    the County of Los Angeles, in the State of California.

7        2.    Defendant Teachscape, Inc. ("Teachscape") is, and at all times mentioned in

8    the complaint has been, a corporation organized and existing under the laws of the State of

9    Delaware, with its principal place of business in the City and County of San Francisco, in

10   the State of California.

11       3.    Canter does not presently know the true names and capacities of the

12   defendants sued herein as Does 1 through 15, inclusive (each of them and collectively,

13   "Does"). Canter will seek leave of court to amend the complaint to allege Does' true names

14   and capacities as soon as Canter ascertains them.

15       4.    At all times mentioned herein, each defendant was the agent and/or employee

16   of each and all the other defendants and was acting in the course of such agency and/or

17   employment. (Hereinafter, Teachscape and Does are referred to collectively as

18   "Defendants.")

19   **FACTUAL BACKGROUND COMMON TO ALL CAUSES OF ACTION**

20   **Canter's Position In The Marketplace Before Defendants' Wrongful Conduct**

21       5.    Canter has developed and marketed distance-delivered education master's

22   degree programs and graduate courses for teachers since 1989. One example of Canter's

23   distance-delivered education master's degree program offerings is its Master in the Art of

24   Teaching ("MAT") program offered through one of its educational institution partners,

25   Marygrove College ("Marygrove"), which dates back to 1994. The particular terms of its

26   contractual relationship with Marygrove are confidential.

27       6.    During its relationship with Marygrove, Canter developed a specialized

28   master's degree program, and in particular a MAT degree program with a focus on

Heller
Ehrman LLP

                                        1

Curriculum, Instruction and Assessment ("Canter's CIA Degree Program") that was offered to teachers through Marygrove. The development of Canter's CIA Degree Program was accomplished at great cost and effort to Canter.

7. In the course of developing relationships with its educational institution partners for the delivery of distance-delivered education master's degree and graduate course programs, Canter learned, at great cost and effort, the particular requirements and preferences of each partner, and developed proprietary methods of obtaining accreditation for its distance-learning course and degree programs. This information was not generally known to the public, and Canter went to great lengths to keep this information confidential. Canter continues to use this information in its efforts to expand and extend its relationships with its educational institution partners.

8. Also as part of its distance-delivered education business, Canter invested years of market research and substantial financial resources into an analysis of the educational marketplace. As part of this investment, in 2003 Canter developed two confidential three-year strategic plans. The strategic plans contained information regarding lucrative markets, as well as those market segments that Canter had determined were not profitable to pursue. Also included in the strategic plans were methods for increasing enrollment and thus the profitability of Canter's long-term relationships with various educational institution partners, such as Marygrove.

9. In the 2001 through 2003 time-frame, Canter developed various confidential Corporate Investment Proposals, incorporating proprietary and confidential research that it had done regarding the importance of targeting reading, literacy, and mathematics as degree program growth areas. Pursuant to these proposals, in the 2001 through 2004 time-frame Canter developed several specialized programs for master's degrees in these areas, including a specialization in Elementary Reading and Literacy, for Grades K-6 ("Canter's Reading Degree Program"), and two specializations in Mathematics, with one for Grades K-5 and one for Grades 6-8 (collectively, "Canter's Math Degree Programs"), in addition to the preexisting Canter CIA Degree Program. The development of Canter's

1  Reading and Math Degree Programs, including the establishment of vendor contacts and

2  relationships for the creation and production of video and written materials for the courses

3  in these programs, was accomplished at great effort to Canter.

4  **Canter's Employees Leave To Work For Teachscape**

5      10.      Starting in the Summer of 2004 and continuing through approximately

6  October 2005, Teachscape hired, or contracted with, at least twelve former employees of

7  Canter (collectively "Canter's Former Employees"), including:

8          (1)      Valerie Cameron:  Ms. Cameron was formerly employed by Canter

9  from May 2001 through February 2005, most recently as a Marketing Manager, Distance

10  Learning Masters Program.  As a Marketing Manager, Distance Learning Masters Program,

11  Ms. Cameron was responsible for developing marketing campaigns using Canter's

12  confidential and proprietary methodology for programs offered through Canter's various

13  educational institution partners.  Upon information and belief, Ms. Cameron afterward was,

14  and/or currently is, employed by or an independent contractor of Teachscape.

15          (2)      Anna Crupi:  Ms. Crupi was formerly employed by Canter from

16  February 1997 through April 2005, most recently as a Marketing Manager, Distance

17  Learning Masters Program.  As a Marketing Manager, Distance Learning, Ms. Crupi was

18  responsible for developing marketing campaigns using Canter's confidential and proprietary

19  methodology, and further refining that methodology as a result of the latest campaign.

20  Upon information and belief, Ms. Crupi afterward was, and/or currently is, employed by or

21  an independent contractor of Teachscape.

22          (3)      Barbara DeHart:  Ms. DeHart was formerly employed by Canter from

23  June 2001 through July 2005, most recently as its Program Specialist in Product

24  Development.  As a Program Specialist, Ms. DeHart knew of Canter's confidential program

25  design and vendor contacts and relationships for the development of those programs.  Upon

26  information and belief, Ms. DeHart afterward was, and/or currently is, employed by or an

27  independent contractor of Teachscape.

