GAYLE M. ATHANACIO (State Bar No. 130068)
gathanacio@sonnenschein.com
CHRISTINE LEPERA (admitted *pro hac vice*)
clepera@sonnenschein.com
SONNENSCHEIN NATH & ROSENTHAL LLP
525 Market Street, 26th Floor
San Francisco, CA 94105-2708
Telephone: (415) 882-5000
Facsimile: (415) 882-0300

Attorneys for Defendant
TEACHSCAPE, INC.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| LAUREATE EDUCATION, INC.,<br><br>    Plaintiff,<br><br>vs.<br><br>TEACHSCAPE, INC.,<br><br>    Defendant. | Case No. C 07 3225 RS<br><br>DECLARATION OF GAYLE M. ATHANACIO IN SUPPORT OF DEFENDANT TEACHSCAPE, INC.'S OPPOSITION TO PLAINTIFF LAUREATE EDUCATION, INC.'S MOTION TO COMPEL PRODUCTION OF DEFENDANT TEACHSCAPE, INC.'S "COURSE MATERIALS"<br><br>Date: March 19, 2008<br>Time: 9:30 a.m.<br>Ctrm: 4 (5th Floor)<br>Judge: The Honorable Richard Seeborg |

I, Gayle M. Athanacio, declare as follows:

1. I am an attorney at law duly admitted to practice before this Court and a partner of the law firm of Sonnenschein Nath & Rosenthal LLP, counsel of record for Defendant Teachscape, Inc. ("Teachscape"). I make this declaration in support of Teachscape's Opposition to Plaintiff Laureate Education, Inc.'s ("Laureate") Motion to Compel Production of Teachscape's "Course Materials". I have personal knowledge of the matters set forth herein and could competently testify to them if called upon to do so.

2. The initial complaint in this action was filed by Plaintiffs Laureate and its wholly owned subsidiary, Canter & Associates, LLC ("Canter") (collectively, "Plaintiffs"). In their initial complaint, Plaintiffs asserted causes of action for (1) misappropriation of trade secret (Cal. Civ. Code § 3426); (2) intentional interference with prospective economic relationships "with a number of educational institutions"; (3) intentional interference with the Canter/ Marygrove College contract; (4) misleading advertising, (Cal. Bus. & Prof. Code § 17500); (5) Unfair Competition (Bus. & Prof. Code § 17200); (6) misleading advertisement under the Lanham Act; and lastly (7) a copyright infringement claim.

3. On August 3, 2007, Teachscape filed a motion to dismiss/strike, which asserted, *inter alia*, that Laureate had failed to state a cognizable copyright infringement claim.

4. On September 26, 2007, the hearing on Teachscape's motion was heard. I attended this hearing as counsel for Teachscape. At the hearing, the Court's inquiry focused to a great extent on Laureate's copyright claim, and, in particular, Plaintiffs' rejection of Teachscape's pre-litigation offer to an "apples to apples" mutual exchange of Marygrove College ("Marygrove") final course material on which this action was predicated. Plaintiffs argued that they needed to view drafts of the allegedly infringing material in order to determine the viability of their claim. It was my impression that the Court was unpersuaded by this argument, as the Court mentioned that the more Plaintiffs argued about the drafts, the more the case sounded like it would run afoul of U.S. Supreme Court's holding in *Bell Atlantic v. Twombly*. The Court took the matter under submission.

-1-

5. Immediately following the hearing, I approached counsel for Plaintiffs, in particular, Annette Hurst, in the hope that Plaintiffs would reconsider their rejection of Teachscape's offer of a mutual exchange of final course material as the way to demonstrate that Plaintiffs' concerns and claims were unfounded. Ms. Hurst expressly rejected Teachscape's offer and again asserted that Plaintiffs would demand drafts of all course materials. Thereafter, Ms. Hurst noted that even if this case was dismissed, Plaintiffs could file in state court, adding that she believed Plaintiffs could get everything Plaintiffs wanted. Ms. Hurst stated that she was prepared to engage in "scorched earth" litigation if Teachscape continued to object to further activity in this case because Teachscape's motion to dismiss was pending. "Scorched earth" was the exact phrase Ms. Hurst used. At that point, our discussions stopped.

6. On October 7, I received a letter from Daniel Kassabian, counsel for Plaintiffs, in which Plaintiffs requested that Teachscape unilaterally produce all Marygrove final course material, and also all "earliest available" drafts and latest versions. Attached hereto as Exhibit A is a true and correct copy of Mr. Kassabian's October 7, 2007 letter.

