# EXHIBIT D

ANNETTE L. HURST (State Bar No. 148738)
DANIEL N. KASSABIAN (State Bar No. 215249)
ELENA M. DIMUZIO (State Bar No. 239953)
HELLER EHRMAN LLP
333 Bush Street
San Francisco, California 94104-2878
Telephone: +1.415.772.6000
Facsimile: +1.415.772.6268
E-mail:      Annette.Hurst@HellerEhrman.com
             Daniel.Kassabian@HellerEhrman.com
             Elena.DiMuzio@HellerEhrman.com

Attorneys for Plaintiffs
CANTER & ASSOCIATES, LLC and
LAUREATE EDUCATION, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CANTER & ASSOCIATES, LLC and LAUREATE EDUCATION, INC., | Case No.: 07-3225 RS |
| Plaintiffs, | **PLAINTIFFS CANTER & ASSOCIATES, LLC'S AND LAUREATE EDUCATION, INC.'S NOTICE OF DEPOSITION OF DEFENDANT TEACHSCAPE, INC. PURSUANT TO FED. R. CIV. P. 30(B)(6)** |
| v. | |
| TEACHSCAPE, INC., | |
| Defendant. | |

Heller
Ehrman LLP

PLAINTIFFS' NOTICE OF DEPOSITION OF DEFENDANT                    Case No.: 07-3225 RS

1   PLEASE TAKE NOTICE that commencing at 9:00 a.m. on December 10, 2007 at

2   the offices of Heller Ehrman LLP, 333 Bush Street, San Francisco, California, or at another

3   mutually agreed upon time and place, Plaintiffs Canter & Associates, LLC and Laureate

4   Education, Inc. ("Plaintiffs"), through its attorneys, will take the deposition of Defendant

5   Teachscape, Inc. ("Teachscape") pursuant to Federal Rule of Civil Procedure 30(b)(6).

6   In advance of the deposition, Teachscape shall designate one or more of its directors,

7   officers, managing agents, or other persons who will testify at the deposition on behalf of

8   Teachscape as to all information known or reasonably available to Teachscape regarding the

9   topics set forth in Schedule B hereto and the definitions in Schedule A.  In addition,

10  "(1) the deponent must be knowledgeable on the subject matter identified as the area of

11  inquiry, (2) Teachscape must designate more than one deponent if necessary in order to

12  respond to the relevant areas of inquiry specified by Plaintiffs, (3) Teachscape must prepare

13  the witness to testify on matters not only known by the deponent, but those that should be

14  known by Teachscape; and (4) Teachscape must substitute an appropriate deponent when it

15  becomes apparent that the previous deponent is unable to respond to certain relevant areas

16  of inquiry." 7-30 MOORE'S FEDERAL PRACTICE - CIVIL § 30.25 (2006) (quoting *Alexander*

17  *v. FBI*, 186 F.R.D. 137, 141 (D.D.C. 1998)).  The deposition will take place upon oral

18  examination before a notary public or other person authorized to administer oaths, will be

19  recorded by stenographic and/or sound and video means, and will continue from day to day

20  until completed.

21

22  Dated: October 15, 2007              HELLER EHRMAN LLP

23

24                                      By _____

25                                         DANIEL N. KASSABIAN
                                           Attorneys for Plaintiffs
26                                         CANTER AND ASSOCIATES, LLC and
                                           LAUREATE EDUCATION, INC.
27

28

Heller
Ehrman LLP

PLAINTIFFS' NOTICE OF DEPOSITION OF DEFENDANT                    Case No.: 07-3225 RS

## SCHEDULE A

### DEFINITIONS FOR DEPOSITION TOPICS

When used in the following deposition topics, the following definitions apply:

1.      The terms "Teachscape," "you," "your," or "yourself," means Defendant Teachscape, Inc., and any related companies, divisions, or subsidiaries, past or present, and the directors, officers, employees, contractors, agents, or attorneys thereof, including but not limited to foreign subsidiaries and divisions.

