ANNETTE L. HURST (State Bar No. 148738)
DANIEL N. KASSABIAN (State Bar No. 215249)
ELENA M. DIMUZIO (State Bar No. 239953)
HELLER EHRMAN LLP
333 Bush Street
San Francisco, California  94104-2878
Telephone:  +1.415.772.6000
Facsimile:   +1.415.772.6268
E-mail:        Annette.Hurst@HellerEhrman.com
                   Daniel.Kassabian@HellerEhrman.com
                   Elena.DiMuzio@HellerEhrman.com

Attorneys for Plaintiff
LAUREATE EDUCATION, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LAUREATE EDUCATION, INC.,<br>a Maryland corporation,<br><br>                              Plaintiff,<br><br>      v.<br><br>TEACHSCAPE, INC., a Delaware corporation<br><br>                              Defendant. | Case No.:  C 07-3225 RS<br><br>**PLAINTIFF LAUREATE EDUCATION, INC.'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Judge:   The Honorable Richard Seeborg<br>Ctrm.:   4 (5th floor)<br>Date:     March 19, 2008<br>Time:    9:30 a.m. |

Heller
Ehrman LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY OF ARGUMENT ................................................... 1

ALLEGATIONS OF THE FIRST AMENDED COMPLAINT ....................................... 1

    A.    The Genesis of the Parties' Dispute. ............................................................ 1

    B.    The Infringing Course Materials. ................................................................. 2

    C.    Teachscape's Obfuscation, Avoidance And Delay In
        Providing Its Course Materials Demonstrates Likely
        Infringement ................................................................................................. 5

ARGUMENT .................................................................................................................. 7

I.    THE FAC PROVIDES SUFFICIENT NOTICE OF LAUREATE'S
    COPYRIGHT INFRINGEMENT CLAIM. ................................................................. 7

II.    LAUREATE'S CLAIM OF INFRINGEMENT IS LEGALLY
    SUFFICIENT. ...................................................................................................... 7

    A.    Laureate Has Pled Sufficient Facts To Proceed With Its
        Legally Cognizable Claim. ........................................................................... 7

        1.    Laureate's Legal Theory Covering Infringement Both
            By Published Works And Drafts Is Cognizable. ................................ 8

        2.    Laureate's Allegations Pursuant To Its Legal Theory
            Are Factually Sufficient. ................................................................. 11

    B.    Teachscape's Attempt To Raise The Pleading Standard By
        Requiring Specific Facts That Teachscape Finds Lacking
        Should Be Rejected. ..................................................................................... 12

    C.    Teachscape's Refusal To Provide The Documents Further
        Supports Laureate's Claim. ......................................................................... 14

III.    TEACHSCAPE MAY NOT EVADE LIABILITY BY REFUSING
    TO DISCLOSE ITS INFRINGING MATERIALS. ............................................... 15

    A.    Hidden Infringement Is Not Permitted In This Circuit. ............................. 15

Heller
Ehrman LLP

B.     Other Courts Have Similarly Allowed Such Cases To Proceed Past The Pleading Stage. ............................................................. 17

CONCLUSION ............................................................................................................. 18

Heller
Ehrman LLP

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Apple Computer, Inc. v. Franklin Computer Corp.*,
714 F.2d 1240 (3rd Cir. 1983) ........................................................................... 16

*Autoskill, Inc. v. Nat'l Educ. Support Sys., Inc.*,
994 F.2d 1476 (10th Cir.1993) ........................................................................... 16

*Balistreri v. Pacifica Police Dept.*,
901 F.2d 696 (9th Cir. 1988) ............................................................................... 7

*Bell Atlantic v. Twombly*,
127 S. Ct. 1955  (2007) ............................................................................... 8, 12

*Bus. Trends Analysts, Inc. v. Freedonia Group, Inc.*,
887 F.2d 399 (2d Cir. 1989) .............................................................................. 10

*Cavalier v. Random House, Inc.*,
297 F.3d 815 (9th Cir. 2001) ............................................................................. 13

*Cinebase Software, Inc. v. Media Guar. Trust, Inc.*,
No. C98-1100 FMS, 1998 WL 661465 (N.D. Cal. Sept. 22, 1998).......................... 7, 13

*Control Data Sys. v. Infoware, Inc.*,
903 F. Supp. 1316 (D. Minn. 1995) .................................................................... 16

*Elektra Entm't Group v. Avery*,
No. 06-2541, 2007 WL 2023545 (E.D. Cal. July 11, 2007) ......................................... 7

*Gero v. Seven-Up Co.*,
535 F. Supp. 212 (E.D.N.Y. 1982),
*aff'd mem.*, 714 F.2d 113 (2d Cir. 1982) ............................................................... 17

*Harper & Row Publishers, Inc. v. Nation Enters.*,
471 U.S. 539 (1985) ......................................................................................... 10

*Hoffman-LaRoche Inc. v. Invamed Inc.*,
213 F.3d 1359 (Fed. Cir. 2000) .................................................................... 14, 17

*In re Astea Int'l Inc. Sec. Litig.*,
No. 06-1467, 2007 WL 2306586 (E.D. Pa. Aug. 9, 2007).......................................... 11

*Intamin, Ltd. v. Magnetar Techs. Corp.*,
483 F.3d 1328 (Fed. Cir. 2007) .......................................................................... 17

*Iqbal v. Hasty*,
490 F.3d 143 (2d Cir. 2007) .............................................................................. 12

