# EXHIBIT A

ORIGINAL

1  Patricia L. Glaser, State Bar No. 055668
   Mark G. Krum, State Bar No. 147788
2  Kevin J. Leichter, State Bar No. 154143
   CHRISTENSEN, MILLER, FINK, JACOBS,
3    GLASER, WEIL & SHAPIRO, LLP
   2121 Avenue of the Stars, 18th Floor
4  Los Angeles, California 90067
   Tel: (310) 553-3000
5  Fax: (310) 556-2920

6  Attorneys for Plaintiff
   CINEBASE SOFTWARE, INC.
7

**FILED**

JUN 1 0 1998

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

8
9          IN THE UNITED STATES DISTRICT COURT

10          NORTHERN DISTRICT OF CALIFORNIA

              SAN FRANCISCO DIVISION
11

12  CINEBASE SOFTWARE, INC., a California      )   Case No. C 98-1100 FMS
    corporation,                              )
13                                            )   **FIRST AMENDED COMPLAINT**
                       Plaintiff,             )   **FOR INJUNCTIVE RELIEF AND**
14                                            )   **DAMAGES FOR:**
         vs.                                  )
15                                            )   1.  **Copyright Infringement;**
    MEDIA GUARANTY TRUST, INC., a Delaware    )   2.  **Lanham Act Violation;**
16  corporation; ALLEN L. BROWN, JR., an individual; )   3.  **Idea Misappropriation;**
    NATALIA X. KROL, an individual, JOSEPH    )   4.  **Breach of Implied Contract**
17  ROSENFELD, an individual, THOMAS WILLS, an )   5.  **Trade Secret Misappropriation;**
    individual, CARL REISINGER, an individual and )   6.  **Unfair Competition;**
18  KATHERINE TOPPER, an individual,          )   7.  **Trade Disparagement;**
                                              )   8.  **Breach of Fiduciary Duty;**
19                     Defendants.            )   9.  **Fraud;**
                                              )   10. **Conspiracy; and**
20                                            )   11. **Intentional Interference with**
                                              )       **Economic Advantage;**
21                                            )
                                              )   **DEMAND FOR JURY TRIAL**
22  _____ )

23       PLAINTIFF CINEBASE SOFTWARE, INC. ("Cinebase" or the "Company"), for its

24  complaint against defendants, alleges as follows:

25                      **JURISDICTION AND VENUE**

26       1.    This is an action for copyright infringement arising under the Copyright Act of 1976,

27  as amended, 17 U.S.C. §§ 101 *et seq.*, reverse palming off under § 43 of the Lanham Act, 15 U.S.C.

28  § 1125(a), and related California statutory and common law. This Court has jurisdiction over

1    Cinebase's copyright infringement and Lanham Act claims pursuant to 28 U.S.C. §§ 1331 and

2    1338(a).  The Court has supplemental jurisdiction over causes that arise under the statutory and

3    common law of the State of California pursuant to 28 U.S.C. § 1367(a).

4         2.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) in that: (1)

5    Cinebase is informed and believes, and therefore alleges that all defendants reside in the same state

6    and one or more of the defendants reside in this judicial district; and (2) a substantial part of the

7    events giving rise to the claims herein took place in this judicial district.  Venue is also proper in this

8    district pursuant to 28 U.S.C. § 1400(a) in that defendants or their agents reside and/or may be found

9    within this district.

10        3.    Cinebase is informed and believes, and therefore alleges that defendants' activities

11   forming the basis for this Complaint are carried out in interstate commerce and/or affect the business

12   activities of Cinebase carried out in interstate commerce.  Cinebase's interstate trade and commerce,

13   described hereinafter, is carried out in part within this judicial district.

### INTRA-DISTRICT ASSIGNMENT

15        4.    Pursuant to Northern District Local Rule 3-2(c), intra-district assignment of this

16   action is proper in this Court's San Francisco Division in that a substantial part of the events giving

17   rise to the claims herein occurred in the County of San Francisco.

### THE PARTIES

19        5.    Cinebase is a California corporation with its principal place of business in Los

20   Angeles, California.

21        6.    Cinebase is informed and believes, and therefore alleges that defendant Allen L.

22   Brown, Jr. ("Dr. Brown") is an individual who, at all times relevant hereto, was and is a resident of

23   the State of California.  Before leaving Cinebase on or about October 13, 1997, Dr. Brown was the

24   Vice-President of Engineering and Product Planning, the Chief Technology Officer, and a member

25   of the Executive Committee at Cinebase.  (Defendant Dr. Brown should not be confused with

26   Alan G. Brown, who is the Chairman of the Board of Directors of Cinebase.  )

27        7.    Cinebase is informed and believes, and therefore alleges that defendant Natalia

28   ("Natasha") X. Krol ("Krol") is an individual who, at all times relevant hereto, was and is a resident

LAW OFFICES
CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL & SHAPIRO
2121 AVENUE OF THE STARS
EIGHTEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

of the State of California. Before leaving Cinebase on or about October 7, 1997, Krol was the Vice-President of New Business Development at Cinebase.

8.     Cinebase is informed and believes, and therefore alleges that defendant Joseph Rozenfeld is an individual who, at all times relevant hereto, was and is a resident of the State of California. Before leaving Cinebase on or about October 10, 1997, Rozenfeld was a software engineer at Cinebase.

9.     Cinebase is informed and believes, and therefore alleges that defendant Thomas Wills is an individual who, at all times relevant hereto, was and is a resident of the State of California. Before leaving Cinebase on or about October 31, 1997, Wills was a software engineer at Cinebase.

10.     Cinebase is informed and believes, and therefore alleges that defendant Carl Reisinger is an individual who, at all times relevant hereto, was and is a resident of the State of California. Before leaving Cinebase on or about November 14, 1997, Reisinger was a software engineer at Cinebase.

11.     Cinebase is informed and believes, and therefore alleges that defendant Katherine Topper is an individual who, at all times relevant hereto, was and is a resident of the State of California. Before leaving Cinebase on or about December 12, 1997, Topper was the Director of New Business Development at Cinebase. (Where appropriate, defendants Dr. Brown, Krol, Rozenfeld, Wills, Reisinger and Topper are hereinafter collectively referred to as the "Individual Defendants").

12.     Cinebase is informed and believes, and therefore alleges that defendant Media Guaranty Trust, Inc. is a Delaware corporation with its principal place of business in San Carlos, California and which, at all times relevant hereto, was and is doing business in the State of California.

13.     Cinebase is informed and believes, and therefore alleges that some of the Defendants were the agents and/or employees of other co-defendants, and in doing the things hereinafter alleged, were acting within the course and scope of such agency and/or employment and with the permission and consent of each such co-defendant.

///

LAW OFFICES
CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL & SHAPIRO
3131 AVENUE OF THE STARS
EIGHTEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

### The Business of Cinebase

14.     Cinebase's principal business was and is the development of digital media management software and unique solutions to the problems presented by management of large digital media databases. "Digital media," sometimes simply called "media," are mostly non-textual forms of conveying information such as film, video, audio, 3-D geometry files, pictures, computer-generated images, etc. Cinebase's business involves the development of software systems to manage "media," as distinguished from software systems that manage "documents." The term "document" refers mainly to textual information that is traditionally intended to exist in a printed format. One principal distinction between media and documents is the relative sizes of the materials. It takes much more space to represent digital media, such as images, than it does to represent formatted text.

15.     In addition, distinctions between types of media materials give rise to fundamental differences in the techniques that must be employed to manage each. One way that media materials may be distinguished is based on whether they are "dynamic" or "static" in nature. Static media are still, such as images or drawings. Dynamic media embody movement, such as film, video and audio. Management of dynamic media presents particular challenges, due not only to the size of the material, but also to the need to deliver high volumes of media continuously so the user can view the dynamic media.

16.     Another key distinction between different media objects is the "resolution" of the material. Resolution refers to the level of detail contained in a given portion of a material. For example, when a photograph is magnified many times, one can see that its image consists of a large number of individual dots spread out uniformly throughout the surface of the photograph. (The dots are of lighter or darker shade of black, in the case of a black and white photo, or of varying shades of color, in the case of a color photo.)  A photograph with more dots per unit area is said to have a "higher resolution" than a photograph with fewer dots per unit area. Other media can also be represented in terms of higher or lower resolution. Dynamic media are most often high-resolution in nature. Static media are increasingly high-resolution, especially with improvements in image-

///

LAW OFFICES
CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL & SHAPIRO
2121 AVENUE OF THE STARS
EIGHTEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

1  generating techniques and in hardware and networking. In fact, large digital libraries of high-
2  resolution static media are currently being created.

3        17.     Software for managing high-resolution dynamic and static media materials must solve
4  critical and difficult problems that are different and more complex than problems associated with
5  low-resolution media and documents. Moreover, the environment in which such problems exist, and
6  the processes, associations, methods and relationships that must be identified and understood to
7  efficiently and effectively manage such media are not only very complicated, they are unique to the
8  realm of high-resolution media.

9        18.     Software and related technology developed for the purpose of managing large
10  volumes of high-resolution dynamic and high-resolution static media materials are unrelated to and
11  inapplicable to the problems associated with managing other types of materials such as low-
12  resolution media and documents. In fact, until just the past several years, there were no companies
13  anywhere dedicated to developing and implementing software solutions to the problems posed by
14  managing large volumes of high-resolution media. Similarly, the number of software engineers and
15  related technical managers knowledgeable about even the existence of such problems, let alone
16  knowledgeable about approaches to solving those problems, was extremely limited. Indeed, up until
17  just the past several years, a separately recognizable "digital media management" segment of the
18  software development industry did not even exist. This segment of the software development
19  industry is still in its infancy.

20        19.     Cinebase was one of the very first companies to focus on the development of software
21  for managing large volumes of high-resolution dynamic and static media. Cinebase has spent in
22  excess of $14 million developing the software, software architecture, novel ideas, technology and
23  know-how necessary to design and develop high-resolution media management systems. The term
24  "software architecture" refers to the overall structure and organization of a computer program and is
25  used to describe the way that components of a software product fit together and interact with one
26  another. Implementation of a software's architecture is accomplished through the creation of a
27  source code. Source code is a series of instructions written in any one of several computer
28  languages, such as COBAL, FORTRAN, BASIC, EDL, etc., depending in part on the type of

LAW OFFICES
CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL & SHAPIRO
2121 AVENUE OF THE STARS
EIGHTEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

1  computer for which the program is intended. Object code is the machine readable binary translation

2  of the source code through which the computer receives its instructions.

