# EXHIBIT B

ORIGINAL

1   JARED BOBROW (Bar No. 133712)
    DOUGLAS E. LUMISH (Bar No. 183863)
2   WEIL, GOTSHAL & MANGES LLP
    Silicon Valley Office
3   2882 Sand Hill Road, Suite 280
    Menlo Park, California 94025-7022
4   Telephone: (650) 926-6200
    Facsimile: (650) 854-3713

5                                                    FILED

6   Attorneys for Defendants
    Media Guaranty Trust, Inc., Allen L. Brown, Jr.,     JUL 1 3 1998
    Natalia X. Krol, Joseph Rozenfeld, Thomas
7   Wills, Carl Reisinger, and Katherine Topper
                                                    RICHARD W. WIEKING
8                                                   CLERK, U.S. DISTRICT COURT,
                       UNITED STATES DISTRICT COURT  NORTHERN DISTRICT OF CALIFORNIA

9                      NORTHERN DISTRICT OF CALIFORNIA

10                        SAN FRANCISCO DIVISION

11

12

13  CINEBASE SOFTWARE, INC.              )
                                         )
14              Plaintiff,               )   Case No. C-98-1100 FMS
                                         )
15       v.                              )
                                         )
16  MEDIA GUARANTY TRUST, INC.;          )
    ALLEN L. BROWN; NATALIA X.           )
17  KROL; JOSEPH ROZENFELD; THOMAS       )
    WILLS; CARL REISINGER; and           )
18  KATHERINE TOPPER                     )
                                         )
19              Defendants.              )
    _____)

20

21  **DEFENDANTS' MOTION TO DISMISS CINEBASE'S FIRST AND SECOND CAUSES
        OF ACTION IN ITS FIRST AMENDED COMPLAINT, TO DISMISS THE FIRST
22   AMENDED COMPLAINT, TO DISMISS DEFENDANT KATHERINE TOPPER FROM
        THIS LAWSUIT, TO DISMISS CINEBASE'S THIRD, FOURTH, FIFTH, AND
23    ELEVENTH CAUSES OF ACTION AND, TO STRIKE PORTIONS OF CINEBASE'S
                          NINTH CAUSE OF ACTION**

24
                         **Date: August 21, 1998
25                        Time: 10:00 a.m.
                          Courtroom: 6**

26
                     **Honorable Fern M. Smith**
27

28

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

NOTICE OF MOTION . . . . . . . . . . . . . . . . . . . . 1

RELIEF REQUESTED . . . . . . . . . . . . . . . . . . . . 2

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . 2

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . 2

II.   CINEBASE'S FIRST AND SECOND CAUSES OF ACTION SHOULD BE DISMISSED PURSUANT TO RULE 12 OF THE FEDERAL RULES OF CIVIL PROCEDURE . . . . . . . . . . . . . . . 4

    A.    Cinebase Has Not Sufficiently Pleaded Its Copyright Infringement Claim . . . . . . . . . . . . . . . 5

        1.    Cinebase Fails To Allege Any Infringing Acts . . . . . . . . . . . . 6

        2.    Cinebase Fails To State A Claim Against Ms. Topper . . . . . . . 7

    B.    Cinebase's Reverse Passing Off Claim Should Be Dismissed . . . . . . . . 8

        1.    Cinebase Fails To Notify Defendants Of The Products In Question . . . . . . . . . . . . . . . 8

        2.    Cinebase Also Fails to Allege That Ms. Topper Removed Indications of Cinebase as the Source of the Product. . . . . . . . 9

III.  UPON DISMISSAL OF CINEBASE'S FIRST AND SECOND CAUSES OF ACTION, WHICH ARE BASED ON FEDERAL LAW, THE COURT SHOULD DISMISS CINEBASE'S ENTIRE COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION . . . . . . . . . . . . . . . 9

    A.    The Court Has No Original Jurisdiction Over Cinebase's State Law Claims . . . . . . . . . . . . . . . 10

    B.    The Court Should Not Exercise Supplemental Jurisdiction Over Cinebase's State Law Claims . . . . . . . . . . . . . . . 11

        1.    The State Law Claims Predominate Cinebase's First Cause Of Action . . . . . . . . . . . . . . . 12

        2.    The State Law Claims Raise Novel And Complex Issues Of California Law . . . . . . . . . . . . . . . 13

IV.   CINEBASE'S CLAIMS AGAINST KATHERINE TOPPER SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1) . . . . . . . . . . . . . . . 14

1  V.    CINEBASE'S THIRD, FOURTH, FIFTH AND ELEVENTH CAUSES OF ACTION,
         BASED ON STATE LAW, SHOULD BE DISMISSED PURSUANT TO RULE 12 OF
2        THE FEDERAL RULES OF CIVIL PROCEDURE . . . . . . . . . . . . . . . . . .  15

3        A.    Cinebase's Breach Of Confidence Claim Should Be Dismissed  . . . . . . .  15

4        B.    Cinebase's Breach Of Implied Contract Claim Should Be Dismissed  . . . .  16

5        C.    Cinebase Has Not Sufficiently Pleaded Trade Secret Misappropriation  . . .  17

6        D.    Cinebase Has Not Sufficiently Pleaded Intentional Interference With
               Prospective Economic Advantage  . . . . . . . . . . . . . . . . . . . . . .  20
7
   VI.   ALLEGATIONS IN THE NINTH CAUSE OF ACTION FOR FRAUD BY DR.
8        BROWN CONCERNING NON-DISCLOSURE AGREEMENTS SHOULD BE
         STRICKEN  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22
9
   VII.  CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

**FEDERAL CASES**

3    Aliotti v. Dakin & Co.
          831 F.2d 898 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . 17

4

5    Ankebrandt v. Richards
          504 U.S. 689 (1992) . . . . . . . . . . . . . . . . . . . . . . 9

6    Brocksopp Eng'g, Inc. v. Bach-Simpson Ltd.
          136 F.R.D. 485 (E.D. Wis. 1991) . . . . . . . . . . . . . . . . 1

7

8    Bureerong v. Uvawas
          922 F. Supp. 1450 (C.D. Cal. 1996) . . . . . . . . . . . . . . 5

9    Carnegie-Mellon Univ. v. Cohill
          484 U.S. 343 (1988) . . . . . . . . . . . . . . . . . . . . . . 11

10

11   Conkle v. Jeong
          73 F.3d 909 (9th Cir. 1995) . . . . . . . . . . . . . . . . . 20,21

12   Gee v. CBS, Inc.
          471 F. Supp. 600 (E.D. Pa.) aff'd, 612 F.2d 572 (3d Cir. 1979) . . . . . 6

13

14   Gen-Probe, Inc. v. Amoco Corp.
          926 F. Supp. 948 (S.D. Cal. 1996) . . . . . . . . . . . . . . . 5

15   In re Glenfed, Inc. Sec. Litig.
          42 F.3d 1541 (9th Cir. 1994) . . . . . . . . . . . . . . . . . 22

16

17   Grid Sys. Corp. v. Texas Instruments Inc.
          771 F. Supp. 1033 (N.D. Cal. 1991) . . . . . . . . . . . . . . 5,19

18   Hoeck v. City of Portland
          57 F.3d 781 (9th Cir. 1995) . . . . . . . . . . . . . . . . . 11,13,14

19

20   Kelly v. L.L. Cool J.
          145 F.R.D. 32 (S.D.N.Y. 1992) . . . . . . . . . . . . . . . . . 6

21   Kokkonen v. Guardian Life Ins. Co.
          511 U.S. 375 (1994) . . . . . . . . . . . . . . . . . . . . . . 9

22

23   MAI Systems Corp. v. Peak Computer, Inc.
          991 F.2d 511 (9th Cir. 1993) . . . . . . . . . . . . . . . . . 17,18,19

