# EXHIBIT C

ORIGINAL

1  PATRICIA L. GLASER, State Bar No. 055668
   MARK G. KRUM, State Bar No. 147788
2  KEVIN J. LEICHTER, State Bar No. 154143
   CHRISTENSEN, MILLER, FINK, JACOBS,
3    GLASER, WEIL & SHAPIRO, LLP
   2121 Avenue of the Stars, 18th Floor
4  Los Angeles, California 90067
   Telephone: (310) 553-3000
5  Facsimile: (310) 556-2920



FILED

AUG 10 1998

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT,
NORTHERN DISTRICT OF CALIFORNIA

6  Attorneys for Plaintiff
   CINEBASE SOFTWARE, INC.

7

8

9          IN THE UNITED STATES DISTRICT COURT

10           NORTHERN DISTRICT OF CALIFORNIA

11              SAN FRANCISCO DIVISION

12  CINEBASE SOFTWARE, INC., a California    )  Case No. C 98-1100 FMS
    corporation,                            )
13                                           )
                                             )  PLAINTIFF'S OPPOSITION TO
14          Plaintiff,                       )  DEFENDANTS' MOTION TO DISMISS
                                             )  AND TO STRIKE
15      vs.                                  )
                                             )
16  MEDIA GUARANTY TRUST, INC., a Delaware   )
    corporation; ALLEN L. BROWN, JR., an individual; )  DATE:  August 26, 1998
17  NATALIA X. KROL, an individual, JOSEPH   )  TIME:  4:00 P.M.
    ROSENFELD, an individual, THOMAS WILLS, an )  ROOM:  6
18  individual, CARL REISINGER, an individual and )
    KATHERINE TOPPER, an individual,        )  The Honorable Fern M. Smith
19                                           )
            Defendants.                       )
20                                           )

21

22

23

24

25

26

27

28

55566.2

# TABLE OF CONTENTS

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

   A.   The Complaint More Than Meets Federal Pleading Standards. . . . . . . . . . . . . . . 5

      1. Rule 12(b)(6) -- "Failure To State A Claim" . . . . . . . . . . . . . . . . . . . . . . . . 5

      2. Rule 8(a) -- "Short and Plain Statement" . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      3. Rule 12(e) -- "More Definite Statement" . . . . . . . . . . . . . . . . . . . . . . . . . . 7

   B.   Cinebase Has Stated A Claim For Copyright Infringement. . . . . . . . . . . . . . . . . 8

   C.   Cinebase Has Stated A Claim For Reverse Passing Off. . . . . . . . . . . . . . . . . . 10

   D.   Cinebase Has Stated Claims For Copyright Infringement And Passing Off Against
        Topper. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

   E.   Defendant's Motion With Respect To The Third And Fourth Claims Is Based On
        Typographical Errors. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

      1. Third Claim - Idea Misappropriation        . . . . . . . . . . . . . . . . . . . . . . . . . . 12

      2. Fourth Claim -- Breach of Implied-In-Fact Contract . . . . . . . . . . . . . . . . . . 13

   F.   Cinebase Has Stated A Claim For Misappropriation Of Trade Secrets. . . . . . . . . 14

   G.   Defendants' Motion To Strike Must Be Denied. . . . . . . . . . . . . . . . . . . . . . . . . 16

   H.   Cinebase Has Stated A Claim for Interference With Prospective
        Economic Advantage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

   I.   The Court Should Exercise Its Supplemental Jurisdiction Over The State-Law
        Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

IV.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

LAW OFFICES

CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL & SHAPIRO, LLP

2121 AVENUE OF THE STARS
EIGHTEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

# TABLE OF AUTHORITIES

## FEDERAL CASES

AAMCO Automatic Transmission, Inc., v. Tayloe,
  368 F. Supp. 1283 (E.D. Pa. 1973) ................................................... 14

ACRI v. Varian Associates
  114 F. 3d 999, 1001 (9th Cir. 1997) ................................................ 19

APAC Teleservices, Inc., v. McRae,
  985 F. Supp. 852 (N.D. Iowa 1997) .................................................. 20

Borough of West Mifflin v. Lancaster,
  45 F.3d 780 (3d Cir. 1995) ............................................................. 21

Boxall v. Sequoia Union High School District,
  464 F. Supp. 1104 (N.D. Cal. 1979) ................................................... 7

C&F Packing Co., Inc., v. IBP, Inc.,
  1998 U.S. Dist. LEXIS 3221 (N.D. Ill. March 17, 1998) ......................... 20

Casella v. Morris,
  820 F.2d 362 (11th Cir. 1987) ..................................................... 11, 12

Celestial Arts, Inc., v. Neylor Color-Lith Co.,
  339 F. Supp. 1018 (E.D. Wash. 1971) ................................................ 12

Center Cadillac v. Bank Leumi Trust Co.,
  808 F. Supp. 213 (S.D.N.Y. 1992) ..................................................... 17

Conley v. Gibson,
  355 U.S. 41 (1957) ............................................................. 5, 6, 8, 10

De La Cruz v. Tormey,
  582 F.2d 45 (9th Cir. 1978), ............................................................ 5

Doe v. City of Chicago,
  883 F. Supp. 1126 ........................................................................ 14

Effects Associates, Inc. v Cohen,
  817 F.2d 72 (9th Cir. 1987) .............................................................. 8

Executive Software North America, Inc., v. United States District Court,
  24 F.3d 1545 (9th Cir. 1994) ........................................................... 19

FMC Corp. v. Varco Intern., Inc.,
  677 F.2d 500 (5th Cir. 1982) ........................................................... 20

Famolare, Inc., v. Edison Brothers Stores, Inc.,
  525 F. Supp. 940 (E.D. Cal. 1981) .................................................... 7, 8

Fonovisa, Inc., v. Cherry Auction, Inc.,
  76 F.3d 259 (9th Cir. 1996) ........................................................... 12

55566.2

Friedman, Eisenstein, Raemer & Schwartz v. Afterman,
    599 F. Supp. 902 (E.D. Ill. 1984) ........................................................ 7, 8

Gee v CBS, Inc.,
    471 F. Supp. 600 (E.D. Pa. 1979) ........................................................ 9

Gershwin Publishing Corp. v. Morris,
    443 F.2d 1159 (2d Cir. 1971) ........................................................ 12

Gilligan v. Jamco Development Corp.,
    108 F.3d 246 (9th Cir. 1997) ........................................................ 6

Hishon v. King & Spaulding,
    467 U.S. 69 (1984) ........................................................ 5

Hunter v. Estate of Baecher,
    905 F. Supp. 341 (E.D. Pa. 1995) ........................................................ 20

IUE AFL-CIO Pension Fund v. Herrmann,
    9 F.3d 1049 (2d Cir. 1993), cert. denied, 513 U.S. 822 (1994) ........................ 16

K. Bell & Associates , Inc., v. Lloyd's Underwriters,
    827 F. Supp. 985 (S.D.N.Y. 1993) ........................................................ 14

Kelly v. L.L. Cool J.,
    145 F.R.D. 32 (S.D.N.Y. 1992) ........................................................ 9

Kenbrooke Fabrics, Inc. v. Holland Fabrics, Inc.,
    602 F. Supp. 151, 153 (S.D.N.Y. 1984) ........................................................ 8

Lamothe v. Atlantic Recording Group,
    847 F.2d 1403 (9th Cir. 1988) ........................................................ 10

Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,
    507 U.S. 163 (1993) ........................................................ 9, 10

Mid America Title Co. v. Kirk,
    991 F.2d 417 (7th Cir. 1993, cert. denied, 510 U.S. 932 (1993) ........................ 6, 9

NL Industries v. Kaplan,
    792 F.2d 896 (9th Cir. 1986) ........................................................ 5

Paragon Services v. Hicks,
    843 F. Supp. 1077 (E.D. Va. 1994) ........................................................ 9

Parks School of Business, Inc. v. Symington,
    51 F.3d 1480 (9th Cir. 1995) ........................................................ 5

