# EXHIBIT E

ORIGINAL

Jared Bobrow, State Bar No. 133712
Douglas E. Lumish, State Bar No. 183863
WEIL, GOTSHAL & MANGES LLP
Silicon Valley Office
2882 Sand Hill Road, Suite 280
Menlo Park, California 94025
Telephone: (650) 926-6200
Facsimile: (650) 854-3713

Attorneys for Defendants Media Guaranty Trust,
Inc., Allen L. Brown, Jr., Ph.D., Natalia X. Krol,
Joseph Rozenfeld, Thomas Wills, Carl Reisinger,
and Katherine Topper

**F I L E D**

AUG 17 1998

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CINEBASE SOFTWARE, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>MEDIA GUARANTY TRUST, INC., a Delaware corporation; ALLEN L. BROWN, JR., an individual; NATALIA X. KROL, an individual; JOSEPH ROZENFELD, an individual; THOMAS WILLS, an individual; CARL REISINGER, an individual; and KATHERINE TOPPER, an individual,<br><br>Defendants. | Case No. C-98-1100 FMS |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR
MOTION TO DISMISS AND TO STRIKE PLAINTIFF'S
FIRST AMENDED COMPLAINT**

**Date:  August 26, 1998
Time:  4:00 p.m.
Courtroom:  6**

**The Honorable Fern M. Smith**

1

# TABLE OF CONTENTS

2

Page

3   I.    INTRODUCTION...................................................................................1

4   II.    CINEBASE'S AMENDED COMPLAINT DOES NOT COMPLY WITH THE FEDERAL RULES OF CIVIL PROCEDURE ...................................................1

5

6          A.    Cinebase Fails To Adequately Plead Copyright Infringement ..................1

7              1.    **Cinebase Does Not Properly Identify The Copyrighted Works That Are Allegedly Infringed By Defendants**.......................................2

8              2.    **Cinebase Does Not Allege Sufficient Acts Of Copyright Infringement** ...............................................................................3

9

10              3.    **Form 17 Of The Federal Rules Supports A Dismissal Of Cinebase's Copyright Infringement  Claim**...............................4

11          B.    Cinebase's Reverse Passing Off Claim Should Be Dismissed ..................5

12          C.    Katherine Topper Should Be Dismissed From This Lawsuit For Lack Of Subject Matter Jurisdiction ..................................................................6

13

14              1.    **Cinebase Does Not State A Claim Against Ms. Topper For Copyright Infringement**.................................................................6

15              2.    **Cinebase Does Not State A Claim Against Ms. Topper For Reverse Passing Off**.................................................................8

16

17          D.    Cinebase's Breach Of Confidence Cause Of Action Should Be Dismissed.........8

18          E.    Cinebase's Breach Of Implied Contract Claim Should Be Dismissed ................10

19          F.    Cinebase's Trade Secret Misappropriation Claim Should Be Dismissed............11

20          G.    Cinebase's Intentional Interference Claim Should Be Dismissed With Prejudice........................................................................................11

21          H.    Cinebase Does Not Properly Plead Fraud........................................................12

22   III.    THE COURT SHOULD DECLINE SUPPLEMENTAL JURISDICTION AND DISMISS MS. TOPPER AND THIS ACTION IN ITS ENTIRETY ............................13

23

24   IV.    CONCLUSION ....................................................................................14

25

26

27

28

# TABLE OF AUTHORITIES

## FEDERAL CASES

Aliotti v. Dakin & Co., 831 F.2d 898 (9th Cir. 1987) ...................... 10

Carnegie Mellon University v. Cohill, 484 U.S. 343 (1988) ........................... 13

Conkle v. Jeong, 73 F.3d 909 (9th Cir. 1995) ................................. 12

Gee v. CBS, Inc., 471 F. Supp. 600 (E.D. Pa.), affd, 612 F.2d 572 (3d Cir. 1979) ....... 2, 4

Grid System Corp. v. Texas Instruments Inc., 771 F. Supp. 1033 (N.D. Cal. 1991) ......... 9

Kelly v. L.L. Cool J., 145 F.R.D. 32 (S.D.N.Y. 1992) ...................................... 2, 3

QTL Corp. v. Kaplan, 46 U.S.P.Q. 2d 1794 (N.D. Cal. 1998) ............................. 4

Religious Technology Center v. Netcom On-Line Committee Srvcs, Inc, 907 F. Supp. 1361 (N.D. Cal. 1995) ............................................................... 7

Smith v. Montoro, 648 F.2d 602 (9th Cir. 1981) .............................. 6

Summit Machine Tool Manufacturing v. Victor CNC Systems, 7 F.3d 1434 (9th Cir. 1993) ...................................................................... 6

United Mine Workers v. Gibbs, 383 U.S. 715 (1966) ..................................... 13

Zeigan v. Blue Cross & Blue Shield of Greater N.Y., 607 F. Supp. 1434 (S.D.N.Y. 1985) ............................................................................. 10

## STATE CASES

Diodes, Inc. v. Franzen, 260 Cal. App. 2d 244 (1968) .................................... 11