28

Heller
Ehrman LLP

COMPLAINT FOR INJUNCTIVE RELIEF, RESTITUTION & DAMAGES

(4)    Suddie Gossett:  Ms. Gossett was formerly employed by Canter from August 2000 through April 2005, most recently as its Distance Learning Masters Field Representative.  As a Distance Learning Masters Field Representative, Ms. Gossett was responsible for converting customer leads to program enrollments utilizing Canter's confidential and proprietary systems for tracking those conversions.  Upon information and belief, Ms. Gossett afterward was, and/or currently is, employed by or an independent contractor of Teachscape;

(5)    Melissa Jaivin:  Ms. Jaivin was formerly employed by Canter from December 1991 through April 2004, most recently as its Vice President, Distance Learning Masters Programs.  As an executive overseeing Canter's business in distance-delivered master's degree programs, Ms. Jaivin partook in critical and highly confidential aspects of this business.  Ms. Jaivin was part of the group of Canter executives that strategized over and formulated Canter's confidential long-term business plans in the 2001 through 2004 time-frame.  Ms. Jaivin was familiar with Canter's confidential three-year strategic plans and confidential Corporate Investment Proposals.  Ms. Jaivin also negotiated Canter's confidential contracts with its educational institution partners, including Marygrove, through which Canter's master's degree programs and graduate course programs are offered.  Upon information and belief, Ms. Jaivin afterward was and is currently employed by Teachscape as a Vice President, Higher Education;

(6)    Hae Young Kim:  Ms. Kim was formerly employed by Canter from June 1998 through September 2004, most recently as its Vice President, Graduate Courses.  As an executive overseeing Canter's business in distance-delivered graduate course programs, Ms. Kim was part of the group of Canter executives that strategized over and formulated Canter's confidential long-term business plans in the 2001 through 2004 time-frame.  Ms. Kim was familiar with Canter's confidential three-year strategic plans and Corporate Investment Proposals.  In addition, Ms. Kim negotiated contracts with Canter's educational institution partners for providing graduate course programs.  Ms. Kim also was responsible for Canter's graduate course program business generally, including all of its

1   marketing campaigns, sales, and operational aspects. Upon information and belief, Ms.
2   Kim afterward was, and/or is, currently employed by Teachscape as Vice President, Sales &
3   Marketing, Higher Education.

4          (7)    Stacey McNally: Ms. McNally was formerly employed by Canter from
5   September 1994 through September 2005, most recently as its Director of Enrollment
6   Advisors and Director of Business Development. As a Director of Enrollment Advisors and
7   a Director of Business Development, Ms. McNally was responsible for overseeing the
8   conversion of customer leads to program enrollments, and was very familiar with Canter's
9   confidential and proprietary systems for tracking those conversions. Upon information and
10  belief, Ms. McNally afterward was, and/or currently is, employed by or an independent
11  contractor of Teachscape.

12         (8)    Romario Pineda: Mr. Pineda was formerly employed by Canter from
13  February 2001 through October 2005, most recently as its Manager of Operations, Distance
14  Learning Masters. As a Manager of Operations, Distance Learning Masters, Mr. Pineda
15  worked with Canter's vendors to minimize direct costs in delivering Canter's programs.
16  Upon information and belief, Mr. Pineda afterward was, and/or currently is, employed by or
17  an independent contractor of Teachscape.

18         (9)    Brenda Pope-Ostrow: Ms. Pope-Ostrow was formerly employed by
19  Canter from January 2001 through October 2005, most recently as its Director, Editorial
20  Services. As a Director, Editorial Services, Ms. Pope-Ostrow knew of Canter's confidential
21  program design and vendor contacts and relationships for the development of those
22  programs. Upon information and belief, Ms. Pope-Ostrow afterward was, and/or currently
23  is, employed by or an independent contractor of Teachscape.

24         (10)   Mike Soules: Mr. Soules was formerly employed by Canter from June
25  1998 through September 2004, most recently as its Vice President, Business Development.
26  As an executive overseeing Canter's business development for distance-delivered programs,
27  Mr. Soules was part of the group of Canter executives that strategized over and formulated
28  Canter's confidential long-term business plans in the 2001 through 2004 time-frame. Mr.

Heller
Ehrman LLP

5

COMPLAINT FOR INJUNCTIVE RELIEF, RESTITUTION & DAMAGES

1 Soules was familiar with Canter's confidential three-year strategic plans and confidential

2 Corporate Investment Proposals.  In addition, Mr. Soules oversaw Canter's marketing

3 efforts based on Canter's confidential market analysis and other information to attract

4 teachers to enroll in Canter's programs through its educational institution partners.  Upon

5 information and belief, Mr. Soules afterward was, and/or currently is employed by

6 Teachscape as General Manager, Higher Education.

7        (11)    Chip Swalley:  Mr. Swalley was formerly employed by Canter from

8 October 2001 through October 2005, most recently as its Course Materials Coordinator,

9 Inventory Planning & Fulfillment Services.  As a Course Materials Coordinator, Mr.

10 Swalley managed the supply chain for the materials for Canter's programs, including

11 managing vendor relationships for those materials.  Upon information and belief, Mr.