7. On October 10, 2007, I responded to Mr. Kassabian's October 7 letter, informing Mr. Kassabian that Teachscape found Plaintiffs' proposal that Teachscape make a unilateral production of "first" and "final" Marygrove course material unacceptable and that Teachscape believed that setting a discovery plan was premature in light of the pending motion to dismiss. Attached hereto as Exhibit B is a true and correct copy of this letter.

8. On October 15, 2007, Plaintiffs hand-served Teachscape with 80 document requests, as well as a FRCP 30(b)(6) Notice Of Deposition of Teachscape, requesting testimony on over 60 topics and subtopics. Attached hereto as Exhibits C and D respectively are true and correct copies of Plaintiffs' First Set of Requests for Production of Documents ("1st Set of Document Requests") and Notice of Deposition pursuant to FRCP 30(b)(6).

-2-

DECLARATION OF GAYLE M. ATHANACIO IN SUPPORT OF TEACHSCAPE'S OPPOSITION
TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF "COURSE MATERIALS"
CASE NO. C07-03225 RS

9. Teachscape timely served its objections to the document requests on November 14, 2007, and its objections to the Notice Of Deposition on December 7, 2007, true and correct copies of which are attached hereto as Exhibits E and F.

10. On December 12, 2007, this Court issued its Order Granting Motion to Dismiss, With Leave to Amend.

11. On January 22, 2008, a first amended complaint ("FAC") was filed in this action. In the FAC, Canter is dropped as a plaintiff and the sole claim alleged by plaintiff Laureate is for copyright infringement. As before, Laureate asserts it has reason to "infer" Teachscape is somehow infringing "one or more" of Laureate's copyrights.

12. On January 23, 2008, Daniel Kassabian, counsel for Plaintiffs, emailed me a nine page, single spaced "meet and confer" letter regarding Teachscape's responses to Plaintiffs' 1st Set of Requests for Production. In the letter, despite acknowledging the change of claims and plaintiffs, Plaintiffs' counsel made clear that Laureate was not withdrawing or otherwise in anyway agreeing to limit Plaintiffs' document requests. Rather, Plaintiffs' counsel expressly reserved the right to seek production with regard to all documents requested. Laureate was, however, focusing its immediate demands on Plaintiffs' document requests ostensibly relating to "course material". A true and correct copy of Daniel Kassabian's January 23, 2008 letter is attached hereto as Exhibit G.

13. On January 24, 2008, Teachscape was served with a complaint filed by Canter in state court, in which Canter asserts the state law claims it had previously asserted in this action.

14. On January 30, 2008, I participated in a conference call to discuss the proposed stipulated protective order in this case pursuant to this Court's directive as set forth in its January 22, 2008 Order Re Discovery. Elena DiMunzio, Mr. Kassabian and Ms. Hurst participated on behalf of Plaintiff. Mid-way though our discussions of the protective order, Ms. Hurst interrupted the discussion and demanded that I immediately respond to their "meet and confer" letter and advise them whether Teachscape would agree to produce the "first" drafts and all final Marygrove course materials. I told counsel I could not respond at that time. I did, however, try

-3-

to get some clarity as to what Laureate meant by "first available drafts" and "course materials" since the descriptions of the terms were confusing. In particular, Plaintiffs' requests for course materials included "websites, DVDs, videos, video media files, CDs, audio media files, syllabi, course packets, study resources, articles, texts, course log-ins, quizzes, tests, course outlines, and grading keys." This description apparently included documents (articles, texts) that were authored by third parties, not Teachscape, as well as "websites". Asking for "first available drafts" of these "course materials" seemed non-sensical in this context, so I asked for clarification. Laureate's counsel refused my request that they articulate in the context of Laureate's copyright claim exactly what was being asked for; rather, I was informed that Laureate believed its requests were clear.

15. As Teachscape had become increasingly concerned that Plaintiffs were not pursuing either discovery or litigation in good faith, during this call, I sought to find out what Laureate's true motivations were. Consequently, I asked Laureate's counsel what I believed was a simple, straight-forward question: Assume (1) Teachscape provided *all* of the course materials (including "first available drafts" etc.) that Laureate had demanded be produced *to Laureate*'s *satisfaction* (which admittedly assumed that Laureate could better articulate what it actually wanted), and that (2) based upon their review of the Teachscape-provided material, concluded *on their own that there was no substantial similarity in any of the materials*. What would Laureate do? Ms. Hurst responded that she could not answer that question as it was an "incomplete hypothetical" and in all events, irrelevant to Teachscape's obligation under the Federal Rules. I responded by noting that it was irrelevant to the extent Teachscape believed that it was in full compliance with the Federal Rules, but that it was significant insofar as Teachscape was considering Lauerate's demands. The matter was left whereby the parties agreed to reconvene their discussions on February 1, 2008.