2.      The term "Canter" means Plaintiff Canter & Associates, LLC and any related companies, divisions, or subsidiaries, past or present, and the directors, officers, employees, contractors, agents, or attorneys thereof, including but not limited to foreign subsidiaries and divisions, of which Teachscape is aware.

3.      The term "Laureate" means Plaintiff Laureate Education, Inc. and any related companies, divisions, or subsidiaries, past or present, and the directors, officers, employees, contractors, agents, or attorneys thereof, including but not limited to foreign subsidiaries and divisions, of which Teachscape is aware.

4.      The term "Andrews" means Andrews University located in Berrien Springs, Michigan, and any of its employees, directors, trustees, officers, contractors, agents, or attorneys, past or present, of which Teachscape is aware.

5.      The term "Cardinal Stritch" means Cardinal Stritch University located in Milwaukee, Wisconsin, and any of its employees, directors, trustees, officers, contractors, agents, or attorneys, past or present, of which Teachscape is aware.

6.      The term "Marygrove" means Marygrove College located in Detroit, Michigan, and any of its employees, directors, trustees, officers, contractors, agents, or attorneys, past or present, of which Teachscape is aware.

7.      The term "NYSUT ELT" means the New York State United Teachers' Education and Learning Trust located in Latham, New York and/or available online at

Heller
Ehrman LLP

PLAINTIFFS' NOTICE OF DEPOSITION OF DEFENDANT                    Case No.: 07-3225 RS

1  https://eltweb.nysut.org, and any of its employees, directors, trustees, officers, contractors,

2  agents, or attorneys, past or present, of which Teachscape is aware.

3       8.     The term "Seattle Pacific" means Seattle Pacific University located in Seattle

4  Washington, and any of its employees, directors, trustees, officers, contractors, agents, or

5  attorneys, past or present, of which Teachscape is aware.

6       9.     The term "Walden" means Walden University available online at

7  www.waldenu.edu, and any of its employees, directors, trustees, officers, contractors,

8  agents, or attorneys, past or present, of which Teachscape is aware.

9       10.     The term "Canter's former employees" means any person who both (1) was

10  employed by, or was an independent contractor for Canter or Laureate <u>and</u> (2) was / is

11  employed, or was / is an independent contractor of Teachscape.  The term "Canter's former

12  employees" also includes, but is not limited to, Valerie Cameron, Anna Crupi, Barbara

13  DeHart, Suddie Gossett, Melissa Jaivin, Hae Young Kim, Stacey McNalley, Romario

14  Pineda, Brenda Pope-Ostrow, Mike Soules, Chip Swalley, and Simone Vilandre.

15       11.     The term "Complaint" means the complaint filed on June 19, 2007 by Canter

16  and Laureate in the above-captioned action, including any amendments thereto.

17       12.     The term "Teachscape's master's degree programs" means all courses and

18  curriculum made available by Teachscape in connection with a distance-learning and/or

19  online program where upon its successful completion the program participant receives a

20  master's degree in the field of education.  The term "Teachscape's master's degree

21  programs" also includes, but is not limited to, Teachscape's "Master in the Art of Teaching

22  with a Focus on Curriculum, Instruction & Assessment"  degree program advertised in or

23  around September 2006, its "Master in Education in Reading & Literacy, K-6" degree

24  program advertised in or around September 2006, its "Master in Education in Mathematics,

25  Grades K-5" degree program advertised in or around September 2006, its "Master in

26  Education in Mathematics, Grades 6-8" degree program advertised in or around September

27  2006, its "Master in Art of Teaching with a Focus on Elementary Reading & Literacy K-6"

28  degree program offered through Marygrove, its "Master in Art of Teaching with a Focus on

Heller
Ehrman LLP

3

1 Elementary Mathematics, Grades K–5" degree program offered through Marygrove, and its

2 "Master in Art of Teaching with a Focus on Mathematics, Grades 6–8" degree program

3 offered through Marygrove.