*Joshua Meier Co. v. Albany Novelty Mfg. Co.*,
236 F.2d 144 (2d Cir. 1956) .............................................................................. 10

iii

*Keith v. Volpe*,
   858 F.2d 467 (9th Cir. 1988) ........................................................................ 6

*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*,
   507 U.S. 163 (1993) .................................................................................... 7

*M. Kramer Mfg. Co. v. Andrews*,
   783 F.2d 421 (4th Cir. 1986) ...................................................................... 10

*Marvel Enters., Inc. v. NCSoft Corp.*,
   No. 04-9253, 2005 WL 878090 (C.D. Cal. Mar. 9, 2005) ............................ 7

*Pareto v. F.D.I.C.*,
   139 F.3d 696 (9th Cir. 1998) ........................................................................ 8

*Parks Sch. of Business v. Symington*,
   51 F.3d 1480 (9th Cir. 1995) ........................................................................ 7

*Perfect 10, Inc. v. Cybernet Ventures, Inc.*,
   167 F. Supp. 2d 1114 (C.D. Cal. 2001) ....................................................... 7

*Rice v. Fox Broad. Co.*,
   330 F.3d 1170 (9th Cir. 2003) .................................................................... 12

*Scheuer v. Rhodes*,
   416 U.S. 232 (1974) .................................................................................... 8

*Sega Enterprises Ltd. v. Accolade, Inc.*,
   977 F.2d 1510 (9th Cir. 1992) ...................................................................... 9

*Sony Computer Entertainment, Inc. v. Connectix Corp.*,
   203 F.3d 596 (9th Cir. 2000) ........................................................................ 9

*Sweirkiewicz v. Sorema N.A.*,
   534 U.S. 506 (2002) .................................................................................. 16

*Tenn. Fab. Co. v. Moultrie Mfg. Co.*,
   421 F.2d 279 (5th Cir. 1970) ...................................................................... 10

*Walker v. University Books, Inc.*,
   602 F.2d 859 (9th Cir. 1979) ........................................................................ 9

**STATUTES**

17 U.S.C. § 501 ............................................................................................ 17

17 U.S.C. § 504 ............................................................................................ 10

17 U.S.C. §§ 502-03 ..................................................................................... 10

**RULES**

Fed. R. Civ. P. 8 ............................................................................................. 8

Fed. R. Civ. P. 84 ........................................................................................... 8

Heller
Ehrman LLP

**INTRODUCTION AND SUMMARY OF ARGUMENT**

Defendant Teachscape, Inc. ("Teachscape") moves to dismiss on the ground that Plaintiff Laureate, Inc. ("Laureate") has failed to state a copyright infringement claim. The Motion to Dismiss Laureate's First Amended Complaint ("Motion") should be denied. The First Amended Complaint ("FAC") provides sufficient notice of Laureate's claim (Part I, *infra*), is legally sufficient under directly apposite authorities of this Court (Part II, *infra*), and dismissal would abrogate Copyright Act policy. Part III, *infra*.

The decision by Laureate's former co-plaintiff and subsidiary, Canter & Associates, LLC ("Canter"), to pursue its state law claims in state court has no bearing on this Motion, particularly as the Court has already determined those claims legally sufficient. Pursuit of those claims in another venue simply leaves Laureate free, if necessary, to pursue the issue concerning the sufficiency of its copyright infringement claim in the Ninth Circuit without putting a halt to Canter's state law claims. If anything, Laureate's and Canter's pursuit of their claims in both venues signals their strong belief in the strength of their claims. While both Laureate and Canter certainly would prefer to avoid the expense of dual-forum litigation, they are not willing to permit Teachscape further time to exploit their intellectual property unchecked through incessant procedural maneuvering designed to delay resolution of this action on the merits.

**ALLEGATIONS OF THE FIRST AMENDED COMPLAINT**

**A.      The Genesis of the Parties' Dispute.**

On September 2006, Teachscape announced that it was offering, for the first time ever, online master's degree programs in education with foci in (1) reading, (2) math, and (3) curriculum, instruction and assessment ("CIA"). FAC ¶ 15. Moreover, it offered these master's degree programs through Marygrove College ("Marygrove"), which was a long-time educational institution partner of Laureate's subsidiary, Canter, for the delivery of a master's degree program in CIA. *Id*. ¶¶ 8 & 15. This announcement followed the departures of twelve of Canter's employees, who worked in this business, for Teachscape. *Id*. ¶ 12. Among those employees were three Canter executives responsible for Canter's

business in master's degree and graduate course programs, and two employees who actually developed Canter's course materials for these programs, including degree programs with foci in reading, math, and CIA. *Id.* ¶¶ 12-13. The string of departures to Teachscape from Summer 2004 through October 2005 (*id.* ¶ 12) left Laureate suspicious, but it did not yet take action.

Teachscape's announcement of multiple master's degree programs just a year later made clear that Teachscape must have violated the law. The timing of these departures and Teachscape's announcement reflected that Teachscape had developed <u>three</u> different master's degree programs, negotiated a contract with Marygrove (whose CIA program was to be provided exclusively by Canter) to offer those programs, developed a marketing strategy, and began marketing its master's degree programs *in just a year's time*. *Id.* ¶ 16. In contrast, the experience of Canter, the company who started this business and has maintained a successful track record since, was that developing only a single such master's degree (let alone three) would require at least 18-24 months. *Id.* ¶¶ 9 & 16. Immediately upon seeing Teachscape's announcement, Laureate contacted both Teachscape and Marygrove in the Fall of 2006. *Id.* ¶ 18. Recognizing they had done something wrong, Teachscape withdrew its CIA degree program from Marygrove. *Id.* Teachscape nonetheless proceeded with launching its reading and math degree programs through Marygrove a few months later, in early 2007. *Id.* ¶ 18 & Ex. B.