3      20.    Because of Cinebase's foresight in entering this field, and as a result of its substantial

4  expenditures of time, money and effort, Cinebase is not only recognized as a pioneer in this industry,

5  but was, at the time the Defendants began committing the wrongful acts herein alleged, in a unique

6  position to take a leading role in the expanding digital media management market.

7      21.    Cinebase's competitive advantage is in large part dependent on the computer

8  software, software architecture, technology and know-how, trade secrets, novel ideas and other

9  confidential and proprietary information it has developed ("Cinebase's Intellectual Property"). It is

10  well known and understood among Cinebase's employees, and in particular its engineering and

11  technical staff, that Cinebase's Intellectual Property is confidential and proprietary in nature and must

12  be treated as such. As part of its efforts to protect its Intellectual Property, Cinebase employs a

13  variety of techniques including designating certain documents with a "Confidential" legend, limiting

14  access to materials and ideas on a need-to-know basis and, in the case of information maintained in

15  electronic form, employing password protection for its various computer systems and databases.

16  **Defendant Dr. Alan Brown**

17      22.    On or about July 1, 1996, defendant Dr. Brown commenced work at Cinebase as the

18  Vice-President of Engineering and Product Planning, a member of Cinebase's Executive Committee,

19  and the company's Chief Technology Officer. Cinebase is informed and believes, and therefore

20  alleges that prior to his employment at Cinebase, Dr. Brown's work focused on software directed

21  towards document management and he had little or no experience with software developed for

22  managing large volumes of high-resolution dynamic and static media.

23      23.    At Cinebase, Dr. Brown's primary responsibilities included: (i) planning and

24  developing Cinebase's software products; (ii) designing and supervising the design and

25  implementation of the software and the software architecture underlying the company's digital media

26  management software; (iii) recruiting and hiring the technical personnel necessary for Cinebase's

27  software development efforts; and (iv) supervising the development, coordination and

28  implementation of procedures for protecting Cinebase's Intellectual Property.

First Amended Complaint                          6                    Case No.: C-98-1100 FMS

24.     Because of his positions and responsibilities, Dr. Brown had access to essentially all of the Company's Intellectual Property, including but not limited to, software, software architecture, product plans, competitive assessments, product design features and specifications, engineering documents, technical and software programming information relating to product development and implementation, novel ideas, technical know-how and information concerning the Company's marketing, market development activities and customer requirements.  For example, Dr. Brown had access to drafts of and information concerning Weinstock Media Analysis's report on digital media asset management and GISTIC's report on the digital media management industry, both of which were created for the use and benefit of Cinebase.  Indeed, Dr. Brown himself supervised the creation of much of the software architecture for Cinebase's product and actively participated in the gathering of marketing development materials for the Company.  Cinebase is informed and believes, and therefore alleges, that much of this information existed on the hard drive of the laptop computer system provided by Cinebase to Dr. Brown for his use in connection with performing his various duties at Cinebase.

**Defendant Natasha Krol**

25.     On or about December 1, 1996, defendant Krol began employment at Cinebase as the Vice-President of New Business Development.  Krol's principal role was to investigate and develop new business opportunities for Cinebase.  Krol focused her efforts on gathering information and establishing contacts in the advertising market with a view towards Cinebase's expansion into that market.  Expansion into the advertising market was a part of Cinebase's next planned marketing activity and formed an integral part of Cinebase's formal Business Plan.  Cinebase is informed and believes, and therefore alleges that Krol compiled and maintained a database of information concerning the advertising market.  Cinebase expended considerable resources and money in support of this work performed by Krol for Cinebase.  Cinebase is informed and believes, and therefore alleges that Krol never submitted any written report or analysis to Cinebase regarding her research.

26.     Krol had access to much of Cinebase's confidential and proprietary business information including, but not limited to, financial information, marketing and market development activities, customer requirements, and product planning and design information.  For example, Krol

CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL & SHAPIRO
LAW OFFICES
2121 AVENUE OF THE STARS
EIGHTEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

1  had access to drafts of and information concerning Weinstock Media Analysis's report on digital

2  media asset management and GISTIC's report on the digital media management industry. Both of

3  these reports were created for the use and benefit of Cinebase. Cinebase is informed and believes,

4  and therefore alleges that much of this information existed on the hard drive of the laptop computer

5  system provided by Cinebase to Krol for her use in connection with performing her various duties at

6  Cinebase.

7          **Defendants' Unlawful Scheme**

8          27.     Cinebase is informed and believes and therefore alleges that during the time that Dr.

9  Brown and Krol had in their possession Cinebase's Intellectual Property belonging to Cinebase, Dr.

10  Brown and Krol, wilfully and without Cinebase's authorization, copied all or substantial portions of

11  such Intellectual Property. Cinebase is informed and believes and therefore alleges that Dr. Brown

12  and Krol copied such Intellectual Property for use in developing and maintaining a software product

13  that would be marketed in competition with Cinebase.

14          28.     In or about the Spring of 1997, Dr. Brown began engaging in conduct that was

15  contrary to the interests of Cinebase. Among other things, Dr. Brown failed to deliver accurate

16  product status reports in a timely fashion, he failed to return telephone calls from clients, vendors,

17  prospects and Cinebase staff, and he failed to fully attend important strategy meetings concerning the

18  development of Cinebase's products. Moreover, in meetings held in August and September of 1997,

19  Dr. Brown represented to the Executive Committee that he was employing his best efforts to recruit

20  technical people to meet Cinebase's needs. Dr. Brown was not, however, recruiting technical

21  personnel for Cinebase at this time. Rather, Dr. Brown had ceased all efforts to recruit for Cinebase

22  and, as alleged in more detail below, he, along with defendant Krol, was actively planning to steal

23  from Cinebase core members of the company's software engineering team.

24          29.     Included among the core members of that team were defendants Rozenfeld, Wills and

25  Reisinger. These defendants were instrumental in developing and writing the source code for

26  Cinebase's next generation high-resolution media management software. As such, these defendants

27  were in possession of a great deal of Cinebase's Intellectual Property, including not only the software

28  architecture, source code, design, development and implementation of Cinebase's next generation

CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL & SHAPIRO
LAW OFFICES
SHELL AVENUE OF THE STARS
EIGHTEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

1  digital media management software product, but also technical know-how regarding what to do and

2  what not to do in designing and developing such a product. Such know-how, which was acquired by

3  Cinebase as a result of the expenditure of substantial amounts of resources, is of tremendous value,

4  including in particular to Cinebase. Such information is not generally known and would be of

5  enormous value to a competitor of Cinebase. To legitimately acquire such information, a competitor

6  of Cinebase would necessarily have to expend time and resources similar to those expended by

7  Cinebase to develop the information.

8        30.    Cinebase is informed and believes, and therefore alleges that, prior to their arrival at

9  Cinebase, defendants Rozenfeld, Wills and Reisinger had little or no knowledge or expertise relating

10  to the design and development of software for managing large volumes of high-resolution dynamic

11  and static media. Consequently, defendants Rozenfeld, Wills and Reisinger not only had access to

12  and possessed detailed knowledge of Cinebase's Intellectual Property, including its highly

13  confidential and proprietary technology, technical know-how and computer software development

14  information developed and created at Cinebase's expense by Cinebase employees for Cinebase, but

15  they would not have possessed such information were it not for their employment at Cinebase.

16        31.    Cinebase is informed and believes and therefore alleges that during the time that

17  defendants Rozenfeld, Wills and Reisinger had in their possession Cinebase's Intellectual Property,

18  they, wilfully and without Cinebase's authorization, copied all or substantial portions of it. Cinebase

19  is informed and believes and therefore alleges that defendants Rozenfeld, Wills and Reisinger did so

20  in order to develop a software product that would be marketed in competition with Cinebase.

21        32.    Cinebase is informed and believes and therefore alleges that by copying all or a

22  substantial portion of Cinebase's Intellectual Property, Defendants have developed, or are in the

23  process of developing, one or more products or portions thereof which are identical or substantially

24  similar to Cinebase's digital media management software product.

25        33.    Cinebase is informed and believes and therefore alleges that by copying Cinebase's

26  digital media management product, Defendants have incorporated, or are in the process of

27  incorporating, into Media Guaranty Trust's existing products, programs or portions thereof which are

28  identical or substantially similar to Cinebase's digital media management software product.

LAW OFFICES
CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL & SHAPIRO
FIFTEENTH FLOOR
2121 AVENUE OF THE STARS
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

47680.1

34.     The natural, probable and foreseeable result of the aforesaid conduct of Defendants has been and will continue to be to deprive Cinebase of business and goodwill, to injure Cinebase's relations with prospective customers, and to impose substantial expense on Cinebase to counteract the aforesaid conduct.

35.     Cinebase is informed and believes and therefore alleges that it has lost or will lose revenues for its digital media management software product and has sustained or will sustain damages as a result of Defendants' wrongful conduct alleged herein.  Defendants' wrongful conduct has also harmed Cinebase's goodwill and has deprived and will continue to deprive Cinebase of opportunities for expanding its goodwill.

36.     During or about the spring and summer of 1997, Cinebase was negotiating the terms of an employment agreement with Dr. Brown, as well as other of its key employees.  Included in these terms was a non-disclosure agreement addressing Cinebase's Intellectual Property.  Dr. Brown objected to the terms of the non-disclosure agreement proposed by Cinebase and vigorously negotiated those terms.  At one point he offered to provide Cinebase with an exemplar of a form of non-disclosure agreement he had encountered earlier in his career and which would, presumably, be acceptable to him.  Dr. Brown never followed through on this offer and never signed a non-disclosure agreement with Cinebase.  Cinebase is informed and believes, and therefore alleges that Dr. Brown prolonged negotiations on the non-disclosure agreement until he and Krol were ready to leave Cinebase and that he never intended to sign either a non-disclosure agreement or any employment agreement with Cinebase.  Rather, he fraudulently used these negotiations to mask his and Krol's efforts, alleged hereinbelow, to steal Cinebase's Intellectual Property and key personnel.