24   Marino v. Marino
          37 F.3d 1354 (9th Cir. 1994) . . . . . . . . . . . . . . . . . 5

25

26   Moeini v. City & County Of San Francisco
          C 92-1709 BAC, 1993 WL 451496 (N.D. Cal. October 26, 1993) . . . . . 13

27   Moore v. Brewster
          96 F.3d 1240 (9th Cir. 1996) . . . . . . . . . . . . . . . . . 22

28

1  Paragon Services, Inc. v. Hicks
        843 F. Supp. 1077 (E.D. Va. 1994) . . . . . . . . . . . . . . . . . . . 6,7
2
   Silicon Knights v. Crystal Dynamics
3        983 F. Supp. 1307 (N.D. Cal. 1997) . . . . . . . . . . . . . . . . 20,21,22

4  Smilecare Dental Group v. Delta Dental Plan of Cal.
        88 F.3d 780 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . 4
5
   Summit Machine Tool Mfg. Corp. v. Victor CNC Sys., Inc.
6        7 F.3d 1434 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . 8

7  United Mine Workers v. Gibbs
        383 U.S. 715 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . 11
8
   Universal Analytics, Inc. v. The MacNeal-Schwendler Corp.
9        707 F. Supp. 1170 (C.D. Cal. 1989) . . . . . . . . . . . . . . . 17, 19

10 Western Mining Council v. Watt
        643 F.2d 618 (9th Cir.), cert. denied, 454 U.S. 1031 (1981) . . . . . . . . 5
11
   Weygand v. CBS
12       1997 U.S. Dist. LEXIS 10613, 43 U.S.P.Q. 2d 1120 (C.D. Cal. 1997) . 16

13 Wildlife Internationale v. Clements
        591 F. Supp. 1542 (S.D. Ohio 1984) . . . . . . . . . . . . . . . . . . 6
14
15                              **STATE CASES**

16 Tele-Count Eng'g., Inc. v. Pacific Telephone & Telegraph Co.
        168 Cal. App. 3d 455 (Cal. Ct. of App. 1985) . . . . . . . . . . . . . . 15
17
                      **FEDERAL STATUTES AND RULES**
18
   17 U.S.C. sec. 102 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
19
   28 U.S.C. §§ 1331 and 1338(a) . . . . . . . . . . . . . . . . . . . . . . 10
20
   28 U.S.C. § 1367(a) . . . . . . . . . . . . . . . . . . . . . . . . . . 10,11,13
21                                                                              15

22 37 C.F.R. § 202.20(c)(vii) . . . . . . . . . . . . . . . . . . . . . . . . . 19

23 Fed. R. Civ. P. 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

24 Fed. R. Civ. P. 9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

25 Fed. R. Civ. P. 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . 14

26 Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . 20

1

## STATE STATUTES

Cal. Civ. Code § 1621 . . . . . . . . . . . . . . . . . . . . . . . 16

Cal. Civ. Code § 3426 et seq. . . . . . . . . . . . . . . . . . . . 13

## MISCELLANEOUS

Practice Guide, Federal Civil Procedure Before Trial § 9:57.1-2 (1997) . . . . . . . 1

## NOTICE OF MOTION

PLEASE TAKE NOTICE THAT, on August 21, 1998 at 10:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 6, U.S. District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California, Defendants Media Guaranty Trust, Inc., Allen L. Brown, Jr., Natalia X. Krol, Joseph Rozenfeld, Thomas Wills, Carl Reisinger, and Katherine Topper (collectively "Defendants"), by their attorneys, will move the Court for an order (1) dismissing Cinebase Software, Inc.'s ("Cinebase") First and Second Causes Of Action of its First Amended Complaint, pursuant to Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure, or, in the alternative, for a more definite statement under Rule 12(e) of the Federal Rules of Civil Procedure, (2) upon dismissal of Cinebase's First and Second Causes Of Action of its First Amended Complaint, which are based on federal law, dismissing Cinebase's First Amended Complaint in its entirety for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, (3) dismissing Cinebase's First Amended Complaint against defendant Katherine Topper ("Ms. Topper") for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, (4) dismissing Cinebase's Third, Fourth, Fifth, and Eleventh Causes of Action of in its First Amended Complaint pursuant to Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure, or, in the alternative, for a more definite statement under Rule 12(e) of the Federal Rules of Civil Procedure, and (5) striking portions of Cinebase's Ninth Cause of Action for fraud asserted in Cinebase's First Amended Complaint against defendant Allen L. Brown, Jr. ("Dr. Brown") pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, or, in the alternative, for a more definite statement under Rule 12(e) of the Federal Rules of Civil Procedure.[1]

---

1. In filing this motion pursuant to Rule 12 as to Cinebase's First, Second, Third, Fourth, Fifth, Ninth and Eleventh Causes Of Action, Defendants in no way waive their rights to answer or otherwise respond to Cinebase's remaining Causes Of Action pursuant to Rule 12(a). See Brocksopp Eng'g, Inc. v. Bach-Simpson Ltd., 136 F.R.D. 485, 486 (E.D. Wis. 1991) ("rule 12(a) of the federal rules provides that the service of a 12(b) motion, whether or not it goes to all of the claims in a complaint, enlarges the time for answering the remaining portions of the pleading."); William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, California Practice Guide, Federal Civil Procedure Before Trial § 9:57.1-2 (1997).

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT        CASE NO. C-98-1100 FMS
1
SVFS01...:\21\62621\0003\2195\MOT6268R.150

**RELIEF REQUESTED**

Defendants move this Court for the following relief:  (1) an order dismissing Cinebase's First and Second Causes Of Action asserted in its First Amended Complaint pursuant to Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure, or, in the alternative, for a more definite statement pursuant to Rule 12(e), (2) upon dismissal of Cinebase's First and Second Causes Of Action, an order dismissing Cinebase's First Amended Complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, (3) an order dismissing Cinebase's First Amended Complaint against Ms. Topper for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, (4) an order dismissing Cinebase's Third, Fourth, Fifth and Eleventh Causes of Action in its First Amended Complaint pursuant to Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure, and (5) an order striking portions of Cinebase's Ninth Cause of Action asserted in its First Amended Complaint for fraud against Dr. Brown pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, or, in the alternative, for a more definite statement under Rule 12(e).

This motion is based upon this notice and motion, the accompanying memorandum of points and authorities, the declaration of Jackson Chen in support thereof, the complete records and files of this action, such oral and documentary evidence as may be presented prior to or at the hearing of this motion, and such other matters of which the Court may take judicial notice.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**INTRODUCTION**

On March 1, 1998, approximately six months after defendants Dr. Brown, Natalia X. Krol, and Joseph Rozenfeld left plaintiff Cinebase Software, Inc. ("Cinebase") to start a venture of their own, Cinebase filed suit against their new company -- Media Guaranty Trust, Inc. -- and three additional ex-employees -- defendants Thomas Wills, Carl Reisinger, and Ms. Topper ("Original Complaint").  Chen Decl., Exh. A (Cinebase Complaint).

1    Because the Causes of Action in the Original Compliant were plead in a totally

2    conclusory fashion, Defendants moved to dismiss.  For instance, Cinebase plead in wholly

3    conclusory fashion that some of the Defendants have infringed unspecified copyrighted works

4    in unspecified ways.  Cinebase also asserted that the Defendants misappropriated so-called

5    trade secrets, without making any effort whatsoever to distinguish between that which is

6    publicly known and that which is confidential.