PepsiCo, Inc., v. Redmond,
    54 F.3d 1262 (7th Cir. 1995) ........................................................ 20

QTL Corp. v. Kaplan,
    46 U.S.P.Q. 2d (BNA) ¶ 1794 (N.D. Cal. February 2, 1998) ........................ 10

Railroad Commission of Texas v. Pullman Co.,
    312 U.S. 496 (1941) ........................................................ 20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LAW OFFICES
CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL & SHAPIRO, LLP
2121 AVENUE OF THE STARS
EIGHTEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

Rivkin v. County of Montgomery,
    838 F. Supp. 1009 (E.D. Pa. 1993) ................................................ 20

Rojo, Inc., v. Marquis,
    902 F.2d 356 (5th Cir. 1990) ...................................................... 10

Scheuer v. Rhodes,
    416 U.S. 232, 94 S. Ct. 1683 (1974) ........................................... 5

Self-Directed Placement Corp. v. Control Data Corp.,
    908 F.2d 462 (9th Cir. 1990) ...................................................... 6

Smith v. Jackson,
    84 F.3d 1213 (9th Cir. 1996) ...................................................... 8

Summit Machine Tool Manufacturing Corp. v. Victor CNC Systems, Inc.,
    7 F.3d 1434 (9th Cir. 1993) ....................................................... 10

Tralins v. Kaiser Aluminum & Chemical Corp.,
    160 F. Supp. 511 (D. Md. 1958) ................................................ 8

United Mine Workers of America v. Gibbs,
    383 U.S. 715 (1966) ............................................................ 18, 19

Warshaw v. Xoma Corporation,
    74 F.3d 955 (9th Cir. 1996) ....................................................... 17

Wool v. Tandem Computers, Inc.,
    818 F.2d 1433 `(9th Cir. 1987) .................................................. 16

Yamaguchi. v. United States Department of the Air Force,
    109 F.3d 1475 (9th Cir. 1997) ................................................... 6

Zeigan v. Blue Cross and Blue Shield of Greater New York,
    607 F. Supp. 1434 (S.D.N.Y. 1985) .......................................... 14

**STATE CASES**

Blank v. Kirwin,
    39 Cal. 3d 311 (1985) ............................................................. 17

Broadway Savings & Loan Association v. Howard,
    133 Cal. App. 2d 382 (1955) ..................................................... 17

Della Penna v. Toyota Motor Sales, U.S.A.,
    11 Cal. 4th 376 (1995) ............................................................. 17

Ramona Manor Convalescent Hospital v. Care Enterprises,
    177 Cal. App. 3d 1120 (1986) ................................................... 18

Sequoia Vacuum Systems v. Stransky,
    229 Cal. App. 2d 281 (1964) ..................................................... 17

Thompson v. California Brewing Co.,
    150 Cal. App. 2d 469 (1957) ..................................................... 12

LAW OFFICES
CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL & SHAPIRO, LLP
2121 AVENUE OF THE STARS
EIGHTEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# FEDERAL STATUTES

Federal Rules of Civil Procedure
    Rule 3 ................................................................................. 5
    Rule 8 ................................................................. 6, 7, 9, 10, 15
    Rule 8(a) ............................................................... 6, 16, 24
    Rule 8(a)(2) ................................................................... 10
    Rule 8(e) ......................................................................... 8
    Rule 9(b) ............................................................... 9, 16, 17
    Rule 12(b)(6) ..................................................... 5, 7, 11, 24
    Rule 12(e) ......................................................... 7, 11, 15, 24
    Rule 12(f) ....................................................................... 16
    Rule 81(a)(1) ................................................................... 5
    Rule 84 ........................................................................... 9

15 U.S.C. § 1125(a) ................................................................. 10
28 U.S.C.
    § 1338 ............................................................................. 21
    § 1367(c) ................................................................. 18, 19, 20

Title 17 ................................................................................... 5

# STATE STATUTES

California Civil Code
§ 1621 ................................................................................. 13
§ 1710.3 ............................................................................... 17
§ 3426.1(b) ........................................................................... 14
§ 3426.1(d) ........................................................................... 14

California Code of Civil Procedure
¶ 2019(d) ............................................................................. 15

# TREATISES

1 B. Witkin, Summary of California Law § 11 (9th ed. 1987) ................. 13

4 B. Witkin, California Procedure § 476 (4th ed. 1997) ....................... 13

4 Wright & Miller, Federal Practice and Procedure § 1018 (2d ed. 1987) ........................................ 5

MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff Cinebase Software, Inc. ("Cinebase") respectfully submits the following Memorandum of Points and Authorities in opposition to "Defendants' Motion to Dismiss Cinebase's First and Second Causes of Action in Its First Amended Complaint, to Dismiss the First Amended Complaint, to Dismiss Defendant Katherine Topper from this Lawsuit, To Dismiss Cinebase's Third, Fourth, Fifth, and Eleventh Causes of Action and to Strike Portions of Cinebase's Ninth Cause of Action" (the "Motion"):

I.

INTRODUCTION

This lawsuit arises from actions by former officers and employees of plaintiff Cinebase who, in derogation of all manner of applicable federal statutory and state common law, schemed and conspired to steal the computer software, software architecture, technology and know-how, trade secrets, novel ideas and other confidential and other proprietary information developed by Cinebase ("Cinebase's Intellectual Property"), among other things, in order to go into business in competition with Cinebase.  As detailed in the pending First Amended Complaint for Injunctive Relief and Damages (the "Complaint" or "FAC"), former Cinebase officers Allen L. Brown, Jr. and Natalia X. Krol undertook such acts in anticipation of and in connection with forming defendant Media Guaranty Trust, Inc., which employed former Cinebase engineers Joseph Rozenfeld, Thomas Wills and Carl Reisinger, and former Cinebase employee Katherine Topper.  (Media Guaranty Trust and these individuals are referred to collectively herein as "Defendants".)  Thus, Defendants each have intimate, personal knowledge of the facts and circumstances giving rise to this lawsuit and the particular claims made against them in the Complaint.

Additionally, Cinebase presently has pending a motion for preliminary injunction, in connection with which Defendants have obtained substantial discovery, including thousands upon thousands of pages of documents and at least five depositions.  In this regard, Defendants have submitted papers and declarations in opposition to Cinebase's Motion for preliminary injunction, which opposition papers and declarations reflect that Defendants understand the claims made against them.

1    Nevertheless, Defendants have brought the Motion, which is predicated largely if not entirely

2    upon the mistaken notion that the Complaint is required to provide evidentiary material which in fact

3    is not required under the Federal Rules of Civil Procedure, and upon the misleading notion that

4    Defendants do not know what it is of which they are being accused.  In the former regard, and

5    notwithstanding Defendants' mischaracterization of the allegations of the Complaint, the Complaint

6    more than adequately pleads claims for copyright infringement, reverse passing off, breach of

7    confidence or idea misappropriation, breach of implied covenant, trade secret misappropriation and

8    intentional interference with economic advantage.  In the latter regard, the Motion must be seen for

9    what it is, namely, a misplaced effort to avoid litigating the merits of claims which Defendants not

10   only have every reason to readily understand, but in fact understand, as evidenced by the discovery

11   they sought and the opposition they have submitted to Cinebase's pending preliminary injunction

12   motion.   Finally, and at the risk of belaboring the obvious, it warrants mention that the Motion

13   ultimately is a strategic device intended by Defendants to require Cinebase to litigate the same

14   lawsuit in two different forums or, alternatively, to recommence this litigation in another forum.

15       Accordingly, and for the reasons demonstrated hereinafter, Cinebase respectfully submits that

16   the Motion should be denied, in all respects.

17                                          II.

18                              STATEMENT OF FACTS

19       Cinebase develops software that manages large digital media databases.  Digital media

20   convey information through images or pictures, in contrast to documents, which convey information

21   through the written word.  Digital media present software design challenges far greater than those

22   presented by documents; for example, the space required to generate and represent computer images

23   greatly exceeds the space necessary to represent documents.  Moreover, if the images must move on

24   a screen, as in video games for example, the design challenges increase manyfold.