## FEDERAL STATUTES

Fed. R. Civ. P. 9(b) .............................................................. 2, 12

Fed. R. Civ. P. 8 ................................................................. 1

## STATE STATUTES

Cal. Civ. Code § 1710.3 .......................................... 12

I.    **INTRODUCTION**

Rather than rebut the deficiencies that Defendants identified in Cinebase's first amended complaint, Cinebase invites the Court to disregard the pleading requirements of the Federal Rules of Civil Procedure. Put simply, Cinebase asks the Court to ignore Rule 8, Rule 9(b), and the approved pleading forms based upon Cinebase's conclusion that Defendants committed unspecified tortious acts. From this conclusion, Cinebase argues that Defendants must be aware of the tortious acts, thereby excusing Cinebase from pleading what those tortious acts are. See Plaintiff's Opp. Mem. at 1 and 15 n.8.

Cinebase, of course, provides no authority for this proposition. Nor can it. The Federal Rules of Civil Procedure require that a party seeking relief in federal court provide the defendant with notice of the claims being made. The sufficiency of the notice depends upon the claim being asserted. Here, Cinebase has failed to rebut Defendants' showing that Cinebase's first amended complaint does not plead at least one essential element of its two federal claims (for copyright infringement and reverse passing off) and four of its purported state law claims (for idea misappropriation, breach of implied contract, trade secret misappropriation, and intentional interference with economic advantage). Moreover, Cinebase's allegations of fraud are deficient as a matter of law, because they fail to state the time, place, or recipient of the alleged misrepresentations.

Because Cinebase already has amended its complaint once in response to Defendants' motion to dismiss, Defendants request that the Court dismiss Cinebase's claims with prejudice. Once dismissed, Cinebase requests that the Court decline to exercise supplemental jurisdiction over any remaining state law claims.

II.    **CINEBASE'S AMENDED COMPLAINT DOES NOT COMPLY WITH THE FEDERAL RULES OF CIVIL PROCEDURE**

A.    **Cinebase Fails To Adequately Plead Copyright Infringement**

As set forth in Defendants' Motion, Cinebase's claim for copyright infringement

1  fails to comply with Rule 8[1] because Cinebase does not allege essential elements with the

2  specificity that Rule 8 requires.  See Gee v. CBS, Inc. 471 F. Supp. 600, 643 (E.D. Pa.), aff'd,

3  612 F.2d 572 (3d Cir. 1979); Kelly v. L.L. Cool J., 145 F.R.D. 32, 36 (S.D.N.Y. 1992).

4  Specifically, Cinebase fails to (1) identify the specific copyrighted works that are allegedly

5  infringed by Defendants, or (2) allege any specific acts by which Defendants have allegedly

6  infringed those copyrighted works.   Without these allegations, Cinebase's claim is fatally

7  deficient.

8          1.     **Cinebase Does Not Properly Identify The Copyrighted Works That
                Are Allegedly Infringed By Defendants**
9

10         It is undisputed that Cinebase can only claim copyright infringement for works

11  that are registered.  See Kelly, 145 F.R.D. at 37 n.6 ("Copyright registration is a jurisdictional

12  prerequisite to an infringement suit.").  Despite this limitation imposed on its claims, Cinebase

13  persists in advancing the insupportable position that it has copyrights in works plainly beyond

14  the scope of its copyright registration.

15         Cinebase attaches as exhibits to its amended complaint Certificate of

16  Registration numbers TXu 819-557 and TXu 819-558.  These certificates are clear on their face

17  that the only works for which Cinebase has registered copyrights are (1) the "header file source

18  code of Cinebase 2.0 computer program for management of high-resolution digital media" and

19  (2) the "program source code of Cinebase 2.0 computer program for management of high-

20  resolution digital media." See First Am. Cmplt., Exhs. 1 and 2.  As a result, Cinebase at most

21  can attempt to allege copyright infringement of the registrations for the "program source code"

22  and "header file source code" for Cinebase 2.0.

23         Disregarding these legal requirements, Cinebase's amended complaint continues

24  to allege copyright infringement of material on which there is no copyright registration,

25  [1] Cinebase falsely contends that Defendants' Motion asks the Court to apply the pleading
    standards of Fed. R. Civ. P. 9(b) to its copyright claim.  See Opp. Mem. at 9.  Defendants make
26  no such argument.  In fact, Defendants' Motion clearly explains that Gee and its progeny require
    a greater degree of specificity when pleading copyright infringement under Rule 8.   See
27  Memorandum at 5-6.  Cinebase's reliance on Mid America Title Co. v. Kirk 991 F.2d 417 (7th
    Cir. 1997) to support this argument is misplaced.   That case addressed the sufficiency of
28  pleading that a compilation work was allegedly infringed.  Id. at 421-22.  There is no allegation
    concerning any allegedly infringed compilations in this case.  Id.
    DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR
    MOTION TO DISMISS AND TO STRIKE
    SV1:\35858\01\R_2011.DOC                    2                      Case No. C-98-1100 FMS

1   including "the software architecture, . . . related design documents and object codes" for

2   Cinebase 2.0 software. See First Am. Cmplt. ¶52.[2]  Cinebase does so even though it does not

3   and cannot plead that it has obtained a copyright registration for the architecture, related design

4   documents, or object codes for the Cinebase 2.0 software.  For this reason, the Court should

5   dismiss with prejudice Cinebase's copyright infringement allegations that are based on

6   unregistered works. Kelly, 145 F.R.D. at 37.