12 Swalley afterward was, and/or currently is, employed by or an independent contractor of

13 Teachscape.

14        (12)    Simone Vilandre:  Ms. Vilandre was formerly employed by Canter

15 from December 1998 through September 2005, most recently as its Distance Learning

16 Masters Field Representative.  As a Distance Learning Masters Field Representative, Ms.

17 Vilandre was responsible for converting leads to program enrollments utilizing Canter's

18 confidential and proprietary systems for tracking those conversions.  Upon information and

19 belief, Ms. Vilandre afterward was, and/or currently is, employed by or an independent

20 contractor of Teachscape.

21       11.    As described in part above, among Canter's Former Employees are several of

22 Canter's long-term, key employees who were integral to the development of Canter's

23 education master's degree programs and graduate courses for teachers, as well as the

24 marketing and delivery of those programs to teachers through Canter's educational

25 institution partners.  During their employment, Canter's Former Employees were

26 instrumental in every aspect of Canter's degree program business, including contract

27 negotiations, partnership development, market research, product marketing, product

28 development, product delivery, and teacher recruiting/sales efforts with respect to Canter's

master's degree and graduate course programs. Their involvement in these sensitive and critical aspects of Canter's business gave Canter's Former Employees access to Canter's confidential information during their employment with Canter.

12. Canter's Former Employees were well aware of their duty of confidentiality to Canter. Each and every one of Canter's Former Employees signed confidentiality agreements upon commencing work with Canter. Furthermore, Teachscape knew or had reason to know that Canter's Former Employees had a continuing duty of confidentiality towards Canter, in part because it was so advised by Canter. However, in 2005 and within months of formulating the most recent three-year plan, the majority of the individuals responsible for the development and execution of that plan had obtained positions at Teachscape.

## Defendants' Wrongful Acts That Disrupt Canter's Business

13. Before hiring Canter's Former Employees, Teachscape had not offered a master's degree program or even a graduate level course program in teaching. Within months of employing the majority of them, however, in early 2006 it marketed graduate level course programs, and then in September 2006 it marketed master's degree programs in teaching with specializations in Curriculum, Instruction, and Assessment ("Teachscape's CIA Degree Program"), Reading and Literacy for Grades K-6 ("Teachscape's Reading Degree Program"), and two specializations in Mathematics, with one for Grades K-5 and one for Grades 6-8 (collectively, "Teachscape's Math Degree Programs").

14. Canter is informed and believes that Teachscape relied upon and/or otherwise used confidential information obtained by Canter's Former Employees as a result of their employment with Canter in developing and marketing Teachscape's distance-delivered master's degree and graduate course programs. Teachscape's distance-delivered master's degree and graduate course programs for teachers appear to be very similar to those offered by Canter.

15. In addition to mimicking Canter's master's degree programs in developing its own programs, Teachscape's partnering efforts for its graduate course and master's degree

Heller
Ehrman LLP

7

1  programs appear to have been directed solely at Canter's long-term educational institution

2  partners, such as Marygrove.

3       16.    Through advertisements and promotional materials distributed by Teachscape

4  through Stacey McNally (Canter's former Director of Enrollment Advisors and a Director

5  of Business Development who then worked for Teachscape), Teachscape's web site, and

6  web sites directed to teachers, Teachscape marketed its CIA, Reading and Math Degree

7  Programs to the public, including teachers, in or around September 2006.  The

8  advertisements and promotional materials indicated that these masters degree's programs

9  would be launched through Marygrove, with whom Canter had an ongoing contractual

10  relationship for providing programs for distance-delivered master's degree in education at

11  that time.  A sample advertisement is attached hereto as Exhibit A.

12       17.    Teachscape's advertisements and promotional materials were untrue and

13  misleading and likely to deceive the public.  Teachscape previously had never offered a

14  CIA Degree Program, and the only distance-delivered "Master in the Art of Teaching with a

15  Focus on Curriculum Instruction & Assessment" degree program being offered at

16  Marygrove at that time was Canter's CIA Degree Program.  Consequently, Teachscape's

17  advertising, including its reference to Teachscape CIA Degree Program as

18      **Master in the Art of Teaching with a Focus on Curriculum Instruction &**

19          **Assessment (updated)**

20  implied that Teachscape's CIA Degree Program and its courses were updates or

21  improvements of Canter's CIA Degree Program offered through Marygrove at that time.

22  Other advertising and promotional materials prepared by Teachscape further implied and/or

23  stated that Teachscape's CIA Degree Program was comprised of updates to the journal

24  articles, texts, and assignments to Canter's CIA Degree Program offered through

25  Marygrove at that time.

26       18.    Although it had never before offered a program for master's degrees in

27  teaching or even a teachers' graduate level course, Teachscape also began to negotiate

28  agreements to offer these programs to Canter's most profitable educational institution

Heller
Ehrman LLP

COMPLAINT FOR INJUNCTIVE RELIEF, RESTITUTION & DAMAGES

1  partners within months of hiring the majority of Canter's Former Employees.  The graduate

2  course and master's degree programs Teachscape offered appear to be similar to those

3  offered by Canter.  By using Canter's confidential information, Teachscape was able to

4  focus only on the partnerships and degree and course programs that were most profitable,

5  thereby avoiding the waste of time and resources on markets and programs that, through

6  years of research and analysis, Canter had already learned were not profitable.  Overnight,

7  Teachscape was able to enter a market that Canter had spent years to develop—by utilizing

8  the knowledge of Canter's Former Employees.