16. On January 31, 2008, Daniel Kassabian sent me a letter in which he reiterated Laureate's demand for the earliest available drafts, and he ostensibly sought to clarify Plaintiffs' request for "first available drafts". As noted in Mr. Kassabian's letter, Laureate's clarification was

-4-

DECLARATION OF GAYLE M. ATHANACIO IN SUPPORT OF TEACHSCAPE'S OPPOSITION
TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF "COURSE MATERIALS"
CASE NO. C07-03225 RS

to reference the Copyright Act, 17 U.S.C. § 101 definition of "created" and ask for any "document or thing…that resulted in a final course material provided to students or teachers." In his letter, Mr. Kassabian referred Teachscape back to the "types" of materials specified in the actual requests. Attached hereto as Exhibit H is a true and correct copy of Mr. Kassabian's letter.

17. On February 4, 2008, Teachscape was hand-served with the following discovery in Canter's state court action: Canter's First Set of Special Interrogatories; Canter's First Request for the Production of Documents; and Canter's First Set of Form Interrogatories. True and correct copies of this discovery is attached hereto as Exhibit I.

18. On February 1, 2008, a further "meet and confer" teleconference with regard to Laureate's document requests took place. During this call, I requested that Laureate agree to a stay of discovery pending a ruling on Teachscape's motion to dismiss the FAC. In this call, Mr. Kassabian confirmed Laureate was not amenable to any sort of stay. Consequently, I informed Mr. Kassabian that Teachscape would be moving for a protective order. In so doing, I noted that Teachscape still did not understand why Plaintiffs continued to refuse Teachscape's offer of an "apples to apples" exchange of allegedly infringing and infringed course material. I further asked Mr. Kassabian the question: Would Laureate dismiss the action if Teachscape produced to Laureate all of the course materials it wanted (again, assuming there was a meeting of minds as to what Laureate was actually asking for) and Laureate (not Teachscape) concluded there was no substantial similarity in any of the materials. Mr. Kassabian responded that he could not say that Laureate would dismiss the action. Rather, he indicated that Teachscape should produce the materials and then the parties could have a further discussion. Based upon Laureate's counsel's responses, coupled with Plaintiffs' refusal to withdraw or limit any of the requested discovery, Canter's filing of a separate action and service of discovery in that action, Teachscape concluded Plaintiffs' "discovery" was merely designed to unduly burden and harass Teachscape and I so informed Mr. Kassabian. Mr. Kassabian disagreed with Teachscape's observations regarding Laureate's motives but confirmed he would be filing a motion to compel. I asked whether the scope of the motion to compel would be limited to the requests regarding "final" and "first draft"

-5-

DECLARATION OF GAYLE M. ATHANACIO IN SUPPORT OF TEACHSCAPE'S OPPOSITION
TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF "COURSE MATERIALS"
CASE NO. C07-03225 RS

course offerings, which I noted remained unclear.

19. On February 4, 2008, I followed up my conversation with Mr. Kassabian by sending Mr. Kassabian a further letter. Attached hereto as Exhibit J is a true and correct copy of my February 4, 2008 letter. In response, on February 6, Mr. Kassabian and Ms. DiMuzio called me. In this telephone conversation, Mr. Kassabian indicated that Laureate intended to move on a limited number of document requests but he expressly stated that Laureate was reserving its right to file subsequent motions to compel with regard to the other discovery it had served. I again reiterated the offer of a mutual exchange of course materials, in particular, allowing Laureate access to the allegedly infringing online Marygrove course offerings. Mr. Kassabian, while suggesting he would accept Teachscape unilaterally providing Laureate with such access, stated that hard copies of the final course offerings would also be required, that Laureate would continue to demand "first available drafts," and that if Teachscape wanted Laureate's course materials, it would have to serve formal discovery on Laureate, or alternatively, seek copies from the Copyright Office. When I continued to note Teachscape's position that the description of "course material" and request for "first available drafts" was confusing, particularly in light of the nature of the materials (online materials and materials authored by third parties), Mr. Kassabian informed me he felt the explanation given, which merely referenced the Copyright Act, was sufficient. This discussion cemented Teachscape's belief that Plaintiffs were not pursuing litigation and/or discovery in good faith and I so informed Mr. Kassabian.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed this 20th day of February, 2008, at San Francisco, California.

/S/
GAYLE M. ATHANACIO

27290534

-6-

DECLARATION OF GAYLE M. ATHANACIO IN SUPPORT OF TEACHSCAPE'S OPPOSITION
TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF "COURSE MATERIALS"
CASE NO. C07-03225 RS