4       13.    The term "Teachscape's graduate course programs" means all distance-

5 learning and/or online courses offered through Teachscape for graduate credit from

6 universities with regional (NCA) and national (NCATE) accreditation.  The term

7 "Teachscape's graduate course programs" also includes, but is not limited to, Teachscape's

8 "Research-Based Strategies for Improving Reading Success" course, its "Fundamentals of

9 Mathematics: Teaching for Conceptual Understanding" course, and its "Research-Based

10 Instructional Strategies to Improve Student Achievement" course.

11       14.    The term "advertising materials" means flyers, pamphlets, circulars,

12 newsletters, posters, video advertisements, audio advertisements, click-through

13 advertisements, web site links, web sites, marketing plans, marketing budgets, mailing lists,

14 e-mailing lists, responses to inquiries, promotional scripts, including final versions and all

15 drafts thereof

16       15.    The term "course materials" means all documents and things that were

17 intended to be, actually sent to, or made available to students or teachers as part of a course

18 offering, such as course websites, DVDs, videos, video media files, CDs, audio media files,

19 syllabi, course packets, study resources, articles, texts, course log-ins, quizzes, tests, syllabi,

20 course outlines, grading keys, including final versions and all drafts thereof.

21       16.    The conjunctions "and," "or," and "including" shall be interpreted

22 conjunctively and shall not be interpreted to exclude any information otherwise within the

23 scope of the request.

24       17.    The terms "all" and "any" shall be interpreted inclusively so as to mean both

25 "all" and "any" whenever either term is used.

26       18.    The terms "document" and "documents" are used in their broadest possible

27 sense in accord with Federal Rule of Civil Procedure 34 and refer, without limitation, to any

28 writings, recordings, or photographs defined in Federal Rule of Evidence 1001, all written,

Heller
Ehrman LLP

4

1  printed, typed, photostatic, photographed, recorded, or otherwise reproduced

2  communications or records of every kind and description, whether comprised of letters,

3  words, numbers, pictures, sounds, or symbols, or any combination thereof, whether

4  prepared by hand or by mechanical, electronic, magnetic, photographic, or other means, and

5  including audio or video recordings of communications, occurrences or events. This

6  definition includes, but is not limited to, any and all of the following:  correspondence,

7  notes, minutes, records, messages, memoranda, telephone memoranda, diaries, contracts,

8  agreements, invoices, orders, acknowledgements, receipts, bills, statements, checks, check

9  registers, financial statements, journals, ledgers, appraisals, reports, forecasts, compilations,

10  schedules, studies, summaries, analyses, pamphlets, brochures, advertisements, newspaper

11  clippings, tables, tabulations, financial packaging, plans, photographs, pictures, film,

12  microfilm, microfiche, computer-stored or computer-readable data, computer programs,

13  computer printouts, e-mails, telegrams, telexes, facsimiles, tapes, transcripts, recordings,

14  and all other sources or formats from which data, information, or communications can be

15  obtained.  The terms shall include all preliminary versions, drafts or revisions of the

16  foregoing, and all copies of a document shall be produced to the extent that the copies differ

17  from the document produced due to notations, additions, insertions, comments, enclosures,

18  attachments or markings of any kind.

19       19.    The term "things" means any tangible item, including without limitation,

20  models, prototypes and samples of any device or apparatus or product.

21       20.    The term "date" means the exact day, month and year if so ascertainable or, if

22  not, the best approximation (including relationship to other events).

23       21.    The term "person" means any natural person, firm, association, organization,

24  partnership, business, trust, corporation, or public entity.

25       22.    The term "relating to" means referring to, describing, concerning, evidencing,

26  constituting, summarizing, addressing the subject matter of, supporting, negating, or

27  rebutting.

28

Heller
Ehrman LLP

23.    The term "share" means to send via electronic mail, to send a physical copy, distribute, exchange, or otherwise provide a copy.