**B.    <u>The Infringing Course Materials.</u>**

The FAC includes a comparison of the specializations, structures, course titles / subject matters of Teachscape's and Laureate's master's degree programs that are the subject of this action.

1
2

| **Laureate's Master's Degree Programs** | **Teachscape's Master's Degree Programs** |
|---|---|
| **Specialized Courses for Laureate's Reading Degree Program for Grades K-6:** | **Specialized Courses for Teachscape's Reading Degree Program for Grades K-6:** |
| • *Foundations of Reading and Literacy Development* | • *Foundations of Reading and Literacy* |
| • *Supporting the Struggling Reader* | • *Assessment & Intervention for Struggling Readers* |
| • *Strategies for Literacy Instruction, Part I* | • *Reading in the Content Areas* |
| • *Strategies for Literacy Instruction, Part II* | • *The Reading and Writing Connection* |
| **Specialized Courses for Laureate's Math Degree Program for Grades K-5:** | **Specialized Courses for Teachscape's Math Degree Program for Grades K-5:** |
| • *Elementary Mathematics: Number and Operations* | • *Problem Solving and Number & Operations, Grades K-5* |
| • *Elementary Mathematics: Geometry and Measurement* | • *Measurement and Geometry, Grades K-5* |
| • *Elementary Mathematics: Algebra* | • *Algebra, Grades K-5* |
| • *Elementary Mathematics: Data Analysis and Probability* | • *Data Analysis and Probability, Grades K-5* |
| **Specialized Courses for Laureate's Math Degree Program for Grades 6-8:** | **Specialized Courses for Teachscape's Math Degree Program for Grades 6-8:** |
| • *Number and Operations, Grades 6-8* | • *Problem Solving and Number & Operations, Grades 6-8* |
| • *Geometry and Measurement, Grades 6-8* | • *Measurement and Geometry, Grades 6-8* |
| • *Algebra, Grades 6-8* | • *Algebra, Grades 6-8* |
| • *Data Analysis and Probability, Grades 6-8* | • *Data Analysis and Probability, Grades 6-8* |
| **Core Courses Common To All Degrees** | **Core Courses Common To All Degrees** |
| • *Teacher as Professional* | • *Teacher as Leader* |
| • *Effective Teaching Using Learning Styles and Multiple Intelligences* | • *Understanding Teaching and Learning* |
| • *Instructional Models and Strategies* | |
| • *Designing Curriculum, Instruction, and Assessment, Part I* | • *Instructional Design* |
| • *Designing Curriculum, Instruction, and Assessment, Part II* | • *Effective Assessment* |
| • *Collaborative Action Research* | • *Teacher as Researcher* |
| | • *Meeting the Needs of All Students* |

Heller
Ehrman LLP

PL.'S OPP'N TO MOTION TO DISMISS FIRST AM. COMPL.          Case No. C 07-3225 RS

FAC ¶ 17.  While the course titles and basic subject matter is not protectable, Teachscape, after having raided numerous of Canter's key employees who indisputably had access to the copyrighted materials, announced multiple programs in an unreasonably short period of time while trading upon Canter's existing business relationships *and those programs were of the same structure and duplicated in almost every respect the course divisions of Laureate's programs.  Id*. ¶¶ 13-17.  Even more specifically:

- Melissa Jaivin was employed by Canter for over 10 years when she left in April 2004.  At that time, she was an executive overseeing Canter's business in distance-delivered master's degree programs—the subject of the parties' dispute—and obtained employment at Teachscape as an executive in "Higher Education," when Teachscape had no master's degree or graduate course programs (i.e., "Higher Education") at the time (*id*. ¶ 12(3)).

- Hae Young Kim and Mike Soules were both employed by Canter for over six years when they left in September 2004, and followed Ms. Jaivin to Teachscape.  When they left Canter, they were the executives responsible for graduate courses and business development in distance-delivered master's degree programs, respectively.  At Teachscape, they assumed similar roles in "Sales & Marketing, Higher Education" and as "General Manager, Higher Education," when Teachscape had no master's degree or graduate course programs (*id*. ¶ 12(4)-(5)).

- Almost a year afterward, Teachscape hired Canter's course developers in the Late Summer / Fall of 2005, presumably to develop Teachscape's courses.  Specifically, Barbara DeHart left Canter in June 2005, after four years at Canter during which she developed and drafted written materials for Laureate's math degree program course noted above (*id*. ¶ 12(1)).  As also noted above, Teachscape has developed a math degree with two sub-specializations that match Canter's programs (*id*. ¶ 17).

- In addition, Brenda Pope-Ostrow left Canter in October 2005, after more than four years there as a director of editing, where she developed and edited written course

Heller
Ehrman LLP

PL.'S OPP'N TO MOTION TO DISMISS FIRST AM. COMPL.                    Case No. C 07-3225 RS

materials for Laureate's reading and math degree programs noted above, and was very familiar with these materials (*id*. ¶ 12(2)).