37.     Dr. Brown resigned his position at Cinebase on or about October 13, 1997.  Krol resigned her position on or about October 7, 1997.  Defendants Rozenfeld, Will and Reisinger resigned their positions at Cinebase on or about, respectively, October 10, 1997, October 31, 1997, and November 14, 1997.  The abrupt departure of these five individuals from Cinebase, all within a few weeks of each other, turned out to be no coincidence.  Rather, it was a direct result of an odious and deliberate scheme of defendants Dr. Brown and Krol to depart from Cinebase, steal key Cinebase employees and Cinebase's Intellectual Property, and use these to start a company

LAW OFFICES
CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL & SHAPIRO
2121 AVENUE OF THE STARS
EIGHTEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

1  competing directly against Cinebase in the field of designing and developing software for managing

2  high-resolution dynamic and static media.

3      38.  Cinebase is informed and believes, and on that basis alleges that Dr. Brown and Krol

4  began formulating their plans to steal Cinebase's Intellectual Property and key employees many

5  months prior to their departure from Cinebase. Cinebase is informed and believes, and on that basis

6  alleges that in or about mid-August, 1997, defendants Dr. Brown and Krol reduced part of their plan

7  to writing and incorporated such writings into a slide presentation made to at least one venture

8  capital banking group in an effort to raise capital for their proposed new company.

9      39.  Dr. Brown and Krol implemented their plan and have formed defendant Media

10  Guaranty Trust as a direct competitor of Cinebase. Moreover, Cinebase is informed and believes,

11  and therefore alleges that defendants Dr. Brown and Krol have also followed through on their plans

12  to steal Cinebase's Intellectual Property and employees and, along with defendants Rozenfeld, Wills,

13  Reisinger, and Topper, are improperly using the information, knowledge and materials gained from

14  Cinebase to unfairly compete against Cinebase.

15      40.  Cinebase is informed and believes, and therefore alleges that, as part of Dr. Brown's

16  and Krol's scheme to steal Cinebase's Intellectual Property for use in and by their own competing

17  company, Dr. Brown and Krol, upon resigning from Cinebase, took with them the laptop computers

18  that had been supplied to them by Cinebase for their use in performing their job duties. Cinebase is

19  informed and believes, and therefore alleges, that these laptop computer systems contained large

20  amounts of Cinebase's Intellectual Property. Dr. Brown and Krol retained these two computer

21  systems for two entire months after their departure from Cinebase. The computer systems were only

22  returned to Cinebase when the Company, after learning in mid-December 1997 of Dr. Brown's and

23  Krol's plan to steal Cinebase's product, database and employees, demanded the return of the

24  computer systems.

25      41.  Upon examination of the laptop computer systems that were in Dr. Brown's and

26  Krol's possession, it was learned that the hard drives had been completely erased (and partially

27  written over as well), thereby concealing physical evidence that Dr. Brown and Krol had retained and

28  asported Cinebase's Intellectual Property without the consent of Cinebase, and that Dr. Brown and

LAW OFFICES
CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL & SHAPIRO
2121 AVENUE OF THE STARS
EIGHTEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

47680.1

1   Krol intended to and did misappropriate said Intellectual Property for Media Guaranty Trust's and

2   their own benefit and use.

3         42.    Cinebase is informed and believes, and therefore alleges that Media Guaranty Trust,

4   Dr. Brown and Krol willfully and with the specific intent to injure Cinebase and reduce its chances

5   of recovering compensation for the injuries described herein, concealed and destroyed the

6   information contained on the hard drives in order to destroy the evidence contained thereon

7   concerning Defendants' misconduct.

8         43.    By reason of the foregoing, Cinebase's ability to inspect the contents of the hard drive

9   has been inhibited.  That information is critical for the preparation and presentation of Cinebase's

10  case and for Cinebase's opportunity to obtain reasonable compensation and/or a preliminary and

11  permanent injunction, and Defendants should therefore be estopped from asserting that they did not

12  and/or will not engage in the misconduct herein alleged.

13        44.    Cinebase is informed and believes, and therefore alleges that even after their

14  departure from Cinebase on October 5, 1997, Dr. Brown and Krol continued to steal confidential

15  proprietary information from Cinebase through the assistance of defendant Topper, who remained an

16  employee of Cinebase until her resignation on or about December 12, 1997.

17        45.    On or about June 2, 1997, defendant Topper had been promoted by defendant Krol to

18  the position of Director of New Business Development at Cinebase.  Prior to that time, Topper had

19  been a part-time administrative assistant at Cinebase.  In her new position, Topper's principal role

20  was to assist in the investigation and development of new business opportunities for Cinebase.

21  Topper had access to much of Cinebase's confidential and proprietary business information

22  including, but not limited to, marketing and market development activities, customer requirements,

23  and product planning information.

24        46.    Cinebase is informed and believes, and therefore alleges that, after Dr. Brown's and

25  Krol's departure from Cinebase, but before Topper resigned from Cinebase, Topper acted as a

26  "mole," secretly providing Dr. Brown and Krol with highly confidential proprietary marketing

27  information developed at Cinebase's expense by an outside consultant who had been hired by

28  Cinebase to work on its behalf.  Cinebase is informed and believes, and therefore alleges that this

First Amended Complaint                    12                    Case No.: C-98-1100 FMS

1  marketing information has been used by Defendants in planning and structuring their marketing

2  strategies.

3      47.    Cinebase is informed and believes and therefore alleges that Media Guaranty Trust,

4  Dr. Brown, Krol, Rozenfeld, Wills and Reisinger have marketed, published, distributed and made

5  derivative works from Cinebase's media management software product, and intend to do so in the

6  future.

7      48.    Cinebase is informed and believes and therefore alleges that Media Guaranty Trust,

8  Dr. Brown, Krol, Rozenfeld, Wills and Reisinger, in producing, distributing, and/or publishing a

9  digital media management software product, have removed all indications and designations of

10  Cinebase as the true source of this software product and has and will continue to produce, distribute

11  and/or publish this software under a different name, which has and will continue to confuse

12  purchasers of Media's software product and lead them to believe that Cinebase's software product

13  was developed by Media Guaranty Trust.

14      49.    In addition, Cinebase is informed and believes, and therefore alleges that, as part of

15  Dr. Brown's and Krol's scheme they, and/or defendants Rozenfeld, Wills, Reisinger and Topper,

16  planned to do and did the following: (i) copied for Media Guaranty Trust's and their own

17  information, use and benefit Cinebase's confidential, proprietary and copyrighted information from

18  printed files and computer files and databases; (ii) usurped for Media Guaranty Trust's and their own

19  personal use and benefit confidential and proprietary technology and know-how they had acquired at

20  the expense of Cinebase and for the purpose of advancing Cinebase's interests; (iii) appropriated for

21  Media Guaranty Trust's and their own personal use and benefit detailed marketing information,

22  developed for Cinebase's benefit and at Cinebase's expense, regarding the digital media

23  management market, including, but not limited to, the advertising segment of that market; and (iv)

24  persuaded and caused key software engineer employees who were in possession of highly

25  confidential and proprietary information to leave Cinebase and join Media Guaranty Trust.

26      50.    Cinebase is informed and believes, and therefore alleges that Defendants are

27  improperly using Cinebase's Intellectual Property they acquired as officers and employees of

28  Cinebase to start up a business competing directly against Cinebase and to design, develop and

LAW OFFICES
CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL & SHAPIRO
2121 AVENUE OF THE STARS
EIGHTEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

1    implement a high-resolution dynamic and static media management software product that will

2    compete directly against Cinebase's substantially similar product.

### FIRST CLAIM FOR RELIEF

### COPYRIGHT ACT

### COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. § 106

**(Against All Defendants)**

7    51.    Cinebase realleges and incorporates herein by reference Paragraphs 1 through 50 of

8    this Complaint as though set forth in full herein.

9    52.    Cinebase owns the copyrights to and has obtained federal copyright registrations for

10   its Cinebase 2.0 computer program for management of high-resolution digital media, which includes

11   the software architecture, header file and program source codes, related design documents and object

12   codes (to the extent that each of these is within the subject matter of copyright under 17 U.S.C. § 102

13   and is covered by the Registration) (collectively, the "Copyrighted Works").  Attached hereto, as

14   Exhibits 1 and 2, are copies of the Certificates of Registration of Cinebase's version 2.0 digital

15   media management computer software.

16   53.    The copyrighted works contain a substantial amount of material wholly original with

17   Cinebase and are copyrightable subject matter under the laws of the United States.  Cinebase has

18   complied in all respects with the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.* and all other laws

19   governing copyright.

20   54.    Since the development of its copyrighted works, Cinebase has been and still is the

21   sole proprietor of all of its rights, title and interest in and to the copyrighted works.

22   55.    Defendants had access to Cinebase's Copyrighted Works and, Cinebase is informed

23   and believes, and therefore alleges, Defendants obtained one or more copies of Cinebase's

24   Copyrighted Works during the time they were employed at Cinebase.

25   56.    Cinebase is informed and believes and therefore alleges that Defendants have

26   infringed Cinebase's rights in and to the Copyrighted Works and that Cinebase's product is identical

27   or substantially similar, in whole or in part, to Cinebase's Copyrighted Works.

28   ///

LAW OFFICES
CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL & SHAPIRO
2121 AVENUE OF THE STARS
EIGHTEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

57.     By means of the actions complained of herein, Defendants have infringed and will continue to infringe Cinebase's copyrights in the Copyrighted Works by using Cinebase's Copyrighted Works to produce, distribute and/or publish digital media management products, substantial portions of which were copied and/or derived from Cinebase's copyrighted digital media management computer program.  Cinebase is informed and believes, and therefore alleges that Defendants intend to distribute and/or publish such software to various persons for Defendants' own commercial benefit, including but not limited to Defendants' prospective customers as well as Cinebase's prospective and existing customers.

58.     The acts of Defendants constitute direct infringement, contributory infringement and inducement of the infringement of Cinebase's Copyrighted Works in violation of 17 U.S.C. § 106 *et seq.*

59.     Cinebase is informed and believes, and therefore alleges that Defendants had prior knowledge of Cinebase's copyrights and, therefore, their infringement has been willful and deliberate and in conscious disregard of Cinebase's rights.

60.     Defendants' actions as alleged above have directly and proximately caused Cinebase to suffer monetary damages in an amount that cannot readily be ascertained or calculated at this time, but which is believed to be in excess of $5 million.  Additionally, Cinebase has incurred liability for costs and attorneys' fees.