7    The Court also lacked subject matter jurisdiction over the Original Complaint

8    after Cinebase's copyright infringement claim was dismissed.  The copyright claim was the

9    sole source of subject matter jurisdiction.  In addition, the complaint against Ms. Topper

10   should have been dismissed because no federal claim was alleged against her.

11   Rather than oppose Defendants motion on the merits and face the likelihood of

12   a dismissal of its entire complaint, Cinebase amended its complaint ("First Amended

13   Complaint") in response.  Chen Decl., Exh. B (Cinebase First Amended Complaint).

14   Cinebase dropped the spoliation of evidence claim entirely, changed remaining original claims,

15   and added new claims.[2]

16   Despite Cinebase second opportunity to plead its claims, fundamental

17   deficiencies remain.  For example, Cinebase still pleads in wholly conclusory fashion that

18   Defendants have infringed its copyrights without specifying any infringing acts.  Chen Decl.,

19   Exh. B (Cinebase First Amended Complaint, ¶¶ 56-57).  Cinebase also asserts

20   misappropriation of so-called trade secrets, without making any effort in its pleading to

21   distinguishing between that which is publicly known and that which is confidential.  Id. at

22   ¶ 83.  Cinebase continues to fail to identify the economic relationship(s) interfered with.  Id. at

23   ¶ 121.

24

25

26

27

---

28   2.    Cinebase added claims for reverse passing off, under the Lanham Act, and for breach
     of confidence and breach of implied contract.

1   Cinebase has already replead its claims once as a matter of right.    Despite this,

2   its claims are still fundamentally defective.  Cinebase has had "two bites at the apple," but still

3   cannot plead its claims.  Therefore, these claims should be dismissed with prejudice.[3]

4   The new claims for reverse passing off, breach of confidence and beach of

5   implied contract also fail to state a cause of action or provide adequate notice.  For example,

6   Cinebase fails to identify the products at issue in its reverse passing off claim.  Id. at ¶ 63.

7   The claims for breach of confidence and implied in fact contract also fail to identify the ideas

8   transmitted to Defendants.  Id. at ¶ 70.  None of these claims gives Defendants notice of the

9   claims against them, in plain violation of Rules 8 and 12(b)(6) of the Federal Rules of Civil

10  Procedure, and, thus, they should be dismissed as well.    (Alternatively, the Court should

11  require Cinebase to plead with greater particularity pursuant to Rule 12(e).

12  Upon dismissal of the copyright and reverse passing off claims, Cinebase's

13  entire First Amended Complaint should be dismissed in its entirety for lack of subject matter

14  jurisdiction.[4]    Subject matter jurisdiction is based solely on these claims and there is no

15  diversity jurisdiction.

16  **II.**

17  **CINEBASE'S FIRST AND SECOND CAUSES OF ACTION SHOULD BE DISMISSED PURSUANT TO RULE 12 OF**
18  **THE FEDERAL RULES OF CIVIL PROCEDURE**

19  "The court may dismiss a complaint as a matter of law for (1) lack of a

20  cognizable legal theory or (2) insufficient facts under a cognizable theory."  Smilecare Dental

21  Group v. Delta Dental Plan of Cal., 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted).  To

22  sufficiently plead such a "cognizable theory," Cinebase's complaint must give Defendants "fair

23  _____

24  3.    Cinebase's Ninth Cause of Action in its First Amended Complaint for fraud against
    Dr. Brown, concerning non-disclosure agreements, is also defective.  Cinebase fails to meet
25  the heightened pleading requirement for fraud under Rule 9(b) of the Federal Rules of Civil
    Procedure; therefore, allegations concerning non-disclosure agreements should be stricken
26  pursuant to Rule 12(e) of the Federal Rules of Civil Procedure.

27  4.    Ms. Topper should also be dismissed from the complaint, because Cinebase's
    copyright infringement and reverse passing off claims are doubly deficient as to her.
28  Cinebase fails to alleged that she copied any copywritten works or that she removed
    indications from the Media Guaranty product that it is a Cinebase product.

1   notice of what [Cinebase's] claim is and the grounds upon which it rests." Marino v. Marino,

2   37 F.3d 1354, 1357 (9th Cir. 1994) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). To

3   this end, a complaint "should provide the defendant with a basis for assessing the initial

4   strength of the plaintiff's claim, for preserving relevant evidence, for identifying any related

5   counter- or cross-claims, and for preparing an appropriate answer." Grid Sys. Corp. v. Texas

6   Instruments Inc., 771 F. Supp. 1033, 1037 (N.D. Cal. 1991).

7          It is well settled that "conclusory allegations unsupported by any specific facts

8   are not sufficient" to meet the fair notice requirements of Rule 8 and, therefore, do not state a

9   claim for relief that can survive a motion to dismiss pursuant to Rule 12(b)(6). Id.; see also

10  Gen-Probe, Inc. v. Amoco Corp., 926 F. Supp. 948, 961 (S.D. Cal. 1996) ("[T]he plaintiff

11  must provide facts that 'outline or adumbrate' a viable claim for relief, not mere boilerplate

12  sketching out the elements of a cause of action") (emphasis added). Thus, in considering the

13  allegations within Cinebase's First Amended Complaint, the Court should not "assume the

14  truth of legal conclusions merely because they are cast in the form of factual allegations."

15  Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir.), cert. denied, 454 U.S. 1031

16  (1981); accord Bureerong v. Uvawas, 922 F. Supp. 1450, 1462 (C.D. Cal. 1996) ("[A] court

17  need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory

18  legal allegations cast in the form of factual allegations.").

19         Here, Cinebase's First and Second Causes of Action in its First Amended

20  Complaint for copyright infringement and reverse passing off is rife with conclusions

21  masquerading as facts and otherwise fails to allege the infringing acts, which falls far short of

22  providing Defendants with "fair notice" of Cinebase's claims or the grounds therefor.

23  **A.    Cinebase Has Not Sufficiently Pleaded Its Copyright Infringement Claim**

24         In its First Cause Of Action, Cinebase accuses all defendants of infringing

25  Cinebase copyrights.    A leading case concerning the standards for pleading copyright

26  infringement establishes that, to satisfy Rule 8, a copyright infringement plaintiff must state,

27  inter alia:

28

1

> which specific original work is the subject of the copyright claim,
> that plaintiff owns the copyright, that the work in question has
> been registered in compliance with the statute and by what acts
> and during what time defendant has infringed the copyright.

2

3

4   Gee v. CBS, Inc., 471 F. Supp. 600, 643 (E.D. Pa.) aff'd, 612 F.2d 572 (3d Cir. 1979);

5   accord Paragon Services, Inc. v. Hicks, 843 F. Supp. 1077, 1081 (E.D. Va. 1994) (for

6   copyright claims, "courts have required a higher degree of specificity"); Kelly v. L.L. Cool J.,

7   145 F.R.D. 32, 36 (S.D.N.Y. 1992).

8         In Gee, plaintiff alleged that defendant had infringed plaintiff's copyrights by

9   producing "numerous recordings and copies of works composed and authored by Bessie Smith

10  without valid authorization to do so." 471 F. Supp. at 642.  However, the court dismissed the

11  infringement claim because plaintiff's allegations did not "mention[] any specific act of

12  infringement committed by defendants."   Id. at 643.   In its opinion, the court stated:

13  "[p]laintiff must also allege that each work is suitably registered, provide registration numbers

14  and state by what act and on what dates defendants infringed the copyrights." Id. at 644.