25       Cinebase was one of the very first companies to focus on developing software to manage

26   large volumes of digital media, for both static and moving images.  It has spent millions of dollars

27   determining the requirements to its market and developing software to sell to that market.  The

28   market for such software is expanding rapidly and, because it had the foresight to invest in the

1  necessary research and development, Cinebase is poised to take a leading role in the digital media

2  management market.

3      Defendant Dr. Allen L. Brown ("Dr. Brown") began working at Cinebase in July 1996 as

4  Vice President of Engineering and Product Planning. He also was the company's Chief Technology

5  Officer. Although Dr. Brown had developed software before he came to Cinebase, his experience

6  was confined to document software. He had had little or no experience with the kind of software

7  that is Cinebase's specialty.

8      Dr. Brown left Cinebase in October 1997, after a little over a year of employment. During

9  that time, he had made himself familiar with Cinebase's existing products as well as with what was

10  in the pipeline. He also became acquainted with several other Cinebase employees who would

11  subsequently be useful to him.

12      The remaining individual defendants, Natalia Krol ("Krol"), Joseph Rozenfeld ("Rozenfeld"),

13  Thomas Wills ("Wills"), Carl Reisinger ("Reisinger"), and Katherine Topper ("Topper"), are also

14  former Cinebase employees. Krol, who began working at Cinebase in December 1996, was

15  Cinebase's Vice President of New Business Development. Rozenfeld, Wills, and Reisinger were

16  programmers who, at the time in question, were writing the source code for Cinebase's next

17  generation of software. Topper was Cinebase's Director of New Business Development.

18      In October and November 1997, all the individual defendants except Topper left Cinebase,

19  taking with them their laptops containing trade secrets and confidential information.[1]  They formed a

20  new company, Media Guaranty Trust, Inc. ("MGT"). Not surprisingly, MGT develops and markets

21  digital media management software. Not surprisingly, this software is based on the software

22  developed by Cinebase. Not surprisingly, Defendants are using Cinebase's confidential marketing

23  information to sell their products. Not surprisingly, Defendants are targeting the same markets

24  which Cinebase is targeting, including some of the same customers that Cinebase had paid

25  defendants Krol and Topper to develop.

26

27  _____

28  [1]     Topper remained behind until December 1997, secretly communicating with Dr. Brown and Krol (who had been Topper's boss at Cinebase) and providing them via e-mail with Cinebase's confidential marketing information.

CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL & SHAPIRO, LLP
LAW OFFICES
2121 AVENUE OF THE STARS
EIGHTEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

1       Theft of intellectual property is, unfortunately, all too common, especially in the software

2   industry. This particular instance stands out because of the wholesale misappropriation and the

3   devious long-range planning that preceded it. During the spring and summer of 1997, for example,

4   Cinebase was negotiating an employment agreement with Dr. Brown, as well as with other key

5   employees whose contracts were to follow Dr. Brown's form. Dr. Brown stalled these negotiations

6   with respect to his own contract (and thus with respect to others) in order to give the plans to leave a

7   chance to mature. Despite his representations to the contrary, he never intended to sign any

8   employment agreement with Cinebase. Dr. Brown also falsely told Cinebase that he was recruiting

9   technical personnel to staff Cinebase's upcoming projects, when he was actually doing no such thing.

10   Instead, he was planning his own company's projects. Dr. Brown and Krol even made a presentation

11   to some venture capitalists in August 1997, two months before their departure and while they were

12   still on the Cinebase payroll, in an effort to raise money for their new enterprise. Thus, Dr. Brown

13   and Krol were Cinebase officers while they were perfecting this scheme to steal Cinebase's

14   intellectual property and key employees.

15       The Complaint spells out the whole sordid story in great detail.[2] Defendants are fully

16   informed of the claims against them. Their jurisdictional arguments are likewise meritless. Their

17   Motion to Dismiss lacks foundation and must be denied.

18

19

20

21

22

23

24

25

26

27

28         [2]    Subsequent discovery has disclosed further facts demonstrating the breadth and depth of Defendants' conspiracy, and has also confirmed, through Defendants' own testimony, many of the facts alleged in the Complaint.

LAW OFFICES

CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL & SHAPIRO, LLP
3131 AVENUE OF THE STARS
TWENTY-THIRD FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

LAW OFFICES

CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL & SHAPIRO, LLP
2121 AVENUE OF THE STARS
EIGHTEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

III

ARGUMENT

A.    The Complaint More Than Meets Federal Pleading Standards.[3]

1. Rule 12(b)(6) -- "Failure To State A Claim"

Defendants have moved to dismiss six claims under Rule 12(b)(6), "failure to state a claim upon which relief can be granted." Such a motion must be denied unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984). See also Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief").

When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept as true all well-pleaded material allegations in the complaint, as well as reasonable inferences to be drawn from them. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686 (1974); NL Industries v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).

Reviewing the complaint in the light most favorable to the plaintiff, the court therefore should not dismiss a complaint for failure to state a claim unless it appears beyond doubt that the plaintiff cannot produce facts to support a claim which would entitle plaintiff to relief. Parks School of Business, Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995); De La Cruz v. Tormey, 582 F.2d 45, 48 (9th Cir. 1978), cert. denied, Tormey v. De La Cruz, 441 U.S. 965, 99 S. Ct. 2416 (1979). As set forth below, Defendants have failed to meet their burden under Rule 12(b)(6).

---

[3]    The Federal Rules of Civil Procedure apply to the copyright claim. Rule 81(a)(1) provides that the rules do not apply to proceedings under Title 17 "except insofar as they may be made applicable thereto by rules promulgated by the Supreme Court of the United States." The Supreme Court, in turn, has promulgated Rules of Practice, the first of which provides that the Federal Rules of Civil Procedure apply to copyright proceedings to the extent that they are not inconsistent with the Rules of Practice. The second Rule of Practice has been repealed; Rules 3 through 13 deal with seizure of infringing materials and are not relevant to this Motion. See 4 Wright & Miller, Federal Practice and Procedure § 1018 (2d ed. 1987) and 1998 Supp.

Plaintiff's Opposition to Defendants' Motion to Dismiss and to Strike          Case No.: C-98-1100 FMS

1    2. Rule 8(a) -- "Short and Plain Statement"

2    The standard for pleading everything but fraud and mistake is set out in Rule 8(a) of the

3    Federal Rules of Civil Procedure, as follows:

4    > A pleading which sets forth a claim for relief . . . shall contain (1) a short and plain

5    > statement of the grounds upon which the court's jurisdiction depends . . ., (2) a short

6    > and plain statement of the claim showing that the pleader is entitled to relief, and

7    > (3) a demand for judgment for the relief the pleader seeks.  Relief in the alternative or

8    > of several different types may be demanded.  (Emphasis added.)

9    The "notice pleading" standard is far too well known to require extended discussion.  Over

10   forty years ago, the Supreme Court explained it as follows:

11   > [T]he Federal Rules of Civil Procedure do not require a claimant to set out in detail

12   > the facts upon which he bases his claim.  To the contrary, all the Rules require is a

13   > "short and plain statement of the claim" that will give the defendant fair notice of

14   > what the plaintiff's claim is and the grounds upon which it rests.  The illustrative

15   > forms appended to the Rules plainly demonstrate this.

16   Conley v. Gibson, 355 U.S. 41, 47 (1957).

17   The standard has not changed since Conley v. Gibson.  As the Ninth Circuit explained last

18   year,

19   > The federal rules require only a "short and plain statement of the claim showing that

20   > the pleader is entitled to relief." [Citation omitted.]  The Rule 8 standard contains a

21   > "powerful presumption against rejecting pleadings for failure to state claim."

22   > [Citations omitted.]