7           2.      **Cinebase Does Not Allege Sufficient Acts Of Copyright Infringement**

8               In its amended complaint, Cinebase fails to identify any specific product that any

9   of the Defendants makes or sells which infringes Cinebase's registered copyrights.  Instead,

10  Cinebase alleges in wholly conclusory fashion that it is "informed and believes . . .that

11  Cinebase's product is identical or substantially similar . . . to Cinebase's Copyrighted Works."

12  First Am. Cmplt. ¶56 (emphasis added).  Besides accusing its own product of infringement in

13  its pleading,[3] Cinebase does not plead what "product" it accuses of infringement.  Similarly,

14  Cinebase's amended complaint alleges that Defendants "have infringed and will continue to

15  infringe Cinebase's copyrights . . . by using Cinebase's Copyrighted Works to produce,

16  distribute and/or publish digital media management products."  Id. ¶57 (emphasis added).

17  Although it accuses a plurality of "products" of infringement, Cinebase's first amended

18  complaint does not identify a single product that existed when Cinebase filed its complaint in

19  March 1998.   Clearly this vague reference to undefined "products" does not meet the

20

21

22

23  ─────────────────
    [2]  In an effort to salvage its copyright claim, Cinebase falsely asserts in its opposition
24  memorandum that the phrase "Copyrighted Works" in its first amended complaint is "defined in
    Paragraph 52 as the software programs for which Cinebase has registered copyrights."  See Opp.
25  Mem. at 8:21-23.  Cinebase's characterization of its first amended complaint is squarely at odds
    with the language of the pleading.

26
    [3]  Effectively admitting that its first amended complaint is deficient under Rule 8, Cinebase
27  purports to amend its complaint for a second time by filing a "Notice of Errata" which changes
    the allegations of paragraphs 56 and 70 of its first amended complaint.  Defendants are not aware
28  of any authority which allows a plaintiff to amend a first amended complaint by filing a "Notice
    of Errata" and Cinebase cites none.

1   requirement of specifying the allegedly infringing acts under Rule 8. <u>Gee</u>, 471 F. Supp. at 643.[4]

2          Fatally for Cinebase, it cannot possibly amend its complaint to identify any

3   product by which Defendants have actually infringed Cinebase's alleged copyrights. This fact

4   is undeniable, because – as Cinebase's own witnesses have admitted – Defendants presently

5   have no product at all. <u>See</u> Lumish Decl. Exh. A (Abrams Depo.) at 105:22-24; Exh. B (Brown

6   Depo.) at 54:14-24; Exh. C (Timko Depo.) at 62:10-15. For this reason, Cinebase's copyright

7   infringement cause of action should be dismissed with prejudice.

8          Should Defendants ever release a product, Cinebase can assess at that time

9   whether Defendants' product actually contains anything that might constitute an infringement of

10  Cinebase's copyrights. Until Defendants actually have a product, Cinebase's reckless claim of

11  copyright infringement cannot stand. Indeed, Cinebase's admissions that Defendants presently

12  have no product strongly evidences that Cinebase and its attorneys could not have performed an

13  "inquiry reasonable under the circumstances" into the bases for its copyright infringement claim

14  as required by Rule 11 of the Federal Rules of Civil Procedure.

15             3.    **Form 17 Of The Federal Rules Supports A Dismissal Of Cinebase's**
                     **Copyright Infringement Claim**
16

17         Strikingly, the authority upon which Cinebase relies in its opposition proves that

18  Cinebase's copyright claim should be dismissed. Cinebase contends that Form 17 of the

19  Federal Rules of Civil Procedure should guide the Court in evaluating the adequacy of

20  Cinebase's copyright claim and that Cinebase's first amended copyright claim "track[s] the

21  allegations of the model complaint." <u>See</u> Opp. Mem. at 9:7-12. Ironically, Form 17

22  demonstrates that Cinebase's first amended complaint is deficient in significant respects under

23  Rule 8. For example, in identifying the allegedly infringing product, the Form 17 complaint

24  ────────────────────

[4] Cinebase also cites <u>QTL Corp. v. Kaplan</u>, 46 U.S.P.Q.2d 1794 (N.D. Cal. 1998), to support its
25  contention that it need not plead the identity of the product accused of copyright infringement.
    Contrary to Cinebase's representation, <u>QTL</u> does not hold that the copyrighted product and the
26  infringing product need not be identified in the complaint. Instead, the Court in <u>QTL</u> found that
    plaintiff met its burden of pleading the allegedly infringing works as plaintiff's "catalogs," and
27  the allegedly infringing product as defendants' "product catalog." <u>Id.</u> at 1797. Here, unlike the
    identification of a "catalog" in <u>QTL</u>, Cinebase provides no detail as to the allegedly infringing
28  "products." Because Defendants have <u>no</u> product at all, no product can be sufficiently identified
    to satisfy Rule 8, and Cinebase's claim should be dismissed with prejudice.