9      19.    Furthermore, upon information and belief, Teachscape immediately offered its

10  new master's degree programs to one of Canter's long-term educational institution partners,

11  Marygrove.  The terms of the contract between Marygrove and Canter were confidential.

12  Canter is informed and believes that Teachscape and Does, some of whom may be Canter's

13  Former Employees, misused Canter's confidential information to offer master's degree

14  programs in partnership with Marygrove.  Canter is further informed and believes that

15  Teachscape and Does, some of whom may be Canter's Former Employees, misused the

16  confidential contract terms between Canter and Marygrove to negotiate with Marygrove on

17  more favorable terms.

18      20.    Specifically, in or about September 2006, Teachscape advertised that it would

19  offer the Teachscape CIA Degree Program through Marygrove, with courses starting in

20  2007.  This directly contravened the terms of the then existing contract between Marygrove

21  and Canter, which specified that a degree with a specialization in Curriculum, Instruction

22  and Assessment would be supplied to Marygrove exclusively by Canter during the

23  contract's term.  Ms. Jaivin, who participated in the negotiation of that Canter-Marygrove

24  contract on behalf of Canter, and perhaps others among Canter's Former Employees, were

25  fully aware of this term of the contract as a result of their employment with Canter.

26      21.    In or about September 2006, Teachscape also advertised that it would offer

27  Teachscape's Reading and Math Degree Programs through Marygrove, with courses

28  starting in 2007.  The then existing contract between Canter and Marygrove required

1    Marygrove to first offer any such opportunity to Canter on the same terms that it proposed

2    to offer to a third-party. As no such offer had or ever did occur, this announcement

3    reflected a breach by Marygrove of its contract with Canter. Ms. Jaivin, who participated in

4    the negotiation of the Canter-Marygrove contract on behalf of Canter, and perhaps others

5    among Canter's Former Employees, were fully aware of this term of that contract as a result

6    of their employment with Canter.

7        22.    As a result of the conduct alleged above, Canter separately contacted

8    Teachscape and Marygrove in the Fall of 2006 and inquired about the master's degree

9    offerings Teachscape intended to launch through Marygrove in early 2007. Marygrove, at

10   that time, denied the existence of any relationship between Marygrove and Teachscape.

11   Moreover, Marygrove denied any knowledge of Teachscape's advertisement of these

12   degree programs, including Teachscape's advertising of Teachscape's CIA Degree Program

13   and its course materials as "updated." Marygrove further stated that it had no knowledge of

14   any degree program offerings by Teachscape through Marygrove that would be launched in

15   2007.

16       23.    Teachscape, on the other hand, did not deny the relationship because it had

17   publicly advertised the existence of such. However, Teachscape claimed that it was

18   unaware that its intended degree offerings through Marygrove in any way interfered with

19   any contractual obligations between Canter and Marygrove, despite the fact that several of

20   Teachscape's new employees and executives, such as Ms. Jaivin, were involved in

21   negotiating Canter's contract with Marygrove, and had negotiated the very contractual

22   terms at issue. Despite taking the strategy of denying any wrongdoing, Teachscape

23   nonetheless thereafter withdrew its offering of the Teachscape CIA Degree Program

24   through Marygrove for the year 2007, implicitly acknowledging that this offering was a

25   breach of the Canter-Marygrove contract.

26       24.    Upon information and belief, Teachscape also wrongfully induced Marygrove

27   to breach its contract with Canter by agreeing to offer Teachscape's Reading and Math

28

Heller
Ehrman LLP

COMPLAINT FOR INJUNCTIVE RELIEF, RESTITUTION & DAMAGES

1    Degree Programs on terms other than those offered to Canter, in violation of the parties'

2    right of first refusal provision in the Canter-Marygrove contract. ·

3         25.    On information and belief, Teachscape has engaged in the conduct alleged

4    herein with respect to some or all of Canter's other profitable contractual relationships with

5    its educations institution partners, including Andrews University and Cardinal Stritch    ,

6    University.

7    **FIRST CAUSE OF ACTION BY CANTER AGAINST ALL DEFENDANTS FOR**
     **MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF**
8    **CALIFORNIA CIVIL CODE §§ 3426 *ET SEQ.***

9         26.    Paragraphs 1 through 25 above are hereby incorporated by reference.

10        27.    Canter was in possession of trade secrets which consisted of, among other

11   things, strategic 3-year plans, Corporate Investment Proposals, a proprietary methodology

12   for identifying appropriate markets for its products, information regarding market

13   segmentation, design of distance-learning degree programs and methods for their

14   accreditation, and specific vendor and customer contacts and preferences.  All of these trade

15   secrets provided Canter with both short- and long-term advantages in the marketplace and

16   were of substantial economic value to Canter.

17        28.    Canter took reasonable efforts to protect these valuable trade secrets,

18   including but not limited to requiring employees to sign agreements not to disclose Canter's

19   confidential information without express permission.

20        29.    Canter's Former Employees had access to these trade secrets solely as a result

21   of their employment with Canter.