24.    The term "identify" shall mean:

(a)    in connection with natural persons, to specify their full name, title and job description, and their present or last known business address and residence (designating which);

(b)    in connection with firms, partnerships, corporations, proprietorships, associations or other entities, to state their name, and their present or last known addresses of the principal place of business (designating which);

(c)    in connection with documents as defined above, to describe the document, setting forth its date, title, author or over whose name it issued, the addressee, parties thereto, the substance and the present custodian thereof, with such reasonable particularity as would be sufficient to permit the document to be identified among documents already produced pursuant requests for production, or to be sought by requests for production or subpoena *duces tecum*;

(d)    in connection with oral statements and communications: to (i) state when and where they were made; (ii) identify each of the participants and witnesses thereto, and all others present; (iii) indicate the medium of communication; and (iv) state their substance.

## **SCHEDULE B**

## **DEPOSITION TOPICS**

1.     Teachscape's knowledge of each of the Canter former employee's duty of confidentiality to Canter / Laureate, including:

        (a)     Identifying the date when Teachscape first learned of each employee's duty;

        (b)     How Teachscape first learned of each employee's duty; and

        (c)     Identifying any communications relating to Teachscape first learning of each employee's duty.

2.     Steps taken by Teachscape to ensure that Canter's former employees did not use Canter's and/or Laureate's confidential and/or proprietary information, including:

        (a)     Communications made to Canter's former employees relating to the use of Canter's and/or Laureate's confidential and/or proprietary information;

        (b)     Written acknowledgements or agreements relating to Canter's former employees relating to the use of Canter's and/or Laureate's confidential and/or proprietary information;

        (c)     Electronic security or other measures taken to prevent Canter's former employees from using Canter's and/or Laureate's confidential and/or proprietary information; and

        (d)     Employment of, or contracting with, Canter's former employees in positions or for tasks in which  the use of Canter's and/or Laureate's confidential and/or proprietary information would not

3.     Teachscape's knowledge, or lack thereof, of the information asserted as Canter's trade secrets in Plaintiffs Canter & Associates, LLC's and Laureate Education, Inc.'s Identification Of Trade Secrets, and any amendments thereto, including:

        (a)     Identifying the persons, including any of Canter's former employees, who had knowledge of the information;

Heller
Ehrman LLP

PLAINTIFFS' NOTICE OF DEPOSITION OF DEFENDANT                    Case No.: 07-3225 RS

1        (b)    Identifying documents or things relating to that information kept by

2    Teachscape or persons employed by or contracting with Teachscape;

3        (c)    Identifying the date when Teachscape first learned of the information;

4        (d)    Identifying the date when Teachscape first became aware that

5    information is comprised of Canter's trade secrets, and by what communication or other

6    method did it learn that it is comprised of Canter's trade secrets; and

7        (e)    What, if anything, did Teachscape with the information once it became

8    aware that the information is comprised of Canter's trade secrets.

9        4.    Teachscape's use of or lack thereof, and any steps taken to avoid the use of,

10   the information asserted as Canter's trade secrets in Plaintiffs Canter & Associates, LLC's

11   and Laureate Education, Inc.'s Identification Of Trade Secrets, and any amendments

12   thereto, including:

13       (a)    Identifying the persons, including any of Canter's former employees,

14   who used the information;

15       (b)    The specific information used, the dates(s) when it was used, how it

16   was used, and by which persons it was used; and

17       (c)    Identifying any communications or steps taken to prevent the use of the

18   information, and identifying the date when those communications were made or steps were

19   taken, why they were taken, and by which persons.

20       5.    Teachscape's knowledge, or lack thereof, of the specifics and details of the

21   relationship and contractual dealings between Marygrove and Canter/Laureate for the

22   provision of master's degree and graduate course programs in the field of education,

23   including:

24       (a)    Identifying the persons, including any of Canter's former employees,

25   who knew of the confidential terms of the relationship, when they first learned of those

26   confidential terms, how that knowledge was obtained, and what was done with that

27   knowledge;

28       (b)    Identifying communications between Teachscape and Marygrove

Heller
Ehrman LLP

8

relating to the terms of that relationship, including the persons who made and received those communications.