Teachscape's announcement in September 2006 stated that it was offering not only the math and reading degree programs noted above, but also a degree program with a focus in Curriculum, Instruction, and Assessment ("CIA") program through Marygrove, when Canter was providing the same degree program to Marygrove at that time. *Id*. ¶ 15-16 & 18. Consequently, Teachscape developed <u>three</u> master's degree programs, negotiated a contract with Marygrove to offer those programs, developed a marketing strategy, and began marketing its master's degree programs in a year's time. *Id*. ¶ 16 In addition, Teachscape developed and separately marketed its first graduate courses in or around 6 months when it previously was not participating in this business at all. *Id*.

In contrast, development and accreditation of Canter's CIA program for a Marygrove master's degree took 24 months. *Id*. ¶ 9. In Canter's experience it requires at least 18-24 months to develop such master's degree program and obtain necessary approvals for its use by an accredited educational institution, like Marygrove. *Id*.  ¶ 16.

Laureate and Canter separately contacted Teachscape and Marygrove in the Fall of 2006 about Teachscape's announcement. *Id*. ¶ 18. Marygrove falsely denied knowledge of Teachscape's promotion of its degree programs through Marygrove, raising suspicions. *Id*. Teachscape admitted its intended program, and then withdrew it. *Id*. A few months later, in early 2007, Teachscape's reading and math programs were made available to Marygrove students for Marygrove degrees. *Id*. ¶ 18 & Ex. B.

**C.    <u>Teachscape's Obfuscation, Avoidance and Delay in Providing Its Course Materials Demonstrates Likely Infringement.</u>**

Access to Teachscape's materials for its master's degree programs through Marygrove is limited to those registering for its programs. *Id*. ¶ 19. They are not by any means secret; they are simply not available except to certain members of the public who register for Marygrove's courses. Accordingly, over a year ago, Laureate first requested that Teachscape produce final course materials and drafts thereof, so that Laureate could

determine whether Teachscape had misused Laureate's and Canter's copyrights and other intellectual property. *Id*. ¶ 20; Decl. of Gayle M. Athanacio in Supp. of Def.'s Mot. to Dismiss/Strike Compl. ("Athanacio Decl.") [Dkt. No. 7] Exs. A & D. Teachscape refused, and counter-offered to exchange only final course materials—which became "final" in early 2007 after Laureate's warning shot across Teachscape's bow in the Fall of 2006. FAC ¶ 18 & 20; Athanacio Decl. Ex. C.

At the hearing on Teachscape's motion to dismiss the original complaint, Teachscape made representations that it was willing to provide or "exchange" at least its final course materials. Since then, however, it simply has not produced any of its course materials. FAC ¶ 21. Even when Laureate specified the reading and math degree program courses, and narrowed its request to only the final materials—i.e., materials distributed to Marygrove—and the first available draft versions of the same, Teachscape refused. *Id*. When Laureate then requested the production of these materials through formal discovery, Teachscape simply engaged in self-help to refuse its discovery obligations, while failing to obtain any court order justifying its refusal. *Id*. ¶ 22. Teachscape since opted to oppose a motion to compel production and to move for a stay discovery—investing countless hours' worth of attorneys fees—rather than producing the materials.

Teachscape has even rejected Laureate's offer to pay for the production of these materials and to produce Laureate's registered materials at its own cost. *See* Pl's Mot. to Suppl. First Am. Compl., filed herewith, Ex. 1 ¶ 22 & Ex. 1-D.[1]

---

[1] Laureate has filed a motion for leave to file a Supplemental First Amended Complaint because it seeks to allege new facts occurring after the FAC was filed. *See* Fed. R. Civ. P. 15(d). Such supplementation is liberally allowed absent a clear showing of prejudice to the opposing party. *See Keith v. Volpe*, 858 F.2d 467, 473 (9th Cir. 1988).

Heller
Ehrman LLP

PL.'S OPP'N TO MOTION TO DISMISS FIRST AM. COMPL.                    Case No. C 07-3225 RS

**ARGUMENT**

**I.    THE FAC PROVIDES SUFFICIENT NOTICE OF LAUREATE'S COPYRIGHT INFRINGEMENT CLAIM.**

Copyright infringement is not one of the enumerated claims set forth in Rule 9(b), and therefore instead is governed by the notice pleading requirement of Rule 8.  *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993).  In *Leatherman*, the Supreme Court held that heightened pleading requirements may not be imposed on a plaintiff except as set forth in Rule 9.  *Id.*  Courts have repeatedly held that a plaintiff need not allege specific evidentiary details—the who, what, when, where, and how—of copyright infringement.  *See Elektra Entm't Group v. Avery*, No. 06-2541, 2007 WL 2023545, *1 (E.D. Cal. July 11, 2007); *Marvel Enters., Inc. v. NCSoft Corp.*, No. 04-9253, 2005 WL 878090, at *1 (C.D. Cal. Mar. 9, 2005); *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 167 F. Supp. 2d 1114, 1120 (C.D. Cal. 2001).

In this case, the FAC identifies by degree program and course title each of Teachscape's courses that comprise what Laureate believes are infringing materials and further alleges the date when infringement began.  *See* FAC ¶¶ 24-25.  This is plainly consistent with Rule 8, and any argument to the contrary is specious.  *Cinebase Software, Inc. v. Media Guar. Trust, Inc.*, No. C98-1100 FMS, 1998 WL 661465, *5 (N.D. Cal. Sept. 22, 1998).

**II.    LAUREATE'S CLAIM OF INFRINGEMENT IS LEGALLY SUFFICIENT.**

**A.    Laureate Has Pled Sufficient Facts To Proceed With Its Legally Cognizable Claim.**

As stated by this Court in Order Granting Motion To Dismiss, With Leave To Amend ("Order") [Dkt. No. 37]:

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. See *Parks Sch. of Business v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  Dismissal under FRCP 12(b)(6) may be based either on the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988).