61.     Further, Cinebase is suffering irreparable harm through the loss of its exclusive rights to the use of its Copyrighted Works and Cinebase will continue to suffer such harm unless said infringement is enjoined by this Court.  Further, unless immediate injunctive relief as prayed for herein is granted, the infringement of Cinebase's Copyrighted Works will have been completed, rendering ineffectual a final judgment.  By reason thereof, Cinebase has no adequate remedy at law for such conduct.

///

///

///

///

LAW OFFICES
CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL & SHAPIRO
2121 AVENUE OF THE STARS
EIGHTEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

**SECOND CLAIM FOR RELIEF**

**LANHAM ACT**

**REVERSE PASSING OFF UNDER 15 U.S.C. § 1125(a)**

**(Against All Defendants)**

62.     Cinebase realleges and incorporates herein by reference Paragraphs 1 through 50 of this Complaint as though set forth in full herein.

63.     Cinebase is informed and believes and therefore alleges that Defendants intend to market as Media Guaranty Trust's software product a product which is in fact Cinebase's product or is substantially similar thereto.  Cinebase is informed and believes and therefore alleges that Media Guaranty Trust, Dr. Brown, Krol, Rozenfeld, Wills and Reisinger removed or otherwise removed all indications and designations of Cinebase as the source of said software product and has and will continue to distribute and/or publish this software under a different name.

64.     Cinebase is informed and believes and therefore alleges that the aforesaid actions of Defendants were wilful, wrongful and calculated to trade upon Cinebase's unique position in the market by distributing and/or publishing Cinebase's product (or a product substantially similar thereto) as their own.

65.     Cinebase is informed and believes and therefore alleges that the aforesaid conduct has and will continue to confuse purchasers of said software product and is likely to lead purchasers to believe that the supposed product of Media Guaranty Trust (actually Cinebase's) has been created and developed by Media Guaranty Trust.  Such conduct constitutes unfair competition in violation of the Trademark Laws of the United States, 15 U.S.C. § 1125(a).

66.     Defendants' actions as alleged above have directly and proximately caused Cinebase to suffer monetary damages in an amount that cannot be readily ascertained or calculated at this time, but which is believed to be in excess of $5 million.

67.     Defendants' actions as alleged above were malicious, wanton and oppressive and, therefore, Cinebase is entitled to recover reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

68.     Further, Cinebase is suffering irreparable harm through the loss of its reputation and goodwill.  Unless Defendants are enjoined and restrained by order of this Court, Defendants will

CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL & SHAPIRO

LAW OFFICES
2121 AVENUE OF THE STARS
EIGHTEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

47680.1

1  continue the practice as herein alleged, and the continuation of said conduct will cause further

2  damage to Cinebase. Cinebase will be irreparably damaged unless Defendants are enjoined from the

3  acts complained of herein.

### THIRD CLAIM FOR RELIEF

### IDEA MISAPPROPRIATION/BREACH OF CONFIDENCE

### (Against the Individual Defendants)

7  69.      Cinebase realleges and incorporates by reference Paragraphs 1 through 50 of this

8  Complaint as though set forth in full herein.

9  70.      To the extent that any part of Cinebase's Intellectual Property, including its software

10 architecture, source codes, object codes, and related design documents consists of ideas which are

11 not novel and vague and are within the subject matter of copyright under 17 U.S.C. § 102 (the

12 "Protectable Ideas"), the Individual Defendants misappropriated such Protectable Ideas for their own

13 use and in breach of their legal duties to Cinebase.

14 71.      At all relevant times, Cinebase transmitted its Protectable Ideas to the Individual

15 Defendants in confidence. At all times, Defendants understood and agreed that the Protectable Ideas

16 would be kept confidential because of, inter alia, the unique and novel nature of the Protectable

17 Ideas, further understanding and agreeing that the Protectable Ideas would not be used or disclosed

18 for any purpose other than for the benefit of Cinebase.

19 72.      Cinebase submitted its Protectable Ideas to Defendants in reliance on the condition

20 and understanding that such would not be used or disclosed for any purpose not in furtherance of

21 Cinebase's interest or in any way contrary to Cinebase's interests. Defendants at all times understood

22 this condition of confidentiality and knowingly and willingly accepted and agreed to receive

23 Cinebase's Protectable Ideas on these conditions.

24 73.      Despite this, Defendants breached this confidentiality with Cinebase by accepting

25 Cinebase's Protectable Ideas and then making use of them for their own personal gain and benefit

26 and to the detriment of Cinebase.

27 ///

28 ///

LAW OFFICES
CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL & SHAPIRO
3131 AVENUE OF THE STARS
EIGHTEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

74.    As a direct and proximate result of Defendants' conduct alleged herein, Cinebase has suffered monetary damages in an amount that cannot readily be ascertained or calculated at this time, but which is believed to be in excess of $5 million.

## FOURTH CLAIM FOR RELIEF

## BREACH OF IMPLIED-IN-FACT- CONTRACT

### (Against All Defendants)

75.    Cinebase realleges and incorporates by reference Paragraphs 1 through 50 and 70 of this Complaint as though set forth in full herein.

76.    Cinebase disclosed its Protectable Ideas to the Individual Defendants only in connection with their employment with Cinebase and on the condition and with the understanding that Defendants would not use such ideas for their own personal gain or to the detriment of Cinebase.

77.    The Individual Defendants at all times voluntarily accepted disclosure of this information by Cinebase knowing the conditions on which this information was being tendered. The Individual Defendants' knowledge of these conditions is imputed to Media Guaranty by reason of the Individual Defendants' affiliation with and control of Media Guaranty. As a result, an implied-in-fact contract was thereby entered into between the parties for the right to use Cinebase's Protectable Ideas. As a result, Defendants impliedly agreed to compensate Cinebase if Defendants used Cinebase's Protectable Ideas for their own personal profit and gain.

78.    Cinebase is informed and believes, and therefore alleges, that Defendants used Cinebase's Protectable Ideas for their own personal profit and gain without Cinebase's consent.

79.    At all times relevant herein, Cinebase duly performed all conditions, covenants and promises on their part to be performed under this implied-in-fact contract except for any such condition or covenant Cinebase was prevented or excused from performing.

80.    Defendants have breached and are breaching this implied-in-fact contract by, inter alia, using the Protectable Ideas to develop a digital media management software product in competition with Cinebase and by failing and refusing to compensate Cinebase for the use of their software product and ideas.

CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL & SHAPIRO

LAW OFFICES
2121 AVENUE OF THE STARS
EIGHTEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

81.     Defendants' breach as alleged herein has directly and proximately caused Cinebase to suffer monetary damages in an amount that cannot readily be ascertained or calculated at this time, but which is believed to be in excess of $5 million.

### FIFTH CLAIM FOR RELIEF

### TRADE SECRET MISAPPROPRIATION UNDER

### CAL. CIV. CODE § 3426

### (Against All Defendants)

82.     Cinebase realleges and incorporates herein by reference Paragraphs 1 through 50 of this Complaint as though set forth in full herein.

83.     At all times relevant herein, Cinebase possessed and continues to possess certain confidential, trade secret, and proprietary information concerning its business operations ("Trade Secret Information") including, but not limited to, the following:

A.      The software architecture and source codes of Cinebase's digital media management software, including all documents and/or files, or portions thereof, containing software architecture information.  Examples of such documents include Cinebase's software reference manuals, object diagrams of the 2.x core, and notes from engineering department design meetings;

B.      Plans, design features, product specifications and engineering designs for Cinebase's digital media management product, including all documents and/or files, or portions thereof, containing such information.;

C.      Technical and software programming know-how relating to the design and development of digital media management software, including detailed information about what does and what does not work (negative research) in connection with such design and development efforts;

D.      Information concerning Cinebase's marketing plans and strategies, market research, market development activities, and market analyses;

///

///

LAW OFFICES
CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL & SHAPIRO
3121 AVENUE OF THE STARS
EIGHTEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

E.    Cinebase's efforts to develop new customers, including identities of potential clients and associated contacts, as well as the strategies behind such efforts; and

F.    The identity of and information concerning existing clients and the pricing and types of services offered to those clients.

84.    Because the Trade Secret Information identified above is not generally known to the public or to other persons who can obtain economic value from its disclosure or use, is the subject of efforts by Cinebase to maintain its secrecy, and derives independent economic value from not being generally known, such information constitutes "trade secrets" under section 3426.1 of the California Civil Code.

85.    The Trade Secret Information is not generally known to the public or to other persons who can obtain economic value from its disclosure or use for the following reasons, among others:

A.    The totality of the Trade Secret Information identified above is unique to Cinebase and could not independently be derived or obtained from other sources without substantial expenditure of time and resources;

B.    Cinebase makes the Trade Secret Information identified above available only to authorized Cinebase employees and representatives for the sole benefit of Cinebase under circumstances that give rise to a duty to maintain the secrecy of such information and to limit its use.

86.    Cinebase derives and continues to derive both actual and potential economic value from the possession and use of such Trade Secret Information and from the fact that it is not generally known to the public for the following reasons, among others:

A.    It preserves Cinebase's substantial investment of time and resources in identifying the existing need for digital media management software and technology and in determining, through prototype development, whether a viable product with proven technology can be produced;

B.    It secures Cinebase's valuable investment of time and resources in designing, developing and implementing its digital media management software product;

LAW OFFICES
CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL & SHAPIRO
3131 AVENUE OF THE STARS
EIGHTEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

C. It safeguards Cinebase's investment of time and resources in analyzing the market and potential customer's needs and in developing marketing plans and strategies for maximizing the value of its digital media management software product in an environment where the competitive advantage of such information may mean the difference between preserving and losing market share, as well as identifying the correct timing for implementing various marketing strategies;

D. It secures the competitive advantage obtained by Cinebase in the form of "lead-time" as a result of Cinebase's early identification of a market's need and advance development of a product to meet that need;

E. It permits Cinebase to develop new services and products to better serve the market by affording it an advantage over competitors in the form of "lead-time," without which the risk and cost of developing such new approaches would be prohibitively high;

F. It affords Cinebase an opportunity to increase market share by allowing it to develop and implement its sales strategies before its competitors have time to anticipate and respond to such actions.