15        Here, like the plaintiff in Gee, Cinebase has failed for the second time to

16  identify the specific acts by which Defendants allegedly infringed Cinebase's copyrights.

17  Thus, the copyright claim should be dismissed with prejudice.

18        **1.    Cinebase Fails To Allege Any Infringing Acts**

19        To comply with Rule 8, Cinebase's complaint must state "by what act or acts

20  and on what dates" Defendants allegedly infringed Cinebase's copyrights.  Gee, 471 F. Supp.

21  at 643; see also Wildlife Internationale v. Clements, 591 F. Supp. 1542, 1547 (S.D. Ohio

22  1984)("In applying Rule 8 to copyright infringement actions, courts have required the

23  particular infringing acts to be alleged with some specificity.").

24        In its First Amended Complaint, Cinebase makes boilerplate allegations --

25  without identifying any specific acts -- of infringement:

26

> Cinebase is informed and believes, and therefore alleges that
> Defendants have infringed Cinebase's rights in and to the
> Copyrighted Works and that Cinebase's product is identical or
> substantially similar, in whole or in part, to Cinebase's
> Copyrighted Works.

27

28

1
2
3
4
5
6
7

> By means of the actions complained of herein, Defendants have infringed and will continue to infringe Cinebase's copyrights in the Copyrighted Works by using Cinebase's Copyrighted Works to produce, distribute and/or publish digital media management products, substantial portions of which were copied and/or derived from Cinebase's copyrighted digital media management computer program. Cinebase is informed and believes, and therefore alleges that Defendants intend to distribute and/or publish such software to various persons for Defendant's own commercial benefit, including but not limited to Defendants' prospective customers as well as Cinebase's prospective and existing customers.

8 See Chen Decl., Exh. B (Cinebase First Amended Complaint ¶¶ 56-57)(emphasis added).[5]

9         Cinebase's allegations fail to plead any date or time on which any allegedly

10 infringing acts occurred, and fail to plead at what location such acts allegedly took place. As

11 a result, Cinebase's copyright infringement claim is insufficient to meet the pleading standards

12 of Rule 8. See Paragon Services, 843 F. Supp. at 1081 (dismissing plaintiff's "overly broad"

13 copyright claim because "[w]hile plaintiff states that defendant's alleged conduct occurred at

14 thirty-five installations over the past two years, plaintiff has not identified the particular

15 installations and has not identified a more precise time frame.").

16         This claim, already amended once, completely fails to provide Defendants with

17 "fair notice," and should be dismissed without prejudice.

18       **2.**     **Cinebase Fails To State A Claim Against Ms. Topper**

19         Cinebase's copyright infringement claim against Ms. Topper fails for an

20 additional reason. Cinebase does not even allege that Ms. Topper copied Cinebase's works.

21 In the allegations that support its claims, Ms. Topper is not identified as a person who copied

22 any copywritten works. Chen Decl., Exh. B (Cinebase First Amended Complaint, ¶ 47).

23 Paragraph 47 states: "Cinebase is informed and believes and therefore alleges that Media

24 Guaranty Trust, Dr. Brown, Krol, Rozenfeld, Wills and Reisinger have marketed, published,

25 distributed and made derivative works from Cinebase's media management software product,

26

27 _____

28 5. The allegation states "Cinebase's product is identical or substantially similar" to Cinebase's copyrighted works. Id. Defendants assume this is a typographical error which Cinebase should remedy by amendment.

and intend to do so in the future." Id. (emphasis added)  Thus, while the amended complaint identifies all the other Defendants, it does not plead any facts which support that Ms. Topper copied Cinebase's registered works.  Cinebase's attempt to obtain federal jurisdiction over Ms. Topper, by adding her as a defendant in the first amended copyright infringement claim fails.

**B.    Cinebase's Reverse Passing Off Claim Should Be Dismissed**

Cinebase's Second Cause of Action accuses Defendants of reverse passing off, under the Lanham Act.  Reverse passing off may occur when one party purchases or otherwise obtains a second party's goods, removes the second party's name, and then markets the product under its own name.  Summit Machine Tool Mfg. Corp. v. Victor CNC Sys., Inc., 7 F.3d 1434, 1437 (9th Cir. 1993).

**1.    Cinebase Fails To Notify Defendants Of The Products In Question**

Cinebase's First Amended Complaint does not identify Defendants' product or Cinebase's product.  Cinebase merely alleges that "Defendants intend to market as Media Guaranty Trust's software product a product which is in fact Cinebase's product or is substantially similar thereto." Chen Decl., Exh. B (Cinebase First Amended Complaint, ¶ 63) (emphasis added).  Defendants are left to guess as to the products which Cinebase is referring.  The ambiguity of which product Cinebase is referring to is exemplified by the deposition testimony of Alan Brown, Chairman of the Board of Cinebase.  Alan Brown testified that has never seen a Media Guaranty product, has never seen specifications of a Media Guaranty, product, and most importantly, does not know of the name of the Media Guaranty product that competes with Cinebase.  Chen Decl., Exh. I (Alan Brown Deposition, p. 54, ll. 13-24); see Chen Decl., Exh. J (Terrance Timko Deposition, p.62, ll. 20-25)(Cinebase's Director of Market Technology Assessment states that he no knowledge of the Media Guaranty product).  Therefore, Cinebase fails to give Defendants the required notice of their claim, under Rule 8

1    of the Federal Rules of Civil Procedure, so that they can properly respond to the allegations.

2    Consequently, this claim should be dismissed.[6]

3            **2.     Cinebase Also Fails to Allege That Ms. Topper Removed Indications of Cinebase as the Source of the Product.**

4

5           In addition, Cinebase's allegation of reverse passing off against Ms. Topper is

6    doubly flawed.  Chen Decl., Exh. B (Cinebase First Amended Complaint, ¶ 63).  Paragraph

7    63 states: "Cinebase is informed and believes and therefore alleges that Defendants intend to

8    market as Media Guaranty Trust's software product a product which is in fact Cinebase's

9    product or is substantially similar thereto.  Cinebase is informed and believes and therefore

10   alleges that <u>Media Guaranty Trust, Dr. Brown, Krol, Rozenfeld, Wills and Reisinger</u> removed

11   or otherwise removed all indications and designations of Cinebase as the source of said

12   software product and has and will continue to distribute and/or publish this software under a

13   different name."  <u>Id.</u> (emphasis added).  While Cinebase alleges that all the other Defendants

14   removed indications of the source of the product, Ms. Topper is not accused of doing so.  <u>Id.</u>

15   Thus, the reverse passing off claim as to Ms. Topper should be dismissed.

16                       **III.**

17   **UPON DISMISSAL OF CINEBASE'S FIRST AND SECOND CAUSES OF ACTION, WHICH ARE BASED ON FEDERAL LAW, THE COURT SHOULD DISMISS**

18   **CINEBASE'S ENTIRE COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION**

19

20          "Federal courts are courts of limited jurisdiction.  They possess only that power

21   authorized by Constitution and statute[.]"  <u>Kokkonen v. Guardian Life Ins. Co.</u>, 511 U.S. 375,

22   377 (1994).  Article III, § 2 of the Constitution "delineates the absolute limits on the federal

23   courts' jurisdiction."  <u>Ankebrandt v. Richards</u>, 504 U.S. 689, 695-697 (1992).  "It is to be

24   presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the

25   contrary rests upon the party asserting jurisdiction."  <u>Kokkonen</u>, 511 U.S. at 377.