23   Gilligan v. Jamco Development Corp., 108 F.3d 246, 248-49 (9th Cir. 1997).  "[T]hese liberal

24   pleading rules only require that the averments of the complaint sufficiently establish a basis for

25   judgment against the defendant."  Yamaguchi. v. United States Department of the Air Force, 109

26   F.3d 1475, 1481 (9th Cir. 1997).  Cf. Self-Directed Placement Corp. v. Control Data Corp., 908 F.2d

27   462, 466 (9th Cir. 1990) (claim for unfair competition inferrable from allegations; sufficient notice

28   under Rule 8).  Rule 8 applies to copyright actions.  Mid America Title Co. v. Kirk, 991 F.2d 417,

LAW OFFICES
CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL & SHAPIRO, LLP
2121 AVENUE OF THE STARS
EIGHTEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

1   421 (7th Cir. 1993, <u>cert. denied</u>, 510 U.S. 932 (1993); <u>Friedman, Eisenstein, Raemer & Schwartz v.</u>

2   <u>Afterman</u>, 599 F. Supp. 902, 903 (E.D. Ill. 1984).

3        When measured against this standard, the Complaint in this case more than fulfills the

4   requirements that Defendants be put "on notice" of Cinebase's claims and that the Complaint

5   establish a basis for judgment against them.  Defendants' contention that the Complaint does not

6   comply with Rule 8 is simply untenable.

7        3.  <u>Rule 12(e) -- "More Definite Statement"</u>

8        Although Defendants have moved to dismiss under Rule 12(b)(6) for failure to state a claim,

9   their real criticism of the Complaint is that the allegations do not contain enough factual detail.  For

10  example, they complain that the dates, times and locations of each act of infringement are not spelled

11  out in the copyright infringement claim, and that the breach of confidence claim fails to specify the

12  materials transmitted to Defendants in confidence.  Memorandum of Points and Authorities, pp. 7,

13  16.

14       Rule 12(e) provides in pertinent part:

15       If a pleading to which a responsive pleading is permitted is so vague or ambiguous

16       that a party cannot reasonably be required to frame a responsive pleading, the party

17       may move for a more definite statement before interposing a responsive pleading.

18       As this court has held, a motion for a more definite statement under Rule 12(e) should not be

19  granted unless a defendant positively "cannot frame a responsive pleading."  <u>Boxall v. Sequoia</u>

20  <u>Union High School District</u>, 464 F. Supp. 1104, 1114 (N.D. Cal. 1979).  As the court observed in

21  <u>Boxall</u>:

22       While defendant may not have been able to ascertain all the details of plaintiffs' case

23       from the complaint, that is not the function of pleadings in the federal courts.

24  <u>Id.</u>

25       The court in <u>Famolare, Inc., v. Edison Brothers Stores, Inc.</u>, 525 F. Supp. 940 (E.D. Cal.

26  1981) agreed, stating as follows in denying a Rule 12(e) motion for a more definite statement.

27       [W]here the information sought by the moving party is available and/or properly

28       sought through discovery the motion should be denied.  [Citations omitted.]

CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL & SHAPIRO, LLP
LAW OFFICES
3121 AVENUE OF THE STARS
EIGHTEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

1    In the present case the [cross-defendant] essentially requests that the [cross-

2    complainant] reveal the exact dates of its alleged misconduct.  Such specificity in

3    pleading is not required by Federal Rules of Civil Procedure 8(e).  This is exactly the

4    sort of information which should be obtained through the discovery process.

5    525 F. Supp. at 949.

6    Cinebase's Complaint is neither vague nor ambiguous.  If Defendants want more details, they

7    can propound the appropriate discovery.  In fact, discovery in this case is proceeding with respect to

8    the pending preliminary injunction motion, and Defendants have shown not the slightest confusion

9    about what the issues are.  They are not entitled to a more definite statement.

10   B.    Cinebase Has Stated A Claim For Copyright Infringement.

11   A copyright infringement claim has two basic elements:    (1) ownership of the copyright

12   (including proper registration), and (2) infringement by the defendant.  Smith v. Jackson, 84 F.3d

13   1213, 1218 (9th Cir. 1996); Effects Associates, Inc. v Cohen, 817 F.2d 72, 73 (9th Cir. 1987);

14   Kenbrooke Fabrics, Inc. v. Holland Fabrics, Inc., 602 F. Supp. 151, 153 (S.D.N.Y. 1984); Friedman,

15   Eisenstein, Raemer & Schwartz v. Afterman, 599 F. Supp. 902, 903 (N.D. Ill. 1984).  The ownership

16   element is routinely pleaded by attaching the copyright registration form to the pleading as an exhibit

17   and incorporating it by reference into the complaint, as has been done here.  The infringement

18   element is met by allegations sufficient to put the defendant on notice of the allegedly infringing

19   acts.[4]  Conley v. Gibson, 355 U.S. 41, 47 (1975); Tralins v. Kaiser Aluminum & Chemical Corp.,

20   160 F. Supp.  511, 512 (D. Md. 1958) (copyright infringement).

21   Here, Cinebase has alleged that "Defendants have obtained one or more copies of Cinebase's

22   Copyrighted Works [a term defined in Paragraph 52 as the software programs for which Cinebase

23   has registered copyrights] during the time they were employed at Cinebase."  Complaint,   ¶ 55.

24   "Defendants have infringed Cinebase's rights in and to the Copyrighted Works and . . . Defendants'

25   [corrected from "Cinebase's" by Notice of Errata] product is identical or substantially similar, in

26   _____

27   [4]    In the form complaint (Form 17) for copyright infringement appended to the Federal
     Rules, the sole allegation going to this element of the claim is: "After March 10, 1936, defendant

28   infringed said copyright by publishing and placing upon the market a book entitled _____,
     which was copied largely from plaintiff's copyrighted book, entitled _____."

LAW OFFICES
CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL & SHAPIRO, LLP
2121 AVENUE OF THE STARS
EIGHTEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

55566.2

1   whole or in part, to Cinebase's Copyrighted Works."  Complaint, ¶ 56.  "By means of the actions

2   complained of herein, Defendants have infringed and will continue to infringe Cinebase's copyrights

3   in the Copyrighted Works by using Cinebase's Copyrighted Works to produce, distribute, and/or

4   publish digital media management products, substantial portions of which were copied and/or

5   derived from Cinebase's copyrighted digital media management computer program."

6   Complaint, ¶ 57.

7           Although Defendants criticize these allegations as "boilerplate," these allegations not only

8   track the allegations of the model complaint for copyright infringement appended to the Federal

9   Rules, these allegations actually include substantially more detail than those in Form 17.  According

10  to Rule 84, the form complaints are "sufficient under the rules and are intended to indicate the

11  simplicity and brevity of statement which the rules contemplate."  Cinebase's Complaint therefore is

12  more than sufficient to state a claim for copyright infringement.

13          Notwithstanding the foregoing, Defendants argue, in essence, that pleading copyright

14  infringement should be governed by the specificity requirements of Rule 9(b), instead of by the

15  general "notice pleading" standard of Rule 8.  This argument is contrary to the provisions of the

16  Federal Rules and has been explicitly rejected in Mid America Title Co. v. Kirk, 991 F.2d 417, 421

17  (7th Cir. 1993).

18          To support their argument, Defendants rely on three district court cases from other circuits,

19  Gee v CBS, Inc., 471 F. Supp. 600 (E.D. Pa. 1979),[5] Kelly v. L.L. Cool J., 145 F.R.D. 32 (S.D.N.Y.

20  1992), and Paragon Services v. Hicks, 843 F. Supp. 1077 (E.D. Va. 1994).  With respect to Paragon

21  Services, Wright and Miller observe that a heightened pleading requirement such as the one it

22  imposes "appears to be in clear violation of the mandate of Rule 8" (5 Wright & Miller, Federal

23

24

25          [5]     While approving the Form 17 complaint for copyright infringement appended to the
26  Federal Rules as a "proper complaint for infringement of copyright. . . ." 471 F. Supp. at 644, the
    court in Gee appears to have inadvertently created a heightened pleading standard for copyright
27  infringement claims, which standard has not been adopted in this Circuit and has been criticized in
    Wright and Miller. Form 17 contains no specific facts detailing "by what acts and during what time
28  defendant has infringed the copyright." Id. at 634.  Thus, the Gee opinion is self-contradictory and,
    insofar as it stands for a heightened pleading standard, mistaken.