1   states in part:

2       After March 10, 1936, defendant infringed said copyright
        by publishing and placing upon the market a book entitled
3       ___, which was copied largely from plaintiff's book
        entitled ___.[5]

4

5   See Fed. R. Civ. P. Appendix of Forms, Form 17.

6           This passage from Form 17 makes clear that, to allege copyright infringement,

7   Cinebase must identify in its pleading the purportedly copyrighted work and the product that

8   allegedly infringes its copyright.  Indeed, Form 17 provides that the specific copyrighted works

9   and infringing product should be identified by name.   Another passage of Form 17 -- which

10  Cinebase conceals in its opposition -- establishes that, to plead copyright infringement,

11  Cinebase should have attached to its first amended complaint a copy of its allegedly copyrighted

12  works and a copy of Defendants' allegedly infringing product.

13          Despite its awareness of Form 17, Cinebase did not identify or attach a copy of

14  its allegedly copyrighted "software architecture" or "related design documents and object

15  codes."  See First Am. Cmplt. ¶52.  Of course, Cinebase does not -- and could not – identify or

16  attach a copy of any allegedly infringing product because, as Cinebase has admitted, Defendants

17  have no product at all.

18      **B.    Cinebase's Reverse Passing Off Claim Should Be Dismissed**

19          To support its claim for reverse passing off, Cinebase's opposition relies solely

20  on the allegation in Cinebase's first amended complaint that Defendants "intend to market"

21  Cinebase's product as their own.  See Opp. Mem. at 11:1-4 (emphasis added); First Am. Cmplt.

22  ¶63.  Cinebase does not (and cannot) contend that Defendants have ever actually marketed a

23  Cinebase product as their own.  Id.  This allegation about what Defendants might do in the

24  future does not satisfy Rule 8.

25          The Ninth Circuit has clearly identified the elements for "reverse passing off"

26  under the Lanham Act:

27  [5] Apparently ignoring the language of Form 17, Cinebase argues that the Form 17 complaint
    does not contain facts that describe by what acts the defendant infringed the copyright.  See Opp.
28  Mem. at 9 n.5.   The Form 17 complaint expressly names the title of the allegedly infringing
    work and the title of the copyrighted work.

> Express reverse passing off occurs when one party . . .
> obtains a second party's goods, removes the second party's
> name, and then markets the product under its own name. . .
> A defendant may also be guilty of reverse palming off by
> selling or offering for sale another's product that has been
> modified slightly and then labeled with a different name.

Summit Mach. Tool Mfg. v. Victor CNC Systems, 7 F.3d 1434, 1437 (9th Cir. 1993) (citations omitted); see also Smith v. Montoro, 648 F.2d 602, 605 (9th Cir. 1981).  As the Summit case makes clear, to state a claim for reversing passing off, a complaint must allege that a defendant actually marketed, sold, or offered for sale as its own the plaintiff's product before a cause of action may lie.

In the face of this clear authority, Cinebase's first amended complaint and its opposition brief fail to identify any Cinebase product that Defendants are allegedly passing off. Indeed, despite Defendants' identification of this deficiency in their Motion, Cinebase still refuses to identify a specific product.  See Opp. Mem. at 11.  If Cinebase were presently able to plead the facts to support a claim for reverse passing off, it would have done so.  Because the actual marketing, sale, or offer for sale of Cinebase's product as Defendants' own is an essential element of a claim for reverse passing off, and because Cinebase has not and cannot plead this essential element, Cinebase's claim should be dismissed with prejudice.

**C.     Katherine Topper Should Be Dismissed From This Lawsuit For Lack Of Subject Matter Jurisdiction**

In its opposition, Cinebase acknowledges that it has not pleaded that Katherine Topper directly infringed any Cinebase copyright or directly engaged in any activities that could arguably be "reverse passing off."  See Opp. Mem. at 11-12.  However, Cinebase still argues that Ms. Topper should not be dismissed because she has "contributed" to the infringement of Cinebase's copyrights and has "contributed" to what Cinebase calls its "trademark claim."  See Id. at 12.  This contention is baseless and should be disregarded.

**1.     Cinebase Does Not State A Claim Against Ms. Topper For Copyright Infringement**

To state a claim for contributory copyright infringement, this Court has held that

1   the complaint must allege that the defendant (1) has "knowledge of the infringing activity", and

2   (2) "induces, causes or materially contributes to the infringing conduct of another." Religious

3   Technology Center v. Netcom On-Line Comm. Srvcs, Inc, 907 F. Supp. 1361, 1373 (N.D. Cal.

4   1995) (quoting Gershwin Publishing Corp. v. Columbia Artists Management, Inc., 443 F.2d.

5   1159, 1162 (2d Cir. 1971)).  Cinebase's first amended complaint contains no such allegations.

6   In its opposition, Cinebase does not even argue that it has pleaded such knowledge, inducement,

7   causation, or material contribution.