22        30.    During their engagement of Canter's Former Employees, Teachscape and

23   Does misappropriated the above-described trade secrets of Canter by taking Canter's

24   proprietary knowledge about lucrative markets and using that knowledge without

25   permission to market Teachscape's competing services to Canter's educational institution

26   partners.

27        31.    As a proximate result of the above-described misappropriations, Teachscape

28   and Does were, and are being, unjustly enriched at the expense of Canter.

32.    As a direct and proximate result of Teachscape's and Does' misappropriation of Canter's trade secrets, Canter has suffered irreparable harm and will continue to suffer irreparable injury that cannot be adequately remedied at law.  Accordingly, Canter prays that Teachscape, Does, their officers, agents, employees, and all persons acting in concert with them be enjoined from engaging in any further such conduct.

33.    Teachscape and Does knew that their conduct would directly affect and impinge upon Canter and its business, reduce its revenues and profits, and that it was certain that Canter would suffer harm.  Teachscape and Does knew that Canter would rely upon Canter's Former Employees' purported loyalty and confidentiality agreements not to misuse the confidential, proprietary information of Canter, and knew that they were in the best position to know the consequences of their intended actions, and knew that injuries would likely be suffered by Canter.  Notwithstanding this knowledge, Teachscape and Does, in willful and conscious disregard of the rights of Canter, repeatedly and intentionally misappropriated and misused Canter's trade secret information to cause Canter harm and to advance Teachscape's and Does' own pecuniary and other interests.

34.    Teachscape's and Does' acts and omissions were so willful and malicious, and in such reckless and conscious disregard of the rights of Canter, so as to justify the award of exemplary and punitive damages against Teachscape and Does pursuant to California Civil Code § 3426.3, in an amount to be determined at trial, but sufficient to punish such actions and to deter such actions by Teachscape and Does in the future.

35.    Teachscape's and Does' acts and omissions were so willful and malicious, and in such reckless and conscious disregard of the rights of Canter, so as to justify the award of Canter's reasonable attorneys' fees pursuant to California Civil Code § 3426.4.

**SECOND CLAIM FOR RELIEF BY CANTER AGAINST TEACHSCAPE AND DOES FOR INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONSHIP IN VIOLATION OF CALIFORNIA LAW**

36.    Paragraphs 1 through 35 above are hereby incorporated by reference.

37.    Canter maintains client relationships and other economic relationships, including prospective relationships, with a number of educational institution partners such

1  as Marygrove, Andrews University, and Cardinal Stritch University. These relationships

2  hold the probability of future economic benefit to Canter.

3      38.  One example of Canter's prospective economic relationships is Canter's and

4  Marygrove's entry into a contract with confidential terms that guaranteed Canter the right of

5  first refusal if Marygrove decided to offer additional distance-learning master's degree

6  programs beyond Canter's CIA Degree Program, which would include Canter's Reading

7  and Math Degree Programs.

8      39.  Teachscape and Does knew or had reason to know of Canter's relationships

9  with these educational institution partners by way of their employment of Canter's Former

10 Employees, including Ms. Jaivin.

11     40.  On information and belief, Teachscape and Does used Canter's confidential

12 information about Canter's relationships with one or more of these educational institution

13 partners to gain an unlawful competitive advantage, and to induce at least one of Canter's

14 existing partners, Marygrove, to reject a Canter program and to replace it with a

15 substantially similar program offered by Teachscape.

16     41.  In or about 2005, Marygrove and Canter were in fact exploring the possibility

17 of Marygrove offering Canter's Reading Degree Program such that Canter prepared

18 marketing materials for this program offering. However, Marygrove abruptly withdrew

19 from those negotiations. Subsequently, Canter learned that Teachscape would be offering

20 Teachscape's Reading Degree Program in partnership with Marygrove.

21     42.  Teachscape's and Does acts were intentional and wrongful, and designed to

22 disrupt Canter's relationship with Marygrove and other of these educational institution

23 partners and prospective partners.

24     43.  Canter's economic relationships with Marygrove and other educational

25 institution partners and prospective partners were actually disrupted as a result of

26 Teachscape's and Does' wrongful acts.

27     44.  As a direct and proximate result of Teachscape's and Does' intentional,

28 wrongful, and unjustified conduct, Canter's economic prospects and relationships with

Heller
Ehrman LLP

COMPLAINT FOR INJUNCTIVE RELIEF, RESTITUTION & DAMAGES

1    Marygrove and other educational institution partners have been damaged. Canter has

2    accordingly suffered and will continue to suffer damages directly and proximately caused

3    by Teachscape's and Does' conduct in an amount to be proven at trial.

4        45.    As a direct and proximate result of Teachscape's and Does' interference with

5    Canter's prospective economic relationships, Canter has suffered irreparable harm and will

6    continue to suffer irreparable injury that cannot be adequately remedied at law.

7    Accordingly, Canter prays that Teachscape, Does, their officers, agents, employees, and all

8    persons acting in concert with them be enjoined from engaging in any further such conduct.