       (c)    Identifying the persons, including any of Canter's former employees, who knew of the confidential terms of the contract between Marygrove and Canter/Laureate in effect in 2006 and 2007, when they first learned of those confidential terms, how that knowledge was obtained, and what was done with that knowledge;

       (d)    Identifying communications between Teachscape and Marygrove relating to the terms of the contract between Marygrove and Canter/Laureate in effect in 2006 and 2007, including the persons who made and received those communications.

     6.    Teachscape's relationship and contractual dealings with Marygrove for the provision of master's degree and graduate course programs in the field of education, including:

       (a)    Identifying the persons, including Canter's former employees and persons at Marygrove, involved in making contact with, and negotiating the terms of the contract(s) between Teachscape and Marygrove;

       (b)    Identifying the date when Teachscape's relationship and contractual dealings with Marygrove began and how they began;

       (c)    The contractual terms being negotiated between Teachscape and Marygrove, including any proposals and counterproposals made during negotiations;

       (d)    Any change in contractual terms or further negotiations after September 2006;

       (e)    The terms of the executed contract(s) between Teachscape and Marygrove;

       (f)    The reasons why Teachscape was going to offer a Master in the Art of Teaching with a Focus on Curriculum, Instruction & Assessment;

       (g)    The reasons why Teachscape did not offer and is not offering a Master in the Art of Teaching with a Focus on Curriculum, Instruction & Assessment.

Heller
Ehrman LLP

9

7.      Teachscape's knowledge, or lack thereof, of the specifics and details of the relationships and contractual dealings between Canter/Laureate and accredited universities, including Andrews and Cardinal Stritch, for the provision of master's degree and graduate course programs in the field of education, including:

(a)      Identifying the persons, including any of Canter's former employees, who knew of the confidential terms of the relationship, when they first learned of those confidential terms, how that knowledge was obtained, and what was done with that knowledge;

(b)      Identifying communications between Teachscape and the accredited university relating to the terms of that relationship, including the persons who made and received those communications.

(c)      Identifying the persons, including any of Canter's former employees, who knew of the confidential terms of the contract(s) between the accredited university and Canter/Laureate, when they first learned of those confidential terms, how that knowledge was obtained, and what was done with that knowledge; and

(d)      Identifying communications between Teachscape and the accredited university relating to the terms of the contract between the accredited university and Canter/Laureate, including the persons who made and received those communications.

8.      Teachscape's relationship and contractual dealings with accredited universities, including Andrews and Cardinal Stritch, for the provision of master's degree and graduate course programs in the field of education, including:

(a)      Identifying the persons, including Canter's former employees and persons at the accredited university, involved in making contact with, and negotiating the terms of the contract(s) between the accredited university;

(b)      Identifying the date when Teachscape's relationship and contractual dealings with the accredited university began and how they began;

(c)      The contractual terms being negotiated between Teachscape and the accredited university, including any proposals and counterproposals made during

Heller
Ehrman LLP

10

1  negotiations;

2      (d)     Any change in contractual terms or further negotiations after

3  September 2006; and

4      (e)     The terms of the executed contract(s) between Teachscape and the

5  accredited university.

6      9.     Teachscape's advertising from 2006 to the present of Teachscape's master's

7  degree programs and Teachscape's graduate course programs offered through Marygrove,

8  including:

9      (a)     Identifying the persons, including any of Canter's former employees,

10  who created, revised, edited, or approved the advertising materials for the advertisement,

11  promotion, or marketing of these programs and courses;

12      (b)     Identifying the date(s) when the advertising materials were created,

13  revised, edited, and approved;

14      (c)     The process by which the specific advertising materials were chosen,

15  including any advertising, promotional, or marketing techniques or market information used

16  in arriving at those choices;

17      (d)     The costs and resources expended for the advertising, including the

18  cost of creating, making copies of, and distributing, the advertising materials; and

19      (e)     Identifying the target persons or groups of persons to whom the

20  advertising was directed, including any advertising, promotional, or marketing techniques

21  such as market segmentation, or market information, used in arriving at the target persons or

22  groups of persons.