Heller
Ehrman LLP

*Id.* at 2.  In applying this test the Court must accept as true all material allegations, as well as reasonable inferences to be drawn from them, so as to construe the pleading in the light most favorable to the non-moving party.  *See Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998).  "[A] well-pleaded complaint may proceed even if it appears 'that a recovery is very remote and unlikely.'"  *Bell Atlantic v. Twombly*, 127 S. Ct. 1955, 1965  (2007) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).  Thus, to state a cognizable claim, the "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ."  *Id.*

        As noted in *Bell Atlantic*, with regard to factual sufficiency there are two lines that must be crossed "to enter the realm of plausible liability": (1) "the line between the conclusory and the factual" and (2) the line between "the factually neutral and the factually suggestive."  *Id*. at 1966 n.5.  At the same time, however, the recitation of such facts need be no more than a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Per the Federal Rules, a complaint for copyright infringement needs to set forth very little in making factually suggestive allegations that are sufficient to state a claim—one statement may suffice.  *See* Fed. R. Civ. P. 84 & Form 19 (effective Dec. 1, 2007) ¶ 6 ("After the copyright was issued, the defendant infringed the copyright by publishing and selling a book entitled _____, which was copied largely from the plaintiff's book.").

## 1.    Laureate's Legal Theory Covering Infringement Both By Published Works And Drafts Is Cognizable.

        Teachscape has made no direct argument attacking Laureate's theory of infringement.  Instead it feigns ignorance as to why Laureate would seek drafts of the course materials.  Def.'s Mot., at 14.  But the drafts are highly relevant to the inquiry in this case and themselves provide a legally cognizable basis for an infringement claim.  Intermediate copying—that is, unauthorized copying in the development of a final product that does not itself infringe—*is plainly actionable infringement* under the law of this Circuit.  *Sony Computer Entm't, Inc. v. Connectix Corp.*, 203 F.3d 596 (9th Cir. 2000);

*Sega Enterprises Ltd. v. Accolade, Inc.*, 977 F.2d 1510 (9th Cir. 1992); *Walker v. University Books, Inc.*, 602 F.2d 859 (9th Cir. 1979).

In *Sega*, the Ninth Circuit expressly held that "the Copyright Act does not distinguish between unauthorized copies of a copyrighted work on the basis of what stage of the alleged infringer's work the unauthorized copies represent." *Sega*, 977 F.2d at 1518. In light of the existing law, in *Sony*, Connectix *admitted infringement* when "it copied Sony's copyrighted BIOS software in developing the Virtual Game Station . . . .", and stood exclusively on the fair use defense. *Sony*, 203 F.3d. at 602. In *Walker*, the Court held that utilization of the blueprints in the manufacturing process was sufficient to prove infringement. *Walker*, 602 F.2d at 863-64. In sum, in each of these Ninth Circuit cases, there was no liability by way of infringement by the defendants' "final" work, but liability still existed because defendants violated one or more of the copyright holder's exclusive rights under 17 U.S.C. § 106. And, except in *Walker* because the defendant provided the infringing blueprint to plaintiff after a charge of infringement was made, the facts and circumstances of these cases were such that the copyright holder could not plead the fact of intermediate copying. Instead, it had to rely on circumstantial facts and reasonable inferences, just as Laureate does here.

Thus, although we doubt it to be the case, even if the final course works do not infringe, if the drafts nonetheless infringe then Laureate's claim is a good one. Moreover, in this case, unlike in *Sony* and *Sega*, the intermediate copy and the final work are *directly competitive* with the registered works sought to be protected by the copyright holder, and not only have the potential to *but have in fact supplanted the market* for Laureate's registered works. Thus, the intermediate copies here could never be the basis for a fair use defense as was allowed in those cases.

In this case, the question of whether Teachscape's drafts are in and of themselves infringing—i.e., whether Teachscape engaged in intermediate copying—is not theoretical and does not result from speculation. Teachscape was confronted by Laureate regarding its wrongdoing in Fall of 2006, and started to distribute its final course materials later—in

early 2007.  *See* FAC ¶¶ 15 & 18.  If Teachscape improperly used Laureate's materials to enter the market, then it is rational to infer that Teachscape altered the final materials to make its infringement more difficult to prove.  Contrary to Teachscape's assertion in its Motion, a "draft" of a final course or audiotape in English that references or incorporates Laureate's copyrighted work is relevant because it has a tendency to prove that "the starting point for [the defendant's] 'redesign' was the plaintiff's work.  Infringement is not confined to exact reproduction but includes colorable alterations made to disguise the piracy." *Tenn. Fab. Co. v. Moultrie Mfg. Co.*, 421 F.2d 279, 284 (5th Cir. 1970); *see also Bus. Trends Analysts, Inc. v. Freedonia Group, Inc.*, 887 F.2d 399, 403 (2d Cir. 1989); *M. Kramer Mfg. Co. v. Andrews*, 783 F.2d 421, 446 (4th Cir. 1986); *Joshua Meier Co. v. Albany Novelty Mfg. Co.*, 236 F.2d 144, 146-47 (2d Cir. 1956).