87. At all times relevant herein, Cinebase undertook reasonable efforts under the circumstances to maintain the secrecy of such Trade Secret Information, including but not limited to the following: (i) designating appropriate documents with a "Confidential" legend; (ii) limiting access to confidential documents on a need-to-know basis; and (iii) in the case of proprietary information maintained in electronic form, employing password protection its various computer systems and databases.

88. As explained above, during the course of their employment at Cinebase, the Individual Defendants had access to the Trade Secret Information, including but not limited to Cinebase computer and file records containing such information. As the Individual Defendants were fully aware, such access was authorized by Cinebase only to the extent necessary for proper

///

1   performance of the Individual Defendants' respective duties and responsibilities and only for the

2   benefit of Cinebase.

3       89.    During the entire course of their employment at Cinebase, the Individual Defendants

4   were, and still are, each under a duty to maintain the secrecy of such Trade Secret Information and to

5   limit the use of such information to those circumstances authorized by Cinebase and for the

6   exclusive benefit of Cinebase.

7       90.    As described above, the Individual Defendants each resigned (except for Topper, who

8   was terminated) from their respective positions at Cinebase and formed and/or started work for

9   Media Guaranty Trust, a competing company in the business of developing digital media

10  management software and technology.

11      91.    Cinebase is informed and believes, and therefore alleges that Defendants have

12  misappropriated Cinebase's Trade Secret Information and/or are using the Trade Secret Information

13  to:

14          A.    Establish a business that is competing directly against Cinebase in the digital

15               media management industry;

16          B.    Design and develop software for the management of large volumes of high-

17               resolution dynamic and static media, in competition with Cinebase; and

18          C.    Develop and implement marketing plans to penetrate various aspects of the

19               digital media management market, in competition with Cinebase.

20      92.    Cinebase is further informed and believes, and therefore alleges that the Individual

21  Defendants' ownership of, interest in and/or employment with defendant Media Guaranty Trust

22  constitutes a threatened and/or actual misappropriation of Cinebase's Trade Secret Information by all

23  Defendants in that their association with Media Guaranty Trust will require the inevitable use and/or

24  disclosure of Cinebase's Trade Secret Information.  Cinebase is informed and believes, and therefore

25  alleges that the positions of defendants Dr. Brown, Rozenfeld, Wills and Reisinger at Media

26  Guaranty Trust involve the design, development, and implementation of software directed to the

27  management of large volumes of high-resolution media.  Prior to their employment at Cinebase,

28  these individuals did not possess significant knowledge regarding such software.  Rather, they gained

LAW OFFICES
CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL & SHAPIRO
3121 AVENUE OF THE STARS
EIGHTEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

First Amended Complaint                    22                    Case No.:  C-98-1100 FMS

1  knowledge in this area by virtue of their employment at Cinebase and as a result of Cinebase's

2  expenditure of money and resources.  It will not be possible for them to perform their functions at

3  Media Guaranty Trust without making direct and substantial use of the technical know-how they

4  gained through their employment at Cinebase.  Such information includes not only methods,

5  processes and approaches developed at Cinebase for solving problems associated with the

6  management of large volumes of high-resolution media, but also the information associated with the

7  mistakes and wrong turns taken by Cinebase's employees in learning how to overcome problems in

8  the field.

9       93.    Cinebase is informed and believes, and therefore alleges, that defendant Krol's

10  position at defendant Media Guaranty Trust is directly related to marketing and market development

11  for software designed for the management of large volumes of high-resolution dynamic and static

12  media.  This is the same work Krol did for Cinebase.  Moreover, Cinebase is informed and believes,

13  and therefore alleges that the specific area to which Krol's activities at Cinebase were directed, *i.e.*,

14  the advertising segment of the digital media management market, is the principal area on which

15  Krol's efforts will be focused on behalf of defendant Media Guaranty Trust.  Under such

16  circumstances, it will not be possible for Krol to perform her duties at Media Guaranty Trust without

17  making direct and substantial use of the extensive marketing information she gained through her

18  employment at Cinebase.

19       94.    Based on their actions as alleged above, including their asportation of  Trade Secret

20  Information when they left the Company, Cinebase is informed and believes, and therefore alleges,

21  that Defendants' use of Cinebase's Trade Secret Information is not only inevitable, but is actual and

22  ongoing.

23       95.    Defendants' actions as alleged above have directly and proximately caused Cinebase

24  to suffer monetary damages in an amount that cannot readily be ascertained or calculated at this time,

25  but which is believed to be in excess of $5 million.

26       96.    The Defendants' actions as alleged above were willful and malicious, and therefore,

27  Cinebase is entitled to recover reasonable attorneys' fees pursuant to Cal. Civ. Code § 3426.4, as

28  well as exemplary damages under Cal. Civ. Code § 3426.3.

LAW OFFICES
CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL & SHAPIRO
2121 AVENUE OF THE STARS
EIGHTEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

97.    As a result of the actual and threatened misappropriation and improper use of Cinebase's Trade Secret Information by Defendants, Cinebase is suffering irreparable harm, and will continue to suffer such harm unless Defendants' conduct is enjoined by this Court. Moreover, unless immediate injunctive relief as prayed for herein is granted, the Defendants' acts of trade secret misappropriation will have been completed, rendering ineffective a final judgment. By reason thereof, Cinebase has no adequate remedy at law for such conduct.

**SIXTH CLAIM FOR RELIEF**

**UNFAIR COMPETITION UNDER CAL. BUS. & PROF. CODE § 17200**

**(Against All Defendants)**

98.    Cinebase realleges and incorporates herein by reference Paragraphs 1 through 97 of this Complaint as though set forth in full herein.

99.    By the actions described above, Defendants have engaged in acts of unfair competition, including but not limited to unlawful, unfair or fraudulent business acts or practices, under California Business and Professions Code § 17200 *et seq*.

100.    Defendants' actions as alleged above have directly and proximately caused and will continue to directly and proximately cause Cinebase to suffer monetary damages in an amount that cannot readily be ascertained or calculated at this time, but which is believed to be in excess of $5 million. Additionally, Cinebase has incurred and will incur liability for costs and attorneys' fees.

101.    Defendants' acts as alleged herein were done willfully, maliciously, oppressively and fraudulently, in a conscious attempt to cause injury to Cinebase and, therefore, Cinebase is entitled to an award of punitive and exemplary damages under Cal. Civ. Code § 3292.

102.    As a result of the acts of unfair competition of Defendants, Cinebase is suffering and will continue to suffer irreparable harm unless Defendants' conduct is enjoined by this Court. Moreover, unless immediate injunctive relief as prayed for herein is granted, the Defendants' acts of unfair competition will have been completed, rendering ineffective a final judgment. By reason thereof, Cinebase has no adequate remedy at law for such conduct.

///

///

LAW OFFICES
CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL & SHAPIRO
2121 AVENUE OF THE STARS
EIGHTEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

### SEVENTH CLAIM FOR RELIEF

### TRADE DISPARAGEMENT

### (Against Dr. Brown and Krol)

103.    Cinebase realleges and incorporates herein by reference Paragraphs 1 through 50 of this Complaint as though set forth in full herein.

104.    Cinebase is informed and believes, and therefore alleges that defendants Dr. Brown and Krol, both prior to and subsequent to their departure from Cinebase, have willfully, without justification, and without privilege caused to be communicated to customers, prospective customers, strategic partners, potential strategic partners and venture capitalists defamatory and disparaging statements of and concerning Cinebase's business and products.  Cinebase is informed and believes, and therefore alleges that these defamatory and disparaging statements were understood by those to whom they were communicated as statements that were of and concerning Cinebase's business and products.

105.    Dr. Brown's and Krol's statements disparaged Cinebase's business and products in that they falsely stated that Cinebase's digital media management products were inferior and that the company was on the verge of "imploding" due to lack of quality management and leadership and would, therefore, shortly cease to exist.

106.    Dr. Brown's and Krol's statements were false and were made either with knowledge of their falsity or with reckless disregard for their truth or falsity.  Cinebase is informed and believes, and therefore alleges that as a direct and proximate result of Dr. Brown's and Krol's statements, customers, prospective customers, and prospective strategic partners have been deterred from entering into relationships with Cinebase and from otherwise dealing with Cinebase.

107.    Cinebase is informed and believes, and therefore alleges that as a direct and proximate result of Dr. Brown's and Krol's statements, venture capitalists have been deterred from supplying Cinebase with the capital necessary to run and advance Cinebase's business and from otherwise dealing with Cinebase.

108.    Dr. Brown's and Krol's conduct as alleged herein has directly and proximately caused Cinebase to suffer monetary damages in an amount that cannot readily be ascertained or calculated at

47680.1

LAW OFFICES
CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL & SHAPIRO
2121 AVENUE OF THE STARS
EIGHTEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

1   this time, but which is believed to be in excess of $5 million. Additionally, Cinebase has incurred

2   and will incur liability for costs and attorneys' fees.

3       109.    As a result of the conduct of Dr. Brown and Krol alleged herein, Cinebase is suffering

4   irreparable harm and will continue to suffer such harm unless Dr. Brown's and Krol's conduct is

5   enjoined.

6       110.    Dr. Brown's and Krol's acts as alleged herein were done willfully, fraudulently,

7   oppressively and maliciously in a conscious attempt to cause injury to Cinebase and, thus, Cinebase

8   is entitled to an award of punitive and exemplary damages.

### EIGHTH CLAIM FOR RELIEF

### FRAUD

### (Against Dr. Brown)

12      111.    Cinebase realleges and incorporates herein by reference Paragraphs 1 through 50 of this

13  Complaint as though set forth in full herein.

14      112.    In Executive Committee Meetings held in August and September of 1997, Dr. Brown

15  'represented to the Executive Committee that he was employing his best efforts to recruit technical

16  people to meet Cinebase's needs. In or about March of 1997, Dr. Brown entered' into negotiations

17  with Cinebase over non-disclosure agreements to be entered into by and between Cinebase and its

18  employees. In these negotiations, which lasted virtually until his sudden departure from the

19  Company, Dr. Brown repeatedly falsely represented that he intended to enter into such an agreement,

20  stating that he would provide Cinebase with an exemplar of a form of agreement that would be

21  acceptable to him. As Cinebase's Chief Technology Officer, Dr. Brown's refusal to enter into a non-

22  disclosure agreement with Cinebase, along with his representation that he intended to provide

23  Cinebase with an acceptable form of agreement and his failure to do so, resulted in Cinebase being

24  unable to obtain such agreements from its other technical staff members. Indeed, Cinebase is

25  informed and believes, and therefore alleges that Dr. Brown refused to even present Cinebase's

26  proposed non-disclosure agreement to his technical staff.