26

27

28   6.  Alternatively, the Court should require Cinebase to plead with greater particularity pursuant to Rule 12(e).

Cinebase cannot meet its burden of overcoming the presumption that the Court lacks subject matter jurisdiction over Cinebase's third through eleventh causes of action (the "State Law Claims").    This is because none of the State Law Claims raises any federal questions, there is no diversity jurisdiction over the individual defendants, and there is no basis to exercise supplemental jurisdiction over the State Law Claims.

**A.    The Court Has No Original Jurisdiction Over Cinebase's State Law Claims**

With the exception of the First and Second Causes Of Action for copyright infringement and reverse passing off, which are based on federal law, the Court lacks original jurisdiction over any of Cinebase's eight State Law Claims.

First, Cinebase's First Amended Complaint concedes that there is no federal question jurisdiction over the State Law Claims.    Cinebase relies exclusively on its First and Second Causes Of Action for copyright infringement and reverse passing off, as the statutory source of the Court's subject matter jurisdiction over this entire action.[7]    See Chen Decl., Exh. B (Cinebase First Amended Complaint ¶ 1).    Concerning the State Law Claims, Cinebase alleges "[t]he Court has supplemental jurisdiction over causes that arise under the statutory and common law of the State of California pursuant to 28 U.S.C. § 1367(a)."    Id.

Second, Cinebase concedes that there is no diversity jurisdiction over the State Law Claims.    Cinebase's complaint establishes unequivocally that there is no diversity jurisdiction over the State Law Claims.    Cinebase alleges that it is a California corporation with its principal place of business in Los Angeles.    Id. at ¶ 5.    Cinebase also alleges that Media Guaranty has its principal place of business in California and that each individual defendant at all relevant times was and is a resident of the State of California.    Id. at ¶ 6-12.

Consequently, the State Law claims should be dismissed when the Court dismisses Cinebase's copyright infringement and reverse passing off claims.    The United States Supreme Court has noted that:

_____

7.  Federal district courts have original jurisdiction over copyright infringement and reverse passing off, under the Lanham Act, pursuant to 28 U.S.C. §§ 1331 and 1338(a).

1         [I]n the usual case in which all federal-law claims are eliminated
     before trial, the balance of factors to be considered under the
2    pendent jurisdiction doctrine - judicial economy, convenience,
     fairness, and comity - will point toward declining to exercise
3    jurisdiction over the remaining state-law claims.

4    <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350 n.7 (1988).  Similarly, in <u>Gibbs</u>, the

5    Supreme Court held:  "Certainly, if the federal claims are dismissed before trial . . . the state

6    claims should be dismissed as well."  <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 726

7    (1966).

8        **B.**   **The Court Should Not Exercise Supplemental Jurisdiction Over Cinebase's**
     **State Law Claims**

9

10       Without original jurisdiction, the only possible basis for subject matter

11   jurisdiction over Cinebase's State Law Claims is "supplemental jurisdiction."  28 U.S.C.

12   § 1367 confers supplemental jurisdiction over parties and claims for which the Court does not

13   have original jurisdiction:

14       [T]he district courts shall have supplemental jurisdiction over all
     other claims that are so related to claims in the action within such
15   original jurisdiction that they form a part of the same case or
     controversy Under Article III of the United States Constitution.
16   Such supplemental jurisdiction shall include claims that involve
     the joinder or intervention of additional parties.

17

18       Supplemental jurisdiction, of course, is not mandatory.   The Court has

19   discretion not to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  <u>Hoeck v.</u>

20   <u>City of Portland</u>, 57 F.3d 781, 785 (9th Cir. 1995).   The Court can reject supplemental

21   jurisdiction if it finds:

22       (1) the claim raises a novel or complex issue of State law,

23       (2) the claim substantially predominates over the claim or claims
     over which the district court has original jurisdiction,
24
25       (3) the district court has dismissed all claims over which it has
     original jurisdiction, or

26       (4) in exceptional circumstances, there are other compelling
     reasons for declining jurisdiction.
27

28   28 U.S.C. § 1367(c).

Here, the Court should decline to exercise supplemental jurisdiction over each of Cinebase's State Law Claims because those claims predominate the copyright and reverse passing off claims and because the State Law Claims raise novel and complex issues of California law.

**1.    The State Law Claims Predominate Cinebase's First Cause Of Action**

Several of Cinebase's State Law Claims substantially predominate Cinebase's nominally pleaded copyright infringement and reverse passing off claims. The only copyright registrations pleaded by Cinebase is for the Cinebase 2.0 program and header file source codes. Even Cinebase's allegation as to the scope of its copyrights is limited to "its Cinebase 2.0 computer program for management for high-resolution digital media." See Chen Decl., Exh. B (Cinebase First Amended Complaint, ¶ 52). Similarly, Cinebase's reverse passing off claim is limited to "Cinebase's product." Chen Decl., Exh. B (Cinebase First Amended Complaint, ¶ 63).

On the other hand, the scope of Cinebase's State Law Claims is expansive and reaches far beyond "Cinebase 2.0 program" or "Cinebase's product." Perhaps the broadest claim is Cinebase's fifth cause of action for trade secret misappropriation. As detailed below, this claim seeks protection of Cinebase's technical and programming "know-how," Cinebase's marketing plans and strategies, its market research and analyses, pricing, and information concerning Cinebase's existing and prospective clients and contacts. Infra V.C. Plainly, Cinebase's allegations in support of its trade secret misappropriation claim encompass a far wider range of alleged information and activities than its claims for copyright infringement or reverse passing off which is limited to only Cinebase software or product. Likewise its claims for breach of confidence and implied in fact contracts regarding "Protectable Ideas," unfair competition, intentional interference with prospective economic advantage, fraud, breach of fiduciary duty, and trade disparagement, involves analysis of the Defendants' activities that go far beyond Cinebase's software or product. Infra V and VI.

1    It is clear from its complaint that Cinebase's trade secret misappropriation claim,

2  as well as its other State Law Claims, predominate Cinebase's federal claims.  The Court

3  should exercise its discretion and reject supplemental jurisdiction.

4    **2.    The State Law Claims Raise Novel And Complex Issues Of California Law**

5

6    In its trade secret misappropriation claim, Cinebase alleges that the Defendants'

7  ownership of and employment with Media Guaranty "will require the inevitable use and/or

8  disclosure of Cinebase's Trade Secret Information."  <u>See</u> Chen Decl., Exh. B (Cinebase

9  Complaint, ¶ 92).

10    Cinebase's "inevitable use/disclosure" theory is novel and has no basis in the

11  Uniform Trade Secrets Act codified by California as Cal. Civ. Code 3426 et seq.  In its

12  motion for preliminary injunction, even Cinebase admits that "the doctrine of 'inevitable

13  disclosure' of trade secret information has not been readily embraced by the California courts."

14  As Cinebase itself concedes, its sole basis for accusing Defendants' of trade secret

15  misappropriation requires the Court to rule on the application of a legal doctrine that is not

16  presently within the purview of California trade secret law.  This novel issue is better decided

17  by California State courts.

18    In addition to raising novel theories of law, Cinebase relies entirely on

19  California state statutes for its trade secret misappropriation and unfair competition claims.  <u>Id.</u>

20  at ¶¶ 45-63.[8]  The statutory nature of these claims raise "complex issues of state law" which

21  the Court should avoid pursuant to 28 U.S.C. § 1367(c)(1).  <u>See</u> <u>Hoeck</u>, 57 F.3d at 785

22  ("needless decisions of state law should be avoided both as a matter of comity and to promote

23  justice between the parties, by procuring for them a surer-footed reading of the applicable

24  law."); <u>Moeini v. City & County Of San Francisco</u>, C 92-1709 BAC, 1993 WL 451496 at *4

25

26

27  —————————————

28  8.  Specifically, Cinebase's trade secret misappropriation claim relies on Section 3426 et seq. of the California Civil Code, and its unfair competition claim relies on Section 17200 et seq. of the California Business and Professions Codes.