LAW OFFICES
CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL & SHAPIRO, LLP
2121 AVENUE OF THE STARS
EIGHTEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

1  Practice and Procedure § 1237 (2d ed. 1998 Supp.)), especially in light of the Supreme Court's ruling

2  in Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163 (1993):

3          We think that it is impossible to square the "heightened pleading standard" applied

4          by the Fifth Circuit in this case with the liberal system of "notice pleading" set up by

5          the Federal Rules.  Rule 8(a)(2) requires that a complaint include only "a short and

6          plain statement of the claim showing that the pleader is entitled to relief."  In Conley

7          v. Gibson, . . . we said in effect that the Rule meant what it said . . .

8  507 U.S. at 168.

9          This Court recently dealt with the few cases that appear to require a greater specificity in

10  copyright infringement pleading than called for by Rule 8.  In QTL Corp. v. Kaplan, 46 U.S.P.Q.2d

11  (BNA) ¶ 1794 (N.D. Cal. February 2, 1998), the defendant moved for a more definite statement,

12  relied on one of the same cases Defendants cite, Kelly, supra, and argued that the claim for

13  infringement was:

14          fatally indefinite because it fails to specify the manner in which the copyrighted

15          works were infringed and the period during which said infringement occurred.

16  Denying the motion, the court stated that the pleading "specified the copyrighted materials at issue

17  and stated that QTL infringed its copyrights by publishing and distributing its product catalog." Id.

18          Here, Cinebase has alleged the elements of copyright infringement, i.e., ownership of the

19  copyrights, registration, and infringement, thereby stating a claim for copyright infringement.

20  C.      Cinebase Has Stated A Claim For Reverse Passing Off.

21          Reverse passing off occurs when, among other things, a person sells or offers for sale

22  another's product that has been slightly modified and then given another label.  Rojo, Inc., v.

23  Marquis, 902 F.2d 356 (5th Cir. 1990).  Another form of passing off consists of misbranding a

24  product so that its source is only partially identified.  Lamothe v. Atlantic Recording Group, 847

25  F.2d 1403, 1407 (9th Cir. 1988).  Such conduct violates the Lanham Act, which prohibits any false

26  designation of the origin of goods "which is likely to cause confusion, or to cause mistake, or to

27  deceive . . . as to [their] origin."  15 U.S.C. § 1125(a).  See also Summit Machine Tool Mfg. Corp. v.

28  Victor CNC Systems, Inc., 7 F.3d 1434, 1437 (9th Cir. 1993).

LAW OFFICES
CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL & SHAPIRO, LLP
3100 AVENUE OF THE STARS
SEVENTEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

1    Cinebase has alleged that Defendants have removed all indications and designations of

2    Cinebase as the source of MGT's software product, which is in fact Cinebase's product, which

3    Defendants intend to market as MGT's product.  Complaint, ¶ 63.  Cinebase has asked for both

4    damages and injunctive relief in connection with this conduct.

5    Defendants contend that this claim should be dismissed under Rule 12(b)(6) because

6    Cinebase does not allege which product is the subject of the reverse passing off.  This argument is

7    misplaced for a number of reasons.  First, under the "notice pleading" standard referred to above,

8    such specificity is not required.  Second, the argument not only is disingenuous, as each of

9    Defendants is a former Cinebase employee who is familiar with Cinebase's products and knows

10   exactly what the product is, the argument is belied by Defendants' opposition to Cinebase's pending

11   preliminary injunction motion in which Defendants have made every imaginable effort to distinguish

12   MGT's product from Cinebase's -- efforts which would have been impossible if Defendants were not

13   on notice of what Cinebase product is alleged to have been misappropriated.  Finally, Defendants'

14   argument that they "are left to guess as to the products which [sic] Cinebase is referring"

15   (Memorandum of Points and Authorities, p. 6, l. 16) is noteworthy only insofar as it implies that

16   Defendants have removed the designation of origin from Cinebase's product, but they want to see

17   whether Cinebase presently knows exactly what they have done.

18   As with the copyright claim, Defendants' true criticism is that they want the Complaint to

19   contain more factual information.  This is properly a Rule 12(e) motion for more definite statement,

20   not a motion to dismiss for failure to state a claim.   Even as a Rule 12(e) motion, however,

21   Defendants' argument would fail.  Cinebase has alleged, including in paragraphs 14 through 21 of the

22   Complaint, information sufficient to enable Defendants -- former Cinebase officers and employees --

23   to discern the products that are at issue in this lawsuit.  Their Motion with respect to the Reverse

24   Passing Off claim must be denied.

25   D.    Cinebase Has Stated Claims For Copyright Infringement And Passing Off Against Topper.

26   Defendants have asked the Court to dismiss Topper from the First Cause of Action for

27   copyright infringement because Cinebase has not alleged that Topper copied any Cinebase products.

28   Defendants have, however, overlooked the principle of contributory infringement.  Cinebase need

LAW OFFICES
CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL & SHAPIRO, LLP
2121 AVENUE OF THE STARS
EIGHTEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

1   not allege that Topper copied anything.  She is liable as "'one who, with knowledge of the infringing

2   activity, induces, causes, or materially contributes to the infringing conduct of another.'"  <u>Casella v.</u>

3   <u>Morris</u>, 820 F.2d 362, 365 (11th Cir. 1987).[6/]  <u>See also</u> <u>Gershwin Publishing Corp. v. Morris</u>, 443

4   F.2d 1159, 1162 (2d Cir. 1971); <u>Celestial Arts, Inc., v. Neylor Color-Lith Co.</u>, 339 F. Supp. 1018

5   (E.D. Wash. 1971).  The standard of knowledge for such liability is an objective one:  "Know or

6   have reason to know."  <u>Casella v. Morris</u>, <u>supra</u>.  Here, sufficient facts have been alleged to impute

7   to Topper knowledge of and contribution to Defendants' copyright infringement activities.   For

8   example, Cinebase alleges that Topper, along with the other Defendants, are produc[ing],

9   distribut[ing], and/or publish[ing] digital media management products, substantial portions of which

10  were copied and/or derived from Cinebase's copyrighted digital media management computer

11  program."  Complaint, ¶ 57.  Thus, Topper is alleged to be directly involved in the infringing acts

12  that violate Cinebase's copyright.

13          Defendants likewise seek to have Topper excused from the trademark claim.  The same

14  principle applies to both trademark infringement and copyright infringement.  <u>Fonovisa, Inc., v.</u>

15  <u>Cherry Auction, Inc.</u>, 76 F.3d 259, 264 (9th Cir. 1996).  Thus, it is sufficient that she assisted in the

16  infringing activity here.  Cinebase has alleged that Topper, along with the other Defendants, intends

17  to market the software from which Cinebase's identification has been removed.  Complaint, ¶ 63.

18  Topper thus is properly included with the other defendants in the Second Claim.

19  E.      <u>Defendant's Motion With Respect To The Third And Fourth Claims Is Based On</u>

20          <u>Typographical Errors.</u>

21          1.      <u>Third Claim - Idea Misappropriation</u>

22          Defendants have asked the Court to dismiss the Third Claim for Idea Misappropriation and

23  Breach of Confidence, a claim based on the disclosure of confidential information to them during

24  their Cinebase employment.  As Defendants admit, this claim is stated when it is alleged that an idea

25  is offered to another in confidence and voluntarily received by the other in confidence with the

26

27

28

---

[6]          Cinebase has alleged contributory infringement.  Complaint, ¶ 58.

CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL & SHAPIRO, LLP
LAW OFFICES
2121 AVENUE OF THE STARS
EIGHTEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

LAW OFFICES
CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL & SHAPIRO, LLP
2121 AVENUE OF THE STARS
EIGHTEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

1  understanding that it is not to be disclosed without consent.  Thompson v. California Brewing Co.,

2  150 Cal. App. 2d 469, 474-76 (1957).