8        Instead, Cinebase argues that, based upon the allegations in ¶57 of its first

9   amended complaint, Cinebase has alleged sufficient facts "to impute to Topper knowledge of

10  and contribution to Defendants' copyright infringement activities."  Opp. Mem. at 12 (emphasis

11  added).    The allegations of ¶57, however, are plainly insufficient to allege contributory

12  infringement on the part of Ms. Topper.  In discussing ¶57, Cinebase fails to advise the Court

13  that it expressly refers back to previous allegations in the first amended complaint to support the

14  infringement allegations.    Indeed, ¶57 begins by stating that "By means of the actions

15  complained of herein, Defendants have infringed and will continue to infringe Cinebase's

16  copyrights in the Copyrighted Works by using Cinebase's Copyrighted Works to produce,

17  distribute and/or publish" products.  None of the paragraphs in the first amended complaint that

18  precedes ¶57 ever alleges that Ms. Topper used, or helped others to use, Cinebase's copyrighted

19  computer software.  Rather, in paragraphs 47 and 48 of the first amended complaint, Cinebase

20  alleges that each defendant other than Ms. Topper has marketed, published, distributed, and

21  made unspecified products.

22        Moreover, considering that Ms. Topper works at Media Guaranty in the

23  marketing department, and has no participation in the development or design of Media

24  Guaranty's planned software, it is beyond reason to impute to her any inducement, causation, or

25  material contribution to the infringement of any alleged Cinebase copyrights in computer

26  software.  As discussed above, these copyrights cover, at best, Cinebase's program source code

27  and header source code.  Cinebase does not allege that Ms. Topper has any knowledge of the

28  subject matter of these copyrights, or that Ms. Topper has any involvement at all with Media

1    Guaranty's source code. There is simply no basis for imputing to Ms. Topper any contribution

2    to source code about which she has no material knowledge or participation.

3              2.    **Cinebase Does Not State A Claim Against Ms. Topper For Reverse Passing Off**

4

5              Because Cinebase has not properly pleaded that Ms. Topper has actually engaged

6    in activities that could conceivably amount to reverse passing off, Cinebase asks the Court to

7    convert its claim against Ms. Topper to one of "contributory" reverse passing off. The only

8    allegation which Cinebase cites in support of this "claim" is the allegation in ¶63 of the first

9    amended complaint that Ms. Topper allegedly "intends" at some point to market software. See

10   Opp. Mem. at 12:13-18.

11             In relying on this allegation, Cinebase effectively asks the Court to recognize a

12   claim of *intended* contributory reverse passing off. To support this novel theory, Cinebase

13   couches its reverse passing off cause of action as "the trademark claim" and cites authorities

14   that a defendant may be liable for contributory trademark infringement. See Opp. at 12.

15   Cinebase cites no authority which holds that contributory reverse passing off is a cognizable

16   theory under any federal law.

17             Even assuming *arguendo* that a defendant could be held liable for contributing to

18   reverse passing off, Cinebase has pleaded no such cause of action in its amended complaint and

19   has not pleaded any facts to support such a claim. Specifically, Cinebase does not plead any

20   knowledge, inducement, causation, or material contribution by Ms. Topper to the actual

21   marketing, sale, or offer for sale of any Cinebase product. Because, as discussed above,

22   Defendants have no product at all, there cannot have been any reverse passing off to which Ms.

23   Topper could have contributed.

24             Because Cinebase cannot properly state a claim against Ms. Topper for either

25   copyright infringement or reverse passing off, the Court should dismiss with prejudice these

26   causes of action against Ms. Topper.

27        **D.    Cinebase's Breach Of Confidence Cause Of Action Should Be Dismissed**

28             In their Motion, Defendants established three bases for dismissing Cinebase's

1    cause of action for breach of confidence. These bases included (1) that Cinebase pleaded that

2    the purported ideas were not novel, (2) that Cinebase effectively pleaded that the purported

3    ideas were not confidential, and (3) that the purported ideas were not sufficiently identified to

4    provide adequate notice to Defendants.

5             In its opposition, Cinebase acknowledges the inadequacy of its claim in pleading

6    the absence of novelty and confidentiality, and purports to amend this claim a second time by

7    filing a Notice of Errata. As changed by the Notice of Errata, ¶70 of the first amended

8    complaint now alleges that, "To the extent that any part of Cinebase's "Intellectual Property" is

9    "novel and unique and are not within the subject matter of copyright," Defendants have

10   breached the confidence of each such "part."[6] See Notice of Errata at 2. In the first amended

11   complaint, "Intellectual Property" is defined in equally expansive and vague terms as "computer

12   software, software architecture, technology and know-how, trade secrets, novel ideas, and other

13   confidential and proprietary information [Cinebase] has developed." First Am. Cmplt. 21.