9        46.    Teachscape's and Does' actions as described above comprise a series of

10   intentional breaches of Canter's confidences with the intention on the part of Teachscape

11   and Does of thereby depriving Canter of property or legal rights or otherwise causing injury

12   to Canter. Teachscape's and Does' conduct as described above was despicable conduct that

13   subjected Canter to cruel and unjust hardship, and that was carried out by Teachscape and

14   Does' with a willful and conscious disregard of the rights of Canter, notwithstanding

15   Teachscape's and Does' knowledge of its intended actions and the damages that would be

16   suffered by Canter as a result of the conduct of Teachscape and Does.

17       47.    Teachscape and Does knew that their conduct would directly affect and

18   impinge upon Canter and its business, reduce its revenues and profits, and that it was certain

19   that Canter would suffer harm. Teachscape and Does knew that Canter would rely upon

20   Canter's Former Employees' purported loyalty and agreement not to misuse the

21   confidential, proprietary information of Canter, and knew that Teachscape and Does

22   themselves were in the best position to know the consequences of their intended actions,

23   and knew that injuries would likely be suffered by Canter. Notwithstanding this

24   knowledge, Teachscape and Does, in willful and conscious disregard of the rights of Canter,

25   repeatedly and intentionally interfered with Canter's prospective economic relationships to

26   cause Canter harm and to advance Teachscape's and Does' own pecuniary and other

27   interests.

28

Heller
Ehrman LLP

14

48.     Teachscape's and Does' acts and omissions were so willful and malicious, and in such reckless and conscious disregard of the rights of Canter, so as to justify the award of exemplary and punitive damages against Teachscape and Does pursuant to California Civil Code § 3426.3, in an amount to be determined at trial, but sufficient to punish such actions and to deter such actions by Teachscape and Does in the future.

49.     Teachscape's and Does' acts and omissions were so willful and malicious, and in such reckless and conscious disregard of the rights of Canter, so as to justify the award of Canter's reasonable attorneys' fees pursuant to California Civil Code § 3426.4.

**THIRD CLAIM FOR RELIEF BY CANTER AGAINST TEACHSCAPE AND DOES FOR INTENTIONAL INTERFERENCE WITH CONTRACT IN VIOLATION OF CALIFORNIA LAW**

50.     Paragraphs 1 through 49 above are hereby incorporated by reference.

51.     Canter and Marygrove had entered into a contract with confidential terms for the provision of Canter's CIA Degree Program for a period of time, with automatic extensions absent notice otherwise, and with the right of first refusal if Marygrove decided to offer additional distance-learning master's degree programs beyond Canter's CIA Degree Program, which would necessarily include Canter's Reading and Math Degree Programs.

52.     Teachscape and Does knew of these valid contractual terms between Canter and Marygrove, and were in possession of confidential information about the terms by virtue of the Canter's Former Employees' employment with Canter, including Ms. Jaivin's employment and duties with Canter.

53.     In or about September 2006, Canter was informed that Marygrove would offer Teachscape's CIA Degree Program, starting in January of 2007, which was during the term that Marygrove was contractually obligated to offer Canter's CIA Degree Program.

54.     In or about September 2006, Canter also was informed that Marygrove would offer Teachscape's Reading and Math Degree Programs, starting in January of 2007, which was during the term that Marygrove was contractually obligated to provide Canter the right of first refusal in offering the same or similar programs through Marygrove.

Heller
Ehrman LLP

COMPLAINT FOR INJUNCTIVE RELIEF, RESTITUTION & DAMAGES

55.    Upon information and belief, Teachscape and Does used Canter's confidential information in order to disrupt the contractual relationship between Canter and Marygrove.

56.    Teachscape's CIA Degree Program offered through Marygrove was described as "updated" in advertising on Teachscape's web site, and Canter is informed and believes that Teachscape's CIA Degree Program is essentially a copy of the same program offered by Canter.

57.    Canter questioned Marygrove about Teachscape's CIA Degree Program advertised as "updated," and was informed that Marygrove knew nothing about the marketing of Teachscape's CIA Degree Program as being offered through Marygrove. Canter separately questioned Teachscape about Teachscape's CIA Degree Program that Teachscape was apparently offering through Marygrove, and was told that Teachscape was unaware that such offering would violate the terms of any contract between Marygrove and Canter.  These misrepresentations and falsehoods have damaged Canter.

58.    Marygrove did not provide Canter the opportunity to offer Reading and Math Degrees through Marygrove prior to Teachscape advertising its offering of the same or similar degree programs through Marygrove.  Also, Marygrove does not intend to further renew its contract for the provision of Canter's CIA Degree Program.

59.    Teachscape's and Does' intentional interference with Canter's contract with Marygrove has damaged Canter in an amount to be proven at trial.

60.    Teachscape's and Does' acts and omissions were so willful and malicious, and in such reckless and conscious disregard of the rights of Canter, so as to justify the award of exemplary and punitive damages against Teachscape and Does pursuant to California Civil Code § 3426.3, in an amount to be determined at trial, but sufficient to punish such actions and to deter such actions by Teachscape and Does in the future.

61.    Teachscape's and Does' acts and omissions were so willful and malicious, and in such reckless and conscious disregard of the rights of Canter, so as to justify the award of Canter's reasonable attorneys' fees pursuant to California Civil Code § 3426.4.