23      10.    Teachscape's advertising from 2006 to the present of Teachscape's "Master in

24  the Art of Teaching with a Focus on Curriculum, Instruction & Assessment" degree

25  program to be offered through Marygrove as "updated", including:

26      (a)     Identifying the persons, including any of Canter's former employees,

27  who created, revised, edited, or approved the advertising materials that described

28  Teachscape's "Master in the Art of Teaching with a Focus on Curriculum, Instruction &

Heller
Ehrman LLP

11

1  Assessment" degree program as "updated";

2          (b)     Identifying the date(s) when the advertising materials were created,

3  revised, edited, and approved;

4          (c)     The process by which the specific advertising materials were chosen,

5  including any advertising, promotional, or marketing techniques or market information used

6  in arriving at those choices;

7          (d)     The costs and resources expended for the advertising, including the

8  cost of creating, making copies of, and distributing, the advertising materials; and

9          (e)     Identifying the target persons or groups of persons to whom the

10  advertising was directed, including any advertising, promotional, or marketing techniques

11  such as market segmentation, or market information, used in arriving at the target persons or

12  groups of persons.

13      11.    Teachscape's development from 2004 to the present of its *course materials*

14  relating to Teachscape's master's degree programs, including:

15          (a)     Identifying the persons, including any of Canter's former employees,

16  who produced the first versions of the course materials, the date(s) when those first versions

17  were produced, the form in which the first versions were kept, where the first versions were

18  made and kept, and what source materials (if any) were used in producing the first versions;

19          (b)     Identifying the persons, including any of Canter's former employees,

20  who revised and/or edited the course materials, the date(s) when they were revised and/or

21  edited, the form in which the revisions and/or edits were made and kept, where the revisions

22  and/or edits were made and kept, and what source materials (if any), beyond those used for

23  the first versions of these course materials, were used in making these revisions and/or

24  edits;

25          (c)     The costs and resources expended in producing the first versions of the

26  course materials and in revising and/or editing the course materials;

27          (d)     Software, electronic tools, and other technology used in developing the

28  course materials; and

Heller
Ehrman LLP

PLAINTIFFS' NOTICE OF DEPOSITION OF DEFENDANT                    Case No.: 07-3225 RS

1        (e)     Identifying the persons other than employees of Teachscape who

2  provided written and/or visual content for the course materials, what that written and/or

3  visual content is, why that person was chosen to provide the written and/or visual content,

4  the persons at Teachscape who were involved in choosing the persons to provide the written

5  and/or visual content, and the terms of the contract, license, or other business relationship

6  into which Teachscape entered with the persons to provide the written and/or visual content.

7       12.    Teachscape's development from 2004 to the present of its course materials

8  relating to Teachscape's graduate course programs, including:

9        (a)     Identifying the persons, including any of Canter's former employees,

10  who produced the first versions of the course materials, the date(s) when those first versions

11  were produced, the form in which the first versions were kept, where the first versions were

12  made and kept, and what source materials (if any) were used in producing the first versions;

13        (b)     Identifying the persons, including any of Canter's former employees,

14  who revised and/or edited the course materials, the date(s) when they were revised and/or

15  edited, the form in which the revisions and/or edits were made and kept, where these

16  revisions and/or edits were made and kept, and what source materials (if any), beyond those

17  used for the first versions of these course materials, were used in making these revisions

18  and/or edits;

19        (c)     The costs and resources expended in producing the first versions of the

20  course materials and in revising and/or editing the course materials;

21        (d)     Software, electronic tools, and other technology used in developing the

22  course materials; and

23        (e)     Identifying the persons other than employees of Teachscape who

24  provided written and/or visual content for the course materials, what that written and/or

25  visual content is, why that person was chosen to provide the written and/or visual content,

26  the persons at Teachscape who were involved in choosing the persons to provide the written

27  and/or visual content, and the terms of the contract, license, or other business relationship

28  into which Teachscape entered with the persons to provide the written and/or visual content.