Moreover, Teachscape's use of Laureate's materials in violation of 17 U.S.C. § 106, as may be evidenced in its drafts alone, entitles Laureate to damages and injunctive relief. *See* FAC ¶ 29.  If Teachscape's quick entry into the marketplace was accelerated by its improper use of Laureate's materials, then it resulted in profits for Teachscape (and profits lost by Laureate) for the additional period of time (of around a year) that Teachscape would have otherwise needed to develop a legitimate program, and then contract with Laureate's educational institution partners such as Marygrove.  The existence of such a causal connection between Teachscape's infringement and a loss of revenue for Laureate is sufficient for damages.  *See* 17 U.S.C. § 504; *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 566-68 (1985).

In addition, Laureate would be entitled to injunctive relief, which at the very least, would consist of impounding all infringing materials so as to prevent future benefit to Teachscape from their use.  *See* 17 U.S.C. §§ 502-03.  If Teachscape copied legally protectable expression then Laureate is entitled to relief.  The next question is whether Laureate has pled sufficient facts to support such a theory.

## 2. **Laureate's Allegations Pursuant To Its Legal Theory Are Factually Sufficient.**

Here, Laureate has clearly pled that Teachscape had access to its copyrighted materials through Canter's former employees. As for similarity, Laureate has pled circumstantial facts strongly suggesting unlawful similarity. In particular, Laureate has pled that Teachscape introduced its own similarly structured programs with very similar course titles in an unreasonably short period of time after raiding Canter for nearly all of the key employees with the ability to start such a program.[2] Laureate's and Canter's other claims against Teachscape have survived this Court's legal scrutiny. Thus, the Court must also presume that the other claims are factually and legally viable and that Teachscape has engaged in other unlawful behavior concerning these circumstances. The Court must assume, for purposes of the Motion, that Teachscape improperly raided Canter's employees, interfered with its customer relationships, and misappropriated its trade secrets, then released three competing programs in an area where it had absolutely no experience in a period of time insufficient to develop even one such program after having direct access to Laureate's course materials. Under such circumstances, it defies credulity that Teachscape did *not* infringe—not that Teachscape did infringe!

Laureate concedes that it does not have the Teachscape course materials or drafts in its possession in order to make a direct comparison. But Laureate's failure to obtain these

---

[2] Teachscape argues that the degree and course comparison set forth in paragraph 17 does not demonstrate a similarity of copyrightable subject matter. *See* Def.'s Mot., at 11-12. Teachscape disingenuously misses the point. Laureate does not claim the titles and general subject matter are copyrightable. Instead, Laureate alleges that the similarity of the course titles and program curricula supports a more general inference, based on all the facts alleged, that Teachscape's materials resulted from infringement of Laureate's copyrighted materials. Teachscape's request for judicial notice of web sites of other purportedly similar programs is therefore both irrelevant, and inappropriate as an evidentiary matter. *See* Def.'s Mot., at 12 n.5. Just because something is posted on the Internet does not make it an indisputable fact of which a court should take notice. *See In re Astea Int'l Inc. Sec. Litig.*, No. 06-1467, 2007 WL 2306586, *8 (E.D. Pa. Aug. 9, 2007); *see also* Pl.'s Obj. to Def.'s Req. for Judicial Notice in Supp. of Mot. to Dismiss FAC, filed herewith.

materials in light of its other allegations is excused for three reasons: (1) it would have to make false statements in order to obtain the materials in Marygrove's possession; (2) those materials would not comprise everything because the course work is done by the students seriatim over a two-year period; (3) this would not include the drafts under any circumstances. Given that Hewlett-Packard executives were prosecuted for their roles in pretexting, it is reasonable and appropriate, and this Court should approve of the fact that Laureate has refused to engage in such a practice, instead attempting to work this out in an above-board and Court-supervised fashion. The last thing the Court should do is punish Laureate because it finds itself confronted with a black-box situation and has chosen to pursue legitimate means of obtaining the information rather than subterfuge.

Contrary to Teachscape's assertions, the FAC has set forth facts that, in further view of Teachscape's refusal to provide access to its course materials, meet *Bell Atlantic*'s "flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis added). The Court may not view each one of the facts pled in the FAC in isolation (as Teachscape does), but instead must view them as a whole. By pleading all of them, Laureate has "nudged [its] claim[] across the line from conceivable to plausible . . . ." *Bell Atlantic*, 127 S. Ct. at 1974.

**B.     Teachscape's Attempt To Raise The Pleading Standard By Requiring Specific Facts That Teachscape Finds Lacking Should Be Rejected.**

Nowhere does Teachscape provide support for its argument that Laureate's facts are sufficient because, instead of them, Laureate must "plead infringement of . . . content in any of Laureate's 20 written works or 20 visual audiovisual works, or of substantial similarity of protectible expression between any of those 40 works and any of Teachscape's works, as required." Def.'s Mot., at 12.[3] Indeed, this Court, the Honorable Fern Smith presiding, has

---

[3] The Ninth Circuit law that Teachscape cites in support of this statement is inapposite because it deals with the burden of proof, not the pleading of a cognizable claim. *See, e.g., Rice v. Fox Broad. Co*., 330 F.3d 1170, 1174 (9th Cir. 2003) (holding on review of a motion
*(Footnote Continued)*

previously rejected precisely the argument Teachscape makes here for a heightened

pleading standard in copyright cases.  In *Cinebase Software, Inc. v. Media Guar. Trust, Inc.*,

No. C98-1100 FMS, 1998 WL 661465 (N.D. Cal. Sept. 22, 1998), the copyright holder,

Cinebase, sued its former executives, its former software engineers, and the company

formed by these individuals, after it learned that they were developing a competing software

product.  *See id* at *3.  At the time it filed suit, Cinebase had no access to the defendants'

infringing source code—it could only plead on information and belief that Defendants had

infringed its copyrights.  *See* Pl.'s Req. for Judicial Notice Ex. A ¶ 56.  The defendants, like