27      113.    In addition, during these negotiations, Dr. Brown repeatedly represented that he

28  intended and was willing to enter into an employment agreement with Cinebase, even going so far as

LAW OFFICES
CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL & SHAPIRO
2121 AVENUE OF THE STARS
EIGHTEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

to sign, on August 27, 1997, an Executive Term Sheet describing, in detail, the terms and conditions of his employment with Cinebase and representing in writing his willingness to enter into an employment agreement containing broad non-disclosure and non-compete provisions.

114.    Cinebase is informed and believes, and therefore alleges, that the above-stated representations were false and misleading at the time they were made, that Dr. Brown knew these representations were false when made, and that the representations were made with the intent to defraud and mislead Cinebase.

115.    At the time Dr. Brown made these misrepresentations, and at all times up to and including the time Dr. Brown resigned from Cinebase, Cinebase was ignorant of the falsity of Dr. Brown's misrepresentations and believed them to be true, and therefore relied on them to Cinebase's detriment.  The true facts, which Dr. Brown actually concealed from Cinebase, were that Dr. Brown had already made plans to leave Cinebase to start a company competing directly against Cinebase and he had no intention of signing either a non-disclosure agreement or an employment agreement with Cinebase, or performing technical-employee recruiting efforts on Cinebase's behalf.  Had Cinebase been aware of these facts or of the falsity of Dr. Brown's representations, Cinebase would have taken actions to ensure that its needs for technical employees were met and that its employees signed appropriate non-disclosure agreements prior to their leaving the company.

116.    Cinebase's reliance was justifiable.  At the time Dr. Brown never indicated or revealed his intent or desire to leave the company, and was seemingly carrying out his job responsibilities.  Accordingly, Cinebase acted reasonably in accepting Dr. Brown's statements and could not be expected to conduct an independent investigation into the truth of such statements.

117.    As a direct and proximate result of Dr. Brown's fraudulent conduct as herein alleged, Cinebase has suffered a lack of adequate technical and support staff, thereby seriously endangering its ability to satisfy its customers needs and, more importantly, make timely advances in the development of its software product so as to be able to maintain its leading position in the digital media management industry.  Furthermore, as previously alleged, the Individual Defendants have misappropriated Cinebase's Intellectual Property and are making use of it for Media Guaranty Trust's and their own benefit.  As a direct and proximate result of Dr. Brown's fraud as herein alleged,

CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL & SHAPIRO
LAW OFFICES
3121 AVENUE OF THE STARS
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

Cinebase has been deprived of having written contracts with several of the Individual Defendants that it would otherwise have secured but for Dr. Brown's fraudulent misrepresentations.

118.    Dr. Brown's conduct as alleged herein has directly and proximately caused Cinebase to suffer monetary damages in an amount that cannot readily be ascertained or calculated at this time, but which is believed to be in excess of $5 million.

119.    The aforementioned conduct of Dr. Brown constituted intentional misrepresentations and concealments of material facts known to Dr. Brown, made with the intention on the part of Dr. Brown of depriving Cinebase of property and/or legal rights or otherwise causing injury.  Dr. Brown thereby acted with fraud, malice and oppression towards Cinebase.  Dr. Brown's conduct described herein was despicable conduct that subjected Cinebase to cruel and unjust hardship in conscious disregard of Cinebase's rights, so as to justify an award of exemplary and punitive damages.

## NINTH CLAIM FOR RELIEF

## INTENTIONAL INTERFERENCE WITH ECONOMIC ADVANTAGE

### (Against Media Guaranty Trust, Dr. Brown and Krol)

120.    Cinebase realleges and incorporates herein by reference Paragraphs 1 through 50 of this Complaint as though set forth in full herein.

121.    Cinebase is informed and believes, and therefore alleges that Media Guaranty Trust, Dr. Brown and Krol have made false and misleading representations to Cinebase's customers, prospective customers, strategic partners, potential strategic partners and potential venture capitalists -- including at the least Hambricht & Quist -- concerning the quality of Cinebase's product, the ability of Cinebase to maintain and improve its product, and Cinebase's ability to survive and thrive as a company.  There may be other persons or entities to whom such false and misleading representations have been made.  Cinebase is informed and believes, and therefore alleges that these false and misleading representations are interfering with Cinebase's prospective economic relationships with the above-mentioned customers, prospective customers, strategic partners and/or prospective strategic partners and are impairing Cinebase's ability to obtain venture capital.  Media Guaranty Trust, Dr. Brown and Krol knew of Cinebase's relationships and prospective relationships with these parties when making such misrepresentations.

47680.1

122.    These actual and contemplated business relationships carry the probability of future economic benefit to Cinebase.

123.    Cinebase is informed and believes that Media Guaranty Trust, Dr. Brown and Krol have intentionally made these statements to persons with whom Cinebase is doing and may do business in order to interfere with and disrupt these actual and potential business relationships. Cinebase is informed and believes, and therefore alleges that Media Guaranty Trust, Dr. Brown and Krol knew and willfully ignored that the above-stated actions would disrupt these actual and prospective economic relationships.

124.    Media Guaranty Trust's, Dr. Brown's and Krol's actions threaten to cause Cinebase to lose actual and potential customers, actual and potential strategic alliances, and the opportunity to obtain venture capital to fund its business.

125.    Cinebase is informed and believes, and therefore alleges that Media Guaranty Trust's, Dr. Brown's and Krol's actions alleged herein have directly and proximately caused Cinebase to suffer monetary damages in an amount that cannot readily be ascertained or calculated at this time, but which is believed to be in excess of $5 million.  Additionally, Cinebase has incurred and will incur liability for costs and attorneys' fees.

126.    The loss of these actual and potential business relationships will cause Cinebase considerable economic and non-economic damage, much of which is irreparable and not compensable in money damages.  Cinebase is therefore entitled to a preliminary and permanent injunction against Media Guaranty Trust, Dr. Brown and Krol to prevent such threatened and/or actual interference.

127.    Media Guaranty Trust's, Dr. Brown's and Krol's acts as alleged herein were done willfully, fraudulently, oppressively and maliciously in a conscious attempt to cause injury to Cinebase and, thus, Cinebase is entitled to an award of punitive and exemplary damages.

47680.1

# TENTH CLAIM FOR RELIEF

# BREACH OF FIDUCIARY DUTY

### (Against Dr. Brown and Krol)

128. Cinebase realleges and incorporates herein by reference Paragraphs 1 through 127 of this Complaint as though set forth in full herein.

129. Dr. Brown and Krol were officers of Cinebase, members of Cinebase's Executive Committee, and trusted employees of the company. As such, defendants Dr. Brown and Krol owed Cinebase fiduciary duties, including the duties to act towards Cinebase fairly, honestly, in good faith and with undivided loyalty. They also owed to Cinebase the duties to avoid conflicts of interest, to maintain the confidentiality of Cinebase's Trade Secret Information and all other proprietary or confidential information, and to refrain from any act, or omission, that was calculated or likely to:

A. Injure Cinebase;

B. Interfere with Cinebase's existing or prospective advantageous economic relationships;

C. Result in disclosure of Cinebase's Trade Secret Information Protectable Ideas or other confidential or proprietary information to third parties;

D. Constitute misappropriation or unauthorized use of Cinebase's Intellectual Property, including its Copyrighted Works, Trade Secret Information, Protectable Ideas or other confidential or proprietary information; or

E. Injure the representation and goodwill of Cinebase.

130. Following their resignation from Cinebase, defendants Dr. Brown and Krol continued to owe a duty to Cinebase to refrain from any act, or omission, calculated or likely to disclose to third parties Cinebase's Trade Secret Information and all other confidential or proprietary information, acquired during the course of their employment at Cinebase or to misappropriate to their personal advantage, or utilize in competition with Cinebase, such Trade Secret Information or other confidential or proprietary information or Copyrighted Works.

131. Cinebase is informed and believes, and therefore alleges that during their employment at Cinebase, defendants Dr. Brown and Krol breached their fiduciary duties to Cinebase, as alleged

CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL & SHAPIRO
LAW OFFICES
2121 AVENUE OF THE STARS
EIGHTEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

1  herein, including by:

2  A.  Actively planning to steal and stealing Cinebase's Intellectual Property,

3      including its Trade Secret Information, Protectable Ideas and Copyrighted

4      Works, as well as key employees of Cinebase's software engineering team;

5  B.  Acting directly against the best interests of Cinebase by actively planning to

6      start a company competing directly against Cinebase;

7  C.  Soliciting key Cinebase employees to work for the company that defendants

8      Dr. Brown and Krol planned to form upon their departure from Cinebase;

9  D.  Secretly and surreptitiously preparing to commence active, unfair competition

10     with Cinebase following their resignation from the company;

11 E.  By making fraudulent statements to and fraudulently concealing information

12     from Cinebase; and

13 F.  Making disparaging statements concerning Cinebase.

14 132.  Cinebase is informed and believes and therefore alleges that, subsequent to their

15 departure from Cinebase, defendants Dr. Brown and Krol breached their ongoing fiduciary duties to

16 Cinebase by:

17 A.  Engaging in unlawful and unauthorized misrepresentation, use of Cinebase's

18     Copyrighted Works, Protectable Ideas, Trade Secret Information and other

19     confidential and proprietary information;

20 B.  Intentionally interfering with Cinebase's prospective economic advantage;

21 C.  Unfairly competing with Cinebase through unauthorized use of Cinebase's

22     Copyrighted Works, Trade Secret Information, Protectable Ideas and other

23     confidential and proprietary information; and

24 D.  Maliciously concealing and destroying information contained on Cinebase's

25     computer systems.

26 133.  As a result, Dr. Brown's and Krol's actions alleged herein have directly and

27 proximately caused Cinebase to suffer monetary damages in an amount that cannot readily be

28 ascertained or calculated at this time, but which is believed to be in excess of $5 million.

CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL & SHAPIRO
LAW OFFICES
3121 AVENUE OF THE STARS
EIGHTEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

LAW OFFICES
CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL & SHAPIRO
2121 AVENUE OF THE STARS
EIGHTEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

134.    The breaches of fiduciary duty by Dr. Brown and Krol were undertaken willfully and maliciously, with the intent of harming Cinebase in order to advance the economic interests of Dr. Brown and Krol and, therefore, Cinebase is entitled to an award of punitive and exemplary damages.

135.    As a result of the breaches of fiduciary duty alleged herein, Cinebase is suffering irreparable harm and will continue to suffer irreparable harm unless the conduct of Dr. Brown and Krol is enjoined by this Court.

## ELEVENTH CLAIM FOR RELIEF

## CONSPIRACY

### (Against Defendants Dr. Brown and Krol)

136.    Cinebase realleges and incorporates herein by reference each and every allegation of this Complaint as though set forth in full herein.

137.    Cinebase is informed and believes, and therefore alleges that, prior to their resignation from Cinebase in or about October 1997, defendants Dr. Brown and Krol knowingly and willingly conspired and agreed among themselves to misappropriate Cinebase's Intellectual Property, including its Copyrighted Works, Protetable Ideas and Trade Secret Information to the detriment of Cinebase.

138.    As alleged herein, defendants Dr. Brown and Krol committed various torts and civil wrongs in connection with their conspiracy.

139.    Defendants Dr. Brown and Krol did the wrongful acts herein alleged pursuant to, and in furtherance of, the conspiracy and above-alleged agreement.

140.    Defendants Dr. Brown and Krol, and each of them, furthered the conspiracy by cooperating with each other in that they each agreed to and did misappropriate Cinebase's Intellectual Property for the purpose of harming Cinebase and to enable them to develop a competing company. Also, Dr. Brown furthered the conspiracy by making misrepresentations to Cinebase to cause Cinebase to falsely believe that its proprietary and confidential information would remain confidential.

141.    Dr. Brown's and Krol's actions as alleged herein have directly and proximately caused Cinebase to suffer monetary damages in an amount that cannot readily be ascertained or

1  calculated at this time, but which is believed to be in excess of $5 million.

2      142.    In doing the things herein alleged, defendants Dr. Brown and Krol acted fraudulently,

3  maliciously, oppressively and willfully, with conscious disregard for the rights of Cinebase and with

4  the intent to cause injury to Cinebase.  Defendants Dr. Brown and Krol are therefore guilty of malice,

5  fraud and oppression, thereby warranting an assessment of punitive and exemplary damages.

6  ## PRAYER FOR RELIEF

7  WHEREFORE, Cinebase prays for relief as follows:

8      A.    For a preliminary and permanent injunction enjoining the Defendants, and any

9  officers, agents, affiliates, employees and persons in active concert or participation or privity with

10  them who receive actual notice of the order by personal service or otherwise, from:

11      1.    Using or disclosing any of Cinebase's confidential, proprietary or trade secret

12  information obtained by Defendants through their employment at Cinebase;

13      2.    Engaging in any activity directed to the development of computer software

14  designed to perform management of large volumes of high-resolution dynamic and static media

15  content;

16      3.    Establishing and/or continuing a business intended to market or promote

17  computer software designed to manage large volumes of high-resolution dynamic or static media

18  content; and

19      4.    Producing, selling or distributing, or inducing or contributing to the

20  production, sale or distribution, of any work that infringes upon any copyright held by Cinebase;

21      5.    Unfairly competing with Cinebase in any manner whatsoever;

22      6.    Making or communicating any statements that defame or disparage Cinebase's

23  business or products; and

24      7.    Any conduct that interferes with the prospective economic advantage of

25  Cinebase.

26  B.    For an order requiring defendants to file with the Court and serve upon Cinebase's

27  counsel within thirty (30) days after entry of the order of injunction, a report setting forth the manner

28  and form in which Defendants have complied with the injunction.

LAW OFFICES
CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL & SHAPIRO
3121 AVENUE OF THE STARS
TWENTIETH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

C.     For an order finding that, by the acts complained of herein, defendants Media Guaranty Trust, Dr. Brown, Krol, Rozenfeld, Wills and Reisinger have engaged in copyright infringement in violation of 17 U.S.C. § 106.

D.     For an order finding that, by the acts complained of herein, defendants Media Guaranty Trust, Dr. Brown, Krol, Rozenfeld, Wills and Reisinger have engaged in trademark infringement in violation of 15 U.S.C. § 1125(a) by passing off Cinebase's products as their own.

E.     For an order finding that Defendants have wrongfully misappropriated Cinebase's ideas;

F.     For an order finding that, by the acts complained of herein, Defendants have engaged in trade secret misappropriation in violation of Cal. Civ. Code § 3426.

G.     For an order finding that, by the acts complained of herein, Defendants have unfairly competed against Cinebase in violation of Cal. Civ. Code § 17200 *et seq*.

H.     For an order finding that, by the acts complained of herein, Dr. Brown and Krol committed trade disparagement against Cinebase and its products.

I.     For an order finding that, by the acts complained of herein, Dr. Brown and Krol breached their respective fiduciary duties to Cinebase.

J.     For an order finding that, by the acts complained of herein, Dr. Brown committed fraud against Cinebase.

K.     For an order finding that, by the acts complained of herein, defendants Dr. Brown and Krol engaged in a civil conspiracy against Cinebase.

L.     For an order finding that, by the acts complained of herein, Media Guaranty Trust, Dr. Brown and Krol intentionally interfered with the prospective economic advantage of Cinebase.

M.     For an order awarding general and/or special damages, in an amount to be fixed by the Court in accordance with proof, including punitive and exemplary damages as appropriate, as well as the Defendants' profits or gains of any kind resulting from their acts of copyright infringement, trade secret misappropriation, idea misappropriation, unfair competition, breach of fiduciary duty, fraud, conspiracy and intentional interference with Cinebase's prospective economic advantage.

LAW OFFICES
CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL & SHAPIRO
SIXTEENTH FLOOR
EIGHTEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

47680.1

1    N.    For an order awarding to Cinebase compensatory damages, in an amount to be fixed

2    by the Court in accordance with proof, but not less than $5 million.

3    O.    For an order awarding to Cinebase its costs, including attorneys fees incurred in

4    prosecuting this action.

5    P.    For an order awarding to Cinebase interest in a sum to be determined at trial.

6    Q.    For an order requiring Defendants to provide notice to the public and to all customers

7    and others with whom the Defendants have been in contact, by means of letter or advertisement, as

8    appropriate, notifying such persons of this lawsuit and the injunctive decree rendered hereunder.

9    R.    For such and other further relief as the Court deems proper and equitable.

10

11    Date:  June 9, 1998

Patricia L. Glaser
Mark G. Krum
Kevin J. Leichter
CHRISTENSEN, MILLER, FINK, JACOBS,
   GLASER, WEIL & SHAPIRO, LLP

By _____
              Mark G. Krum
Attorneys for Plaintiff
CINEBASE SOFTWARE, INC.

## DEMAND FOR JURY TRIAL

Plaintiff Cinebase Software, Inc. hereby demands a trial by jury.

Date:  June 9, 1998

Patricia L. Glaser
Mark G. Krum
Kevin J. Leichter
CHRISTENSEN, MILLER, FINK, JACOBS,
 GLASER, WEIL, & SHAPIRO, LLP


By _____
        Kevin J. Leichter
Attorneys for Plaintiff
CINEBASE SOFTWARE, INC.



UNITED STATES COPYRIGHT OFFICE

REGISTRATION NUMBER



**TXu 819-558**

TXU

EFFECTIVE DATE OF REGISTRATION

*Mar*   11   98
Month   Day   Year

This Certi... ...ued under the seal of the Copyright Office in acco...ance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

REGISTER OF COPYRIGHTS
United States of America

OFFICIAL SEAL

---

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**TITLE OF THIS WORK ▼**

HEADER FILE SOURCE CODE OF CINEBASE 2.0 COMPUTER PROGRAM FOR MANAGEMENT OF HIGH-RESOLUTION DIGITAL MEDIA

**PREVIOUS OR ALTERNATIVE TITLES ▼**

None

**PUBLICATION AS A CONTRIBUTION** If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared. **Title of Collective Work ▼**

N.A.

If published in a periodical or serial give: **Volume ▼**    **Number ▼**    **Issue Date ▼**    **On Pages ▼**

N.A.

---

**2**

**NAME OF AUTHOR ▼**

CINEBASE SOFTWARE, INC.

**DATES OF BIRTH AND DEATH**
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☒ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶ California, U.S.A.
{ Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous? ☒ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No

If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of the material created by this author in which copyright is claimed. ▼

COMPUTER PROGRAM SOFTWARE

**NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶
{ Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No

If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of the material created by this author in which copyright is claimed. ▼

**NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶
{ Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous? ☐ Yes ☐ No
Pseudonymous? ☐ Yes ☐ No

If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of the material created by this author in which copyright is claimed. ▼

---

**YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED** This information must be given In all cases.
1997 ◀ Year

**DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK**
Complete this information ONLY if this work has been published.
Month ▶ N.A.   Day ▶   Year ▶    ◀ Nation

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2. ▼

Cinebase Software, Inc.
11835 W. Olympic Blvd.
East Tower, Suite 1000
Los Angeles, CA 90064

**TRANSFER** If the claimant(s) named here in space 4 are different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

APPLICATION RECEIVED
MAR 11 1998
ONE DEPOSIT RECEIVED
MAR 11 1998
TWO DEPOSITS RECEIVED

REMITTANCE NUMBER AND DATE

---

MORE ON BACK ▶ • Complete all applicable spaces (numbers 5-11) on the reverse side of this page.    DO NOT WRITE HERE

---

**EXHIBIT 1**

FORM TX

CHECKED BY

☐ CORRESPONDENCE
Yes

FOR
COPYRIGHT
OFFICE
USE
ONLY

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?

☐ Yes ☒ No If your answer is "Yes," why is another registration being sought? (Check appropriate box) ▼

a. ☐ This is the first published edition of a work previously registered in unpublished form.

b. ☐ This is the first application submitted by this author as copyright claimant.

c. ☐ This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: Previous Registration Number ▼          Year of Registration ▼

**6**

**DERIVATIVE WORK OR COMPILATION** Complete both space 6a & 6b for a derivative work; complete only 6b for a compilation.

a. Preexisting Material   Identify any preexisting work or works that this work is based on or incorporates. ▼

N.A.

b. Material Added to This Work   Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

N.A.