1    (N.D. Cal. October 26, 1993) (finding claims that relied in part on rights embodied in the
2    California Constitution "best considered by a California court.").

3        Upon dismissing Cinebase's copyright infringement and reverse passing off
4    claims, the novel and complex issues of California State law inherent in Cinebase's remaining
5    State Law Claims militate strongly for the dismissal of those claims and dismissal of this action
6    as a whole.

7    **IV.**

8    **CINEBASE'S CLAIMS AGAINST KATHERINE TOPPER SHOULD BE DISMISSED
     FOR LACK OF SUBJECT MATTER JURISDICTION PURSUANT TO FEDERAL
9    RULE OF CIVIL PROCEDURE 12(b)(1)**

10       Even if this Court does not dismiss the copyright and reverse passing off claims
11   against the other Defendants, it should dismiss the claims against Ms. Topper. Cinebase fails
12   to allege essential elements of these claims against Ms. Topper. See supra II.A.4. and II.B.2.
13   Once these claims are dismissed as to Ms. Topper, as a matter of law, the Court lacks original
14   jurisdiction over defendant Katherine Topper.

15       Cinebase already conceded that the state law claims it does assert against Ms.
16   Topper -- breach of confidence, implied-in-fact contract, trade secret misappropriation and
17   unfair competition -- do not invoke the Court's original subject matter jurisdiction. Id. at ¶ 1
18   (asserting "supplemental jurisdiction over causes that arise under the statutory and common law
19   of the State of California").

20       Furthermore, in its complaint, Cinebase's admits that there is no diversity
21   jurisdiction over Ms. Topper. As stated above, Cinebase alleges that it is a California
22   corporation with its principal place of business in Los Angeles. Id. at 5. Cinebase also
23   alleges that Ms. Topper at all relevant times was and is a resident of the State of California.
24   Id. at 11.

25       Given the lack of original jurisdiction over Ms. Topper, the Court should not
26   exercise supplemental jurisdiction over her. As detailed above, Cinebase's State Law Claims
27   predominate its claims for copyright infringement and reverse passing off. Hoeck, 57 F.3d at
28   785 ("needless decisions of state law should be avoided").

Moreover, as discussed above, the trade secret misappropriation claim against Ms. Topper raises novel issues concerning Cinebase's efforts to employ the unaccepted "inevitable use/disclosure" doctrine in California. Both the breach of confidence, implied in fact contract, trade secret misappropriation claim and the unfair competition claim against Ms. Topper are grounded entirely on the California Civil Code and present complex issues of California State law. For this reason, the Court should reject supplemental jurisdiction and leave Cinebase's claims against Ms. Topper for adjudication in California State court. See Moeini v. City & County Of San Francisco, (claims that relied in part on California Constitution "best considered by a California court.").

Because it has no original jurisdiction over Ms. Topper, and because the claims against her predominate and raise novel and complex issues of California law, the Court should decline supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c) and dismiss all of Cinebase's claims against Ms. Topper for lack of subject matter jurisdiction.

**V.**

**CINEBASE'S THIRD, FOURTH, FIFTH AND ELEVENTH CAUSES OF ACTION, BASED ON STATE LAW, SHOULD BE DISMISSED PURSUANT TO RULE 12 OF THE FEDERAL RULES OF CIVIL PROCEDURE**

**A.    Cinebase's Breach Of Confidence Claim Should Be Dismissed**

Cinebase's Third Cause of Action accuses defendants Dr. Brown, Natalia X. Krol, Joseph Rosenfeld, Thomas Wills, Carl Reisinger, and Ms. Topper (collectively "Individual Defendants") of Breach of Confidence.

Breach of Confidence may only arise when an idea is offered to another in confidence, and is voluntarily received by the offeree in confidence with the understanding that it is not to be disclosed to others, and it is not to be used by the offeree for purposes beyond the limits of the confidence without the offeror's permission. Tele-Count Eng'g., Inc. v. Pacific Telephone & Telegraph Co., 168 Cal. App. 3d 455, 462 (Cal. Ct. of App. 1985). Furthermore, the idea itself must be confidential and novel. Id.

Cinebase fails to state a cause of action for breach of confidence because the ideas are not confidential or novel. Indeed, Cinebase pleads that the transmitted ideas are "not

1  novel." Chen Decl., Exh. B (First Amended Complaint, ¶ 70). This admission alone

2  torpedoes Cinebase's claim.

3         Furthermore, the transmitted ideas are not confidential. According to the First

4  Amended Complaint, the transmitted ideas are:

5         Cinebase's Intellectual Property, including its software
       architecture, source codes, object codes, and related design
6       documents consist[ing] of ideas which are not novel and vague
       and are within the subject matter of copyright under 17 U.S.C.
7       sec. 102.

8  Id. Essentially, Cinebase limits the definition of transmitted ideas to those which are

9  copyrighted. And in its First Amended Complaint, Cinebase defined "Copyrighted Works" as

10  its registrations for Cinebase 2.0 header file and program source codes. Id. at ¶ 52. Because

11  registered copyrighted material are not confidential, Cinebase fails to state a cause of action for

12  breach of confidence. See Weygand v. CBS, 1997 U.S. Dist. LEXIS 10613, *27, 43

13  U.S.P.Q.2d 1120 (C.D. Cal. 1997)(deposit of work with the Copyright Office destroyed any

14  possible "confidential" status.)

15         If somehow Cinebase's copyrights are interpreted to extend beyond the

16  registered copyrights, Cinebase does not assert this information is confidential. See id. at

17  ¶¶ 69-74. It merely alleges the information is transmitted in confidence. Id. at 71.

18  Therefore, this claim fails on this ground as well.

19         Lastly, the breach of confidence claim fails for lack of notice. Cinebase fails to

20  set forth with any specificity the copyrighted materials it allegedly transmitted to the Individual

21  Defendants in confidence. Chen Decl., Exh. B (Cinebase First Amended Complaint, ¶ 70).

22  The transmitted ideas are so loosely defined that the Individual Defendants are left guessing as

23  to which idea they supposedly used for their own personal gain. Id. Plainly, this pleading

24  does not meet the standard under Rule 8 and, thus, this claim should be dismissed.

25  **B.    Cinebase's Breach Of Implied Contract Claim Should Be Dismissed**

26         Cinebase's Fourth Cause of Action is for Breach of Implied-In-Fact Contract.

27  An implied contract is one, the existence and terms of which are manifested by conduct. Cal.

28  Civ. Code sec. 1621. To show an implied in fact contract, Cinebase must show: (1) that it

1    prepared the work; (2) that it disclosed the work to the offeree for sale; (3) under all

2    circumstances attending disclosure it can be concluded that the offeree voluntarily accepted the

3    disclosure knowing the conditions on which it was tendered (i.e., the offeree must have the

4    opportunity to reject the attempted disclosure if the conditions were unacceptable); and (4) the

5    reasonable value of the work. Aliotti v. Dakin & Co., 831 F.2d 898, 902 (9th Cir. 1987).