3       Defendants have moved to dismiss this claim because the ideas "are not novel and vague."

4  This argument is based on an obvious typographical error in Paragraph 70.[7]  Cinebase has filed a

5  Notice of Errata correcting the typographical mistake, obviating this purported basis for Defendants'

6  challenge to the third and fourth claims.

7       Defendants also argue that the allegedly misappropriated ideas are not confidential.  In

8  particular, Defendants argue that Cinebase has alleged that "Cinebase defined 'Copyrighted Works'

9  as its registrations for Cinebase 2.0 header file and program source code."  Since the registrations are

10  public documents, Defendants reason, the information also is public.  Memorandum of Points and

11  Authorities, p. 16, ll. 9-12.  Such a disingenuous misreading of the Complaint hardly merits a

12  response.   The text of the Complaint itself contradicts Defendant's argument; Cinebase has alleged

13  that the "Cinebase 2.0 computer program for management of high-resolution digital media," not the

14  registrations, constitutes the "Copyrighted Works."  Complaint, ¶ 52.

15       In any event, by definition the Protectable Ideas are not co-extensive with the Copyrighted

16  Works, see Complaint at ¶ 70, and thus disclosure of a portion of the source code would not impair

17  the confidentiality of the Protectable Ideas that are the subject of this claim.

18      2.  Fourth Claim -- Breach of Implied-In-Fact Contract

19       To state claim for breach of contract, a plaintiff must allege a contract, plaintiff's

20  performance, defendant's breach, and plaintiff's damage.  4 B. Witkin, California Procedure § 476

21  (4th ed. 1997).  The California Civil Code defines an "implied contract" as "one, the existence and

22  terms of which are manifested by conduct."  Cal. Civ. Code § 1621.  See also 1 B. Witkin, Summary

23  of California Law § 11 (9th ed. 1987) (implied contract based on "apparent intention of the parties").

24       Cinebase alleges an implied agreement with each of Defendants that Cinebase would disclose

25  certain ideas to them provided that they would not use the ideas for their personal gain.  Cinebase

26

27  _____

28      [7]      In Paragraph 70, line 11 should read "Cinebase's Intellectual Property . . . consists of ideas which are novel and unique and are within the subject matter of copyright under 17 U.S.C. § 102.

disclosed the ideas, but Defendants breached the agreement by using the ideas for personal gain.

Complaint, ¶¶ 76-78. Cinebase further alleges that it has been damaged by the breach. Complaint, ¶

81. Thus, Cinebase has alleged all the elements of breach of an implied contract.

In addition to requesting a dismissal based on the same typographical error discussed above, Defendants also complain that the Complaint does not allege the "individual contracts entered into by each party." Memorandum at 17:15-16. In particular, Defendants contend that Cinebase is required to allege each contract with each defendant individually. According to Defendants, "They are left guessing where and when they entered into the contract." Memorandum at 17:16-17. Cinebase is not required to allege where and when an agreement was formed to state a claim for breach of contract. K. Bell & Associates , Inc., v. Lloyd's Underwriters, 827 F. Supp. 985, 988 (S.D.N.Y. 1993) (complaint need only allege elements of cause of action); AAMCO Automatic Transmission, Inc., v. Tayloe, 368 F. Supp. 1283 (E.D. Pa. 1973) (pleading need allege only contract, performance, breach, and damages). Cinebase also is not required to allege each contract individually. See, e.g.; Zeigan v. Blue Cross and Blue Shield of Greater New York, 607 F. Supp. 1434, 1436-37 (S.D.N.Y. 1985) (two defendants sued collectively for breach of contact); Doe v. City of Chicago, 883 F. Supp. 1126, 1133 (N.D. Ill. 1994 (asserting claims in separate counts  not required under Rule 8).  (Defendants' challenge to this claim, like Defendants' Motion as a whole, simply seeks to dispose of this action on the grounds that the Complaint does not include evidentiary material that need not be pleaded).

F.     Cinebase Has Stated A Claim For Misappropriation Of Trade Secrets.

Under California law, a trade secret is misappropriated when it is disclosed or used without consent by one who knew at the time that his knowledge of the secret was "acquired under circumstances giving rise to a duty to maintain its secrecy." A trade secret is also misappropriated when it is disclosed or used by one knowing that his knowledge of the secret was "derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy. . . ." Cal. Civ. Code § 3426.1(b). A "trade secret" is  information that derives independent value from not being generally known and that is subject to reasonable efforts to keep it secret. Cal. Civ. Code § 3426.1(d).

55566.2

LAW OFFICES
CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL & SHAPIRO, LLP
2121 AVENUE OF THE STARS
EIGHTEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

1    Cinebase unquestionably has alleged all of the elements of a claim for misappropriation of

2    trade secrets.  Cinebase has alleged what the secret information is (Complaint, ¶ 83), why it derives

3    economic value from not being generally known (Complaint, ¶ 85), how Cinebase derives economic

4    value from this information, (Complaint, ¶ 86), what measures Cinebase took to keep the

5    information confidential (Complaint, ¶ 87), and the wrongful way in which Defendants obtained and

6    are using the information (Complaint, ¶ 91).  Defendants make no argument to the contrary.

7    Defendants instead ask the Court to dismiss this claim on the grounds that the trade secrets

8    are not identified with sufficient particularity.  This is not a basis for <u>dismissing</u> the claim, and

9    Defendants have cited no authority on which to base such a request.  (The two cases on which

10   Defendants rely are not pleading cases.)  Moreover, it is not even a basis for a motion for a more

11   definite statement under Rule 12(e); Cinebase is not required to plead such specific information in

12   the Complaint.  Instead, it is required to do what it has done:  prepare and serve a four-page list of all

13   the trade secret information that is at issue in this lawsuit.[8/]  Thus it is not only incorrect, it is

14   disingenuous for Defendants to argue to this Court that the trade secrets have not been properly

15   identified.

16   Likewise, arguing that the claim must be dismissed because Defendants cannot distinguish

17   what is secret from what is publicly known (Memorandum of Points and Authorities, p. 19, ll. 6-7)

18   flies in the face of both Rule 8 and common sense.  Cinebase is not required to plead its trade

19   secrets in such detail in a complaint.  And who could expect a company to spell out its trade secret

20   information in a <u>public document</u>?  Yet that is precisely what Defendants are advocating in an

21   transparent effort to avoid defending their claim on the merits.  Whether information is secret or

22   publicly known is decided by the trier of fact after an evidentiary hearing, not by the Court at the

23   pleading stage.

24

25

26    [8]    This list, Identification of Trade Secret Information Pursuant to Cal. Civ. Proc. Code
¶ 2019(d), was served on Defendants' counsel on April 27, 1998, and Defendants have been
27   conducting discovery accordingly since that time.
        It also merits repeating that Defendants are not writing on a blank slate.  They are
28   former Cinebase officers and employees who have opposed a motion for a preliminary injunction,
following discovery, before interposing this motion to dismiss.

LAW OFFICES
CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL & SHAPIRO, LLP
3121 AVENUE OF THE STARS
EIGHTEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

55566.2

1     Accordingly, Defendants' motion to dismiss Cinebase's trade secret claim is misplaced, and

2  should be denied.

3  G.     Defendants' Motion To Strike Must Be Denied.

4     Defendants also have moved to strike certain paragraphs of Cinebase's fraud claim (Eighth

5  Claim for Relief) under Rule 12(f), which provides in pertinent part:

6         Upon motion . . . the court may order stricken from any pleading any insufficient

7         defense or any redundant, immaterial, or scandalous matter.

8     However, Defendants have not even purported to identify any "redundant, immaterial or

9  scandalous matter" in this claim, and thus their Motion must be denied.