14            These ambiguous definitions provide absolutely no guidance to Defendants

15   concerning the actual ideas they are alleged to have misappropriated. The first amended

16   complaint does not identify any particular "ideas" or "parts" of ideas. Nor does the first

17   amended complaint identify which "ideas" or parts of ideas are confidential. These failures are

18   fatal, particularly in light of the admission in Cinebase's first amended complaint that Cinebase

19   filed on a public basis software that contains at least some of the "ideas" with the United States

20   Copyright Office. As a result of Cinebase's pleading deficiencies, Defendants cannot assess the

21   claim or prepare an appropriate answer, because they cannot determine the "ideas" that are in

22   dispute. For these reasons, this cause of action should be dismissed. See Grid Sys. Corp. v.

23   Texas Instruments Inc., 771 F. Supp. 1033, 1037 (N.D. Cal. 1991) (a complaint "should provide

24   the defendant with a basis for assessing the initial strength of the plaintiff's claim, for

25   preserving relevant evidence, for identifying any related counter- or cross-claims, and for

26   ────────────────

[6] In footnote 7 of its opposition, Cinebase asserts that the allegedly misappropriated ideas are
27   within the subject matter of copyright. Opp. Mem. at 13 n.7. This is at odds with the Notice of
     Errata, which states that the allegedly misappropriated ideas are "not within the subject matter of
28   copyright." It is assumed for the purposes of this Reply that the Notice Of Errata is correct, and
     that footnote 7 merely contains another Cinebase "typographical error."

1  preparing an appropriate answer.").

2

3     E.     **Cinebase's Breach Of Implied Contract Claim Should Be Dismissed**

4             In its opposition, Cinebase ignores Ninth Circuit precedent which makes clear

5  that Cinebase cannot state a cognizable claim against Defendants for breach of implied contract.

6  To state such a claim, Cinebase was required to plead under California law "that he or she

7  prepared the work; that he or she disclosed the work to the offeree <u>for sale</u>; . . . the offeree

8  voluntarily accepted the disclosure knowing the conditions on which it was tendered . . .; and

9  the reasonable value of the work." <u>Aliotti v. Dakin & Co.</u>, 831 F.2d 898, 902 (9th Cir. 1987)

10  (emphasis added) (applying California law on implied in fact contracts).  Because Cinebase

11  pleads that each of the individual Defendants was an employee of Cinebase, it cannot plead that

12  Cinebase offered works to the Defendants "for sale."

13             Ignoring this issue, Cinebase takes a different tack and argues that it does not

14  have to plead the identity of the contracts it allegedly has with each defendant, or the terms of

15  those alleged contracts. <u>See</u> Opp. Mem. at 14.  Remarkably, the only authority Cinebase cites

16  concerning this issue of California law is a series of cases from other jurisdictions.  In addition

17  to having no bearing on California law, these cases do not even support Cinebase's position.

18  For example, to support its conclusion that each Defendant is not entitled to know what

19  individual contract he or she is alleged to have with Cinebase, Cinebase cites to <u>Zeigan v. Blue</u>

20  <u>Cross & Blue Shield of Greater N.Y.</u>, 607 F. Supp. 1434, 1436-37 (S.D.N.Y. 1985).  This case

21  is inapposite.  The relevant holding in Zeigan relates only to whether a plaintiff must allege that

22  it has suffered an injury in order to properly plead the breach of a <u>written</u> contract under <u>New</u>

23  <u>York</u> law.  <u>Id.</u>  The case has no bearing on whether Cinebase can properly neglect to identify

24  any single implied in fact contract with any single defendant in this action.

25             Here again, Cinebase does not plead the crucial elements of this cause of action

26  because it cannot.   There are no contracts between Cinebase and any defendant wherein

27  Cinebase disclosed work for sale or wherein any Defendant accepted the disclosure knowing

28  there were any contractual conditions attached.  This cause of action should be dismissed with

1    prejudice.

2    **F.      Cinebase's Trade Secret Misappropriation Claim Should Be Dismissed**

3              In its opposition, Cinebase erroneously states that Defendants have not cited any

4    authority which establishes that, in a trade secret misappropriation claim, plaintiff must identify

5    its trade secrets with specificity.  See Opp. Mem. at 15.  This is incorrect.  In its Motion,

6    Defendants cite to the leading case on point in California jurisprudence:  Diodes, Inc. v.

7    Franzen, 260 Cal. App. 2d 244 (1968).  Diodes is clear in its holding that "the complainant

8    should describe the subject matter of the trade secret with sufficient particularity to separate it

9    from matters of general knowledge in the trade or of special knowledge of those persons . .

10   .skilled in the trade."  Id. at 253.[7]

11             As discussed in Defendants' Motion, Cinebase's purported "trade secrets"

12   amount to little more than vague descriptions of broad categories of information which shed no

13   light on what particular information is secret and what information is generally known.  This

14   deficiency is particularly important in this case where more than 100 pages of Cinebase's

15   unredacted source code is now publicly available at the U.S. Copyright Office where it was

16   deposited with Cinebase's application for a copyright registration.  See Lumish Decl. Exhs. D

17   and E.  When, as here, a plaintiff pleads facts which show that it has made a massive disclosure

18   of an alleged secret – software code – to the public, it is incumbent upon the plaintiff to identify

19   any remaining information which it considers to be secret sufficiently to distinguish the

20   information from public domain information.  Otherwise, Defendants are left to guess about that

21   which is public and that which is secret.