**FOURTH CLAIM FOR RELIEF BY CANTER AGAINST TEACHSCAPE FOR UNTRUE OR MISLEADING ADVERTISING IN VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE §§ 17500 *ET SEQ.***

62. Paragraphs 1 through 25 above are hereby incorporated by reference.

63. The acts described above constitute untrue or misleading advertising by Teachscape in violation of California Business & Professions Code §§ 17500 *et seq.*

64. Beginning on or about September 2006, Teachscape engaged in advertising to the public, including teachers, Teachscape's "Master in the Art of Teaching with a Focus on Curriculum, Instruction and Assessment" program—i.e., Teachscape's CIA Degree Program—being offered through Marygrove in January 2007, and the course materials for that program, as "updated." A sample advertisement is attached hereto as Exhibit A. Marygrove has denied any knowledge of this advertisement.

65. Teachscape described its new relationship with Marygrove in an untrue or misleading way for the purpose of misleading the public to believe that it has a long and successful track record in offering this master's degree programs through Marygrove, when in fact Teachscape does not have such a track record with respect to offering any such program through Marygrove or otherwise, because it has never previously offered such any master's degree program. Even Marygrove has denied any involvement in such advertising, apparently due to its false and misleading nature.

66. By marketing Teachscape's CIA Degree Program as "updated" and by implying a long-term successful partnership with Marygrove, Teachscape's advertising was untrue and misleading and likely to deceive the public, including teachers that may enroll in master's degree programs, in that it states that Teachscape's CIA Degree Program was an updated version of Canter's CIA Degree Program, which was being offered at Marygrove by the exact same name and at the exact same time of Teachscape's advertising.

67. Upon information and belief, Teachscape's false and misleading advertising aroused suspicions that Teachscape was actually using Canter's intellectual property and/or leveraging off its brand name. Upon information and belief, Teachscape's false and

Heller
Ehrman LLP

17

1  misleading advertising caused actual confusion to teachers that are prospective and current

2  Marygrove students.

3      68.     In making and disseminating the statements herein alleged, Teachscape knew,

4  or by exercise of reasonable care should have known, that the statements were untrue or

5  misleading and so acted in violation of California Business & Professions Code §§ 17500 *et*

6  *seq.*

7      69.     Canter is entitled to restitution for the benefits improperly garnered by

8  Teachscape as a direct and proximate result of its acts of untrue or misleading advertising.

9  **FIFTH CLAIM FOR RELIEF BY CANTER AGAINST TEACHSCAPE FOR**
   **UNFAIR COMPETITION IN VIOLATION OF CALIFORNIA**

10  **BUSINESS & PROFESSIONS CODE §§ 17200 *ET SEQ.***

11      70.     Paragraphs 1 through 25 above are hereby incorporated by reference.

12      71.     The acts described above constitute unfair competition by Teachscape in

13  violation of California Business & Professions Code §§ 17200 *et seq.* because, among other

14  things, Teachscape's advertising, as alleged above, constitutes unfair competition in

15  violation of California Business & Professions Code §§ 17500 *et seq.*

16      72.     Furthermore, Teachscape has engaged in and continues to engage in other

17  unlawful, fraudulent and unfair business practices, as set forth above, that constitute unfair

18  competition within the meaning of Business & Professions Code §§ 17200 *et seq.* These

19  practices are immoral and unscrupulous and have been undertaken in violation of policies

20  established in the California Civil Code (e.g., §§ 1549 *et seq.*) and the California Labor

21  Code (e.g., §§ 2860 & 2870). Moreover, Teachscape's business practices serve no

22  legitimate business purpose, and if any purpose were found, the benefit to any alleged

23  legitimate business interests of Teachscape is far outweighed by the substantial harm to

24  Canter that has resulted from the practices.

25      73.     Canter is entitled to restitution for the benefits improperly garnered by

26  Teachscape as a direct and proximate result of its acts of unfair competition.

27      74.     As a direct and proximate result of Teachscape's unfair conduct described

28  above, Canter has suffered irreparable harm, and will continue to suffer irreparable injury

Heller
Ehrman LLP

COMPLAINT FOR INJUNCTIVE RELIEF, RESTITUTION & DAMAGES

1  that cannot be adequately remedied at law.  Accordingly, Canter prays that Teachscape be

2  enjoined from engaging in any further such acts of unfair competition, and that Teachscape

3  be ordered to disgorge all ill-gotten profits to Canter and make restitution to Canter.

### PRAYER FOR RELIEF

5      75.    WHEREFORE, Canter prays as follows:

6          A.    For a preliminary and permanent injunction prohibiting Teachscape

7  and Does from directly or indirectly using, selling, offering to sell, disclosing or distributing

8  in any manner Canter's confidential, proprietary information and trade secrets;

9          B.    For a preliminary and permanent injunction prohibiting Teachscape

10  and Does from wrongfully interfering with Canter's contracts and other economic

11  relationships with its educational institution partners;

12          C.    For a preliminary and permanent injunction prohibiting Teachscape

13  and Does from continuing to engage in the unlawful conduct alleged herein;

14          D.    For general and special damages according to proof at trial and that

15  exceeds $25,000;

16          E.    For disgorgement of all profits;

17          F.    For restitution of ill-gotten gains;

18          G.    For exemplary and punitive damages;

19          H.    For attorneys' fees and costs of suit incurred as a result of this lawsuit;

20  and

21          I.    Award of such other, further, and different relief as the Court deems

22  proper under the circumstances.