13.     Teachscape's access to or lack thereof, use of or lack thereof, and any steps taken to avoid the use of, Laureate's, Canter's, and/or Walden's course materials in developing Teachscape's course materials, including:

(a)     Identifying the persons, including any of Canter's former employees, who developed, edited, or revised Teachscape's course materials and who had seen, developed, edited, or revised Laureate's, Canter's, and/or Walden's course materials previously;

(b)     The specific Teachscape course materials developed, edited, or revised by the persons who had seen, developed, edited, or revised Laureate's, Canter's, and/or Walden's course materials previously; and

(c)     Identifying communications or steps taken to ensure that Teachscape's course materials are similar to, or not similar to, Laureate's, Canter's, and/or Walden's course materials, including any communications or steps taken since September 2006 and in response to communications from Laureate.

14.     Teachscape's revenues, costs, and profits relating to Teachscape's master's degree programs offered through Marygrove, including:

(a)     Past, present, and expected future revenues, costs, and profits on a monthly and annual basis;

(b)     Expected trend in profitability for Teachscape in providing the programs;

(c)     Startup costs associated with setting up the programs;

(d)     Revenue, cost, and profit per student enrolled in the programs; and

(e)     Expenses relating to the administration and provision of the programs.

15.     Teachscape's revenues, costs, and profits relating to Teachscape's graduate course programs offered through Marygrove, including:

(a)     Past, present, and expected future revenues, costs, and profits on a monthly and annual basis;

(b)     Expected trend in profitability for Teachscape in providing the

Heller
Ehrman LLP

14

PLAINTIFFS' NOTICE OF DEPOSITION OF DEFENDANT                    Case No.: 07-3225 RS

1  programs;

2          (c)     Startup costs associated with setting up the programs;

3          (d)     Revenue, cost, and profit per student enrolled in the programs; and

4          (e)     Expenses relating to the administration and provision of the programs.

5      16.    Teachscape's revenues, costs, and profits relating to Teachscape's graduate

6  course programs offered through Andrews and Cardinal Stritch, including:

7          (a)     Past, present, and expected future revenues, costs, and profits on a

8  monthly and annual basis;

9          (b)     Expected trend in profitability for Teachscape in providing the

10  programs;

11          (c)     Startup costs associated with setting up the programs;

12          (d)     Revenue, cost, and profit per student enrolled in the programs; and

13          (e)     Expenses relating to the administration and provision of the programs.

14      17.    Teachscape's organizational structure, including:

15          (a)     All current and former affiliates, parents, subsidiaries, joint ventures, or

16  divisions that relate to Teachscape's master's degree programs and graduate course

17  programs.

18          (b)     The positions held by Canter's former employees and dates during

19  which they were employed or performed work for Teachscape; and

20          (c)     Identifying all persons who participated in Teachscape's master's

21  degree programs and graduate course programs, such as development, marketing, and

22  delivery of those programs.

23      18.    Teachscape's procedures for collecting and maintaining documents and/or

24  things in their central files, archival or storage locations, and/or kept by individual

25  employees, including:

26          (a)     How the documents or electronic documents are organized in central

27  files, archival or storage locations, and/or electronic systems, servers and electronic media;

28

Heller
Ehrman LLP

PLAINTIFFS' NOTICE OF DEPOSITION OF DEFENDANT                    Case No.: 07-3225 RS

1          (b)    How the documents or electronic documents are organized in

2 individual employee's files, archival or storage locations, electronic systems, personal

3 computers, laptops, and electronic media;

4          (c)    Policies regarding centralized document retention and destruction;

5          (d)    Policies regarding individual employees' document retention and

6 destruction;

7          (e)    The criteria for whose documents should be or were collected in

8 response to Requests for Production propounded by Canter and Laureate in this action; and

9          (f)    What measures are or were taken to ensure that all relevant documents

10 are or were collected in response to Requests for Production propounded by Canter and

11 Laureate in this action.

Heller
Ehrman LLP

16

PLAINTIFFS' NOTICE OF DEPOSITION OF DEFENDANT                          Case No.: 07-3225 RS