Teachscape here, moved to dismiss the copyright infringement claim as being pled in a

"wholly conclusory fashion" because Cinebase made "boilerplate allegations – without

identifying any specific acts – of infringement."  *Id*. Ex. B, at 3, 6-7; *see also id.* Ex. C,

at 8-10 & Ex. E, at 3-4.  In light of the allegations made, however, the Court ruled that:

> the Court does not agree with defendant that there is a heightened pleading
> standard in copyright infringement cases.  [citation omitted]  Rule 8 simply
> requires that a plaintiff provide a defendant with adequate notice of the
> subject of the claims to allow the defendant to respond.  Here, defendant does
> not yet have a finished product, but all parties agree that it is quite far along in
> the development of a software program designed to manage digital media.  As
> there is no ambiguity regarding the product plaintiff refers to in the First
> Amended Complaint, the Court finds that plaintiff has met the requirement of
> Rule 8.

*Cinebase*, 1998 WL 661465 at *5.  Thus, the Court rejected the defendants' attempt in that

case to use Cinebase's lack of access to the source code (despite more of an offer to inspect

than has ever been made here),[4] and inability to concretely allege specific acts of

---

for summary judgment, "[t]o establish a successful copyright infringement claim, a plaintiff
must show that he or she owns the copyright and that defendant copied protected elements
of the work."); *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2001) (same).

[4] At the motion's hearing, the defendants indicated that within a week of the suit being filed,
they told Cinebase to "come in to our facilities.  You can look at our computers; you can
look at our servers; you can look at our files.  You can tear the place apart" by way of a
third-party agent under a confidentiality agreement "[a]nd that person can see if we have

*(Footnote Continued)*

PL.'S OPP'N TO MOTION TO DISMISS FIRST AM. COMPL.                    Case No. C 07-3225 RS

infringement, to preclude the infringement claim from going forward.  Instead, this Court focused on whether the defendant had sufficient notice of its work accused of infringement given the circumstantial facts alleged.  The answer in that case was "yes," thus allowing the claim to go forward, as should be the case here.

**C.**    **Teachscape's Refusal To Provide The Documents Further Supports Laureate's Claim.**

In *Hoffman-LaRoche Inc. v. Invamed Inc.*, 213 F.3d 1359 (Fed. Cir. 2000), the court found that the plaintiff's request for information regarding the defendant's processes that were not publicly known, and the defendant's refusal of that request, were sufficient for the plaintiff to infer infringement of a patent for methods used to produce the product sold by the defendant.  *See id.* at 1363-64.  The procedure employed by the plaintiff in *Hoffman-LaRoche* is exactly the one employed here in an effort to avoid unlawful activity and submit itself to the Court's supervision in this matter.  And Teachscape has refused, as did the defendant in that case, and the claim should proceed, as it did in that case.

To avoid this conclusion, Teachscape tries to convince the Court that, because it has "offered to engage in an 'apples to apples' exchange of final materials," it has in fact provided Laureate access to its potentially infringing materials.  Def.'s Mot. at 7-8.  But the parties' actual dialogue shows that Teachscape is really engaged in a game where it continuously counteroffers in ways designed to prevent Laureate from confirming infringement.  Contrary to Teachscape's assertions, it is not really willing to provide any course materials, including final course materials, in a fashion that leaves Laureate free to reasonably evaluate its claim.  *See* FAC ¶¶ 20-22.  Teachscape consistently refuses to provide drafts, and always places insuperable restrictions on any offer of exchange of published course materials.

Since the hearing on Teachscape's first motion to dismiss, Laureate limited its

---

actually taken anything.  And that offer that we made was flatly rejected. . . ."  Pl.'s Req. for Judicial Notice  Ex. F, at 39.

request to the earliest available draft and final version—i.e., latest version, or published version if publication has occurred—of the materials for those specific courses identified in the FAC. *See id.* ¶ 21 & Ex C. After Teachscape's refusal of that request, Laureate propounded discovery for these materials. *See id*. ¶ 22. Laureate has now moved to compel those materials because Teachscape still refuses—even after Laureate has repeatedly clarified the specific materials that it seeks and has indicated that it is willing to pay Teachscape's cost of production to the extent Teachscape articulates any burden. *See* Pl.'s Mot. to Compel Prod. of Def.'s Materials [Dkt. No. 61], at 6-8. Indeed, Teachscape did not accept Laureate's latest offer to pay up to $5000 in reasonable expenses for the production of Teachscape's materials (final and first available draft) and to produce its own registered materials at its own cost. *See* Pl's Mot. to Suppl. First Am. Compl. Ex. 1 ¶ 22 & Ex. 1-D. Instead, Teachscape again responded with a limiting offer to provide only those final materials that are available online and to discuss in the future what drafts Laureate would need to evaluate its claim. *See id*. Ex. 1-D.

In the meantime, Teachscape has engaged in self-help by refusing to negotiate a protective order, refusing to comply with discovery requests, and failing to make any motion that would justify its behavior. Only after forcing Laureate to make multiple motions did Teachscape finally come forward with its feeble attempt to justify its continuing refusal to give Laureate access to its draft and final course materials. As the court implicitly recognized in *Hoffman-LaRoche*, the refusal to come clean should mean something. In short, where there is smoke, there is fire.