See instructions
before completing
this space

**—space deleted—**

**7**

**REPRODUCTION FOR USE OF BLIND OR PHYSICALLY HANDICAPPED INDIVIDUALS**   A signature on this form at space 10, and a check in one of the boxes here in space 8, constitutes a non-exclusive grant of permission to the Library of Congress to reproduce and distribute solely for the blind and physically handicapped and under the conditions and limitations prescribed by the regulations of the Copyright Office: (1) copies of the work identified in space 1 of this application in Braille (or similar tactile symbols); or (2) phonorecords embodying a fixation of a reading of that work; or (3) both.

a ☐ Copies and Phonorecords          b ☐ Copies Only          c ☐ Phonorecords Only

**8**

See instructions

**DEPOSIT ACCOUNT**   If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.

Name ▼          Account Number ▼

**9**

**CORRESPONDENCE**   Give name and address to which correspondence about this application should be sent.   Name/Address/Apt/City/State/Zip ▼

Brian W. Kasell, Esq.
TROOP MEISINGER STEUBER & PASICH, LLP
10940 Wilshire Blvd., Los Angeles, CA   90024-7000

Area Code & Telephone Number ▶ **(310) 824-7000**

Be sure to
give your
daytime phone
◀ number

**CERTIFICATION*** I, the undersigned, hereby certify that I am the

Check one ▶
☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☒ authorized agent of Cinebase Software, Inc.

of the work identified in this application and that the statements made by me in this application are correct to the best of my knowledge.

Name of author or other copyright claimant, or owner of exclusive right(s) ▲

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

Brian W. Kasell          date ▶ 3-2-98

**10**

Handwritten signature (X) ▼          _Brian W. Kasell_

**MAIL
CERTIFI-
CATE TO**

Name ▼
Brian W. Kasell, Esq.
TROOP MEISINGER STEUBER & PASICH, LLP

Number/Street/Apartment Number ▼
10940 Wilshire Blvd.

Certificate
will be
mailed in
window
envelope

City/State/ZIP ▼
Los Angeles, CA   90024-3902

**YOU MUST:**
• Complete all necessary spaces
• Sign your application in space 10

**SEND ALL 3 ELEMENTS
IN THE SAME PACKAGE:**
1. Application form
2. Nonrefundable $20 filing fee
   in check or money order
   payable to Register of Copyrights
3. Deposit material

**MAIL TO:**
Register of Copyrights
Library of Congress
Washington, D.C. 20559

**11**

*17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

U.S. GOVERNMENT PRINTING OFFICE: 1991: 282-170/40,001



UNITED STATES COPYRIGHT OFFICE

This Certifi... ...ued under the seal of the Copyright Office in acco...ance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

REGISTER OF COPYRIGHTS
United States of America

OFFICIAL SEAL

...STRATION NUMBER

TXu 819-557

EFFECTIVE DATE OF REGISTRATION

Mar     11     98
Month   Day   Year

DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.

**TITLE OF THIS WORK ▼**

PROGRAM SOURCE CODE OF CINEBASE 2.0 COMPUTER PROGRAM
FOR MANAGEMENT OF HIGH-RESOLUTION DIGITAL MEDIA

**PREVIOUS OR ALTERNATIVE TITLES ▼**

None

**PUBLICATION AS A CONTRIBUTION** If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared.     Title of Collective Work ▼

N.A.

If published in a periodical or serial give: Volume ▼          Number ▼          Issue Date ▼          On Pages ▼

N.A.

---

**NAME OF AUTHOR ▼**

CINEBASE SOFTWARE, INC.

**DATES OF BIRTH AND DEATH**
Year Born ▼     Year Died ▼

Was this contribution to the work a "work made for hire"?
☒ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶ California, U.S.A.
     Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?     ☒ Yes ☐ No
Pseudonymous?  ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of the material created by this author in which copyright is claimed. ▼

COMPUTER PROGRAM SOFTWARE

**NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼     Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶
     Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?     ☐ Yes ☐ No
Pseudonymous?  ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of the material created by this author in which copyright is claimed. ▼

**NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼     Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶
     Domiciled in ▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?     ☐ Yes ☐ No
Pseudonymous?  ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of the material created by this author in which copyright is claimed. ▼

---

**YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED** This information must be given in all cases.
1997 ◀ Year

**DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK** Complete this information Month ▶ N.A. Day ▶ Year ▶
ONLY if this work has been published.          ◀ Nation

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2 ▼

Cinebase Software, Inc.
11835 W. Olympic Blvd.
East Tower, Suite 1000
Los Angeles, CA 90064

APPLICATION RECEIVED
MAR 11 1998
ONE DEPOSIT RECEIVED
Jun 11 1998
TWO DEPOSITS RECEIVED

REMITTANCE NUMBER AND DATE

**TRANSFER** If the claimant(s) named here in space 4 are different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

MORE ON BACK ▶ • Complete all applicable spaces (numbers 5-11) on the reverse side of this page.     DO NOT WRITE HERE

**EXHIBIT 2**

EXAMINED

CHECKED B.

FORM TX

CORRESPONDENCE
☐ Yes

FOR
COPYRIGHT
OFFICE
USE
ONLY

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
☐ Yes ☒ No If your answer is "Yes," why is another registration being sought? (Check appropriate box) ▼
a ☐ This is the first published edition of a work previously registered in unpublished form.
b ☐ This is the first application submitted by this author as copyright claimant.
c ☐ This is a changed version of the work, as shown by space 6 on this application.
If your answer is "Yes," give: Previous Registration Number ▼                Year of Registration ▼

**DERIVATIVE WORK OR COMPILATION**  Complete both space 6a & 6b for a derivative work; complete only 6b for a compilation.
a. Preexisting Material  Identify any preexisting work or works that this work is based on or incorporates. ▼
    N.A.

b. Material Added to This Work  Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼
    N.A.

See instructions
before completing
this space

—space deleted—

**REPRODUCTION FOR USE OF BLIND OR PHYSICALLY HANDICAPPED INDIVIDUALS**    A signature on this form at space 10, and a check in one of the boxes here in space 8, constitutes a non-exclusive grant of permission to the Library of Congress to reproduce and distribute solely for the blind and physically handicapped and under the conditions and limitations prescribed by the regulations of the Copyright Office: (1) copies of the work identified in space 1 of this application in Braille (or similar tactile symbols); or (2) phonorecords embodying a fixation of a reading of that work; or (3) both.
a ☐ Copies and Phonorecords        b ☐ Copies Only        c ☐ Phonorecords Only

See instruction

**DEPOSIT ACCOUNT**  If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.
Name ▼                                     Account Number ▼

**CORRESPONDENCE**  Give name and address to which correspondence about this application should be sent.  Name/Address/Apt/City/State/Zip ▼
    Brian W. Kasell, Esq.
    TROOP MEISINGER STEUBER & PASICH, LLP
    10940 Wilshire Blvd., Los Angeles, CA  90024-3902
            Area Code & Telephone Number ▶  (310) 824-7000

Be sure to
give your
daytime phone
◀ number

**CERTIFICATION*** I, the undersigned, hereby certify that I am the
                                            Check one ▶
☐ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☒ authorized agent of  Cinebase Software, Inc.
                        Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made
by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

    Brian W. Kasell                                date ▶  3-2-98

☞  Handwritten signature (X) ▼  Brian W. Kasell

**MAIL
CERTIFI-
CATE TO**

Name ▼
    Brian W. Kasell, Esq.
    TROOP MEISINGER STEUBER & PASICH, LLP
Number/Street/Apartment Number ▼
    10940 Wilshire Blvd.
City/State/Zip ▼
    Los Angeles, CA  90024-3902

Certificate
will be
mailed in
window
envelope

**YOU MUST:**
· Complete all necessary spaces
· Sign your application in space 10
**SEND ALL 3 ELEMENTS
IN THE SAME PACKAGE:**
1. Application form
2. Nonrefundable $20 filing fee
   in check or money order
   payable to Register of Copyrights
3. Deposit material
**MAIL TO:**
Register of Copyrights
Library of Congress
Washington, D.C. 20559

FORM TX

*17 U S C § 506(e)  Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

☆U.S. GOVERNMENT PRINTING OFFICE  1991-282-170/40.020

**PROOF OF SERVICE**

STATE OF CALIFORNIA
COUNTY OF LOS ANGELES

    I am employed in the County of Los Angeles, State of California; I am over the age of 18 and not a party to the within action; my business address is 2121 Avenue of the Stars, 18th Floor, Los Angeles, California 90067.

    On June 9, 1998, at the direction of a member of the Bar of this Court, I served the within:

**FIRST AMENDED COMPLAINT INJUNCTIVE RELIEF AND DAMAGES**

on the interested parties in this action, by delivering a copy thereof in a sealed envelope addressed to each of said interested parties at the following address(es):

Douglas E. Lumish
Jared Bobrow
Weil, Gotshal & Manges, LLP
2882 Sand Hill Road, Suite 280
Menlo Park, CA  94025-7022

[X]    (BY MAIL)  I am readily familiar with the business practice for collection and processing of correspondence for mailing with the United States Postal Service. This correspondence shall be deposited with the United States Postal Service this same day in the ordinary course of business at our Firm's office address in Los Angeles, California. Service made pursuant to this paragraph, upon motion of a party served, shall be presumed invalid if the postal cancellation date of postage meter date on the envelope is more than one day after the date of deposit for mailing contained in this affidavit.

[X]    (BY OVERNIGHT DELIVERY SERVICE) I served the foregoing document by Federal Express, an express service carrier which provides overnight delivery, as follows.  I placed true copies of the foregoing document in sealed envelopes or packages designated by the express service carrier, addressed to each interested party as set forth above, with fees for overnight delivery paid or provided for..

[ ]    (BY PERSONAL SERVICE)  I caused such envelope to be delivered by hand to the offices of the above named addressee(s).

[ ]    (BY FACSIMILE)  I caused such documents to be delivered via facsimile to the offices of the addressee(s) at the following facsimile number: .

    Executed this 9th day of  June, 1998, at Los Angeles, California.

    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Jeny Tutwiler

CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL & SHAPIRO
LAW OFFICES
2121 AVENUE OF THE STARS
EIGHTEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

First Amended Complaint        37        Case No.: C-98-1100 FMS