6         Cinebase asserts that it has disclosed its "Protectable Ideas" to the Individual

7    Defendants. Chen Decl. Exh. B (First Amended Complaint, ¶ 76.) Protectable Ideas are

8    defined as:

9          any part of Cinebase's Intellectual Property, including its software architecture,
      source codes, object codes, and related design documents consist[ing] of ideas
10         which are not novel and vague and are within the subject matter of copyright.

11   Id. That the ideas transmitted are defined as ideas which are "not novel and vague and are

12   within the subject matter of copyright" does not apprise defendants of the claim against them.

13   It gives Defendants no notice as to what information was given to them as part of the alleged

14   contracts. Thus, such a claim should be dismissed.

15        This claim also fails to set forth in any manner the individual contracts entered

16   into by each party. The allegations merely lump the Defendants together. Id. Defendants are

17   left guessing as to when and where they entered into the contract. Without some detail,

18   Defendants cannot effectively respond to this claim, i.e., conduct an investigation, identify and

19   assert defenses, preserve evidence, prepare counterclaims, cross-claims, or prepare an

20   appropriate answer. Therefore, this claim should be dismissed under Rules 8 and 12(b)(6), or

21   in the alternative, for a more definite statement under Rule 12(e).

22       **C.**    **Cinebase Has Not Sufficiently Pleaded Trade Secret Misappropriation**

23        In California, under the Uniform Trade Secret Act, to establish trade secret

24   misappropriation "it must be shown that a defendant has been unjustly enriched by the

25   improper appropriation, use or disclosure of a 'trade secret.'" MAI Systems Corp. v. Peak

26   Computer, Inc., 991 F.2d 511, 520 (9th Cir. 1993). "When making a claim for wrongful use

27   of trade secrets, 'the complainant should describe the subject matter of the trade secret with

28   sufficient particularity to separate it from matters of general knowledge in the trade or of

special knowledge of those persons . . . skilled in the trade.'"  Universal Analytics, Inc. v. The MacNeal-Schwendler Corp., 707 F. Supp. 1170, 1177 (C.D. Cal. 1989) ("UAI") quoting Diodes, Inc. v. Franzen, 260 Cal. App. 2d 244, 253 (1968); see also MAI, 991 F.2d at 522 ("[A] plaintiff who seeks relief for misappropriation of trade secrets must identify the trade secrets and carry the burden of showing that they exist.").

Here, Cinebase has pleaded its alleged trade secrets in extremely broad terms. It lists its alleged trade secrets as:

A.    The software architectures and source codes of Cinebase's digital media management software, including all documents and/or files, or portions thereof, containing software architecture information.  Examples of such documents include Cinebase's software reference manuals, diagrams of 2.x core, and notes from engineering department design meetings;

B.    Plans, design features, specifications and engineering designs for Cinebase's digital media management product, including all documents and/or files, or portions thereof, containing such information;

C.    Technical and software programming know-how relating to the design and development of digital media management software, including detailed information about what does and what does not work in connection with such design and development efforts;

D.    Information concerning Cinebase's marketing plans and strategies, market research, market development activities, and market analyses;

E.    Cinebase's efforts to develop new customers, including identities of potential clients and associated contacts, as well as the strategies behind such efforts; and

F.    The identity of and information concerning existing clients and the pricing and types of services offered to those clients.

See Chen Decl., Exh. B (Cinebase First Amended Complaint, ¶ 83).  These allegations are only nominally different from the original allegations.  The allegations merely add where these

1   trade secrets may be found, i.e., documents and files, but do not identify the trade secrets

2   themselves.  The identity of the allegedly misappropriated trade secrets remains a mystery.

3          Cinebase's allegation that the architectures, source codes, plans, etc. of <u>unnamed</u>

4   software products are all trade secrets falls short of carrying Cinebase's burden to describe and

5   identify the subject matter of its alleged trade secrets "with sufficient particularity." <u>UAI</u>, 707

6   F. Supp at 1177.  This broad description renders it impossible to distinguish information that

7   is allegedly "secret" from that which is publicly known.  For example, Cinebase's marginal

8   description of its software as its "digital media management product" renders it impossible to

9   distinguish those portions of Cinebase software which are allegedly secret from those portions

10  that Cinebase itself must have published when, in registering its 2.0 Source Code, it deposited

11  portions of that code with the Copyright Office.  <u>See</u> 37 C.F.R. § 202.20(c)(vii) (requiring an

12  applicant to deposit at least "the first and last 25 pages or equivalent units of the source

13  code").

14         Moreover, the generic nature of the information for which Cinebase declares

15  trade secret status is so <u>non-particular</u> that it is impossible to separate such information from

16  "matters of general knowledge in the trade or of special knowledge of those persons . . .

17  skilled in the trade." <u>UAI</u>, 707 F. Supp. at 1177.  For example, Cinebase's attempt to claim

18  as trade secrets technical and programming "know-how," "information" and "efforts"

19  concerning Cinebase's marketing plans and customers, utterly fails to instruct Defendants or

20  the Court as to what Cinebase considers a trade secret.  As pleaded, such "know-how" and

21  "information" and "efforts" could conceivably include the simplest operations involving

22  software development or marketing that are being conducted every day by every software

23  company.  Plainly such open-ended definitions cannot carry Cinebase's burden of showing that

24  it even possesses trade secrets. <u>MAI</u>, 991 F.2d at 522.

25         Under Fed. R. Civ. P. 8, Defendants are entitled to fair notice of what

26  information Cinebase alleges is a "trade secret."  Without a properly pleaded identification of

27  the alleged trade secrets, Defendants cannot possibly assess the accuracy of Cinebase's claims

28  or prepare an appropriate answer to its claims.  <u>See</u> <u>Grid Sys.</u>, 771 F. Supp. at 1037.  These

imprecise and overbroad definitions of its "trade secrets" do not provide any notice to Defendants of the nature of this cause of action, even after Cinebase has once amended this claim. The amended claim is still deficient, thus, Cinebase's trade secret misappropriation cause of action should be dismissed with prejudice.

**D.     Cinebase Has Not Sufficiently Pleaded Intentional Interference With Prospective Economic Advantage**

Cinebase's Eleventh Cause Of Action accuses Media Guaranty, Dr. Brown, and Ms. Krol of intentional interference with prospective economic advantage.

"[A] plaintiff seeking to recover for alleged interference with prospective economic relations has the burden of pleading and proving that the defendant's interference was wrongful 'by some other measure beyond the fact of interference itself.'" Silicon Knights v. Crystal Dynamics, 983 F. Supp. 1307, 1311 (N.D. Cal. 1997). "The elements of the tort of intentional interference with prospective economic advantage are:

> (1) an economic relationship between the plaintiff and some third person containing the probability of future economic benefit to the plaintiff; (2) knowledge by the defendant of the existence of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) damages to the plaintiff proximately caused by the acts of the defendant."

Conkle v. Jeong, 73 F.3d 909, 918 (9th Cir. 1995) (citing Blank v. Kirwan, 39 Cal.3d 311, 330, 216 Cal. Rptr. 718, 730, 703 P.2d 58 (1985)). To satisfy Rule 8, each of these elements must be sufficiently pleaded.

In Silicon Knights, this Court, pursuant to Fed. R. Civ. P. 12(b)(6), dismissed a claim for intentional interference with prospective economic advantage for failing to sufficiently plead the necessary elements. In that case, plaintiff alleged that defendants' unspecified statements to "customers, potential customers, industry and associates and the public" were "conclusory" and the "type of speculative economic relationship disapproved of [by the California Court of Appeals]." 983 F. Supp. at 1312. Specifically, the Court held that there were "no allegations from which the court or defendants could infer the probable disruption of an actual economic relationship[.]" Id.