10     If, as it appears, Defendants' true argument is that the fraud is not pleaded with the

11  particularity required by Rule 9(b) (a contention properly brought before the Court as motion to

12  dismiss, not a motion to strike, see e.g., Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1439 (9th

13  Cir. 1987)), the request must still be denied.

14     Rule 9(b) provides:

15         In all averments of fraud or mistake, the circumstances constituting fraud or mistake

16         shall be stated with particularity.  Malice, intent, knowledge and other condition of

17         mind may be averred generally.

18  Rule 9(b) is not read in isolation; it is read in harmony with the "short and plain statement of the

19  claim" requirement of Rule 8(a).   IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1057 (2d

20  Cir. 1993), cert. denied, 513 U.S. 822 (1994).

21     In the Complaint, Cinebase alleges two kinds of fraud:  active misrepresentation and

22  fraudulent concealment.  The misrepresentations occurred when Dr. Brown affirmatively stated in

23  Executive Committee meetings held in August and September 1997 that he was "employing his best

24  efforts to recruit technical people to meet Cinebase's needs" (Complaint, ¶ 112), when actually he

25  was doing nothing of the kind.  He was instead planning to leave Cinebase to start his own company;

26  of course, he was not going to recruit staff for a soon-to-be competitor.  Moreover, Dr. Brown also

27  falsely represented over the course of the months between March and October 1997 that he would

28

55566.2

LAW OFFICES
CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL & SHAPIRO, LLP
2121 AVENUE OF THE STARS
EIGHTEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

1    enter into an employment agreement with Cinebase, when actually he had no such intention.

2    Complaint, ¶¶ 112-15.

3        With respect to fraudulent concealment, Dr. Brown concealed his entire scheme to set up a

4    competing company, using Cinebase's products and people.  As a Cinebase officer with the fiduciary

5    duty of full disclosure, <u>Broadway Savings & Loan Ass'n v. Howard</u>, 133 Cal. App. 2d 382, 393

6    (1955), Dr. Brown thereby committed fraud as defined in Civil Code § 1710.3: "[t]he suppression of

7    a fact, by one who is bound to disclose it. . . ."  <u>Sequoia Vacuum Systems v. Stransky</u>, 229 Cal. App.

8    2d 281, 287 (1964) (corporate officer and director bound by fiduciary duty to disclose plans to

9    compete with corporation).

10       Cinebase therefore has alleged the elements of fraud with the specificity required under Rule

11   9(b).  It has pleaded the dates, the substance, and the recipients of the alleged misrepresentations, as

12   well as the period of time spanned by the non-disclosure as best it can.  Dr. Brown cannot credibly

13   claim that he lacks notice of the fraudulent conduct of which he is accused.  Cinebase is required to

14   do no more.  <u>Warshaw v. Xoma Corporation</u>, 74 F.3d 955, 960 (9th Cir. 1996); <u>Center Cadillac v.</u>

15   <u>Bank Leumi Trust Co.</u>, 808 F. Supp. 213 (S.D.N.Y. 1992).

16   H.    <u>Cinebase Has Stated A Claim For Interference With Prospective Economic Advantage.</u>

17       The elements of a claim for interference with prospective economic advantage under

18   California law are:

19       (1) an economic relationship between the plaintiff and some third person containing

20       the probability of future economic benefit to the plaintiff; (2) knowledge by the

21       defendant of the existence of the relationship; (3) intentional acts on the part of the

22       defendant designed to disrupt the relationship; (4) actual disruption of the

23       relationship; and (5) damages to the plaintiff proximately caused by the acts of the

24       defendant.

25   <u>Blank v. Kirwin</u>, 39 Cal. 3d 311, 330 (1985).

26       In addition, the California Supreme Court has ruled that the conduct designed to disrupt the

27   relationship must be wrongful by some standard other than by the interference itself.  <u>Della Penna v.</u>

28   <u>Toyota Motor Sales, U.S.A.</u>, 11 Cal. 4th 376, 392-93 (1995).  Even under California law it is not

1   necessary to plead the name of third party; it is sufficient if the party is identified in some manner.

2   Ramona Manor Convalescent Hospital v. Care Enterprises, 177 Cal. App. 3d 1120, 1133 (1986).

3          In this case, Cinebase has alleged that it had relationships with customers and strategic

4   partners, including in particular Hambricht & Quist, with which certain named defendants knowingly

5   and intentionally interfered.  Complaint, ¶¶ 121, 123.  Cinebase has further alleged that these

6   defendants accomplished this interference through the independently wrongful conduct of

7   disparaging and defaming Cinebase. Id. at ¶ 121.  Cinebase therefore has alleged all the elements

8   needed to state a claim for intentional interference with prospective economic advantage.

9   I.      The Court Should Exercise Its Supplemental Jurisdiction Over The State-Law Claims.

10         Defendants make two jurisdictional arguments.  The first is based on the (unfounded)

11  assumption that the Court is going to dismiss the copyright and Lanham Act claims, which establish

12  federal jurisdiction in this case.  If those claims were dismissed, the Court could dismiss the state-

13  law claims though such a dismissal would not be mandatory. 28 U.S.C. § 1367(c).  Because

14  Defendants have not provided the Court with any basis for dismissing the federal-question claims,

15  there likewise is no basis for dismissing the state-law claims.

16         The other jurisdictional argument assumes that the federal claims are not dismissed.  Even if

17  the Court denies their Motion to Dismiss, Defendants argue, it should still refuse to exercise

18  supplemental jurisdiction under 28 U.S.C. § 1367(a), which provides as follows:

19             Except as provided in subsections (b) or (c) . . . in any civil action of which the

20             district courts have original jurisdiction, the district courts shall have supplemental

21             jurisdiction over all other claims that are so related to claims in the action within such

22             original jurisdiction that they form part of the same case or controversy under Article

23             III of the Unites States Constitution. . . .

24         This statute codifies the United States Supreme Court's holding in United Mine Workers of

25  America v. Gibbs, 383 U.S. 715 (1966), in which the Court explained the basis for pendent

26  jurisdiction,

27             [I]f, considered without regard to their federal or state character, a plaintiff's claims

28             are such that he would ordinarily be expected to try them all in one judicial

LAW OFFICES
CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL & SHAPIRO, LLP
2121 AVENUE OF THE STARS
EIGHTEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

1    proceeding, then, assuming substantiality of the federal issues, there is <u>power</u> in

2    federal courts to hear the whole.

3    383 U.S. at 725 (emphasis in original).

4    Congress subsequently codified in Section 1367(c) the circumstances under which a court

5    may decline to exercise supplemental jurisdiction over a state-law claim:

6    (1) the claim raises novel or complex issues of State law,

7    (2) the claim substantially predominates over the claim or claims over which the

8    district court has original jurisdiction,

9    (3) the district court has dismissed all claims over which it has original jurisdiction, or

10   (4) in exceptional circumstances, there are other compelling reasons for declining

11   jurisdiction.

12   The district courts <u>must</u> exercise supplemental jurisdiction <u>unless</u> at least one of the four

13   categories of Section 1367(c) applies to the facts of the case. <u>Executive Software North America,</u>

14   <u>Inc., v. United States District Court</u>, 24 F.3d 1545, 1556 (9th Cir. 1994) (refusal to exercise

15   supplemental jurisdiction for reasons other than statutory ones is abuse of discretion).  In

16   determining whether to exercise supplemental jurisdiction even when grounds exist to decline it

17   under Section 1367(c), the district courts must be guided by "values of economy, convenience and

18   fairness." <u>ACRI v. Varian Associates</u>, 114 F. 3d 999, 1001 (9th Cir. 1997).

19   In this case, all the claims arise from a single series of related events:  the departure from

20   Cinebase of Dr. Brown and his confederates with protected Cinebase Intellectual Property and the

21   Defendants' subsequent formation of a competing business using this Intellectual Property.  Neither

22   economy, convenience, nor fairness would be served by a refusal to hear all of these claims in one

23   lawsuit.

24   Defendants urge this Court to decline to exercise supplemental jurisdiction under two

25   provisions of Section 1367(c):  novel and complex issues of State law and predomination of state-

26   law claims over federal claims.  Neither position has merit.