22   **G.      Cinebase's Intentional Interference Claim Should Be Dismissed With
23            Prejudice**

24             Defendants' Motion clearly establishes that Cinebase has failed to plead all of

25   the elements of intentional interference with prospective economic advantage.  Specifically,

26

27   [7] Distinguishing that which is public domain from that which is confidential does not require
     Cinebase to disclose its purported trade secrets, as it contends.  See Opp. Mem. at 15.  For
28   example, a plaintiff can identify the software algorithms or routines that are allegedly secret
     without disclosing the logic or symbols or words used to create the algorithms or routines.

DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR
MOTION TO DISMISS AND TO STRIKE

1   neither Cinebase's first amended complaint nor its opposition ever alleges that Defendants'

2   have caused an actual disruption to any relationship Cinebase has with its customers.  Instead,

3   Cinebase argues only that "defendants knowingly and intentionally interfered" with Cinebase's

4   customers and strategic partners including Hambricht & Quist.  Opp. Mem. at 18.

5          It is not enough for Cinebase to allege that Defendants have acted to interfere

6   with a Cinebase relationship.  Cinebase must also allege that an <u>actual</u> disruption has occurred.

7   <u>Conkle v. Jeong</u>, 73 F.3d 909, 928 (9th Cir. 1995) (citing <u>Blank v. Kirwan</u>, 39 Cal.3d 311, 330

8   (1985)).  In its opposition Cinebase conflates these two independent elements and fails to show

9   that it has pleaded an actual disruption of its relationship with Hambricht & Quist or with

10  anyone else.  Because Cinebase still cannot identify a single relationship that has actually been

11  disrupted by any defendant, its interference cause of action should be dismissed with prejudice.

12  **H.      <u>Cinebase Does Not Properly Plead Fraud</u>**

13         Cinebase's amended complaint fails to plead fraud with particularity as required

14  by Fed. R. Civ. P. 9(b).  Specifically, as detailed in Defendants' Motion, the amended complaint

15  fails to identify "the time, place, and nature" of the alleged misrepresentation Dr. Brown made

16  concerning his intentions to enter into an employment agreement with Cinebase.

17         In its opposition, Cinebase's first argument is to repeat its conclusion that "Dr.

18  Brown also falsely represented over the course of the months between March and October 1997

19  that he would enter into an employment agreement with Cinebase."  Opp. Mem. at 17.  Even in

20  its opposition, Cinebase cannot identify any particular statement made by Dr. Brown, and can

21  only identify the alleged timing of this claimed misrepresentation over the span of <u>7 months</u>.

22  Moreover, Cinebase still cannot identify the place at which these alleged misrepresentations

23  were made or the persons to whom they were made.

24         In a desperate effort to save its faulty fraud claim, Cinebase brazenly attempts to

25  expand its claim of fraudulent misrepresentation to include a new claim of fraudulent

26  concealment pursuant to Cal. Civ. Code § 1710.3.  This belated attempt to add an entirely new

27  fraud theory is precisely the mischief that Rule 9(b) was intended to prevent, and precisely the

28  reason Cinebase's amended complaint fails to plead fraud with particularity.    Cinebase's

1   allegations concerning Dr. Brown's purported representations regarding entering into an

2   employment agreement should be stricken.

3   **III.  THE COURT SHOULD DECLINE SUPPLEMENTAL JURISDICTION AND DISMISS MS. TOPPER AND THIS ACTION IN ITS ENTIRETY**

4

5              As set forth in Defendants' Motion, Cinebase's nine state law claims

6   predominate its federal claims and raise novel and complex issues of California law and, thus,

7   should be tried in State court after the Court dismisses Cinebase's federal claims.  This is

8   especially true in light of the strong preference the United States Supreme Court has articulated

9   for dismissing state law claims if no federal claims can be sustained.  See Carnegie Mellon

10  Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988) (stating that declining to exercise supplemental

11  jurisdiction over state law claims is "the usual case [where] all federal law claims are eliminated

12  before trial[.]"); United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) ("Certainly if the

13  federal claims are dismissed before trial . . . the state claims should be dismissed as well.").

14             Despite all evidence to the contrary, Cinebase argues that its state law claims do

15  not predominate the federal claims and that there are no novel issues of California law.  These

16  arguments bear no weight.  First, Cinebase's assertion of the "inevitable use" theory in this case

17  plainly advocates a theory of law that California has never accepted.  In its opposition, even

18  Cinebase admits that "California courts apparently have not had occasion to deal with inevitable

19  use[.]"  Opp. Mem. at 20.  The best Cinebase can do is claim that other jurisdictions have

20  applied the inevitable use theory, and thus the issue is neither novel nor complex.  Id. at 20.

21  This argument makes no sense. The question of whether California state courts should apply the

22  inevitable use theory is certainly a novel and complex issue that is best left to those courts.

23  Indeed, the question is one that should be certified to the California Supreme Court.  See Cal.

24  Rules of Court, Div. I, R. 29.5 (1997) (Questions of state law may be certified to the Supreme

25  Court where, inter alia, "the decisions of California appellate courts provide no controlling

26  precedent concerning the certified question.").