23  Dated: January 23, 2008        Respectfully submitted,

24          HELLER EHRMAN LLP

25

26          By _____

27                 DANIEL N. KASSABIAN
           Attorneys for Plaintiff

28          CANTER AND ASSOCIATES, LLC

Heller
Ehrman LLP

19

1    ANNETTE L. HURST (State Bar No. 148738)
2    DANIEL N. KASSABIAN (State Bar No. 215249)
     ELENA M. DIMUZIO (State Bar No. 239953)
3    HELLER EHRMAN LLP
     333 Bush Street
4    San Francisco, California 94104-2878
     Telephone: +1.415.772.6000
5    Facsimile: +1.415.772.6268
6    E-mail:     Annette.Hurst@HellerEhrman.com
               Daniel.Kassabian@HellerEhrman.com
7               Elena.DiMuzio@HellerEhrman.com
8    Attorneys for Plaintiff
9    CANTER & ASSOCIATES, LLC

ENDORSED
F I L E D
Superior Court of California
County of San Francisco

JAN 2 4 2008

GORDON PARK-LI, Clerk
BY: _____ WESLEY RAMIREZ
                    Deputy Clerk

10          SUPERIOR COURT OF THE STATE OF CALIFORNIA

11              CITY AND COUNTY OF SAN FRANCISCO

12                  (Unlimited Civil Case)

13    CANTER & ASSOCIATES, LLC,        Case No. CGC-08-471311
14    a Delaware corporation,
15                           **DEMAND FOR JURY TRIAL**
16                  Plaintiff,
17       v.
18    TEACHSCAPE, INC., a Delaware corporation,
     and DOES 1-15, inclusive,
19
20                 Defendants.

21      TO EACH PARTY AND COUNSEL OF RECORD FOR EACH PARTY:
22
23         Plaintiff Canter & Associates, LLC hereby demands a jury trial in this action.

24    Dated: January 23, 2008            Respectfully submitted,

25                           HELLER EHRMAN LLP

26                           By _____
27                              DANIEL N. KASSABIAN
                            Attorneys for Plaintiff
28                             CANTER AND ASSOCIATES, LLC

Heller
Ehrman LLP

1 ANNETTE L. HURST (State Bar No. 148738)
2 DANIEL N. KASSABIAN (State Bar No. 215249)
  ELENA M. DIMUZIO (State Bar No. 239953)
3 HELLER EHRMAN LLP
  333 Bush Street
4 San Francisco, California 94104-2878
  Telephone: +1.415.772.6000
5 Facsimile: +1.415.772.6268
6 E-mail:    Annette.Hurst@HellerEhrman.com
             Daniel.Kassabian@HellerEhrman.com
7            Elena.DiMuzio@HellerEhrman.com
8
  Attorneys for Plaintiff
9 CANTER & ASSOCIATES, LLC



10              SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                 CITY AND COUNTY OF SAN FRANCISCO

12                          (Unlimited Civil Case)

13 CANTER & ASSOCIATES, LLC,                    Case No.:   CGC08--471311
14 a Delaware corporation,

15                                              **NOTICE OF RELATED CASES**
                                  Plaintiff,
16
17        v.

18 TEACHSCAPE, INC., a Delaware corporation,
   and DOES 1-15, inclusive,
19
20                                Defendants.

21

22        Pursuant to California Rule of Court 3.300, Plaintiff Canter & Associates, LLC

23 ("Canter") hereby gives notice of a federal action pending in the United States District

24 Court for the Northern District of California, San Jose Division that is arguably related to

25 the above-captioned action in this Court.

26        The pending federal action, now captioned *Laureate Education, Inc. v. Teachscape,*

27 *Inc.*, Case No. C 07 3225 RS, was filed on June 19, 2007. As initially filed, Canter was a

28 plaintiff in the federal action, and the state law causes of action now pending in this Court

Heller
Ehrman LLP

---

NOTICE OF RELATED CASES

1  were alleged therein.  At present, however, Canter voluntarily did not re-plead any claims in

2  the federal action, but instead pled causes of action in this Court.  Consequently, the parties

3  and claims in the federal action at present differ from the parties and causes of action

4  pending in this Court.

5      Accordingly, Canter asserts that the federal action and the action now pending in this

6  Court: (1) do not involve the same parties and are based on the same or similar claims;

7  (2) do not necessarily require the determination of the same or substantially identical

8  questions of law or fact; (3) do not involve claims against, title to, possession of, or

9  damages to the same property; and (4) are not likely for other reasons to require substantial

10  duplication of judicial resources if heard simultaneously by the courts.  Thus, Canter asserts

11  that any relation of cases or other action by this Court due to the existence of federal action

12  is unwarranted and unnecessary.

13  Dated: January 23, 2008                    Respectfully submitted,

14                                             HELLER EHRMAN LLP

15

16                                             By  _____

17                                                 DANIEL N. KASSABIAN
                                                   Attorneys for Plaintiff

18                                             CANTER AND ASSOCIATES, LLC

19

20

21

22

23

24

25

26

27

28