## III. TEACHSCAPE MAY NOT EVADE LIABILITY BY REFUSING TO DISCLOSE ITS INFRINGING MATERIALS.

### A. <u>Hidden Infringement Is Not Permitted In This Circuit.</u>

Refusing to let this claim proceed under the present circumstances is not only inconsistent with the law it also abrogates public policy. A holding that, in effect, Laureate must have access to Teachscape's materials in order to allege infringement would be contrary to public policy underlying the Federal Rules and the Copyright Act, because it

allows for hidden infringement to continue unfettered. "The liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of the claim." *Sweirkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002). Moreover, "it is virtually axiomatic that the public interest can only be served by upholding copyright protections and, correspondingly, preventing the misappropriation of the skills, creative energies, and resources which are invested in the protected work." *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3rd Cir. 1983); *Autoskill, Inc. v. Nat'l Educ. Support Sys., Inc.*, 994 F.2d 1476, 1499 (10th Cir.1993) ("the public interest is in the interest in upholding copyright protections."); *Control Data Sys. v. Infoware, Inc.*, 903 F. Supp. 1316, 1326 (D. Minn. 1995) ("the public interest is furthered by enforcing copyright laws and preventing the infringement of copyrighted materials").

Without the ability to accuse materials that are not readily visible to the public eye, plaintiffs would lose a substantial weapon in the arsenal of policing their copyrights. As in *Cinebase*, technology companies are constantly faced with "black box" technology about which they must make a judgment without access for purposes of comparison. "End User License Agreements" on software products routinely prohibit reverse engineering, thereby obstructing the ability to obtain lawful copies of software for purposes of comparison. Accordingly, this Court—in *Cinebase*—and other courts have routinely allowed claims for the infringement of software source code, electronic transmission of music or graphics, etc., in spite of the plaintiff's inability to confirm whether the content at issue was in fact infringing or who in fact was committing the infringement. These complaints, which are legion, must to some degree "guess" based on the circumstances that infringement is occurring, plead such, and then use discovery to substantiate the claim.

The result cannot be different, as Teachscape suggests, because the Court in *Cinebase* was addressing a "specific software coding program, not written and audiovideo copyrighted materials in English . . . ." Mot., at 15:20-21. Why would this Courts let inaccessible infringement of one copyright, but not another, be adjudicated based simply on the precise nature of the work? This would be contrary to the purposes of the Federal Rules

1    and the Copyright Act, which states that <u>anyone</u> who violates <u>any</u> of the exclusive rights of

2    the copyright owner is an infringer regardless of who that person is or whether that

3    infringement was done privately, semi-publicly, over the Internet, or in plain sight.  *See* 17

4    U.S.C. § 501.

### B.    Other Courts Have Similarly Allowed Such Cases To Proceed Past The Pleading Stage.

7            Like this Court in *Cinebase*, other courts also have permitted intellectual property

8    holders that could not gain lawful access to the potentially infringing item(s) to obtain

9    discovery that would permit the dispute to be resolved on the merits.  In *Gero v. Seven-Up*

10   *Co.*, 535 F. Supp. 212 (E.D.N.Y. 1982), *aff'd mem.*, 714 F.2d 113 (2d Cir. 1982), the

11   plaintiff alleged that the defendants used his copyrighted artwork in commercials, but the

12   plaintiff could not identify the commercials having not seen them himself.  Defendants

13   denied the existence of any such a commercial, and defendants invited plaintiff to screen of

14   all their commercials that existed three years prior to the filing of the complaint.  Upon

15   plaintiff's inspection and failure to locate an infringing commercial, defendants filed a Rule

16   12(c) motion, *which the court denied* so as to permit further pretrial discovery that was

17   specific and limited in scope.  Only after having exhausted this additional discovery, and

18   plaintiff still having not found any evidence of infringement, did the court grant a summary

19   judgment of noninfringement.  *Id.* at 215-218.

20           In analogous situations, the Federal Circuit has held that the lack of access to the

21   accused product or process is not a bar to asserting infringement of patent rights.  In

22   *Intamin, Ltd. v. Magnetar Techs. Corp.,* 483 F.3d 1328 (Fed. Cir. 2007), the Federal Circuit

23   applied Ninth Circuit law to determine that plaintiff-patentee had conducted a reasonable

24   pre-filing inquiry even though it alleged patent infringement without cutting open and

25   inspecting the inner working of defendants' accused brake system to determine if they in

26   fact met the patent's claims.  *See id.* at 1338; *see also Hoffman-LaRoche*, 213 F.3d at 1363-

27   64.

28           In short, Laureate has done everything right in order to invoke its interests under

Heller
Ehrman LLP

PL.'S OPP'N TO MOTION TO DISMISS FIRST AM. COMPL.                    Case No. C 07-3225 RS

1   these circumstances.  If the Court grants this Motion, it will place entire industries

2   dependent upon effective copyright enforcement against inaccessible accused works at risk,

3   forcing companies routinely to make the choice of engaging in potentially unlawful

4   subterfuge rather than simple honesty and a request for court assistance.

5   **CONCLUSION**

6   Teachscape's motion to dismiss Laureate's FAC should be denied.

7   Dated: February 27, 2008                    Respectfully submitted,

8                                               HELLER EHRMAN LLP

9

10  By _____/s/ ANNETTE L. HURST_____
    Attorneys for Plaintiff

11  LAUREATE EDUCATION, INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Heller
Ehrman LLP

PL.'S OPP'N TO MOTION TO DISMISS FIRST AM. COMPL.                    Case No. C 07-3225 RS