1         Containing remarkably similar allegations, Cinebase's intentional interference

2    claim suffers from the same fatal deficiencies as found in <u>Silicon Knights</u>.   Cinebase's

3    interference claim contains only conclusory allegations that:

> Media Guaranty Trust, Dr. Brown and Krol have made false and
> misleading representations to Cinebase's customers, prospective
> customers, strategic partners, potential strategic partners and
> potential venture capitalists -- including at least Hambricht &
> Quist -- concerning the quality of Cinebase's product, the ability
> of Cinebase to maintain and improve its product, and Cinebase's
> ability to survive and thrive as a company.  There may be other
> persons or entities to whom such false and misleading
> representations have been made.

9    <u>See</u> Chen Decl., Exh. B (Cinebase First Amended Complaint, ¶ 121).  As in <u>Silicon Knights</u>,

10   Cinebase's broad list of categories of possible business associations fall far short of specifying

11   "an actual economic relationship."   Cinebase's interference claim "alleges only conclusory

12   statements" of the kind this Court has previously rejected as inadequate to provide fair notice

13   pursuant to Rule 8.  <u>Silicon Knights</u>, 983 F. Supp. at 1312.

14        Furthermore, while Cinebase identifies Hambricht & Quist as third party with

15   whom it had a potential relationship, Hambrecht & Quist is not identified as a potential

16   relationship that is <u>interfered</u> with by defendants representation.[9]   Cinebase alleges that Dr.

17   Brown's alleged representations are interfering with "prospective economic relationships with

18   the above-mentioned customers, prospective customers, strategic partners and/or prospective

19   strategic partners", however, there is no mention of any interference with its relationship with

20   Hambricht & Quist.   Chen Decl., Exh. B (First Amended Complaint, ¶ 121).   Without

21   interference, no claim can be stated with regards to Hambricht & Quist, the only relationship

22   identified with any particularity.  <u>Conkle</u>, 73 F.3d at 918.

23        Cinebase's once amended claim for intentional interference with prospective

24   economic advantage is still defective, as there are no facts to support its conclusory allegations.

25

26   _____

27   9.  According to Cinebase "[t]here may be other persons or entities to whom such false and
misleading representations have been made."  <u>Id.</u>  This is yet another example of the lack of

28   specificity in Cinebase's First Amended Complaint.  Cinebase's broad, conclusory, and
unsupported allegations are rampant throughout its complaints.

1     Therefore, Cinebase's claim for intentional interference with prospective economic advantage

2     should be dismissed with prejudice.

3 **VI.**

4 **ALLEGATIONS IN THE NINTH CAUSE OF ACTION FOR FRAUD BY DR. BROWN CONCERNING NON-DISCLOSURE AGREEMENTS SHOULD BE STRICKEN**

5

6     Cinebase's Ninth Cause Of Action accuses defendant Dr. Brown of fraud.

7     Fraud claims must comply with Fed. R. Civ. P. 9(b):

8           In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.

9

10     "[M]ere conclusory allegations of fraud are insufficient." In re Glenfed, Inc.

11     Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc) (citation omitted). Thus, in order to

12     comply with Rule 9(b), Cinebase "must include statements regarding the time, place, and

13     nature of the alleged fraudulent activities[.]" Id. "To satisfy this heightened pleading

14     requirement, the complaint must state the . . . specific content of the false representation as

15     well as the identities of the parties to the misrepresentation." Silicon Knights, 983 F. Supp. at

16     1315.

17     "The indispensable elements of a fraud claim include a false representation,

18     knowledge of its falsity, intent to defraud, justifiable reliance, and damages." Moore v.

19     Brewster, 96 F.3d 1240, 1245 (9th Cir. 1996).

20     It is claimed that Dr. Brown defrauded Cinebase by making two statements.

21     First, allegedly Dr. Brown claimed "he was employing his best efforts to recruit technical

22     people to meet Cinebase's needs," and allegedly Dr. Brown stated he "intended to enter" into

23     a non-disclosure agreements" with Cinebase. See Chen Decl., Exh. B (Cinebase's First

24     Amended Complaint, ¶ 112).

25     Cinebase fails to allege with specificity the details of his alleged representation

26     concerning non-disclosure agreements. Cinebase alleges that "[i]n or about March of 1997,

27     Dr. Brown entered[sic] into negotiations with Cinebase over non-disclosure agreements to be

28     entered into by and between Cinebase and its employees. In these negotiations, which lasted

1  virtually until his sudden departure from the Company, Dr. Brown repeatedly falsely

2  represented that he intended to enter into such an agreement, stating that he would provide

3  Cinebase with an exemplar of a form of agreement that would be acceptable to him." Chen

4  Decl., Exh. B (Cinebase First Amended Complaint, ¶ 112). Dr. Brown departed from the

5  company on or about October 13, 1997. Id. at ¶ 6.

6          Cinebase fails to identify when and to whom these representations were made.

7  The Dr. Brown is left to guess when the alleged representations where made, allegedly within

8  ann eight month span of time, and to whom the representations where made. Id. at ¶ 6.

9  Without these details, which he is entitled to under the heightened pleading standard for fraud,

10  Dr. Brown is not properly apprised of the incidents of alleged fraud. Dr. Brown is left

11  without the he needs to properly respond to these allegation. Therefore, portions of

12  paragraphs 112, 113, 115 and 117 of the First Amended Complaint concerning the non-

13  disclosure agreements, should be stricken.

14          Striking Cinebase's fraud allegation concerning non-disclosure agreements,

15  specifically, portions of paragraphs 112, 113, 115 and 117, is warranted by Cinebase's failure

16  to plead the time, place, or parties to the representations concerning non-disclosure

17  agreements. Cinebase's failure to plead any of these required elements requires that those

18  allegations be stricken.[10]

19                                          **VII.**

20                                    **CONCLUSION**

21          For all of the above reasons, Defendants respectfully request that the Court

22  dismiss Cinebase's First and Second Causes Of Action of its First Amended Complaint. Upon

23  dismissal of Cinebase's First and Second Causes of Action, which are based on federal law,

24  Defendants request that the Court dismiss Cinebase's First Amended Complaint in its entirety

25  for lack of subject matter jurisdiction. Ms. Topper also requests that the complaint against her

26  be dismissed for lack of subject matter jurisdiction. In addition, Defendants request that the

27  _____

28  10. Alternatively, the Court should require Cinebase to plead with greater particularity
    pursuant to Rule 12(e).

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT                    CASE NO. C-98-1100 FMS
                                    23
SVFS01...:\21\62621\0003\2195\MOT6268R.150

1    Court dismiss Cinebase's Third, Fourth, Fifth and Eleventh Causes of Action for failure to

2    state a claim, or, in the alternative order Cinebase to provide a more definite statement.

3    Finally, Dr. Brown respectfully requests that the allegations in Cinebase's Ninth Cause of

4    Action for fraud, concerning non-disclosure agreements, be stricken, or, in the alternative, that

5    a more definite statement be made under Rule 12(e).

6    Dated:   July 13, 1998        JARED BOBROW
                                    DOUGLAS E. LUMISH

7                              WEIL, GOTSHAL & MANGES LLP

8

9                  By: _____

10                             Jared Bobrow
                            Attorneys for Defendants

11              Media Guaranty Trust, Inc., Allen L.
                      Brown, Jr., Natalia X. Krol,

12                Joseph Rozenfeld, Thomas Wills,
            Carl Reisinger, and Katherine Topper

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28