27   No "novel and complex issue of State law" exists in this action.  Defendants' argument in this

28   regard focuses entirely on one claim, the trade-secret claim.  They contend that the theory of

CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL & SHAPIRO, LLP

LAW OFFICES
2121 AVENUE OF THE STARS
EIGHTEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

1   "inevitable use" (or "threatened misappropriation") of trade secrets constitutes a "novel and complex

2   issue" of state law, such that the Court should decline to hear <u>all</u> the related state-law claims.  On its

3   face, this argument is a <u>non</u> <u>sequitur</u>.

4          Moreover, there is nothing "novel and complex" about the inevitable use of trade secrets.  On

5   the contrary, it is a familiar theory in federal jurisprudence in this type of litigation, an aspect of the

6   "threatened misappropriation" that may be enjoined under trade secret statutes like California's.  <u>See</u>

7   <u>e.g.</u>, <u>PepsiCo, Inc., v. Redmond</u>, 54 F.3d 1262, 1270 (7th Cir. 1995); <u>FMC Corp. v. Varco Intern.,</u>

8   <u>Inc.</u>, 677 F.2d 500, 504 (5th Cir. 1982); <u>APAC Teleservices, Inc., v. McRae</u>, 985 F. Supp. 852, 862

9   (N.D. Iowa 1997) and cases cited therein; <u>C&F Packing Co., Inc., v. IBP, Inc.</u>, 1998 U.S. Dist.

10  LEXIS 3221 (N.D. Ill. March 17, 1998).  Although California courts apparently have not had

11  occasion to deal with inevitable use, at least in published opinions, this hardly makes the issue

12  "novel or complex" in the sense that these two terms are used in the California's enactment of the

13  Uniform Trade Secrets Act.  <u>See</u>, <u>e.g.</u>, <u>Hunter v. Estate of Baecher</u>, 905 F. Supp. 341, 343 (E.D. Pa.

14  1995) (lack of case law does not render statute based on uniform law "unintelligible to the Court");

15  <u>Rivkin v. County of Montgomery</u>, 838 F. Supp. 1009, 1015 (E.D. Pa. 1993) (construction of state

16  fee statute poses no "novel or complex" issue of state law); <u>Optical Alignment Systems & Inspection</u>

17  <u>Services, Inc., v. Alignment Services of North America, Inc.</u>, 1995 U.S. District LEXIS 11661 (D.

18  New Hampshire, August 8, 1995) (trade secret, breach of contract, interference, unfair competition

19  claims raise no novel or complex issues of state law).[9]   Moreover, since Cinebase also has alleged

20  that its trade secrets are being <u>actually</u> misappropriated (Complaint, ¶ 94), the claim does not stand

21  or fall on the theory of inevitable use.

22

23

---

24        [9]     The Practice Commentary appended to 28 U.S.C. § 1367 when it was enacted
      observes:

25            Category (1) on § 1367(c)'s exclusion list seems close to this <u>Pullman</u> [i.e., <u>Railroad</u>
              <u>Commission of Texas v. Pullman Co.</u>, 312 U.S. 496 (1941)] category of abstention.

26            It should be applied in a manner compatible with it.  The abstention doctrines are not
              lightly invoked by federal judges, and it is hoped that the setting forth of these

27            analogous if not overlapping or duplicative bases in § 1367(c) will not encourage any
              looser application.

28  Practice Commentary, The 1990 Adoption of § 1367 Codifying "Supplemental Jurisdiction,"
    Discretionary Rejection of Supplemental Jurisdiction.

LAW OFFICES
CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL & SHAPIRO, LLP
2121 AVENUE OF THE STARS
EIGHTEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

1    Likewise, the notion that a trade-secrets claim such as the one advanced in this action would

2    tax this Court's powers of legal analysis cannot be seriously entertained.  Trade-secret litigation is all

3    too familiar to federal courts, as the cases cited above indicate.  The same is true for all of the state-

4    law claims raised in this case.

5    As for the state-law claims predominating over the federal claims, such a conclusion simply

6    mischaracterizes this lawsuit.  The copyright infringement and Lanham Act claims are vitally

7    important to Cinebase; this is most emphatically not a case of the copyright tail wagging the state-

8    law dog.  See Borough of West Mifflin v. Lancaster, 45 F.3d 780, 789 (3d Cir. 1995) (jurisdiction

9    should be declined on "predominance" grounds "only when there is an important countervailing

10   interest to be served by relegating state claims to the state court").  Indeed, as to the copyrighted

11   materials, Cinebase can protect its property only in federal court, because this Court has exclusive

12   jurisdiction over such matters.  28 U.S.C. § 1338.[10/]  Defendants are in essence advocating two

13   lawsuits -- one in this Court and one in state court -- both dealing with the same facts and

14   transactions.  Although such a result may serve Defendants' strategic purposes, it indisputably would

15   be wasteful and duplicative for both the parties and the courts, the exact opposite of the values of

16   economy, convenience, and fairness that should govern this determination.  Accordingly, the Court

17   should continue to exercise supplemental jurisdiction over all the claims in this action.

18

19

20

21

22

23

24

25

26

27

28

---

[10]    The district courts also have original jurisdiction over any civil action for unfair
competition that is joined with a federal trademark or copyright claim.  28 U.S.C. § 1338(b).

LAW OFFICES
CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL & SHAPIRO, LLP
2121 AVENUE OF THE STARS
EIGHTEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000

55566.2

IV.

CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion.

Dated:  August 9, 1998

PATRICIA L. GLASER
MARK G. KRUM
KEVIN J. LEICHTER
CHRISTENSEN, MILLER, FINK, JACOBS,
 GLASER, WEIL & SHAPIRO, LLP

By: _Mark G. Krum_
MARK G. KRUM
Attorneys for Plaintiff

**PROOF OF SERVICE**

STATE OF CALIFORNIA
COUNTY OF LOS ANGELES

     I am employed in the County of Los Angeles, State of California; I am over the age of 18 and not a party to the within action; my business address is 2121 Avenue of the Stars, 18th Floor, Los Angeles, California 90067.

     On August 9, 1998, at the direction of a member of the Bar of this Court, I served the within:

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND TO STRIKE

on the interested parties in this action, by delivering a copy thereof in a sealed envelope addressed to each of said interested parties at the following address(es):

Douglas E. Lumish
Jared Bobrow
Weil, Gotshal & Manges, LLP
2882 Sand Hill Road, Suite 280
Menlo Park, CA 94025-7022

[X]    (BY MAIL)  I am readily familiar with the business practice for collection and processing of correspondence for mailing with the United States Postal Service.  This correspondence shall be deposited with the United States Postal Service this same day in the ordinary course of business at our Firm's office address in Los Angeles, California.  Service made pursuant to this paragraph, upon motion of a party served, shall be presumed invalid if the postal cancellation date of postage meter date on the envelope is more than one day after the date of deposit for mailing contained in this affidavit.

     (BY OVERNIGHT DELIVERY SERVICE) I served the foregoing document by Federal Express, an express service carrier which provides overnight delivery, as follows.  I placed true copies of the foregoing document in sealed envelopes or packages designated by the express service carrier, addressed to each interested party as set forth above, with fees for overnight delivery paid or provided for..

[ ]    (BY PERSONAL SERVICE)  I caused such envelope to be delivered by hand to the offices of the above named addressee(s).

[ ]    (BY FACSIMILE)  I caused such documents to be delivered via facsimile to the offices of the addressee(s) at the following facsimile number: .

     Executed this 9th day of  August, 1998, at Los Angeles, California.

     I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

                                    _____

                                 Jeni Tutwiler

CHRISTENSEN, MILLER, FINK, JACOBS, GLASER, WEIL & SHAPIRO, LLP
LAW OFFICES
2121 AVENUE OF THE STARS
EIGHTEENTH FLOOR
LOS ANGELES, CALIFORNIA 90067
(310) 553-3000