27             Second, Cinebase's perfunctory argument against the obvious predomination of

28  the federal claims by the state law claims should be disregarded.  It is clear from Cinebase's

DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR
MOTION TO DISMISS AND TO STRIKE
SV1:\35858\01\R_201!.DOC

13

Case No. C-98-1100 FMS

1   amended complaint and from its actions that the state law claims far outweigh the federal claims

2   in this action.  As discussed above, the scope of Cinebase's copyright registrations limits its

3   copyright infringement claim to the source code of its 2.0 software.  Similarly, Cinebase's

4   reverse passing off claim must be limited to one of Cinebase's three products.[8]  Conversely,

5   Cinebase's trade secret, breach of confidence, unfair competition, breach of fiduciary duty,

6   fraud, trade disparagement, and intentional interference claims purportedly relate to issues far

7   beyond Cinebase's software.  Cinebase contends that these causes of action reach substantially

8   broader issues related to, *inter alia*, Cinebase's marketing, employees, "know how," customers,

9   strategic partners, and reputation.  Moreover, the fact that Cinebase only sought a preliminary

10  injunction based on its state law trade secret claim speaks volumes over attorney argument now

11  presented in response to Defendants' Motion.

12          Assuming the Court dismisses Cinebase's federal claims against Ms. Topper, the

13  Court should decline to exercise supplemental jurisdiction and should dismiss Ms. Topper from

14  this case.  Similarly, assuming the Court dismisses the federal claims against all of the

15  Defendants, the Court should dismiss this action in its entirety and allow Cinebase to assert any

16  claims that are not dismissed in California Superior Court.[9]

17  **IV.    CONCLUSION**

18          For all of the above reasons, Defendants respectfully request that the Court grant

19  Defendants' Motion To Dismiss Cinebase's First And Second Causes Of Action In Its First

20  Amended Complaint, To Dismiss The First Amended Complaint, To Dismiss Defendant

21  Katherine Topper From This Lawsuit, To Dismiss Cinebase's Third, Fourth, Fifth, And

22  Eleventh Causes Of Action, And To Strike Portions Of Cinebase's Ninth Cause Of Action.

---

[8] Cinebase has developed at least a product entitled "Cinebase 1.X" (which was sold as several different versions), and has started development on a planned product entitled "Cinebase 2.X" additionally, Cinebase has sold custom software to at least one customer.

[9] Despite Cinebase's contention, Defendants in no way seek to have two cases heard in two separate courts.  To the contrary, Defendants seek to have any of Cinebase's surviving claims heard in State court where they belong.

DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR
MOTION TO DISMISS AND TO STRIKE
SV1:\35858\01\R_2011.DOC

14

Case No. C-98-1100 FMS

1

2    DATED:       August 17, 1998         JARED BOBROW

3                                          DOUGLAS E. LUMISH
                                          WEIL, GOTSHAL & MANGES LLP

4

5                            By:

6                                       Jared Bobrow

7                           Attorneys for Defendants Media Guaranty
                           Trust, Inc., Allen L. Brown, Jr., Ph.D.,

8                           Natalia X. Krol, Joseph Rozenfeld, Thomas
                           Wills, Carl Reisinger, and Katherine Topper

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**CERTIFICATE OF SERVICE**

2          I, Jeanne Amour-Rice, declare:

3          I am over the age of 18 years, am not a party to this Action, and am employed in

4    the County of San Mateo. My place of employment and business address is Weil, Gotshal &

5    Manges LLP, 2882 Sand Hill Road, Suite 280, Menlo Park, California 94025.

6          On August 17, 1998, I caused to be served the attached DEFENDANTS' REPLY

7    BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS AND TO STRIKE PLAINTIFF'S

8    FIRST AMENDED COMPLAINT on the following individuals and entities, as addressed below,

9    by the means indicated below:

10    ___    **BY MAIL.** I caused the above-identified documents(s) to be deposited for collection at

11    Weil, Gotshal & Manges LLP following the regular practice for collection and processing of

12    correspondence for mailing with the United States Postal Service. In the ordinary course of

13    business, correspondence is deposited with the United States Postal Service on this day.

14    ___    **BY HAND DELIVERY.** I caused the above-identified document(s) to be delivered by

15    hand to the party(ies) listed below at the address(es) shown.

16    _X_    **BY FEDERAL EXPRESS.** I caused the above-identified document(s) to be placed in a

17    sealed Federal Express envelope(s) with delivery fees fully prepaid, for delivery to addressee(s),

18    as indicated below on the next business day.

19    ___    **BY FACSIMILE.** I caused the above-identified document(s) to be sent by facsimile

20    transmission to the party(ies) listed below at the facsimile number(s) shown.

21          **KEVIN LEICHTER, ESQ.**
    **Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro LLP**
22    **2121 Avenue of the Stars, 18th Floor**
    **Los Angeles, CA   90067**
23

24          I declare under penalty of perjury that the foregoing is true and correct. Executed

25    in Menlo Park, California on August 17, 1998.

26

27    _____
                            Jeanne Amour-Rice

28