GAYLE M. ATHANACIO (SBN 130068)
gathanacio@sonnenschein.com
CHRISTINE LEPERA (admitted *pro hac vice*)
clepera@sonnenschein.com
SONNENSCHEIN NATH & ROSENTHAL LLP
525 Market Street, 26th Floor
San Francisco, CA 94105-2708
Telephone: (415) 882-5000
Facsimile: (415) 882-0300

Attorneys for Defendant
TEACHSCAPE, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LAUREATE EDUCATION, INC.,<br><br>      Plaintiff.<br><br>   v.<br><br>TEACHSCAPE. INC.,<br><br>      Defendant. | Case No. C 07-3225 RS<br><br>DEFENDANT TEACHSCAPE, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS LAUREATE'S FIRST AMENDED COMPLAINT<br><br>Date: April 2, 2008<br>Time: 9:30 a.m.<br>Courtroom: 4 (5th Floor)<br>Honorable Richard Seeborg |

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.    ARGUMENT ........................................................................................................ 3

    A.    Laureate Cannot Avoid The Standards Applicable To State A Viable Copyright Infringement Claim. ................................................................ 3

    B.    Laureate's Deliberate Ignorance Of Whether The Allegedly Infringing Marygrove Course Materials Are Actually Substantially Similar To Laureate's Works Is Fatal To Its Copyright Claim. .............................. 6

    C.    Plaintiffs' Conduct Regarding The Exchange Of Course Materials Supports Dismissal Of This Action. ................................................... 10

III.    CONCLUSION .................................................................................................. 13

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Adams v. Warner Brothers*, 2007 WL 1959022 (E.D.N.Y. June 29, 2007) ...................................4

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007)..............................................................3, 9

*Brown v. Adidas Int.*, 938 F. Supp. 628 (S.D. Cal. 1996)............................................................4, 14

*Bus. Trends Analysts, Inc. v. Freedonia Group, Inc.*, 887 F.2d 399 (2d Cir. 1989).......................7

*Cavalier v. Random House, Inc.*, 297 F.3d 815 (9th Cir. 2002)......................................................4

*Elektra Entertainment Group v. Avery*, 2007 WL 2023545 (E.D. Cal. Jul. 11, 2007)....................5

*Epstein v. Washington Energy Co.*, 83 F.3d 1136 (9th Cir. 1996) .................................................3

*Facebook, Inc., v. ConnectU LLC*, 489 F. Supp. 2d 1087 (N.D. Cal. 2007) ..................................3

*Gero v. Seven-Up Co.*, 535 F. Supp. 212 (E.D.N. Y. 1982) ...........................................................9

*Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539 (1985) ..............................10

*Hoffmann La Roche. Inc. v. Invamed Inc.*, 213 F.3d 1359 (Fed. Cir 2000) ...................................8

*Intamin Ltd. v. Magnetar Tech. Corp.*, 483 F.3d 1328 (Fed. Cir. 2007) .........................................8

*Joshua Meier Co. v. Albany Novelty Manufacturing Co.*, 236 F.2d 144 (2d Cir. 1956)................7

*M. Kramer Manufacturing Co., Inc. v. Andrews*, 783 F.2d 421 (4th Cir. 1986) ............................7

*Marvel Enterprises Inc. v. NCSoft Corp.*, 2005 WL 878090 (C.D. Cal. Mar. 9, 2005) ..................5

*Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 167 F. Supp. 2d 1114 (C.D. Cal. 2001).......................5

*Rice v. Fox Broad. Co.*, 330 F.3d 1170 (9th Cir. 2003) ..................................................................4

*Sega Enterprises Ltd. v. Accolade, Inc.*, 977 F.2d 1510 (9th Cir. 1992).......................................10

*Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F. Supp. 1303 (N.D. Cal. 1997)....................3

*Sony Computer Entertainment, Inc. v. Connectix Corp.*, 203 F.3d 596 (9th Cir. 2000) ...............10

*Tenn. Fab. Co. v. Moultrie Manufacturing Co.*, 421 F.2d 279 (5th Cir. 1970).............................7

*Walker v. University Books, Inc.*, 602 F.2d 859 (9th Cir. 1979) ....................................................4

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

**DOCKETED CASES**

*Cinebase Software, Inc. v. Media Guaranty Trust, Inc.*, No. C98-1100 FMS, 1998 WL
       661465 (N.D. Cal. Sept. 22, 1998) .................................................................................5

**MISCELLANEOUS**

Federal Rule of Civil Procedure 8 .......................................................................................1, 3

Federal Rule of Civil Procedure 84 ........................................................................................5

**I.    INTRODUCTION**

Wholly ignoring a plethora of case law demonstrating that Teachscape's motion to dismiss the first amended complaint ("FAC") should be granted, Laureate's opposition to Teachscape's motion argues that even though Laureate's claim of copyright infringement is based upon a "guess"—Laureate flatly admits it does not actually know if any of Teachscape's works are actually infringing on any of Laureate's copyrights—Laureate should be allowed to proceed with this litigation. Laureate's argument, however, is without factual or legal basis.

Unquestionably, Laureate's copyright claim asserted in its FAC is contrary to this Court's mandate as set forth in its Order granting Teachscape's motion to dismiss the original complaint with leave to amend. As this Court observed,

> Here, Canter's complaint effectively concedes that it does not possess any information as to whether or not it has a viable copyright infringement claim. **Although the complaint and Canter's briefing in opposition to this motion attempt to excuse that lack of knowledge based on the fact that it does not have access to defendants' course materials, that explanation does not serve to transform what is essentially a guess into a cognizable claim. As pleaded, the complaint effectively says nothing more than, "all of my materials are copyrighted and I think you may have copied them." To state a copyright infringement claim, Canter must, at a minimum, do more than guess.**

Order, p. 3.

In its FAC, Laureate makes this same "guess": Laureate points to the same allegedly wrongful conduct of Teachscape in hiring certain Canter employees, lists all of Laureate's copyrights, identifies *all* of the titles of Marygrove College course offerings that are in partnership with Teachscape, and then asserts that some or all of the Marygrove course offerings are infringing on some or all of Laureate's copyrights. As was true before, these conclusory allegations cannot support a cognizable copyright claim under Federal Rule of Civil Procedure 8 and copyright law.

Apparently recognizing that its claim is as deficient as it was when it was first pled, Laureate actually *expands* the scope of its guess in the hope that it can salvage its claim. Now, as set forth in Laureate's opposition papers, Laureate's "guess" of copyright infringement extends not only to every work offered in connection with the Marygrove degree programs, but

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

also unpublished earlier "drafts" of this course material. Thus, Laureate has piled one guess on top of another.

Laureate's reason for expanding its "guess" is clear. Teachscape has repeatedly offered Laureate access to the Marygrove course offering materials—an apples to apples exchange of allegedly infringing and infringed materials. Unquestionably, Laureate has repeatedly rejected these offers. Yet Laureate cannot legitimately dispute that if the final Marygrove course materials are *not* substantially similar to Laureate's copyrighted works, Laureate's claim that these course materials were infringing fails as a matter of law. Thus, if it had accepted Teachscape's offer, Laureate could then not even purport to "guess" these Marygrove course materials were infringing and Laureate would be forced to dismiss its claim.

But as confirmed by Plaintiffs' and their counsels' conduct and statements, Laureate has no real desire to find out if a cognizable claim exists and no intention of dismissing this action even if Plaintiffs know there is no substantial similarity between *any* of Teachscape's and Laureate's works. *See* Athanacio Declaration in Opposition to Motion to Compel ("Athanacio Decl."), ¶¶ 15, 18 [Docket No. 74]. As such, in order to try to keep its litigation against Teachscape going, and on two fronts no less, Laureate now claims that it suspects prior iterations, "drafts," of the final Marygrove course materials, may be infringing.[1] Hence, according to Laureate, Teachscape's refusal to produce "drafts" supposedly justifies Laureate's guesswork. Laureate could not be more wrong.

As this Court observed, as did the Supreme Court in *Bell Atlantic*, a party may not proceed with a claim based on "speculation" or a "guess" nor use the power of the court to force a defendant to respond to discovery because a plaintiff speculates a claim may exist. This Court's Order granting Teachscape's motion to dismiss was entirely consistent with the Federal Rules of Civil Procedure, relevant case law, and the law of copyright. The cases Laureate cites to suggest

---

[1] Significantly, in its motion to compel production of Teachscape's "course materials", Laureate argues that the "drafts" would be the "most likely evidence of infringement." (Plaintiff's Motion to Compel, [Docket No. 60], p. 8:9-10.) Faced with irrefutable law that holds that final course material that is not substantially similar cannot as a matter of law be infringing, Laureate has shifted its argument to assert the "drafts" themselves are infringing.

-2-
TEACHSCAPE'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. C07-3225 RS

its "guess" is sufficient do not support Laureate's claim here. There is no "black box" that Teachscape is hiding. Laureate is, by design, putting its head in the sand.

Laureate's FAC does not as a matter of law state a valid claim for copyright infringement. Laureate had ample opportunity to try to demonstrate that it had a valid claim but failed to do so. Teachscape's motion to dismiss the FAC with prejudice should be granted.

**II.   ARGUMENT**

**A.   Laureate Cannot Avoid The Standards Applicable To State A Viable Copyright Infringement Claim.**

In its opposition, Laureate goes to great length to argue that Teachscape has asked this court to apply a heightened and/or inappropriate standard to this Court's consideration of the viability of Laureate's copyright infringement claim. Laureate is wrong, and in making the argument, ignores many of the cases cited by Teachscape and misstates the cases upon which it purports to rely.

Teachscape has never asserted that a "heightened" pleading standard applies to copyright claims. To the contrary, Teachscape merely notes (as this Court has already observed), that in considering a motion to dismiss under the standards of Federal Rules of Civil Procedure 8, "the court need not accept as true conclusory allegations or legal characterizations cast in the form of factual allegations." *Silicon Knights, Inc. v. Crystal Dynamics, Inc.,* 983 F. Supp. 1303, 1307 (N.D. Cal. 1997) (citation omitted). "'[C]onclusory allegations of law and unwarranted inferences…are insufficient to defeat a motion to dismiss for failure to state a claim.'" *Facebook, Inc., v. ConnectU LLC*, 489 F. Supp. 2d 1087, 1090 (N.D. Cal. 2007) (quoting *Epstein v. Washington Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996)).

Critically, Laureate continues to try to distance itself from the Supreme Court's holding in *Bell Atlantic v Twombly*. Yet *Bell Atlantic* was clear: "[T]he pleading must contain something more ... than ... a statement of facts that merely creates a *suspicion* [of] a legally cognizable right of action." *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted) (emphasis added).

Significantly, Laureate fails to deal with the simple fact that a fundamental element of

-3-
TEACHSCAPE'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. C07-3225 RS

any viable copyright claim is a showing not only of "access" to the copyrighted work, but also work that is substantially similar (a copy) of the protected work. *See Walker v. University Books, Inc.*, 602 F.2d 859, 864 (9th Cir. 1979) ( *prima facie* case of copyright infringement requires that a plaintiff demonstrate substantial similarity between it and the defendant's work).[2] It similarly fails to acknowledge that a court is "under no obligation to assume the truth of legal conclusions merely because they are cast in the form of factual allegations". *Brown v. Adidas Int.*, 938 F. Supp. 628, 632 (S.D. Cal. 1996) (granting motion to dismiss copyright claim).[3]

Here, Laureate admits, as it must, that it at most suspects Teachscape has infringed "some or all" of Laureate's hastily registered copyrights.[4] It admits that it cannot in good faith assert that there is any *substantial* similarity between *any* work of Teachscape and *any* copyright-protected work of its own. Indeed, Laureate admits that it has not, and cannot, identify any particular work of Teachscape that is allegedly a copy of any work of Laureate's. Rather, in what can at best be described as a shot-gun approach, Laureate generally claims that it has "reason to infer" that everything it had registered is being infringed by everything (or

---

[2] While suggesting that substantial similarity is solely an issue of burden of proof, and has no bearing on the pleading of a cognizable claim, Laureate's pleading shows that Laureate knows better: Filing a copyright infringement claim without an adequate investigation as to whether the particular work being sued upon is in fact substantially similar is inappropriate. In this case, Laureate alleges, contrary to the undisputed facts, and in a wholly conclusory fashion, that "Laureate has conducted a reasonable pre-filing inquiry into the similarity of Teachscape's materials to its own copyrighted works." FAC, ¶ 23.

[3] Laureate suggests that Teachscape's citation to *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1174 (9th Cir. 2003) and *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002) are inapposite because these cases deal with the burden of proof, and not the pleading of a cognizable claim. While both of these cases concern motions for summary judgment, at the pleading stage, a plaintiff nonetheless is still required to plead by what specific acts the defendants infringed the copyright. *See Brown,* 938 F. Supp. at 636 (copyright claim dismissed because complaint failed to make clear the designs upon which defendant allegedly infringed). This, in turn, requires pleading that (1) the defendant actually copied the plaintiff's work; and (2) a substantial similarity between the defendant's work and the protectible elements of plaintiff's work. *See Adams v. Warner Bros.*, 2007 WL 1959022, *3-5 (E.D.N.Y. June 29, 2007) (court dismissed copyright claim because there was no substantial similarity between the works).

[4] It is worth noting that Laureate has apparently only this month sought to register the CIA degree program mentioned in its complaint and FAC and has now sought leave to file a "supplemental amended complaint" apparently to add the CIA copyrights to the litany of copyrights that Laureate speculates Teachscape has somehow infringed.

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

nothing?) in the Marygrove course offerings. Yet plainly, the "facts" allegedly by Laureate, such as they are, do nothing more than at best create "a suspicion [of] a legally cognizable right of action."

Not surprisingly, therefore, Laureate suggests that the *Bell Atlantic* pleading standard is somehow lower in copyright infringement matters by stating that "a complaint for copyright infringement needs to set forth very little in making factually suggestive allegations." (Opp., 8:14-19).[5] Yet Laureate ignores the fact that its "factually suggestive allegations" do nothing to detract from the conclusion that its copyright claim is based on a "guess" and presents Teachscape (and this Court) with nothing more than a broad and ambiguous claim that *"all of my materials are copyrighted and I think you may have copied them."* [6]

For this reason, among others, Laureate's heavy reliance on *Cinebase Software, Inc. v. Media Guar. Trust, Inc.,* No. C98-1100 FMS, 1998 WL 661465 (N.D. Cal. Sept. 22, 1998) is misplaced. Opp., 12:25-14:4. Indeed, a careful reading of *Cinebase* discloses that the case

---

[5] Demonstrating that it is not above misrepresenting the allegations of its own complaint in order to convince this Court it has a viable claim and had conducted a reasonable pre-filing inquiry, Laureate's opposition now suggests that its complaint accuses Teachscape of "raiding" Canter. (*See* Opp. pp. 5-8). Neither Canter's nor Laureate's complaints make such an accusation, as they cannot, since they know it is false. (*See* Complaint, ¶ 7; FAC, ¶ 12 (simply claiming that years ago, and over the course of years, "Teachscape hired, or contracted with, at least twelve former employees of Canter".)

[6] As it did before in connection with Teachscape's motion to dismiss the original complaint, Laureate cites cases to suggest that it has properly pled its claim, now arguing that "a plaintiff need not allege specific evidentiary details - the who, what, when, where, and how - of copyright infringement." (Opp., 7:8-13). Yet as before, none of the three cases Laureate relies on would allow Laureate to proceed based on its admitted "guess" that some or all of Teachscape's course materials infringe on some or all of Laureate's works. *See Marvel Enters. Inc. v. NCSoft Corp.,* 2005 WL 878090 (C.D. Cal. Mar. 9, 2005) (alleged infringement of specific superhero characters by a specific computer game); *Elektra Entmt. Group v. Avery*, 2007 WL 2023545 (E.D. Cal. Jul. 11, 2007) (alleged infringement of sound recordings via internet downloading); *Perfect 10, Inc. v. Cybernet Ventures, Inc.,* 167 F. Supp. 2d 1114, 1120 (C.D. Cal. 2001) (Operator of adult materials Internet website stated claim of copyright infringement against operator of website that provided gateway and quality assurance services to various adult materials websites, when claimant operator specifically alleged that other websites *reproduced* its copyrighted materials, *sometimes still carrying claimant's identification,* given the "ever-shifting" nature of the Internet and large scale of the alleged copying). Similarly, Pleading Form No. 17 of the Fed. R. Civ. Pr. 84 Appx. Of Forms, cited by Laureate, actually suggests a plaintiff *attach* full copies of both the plaintiff's and the defendant's works to the complaint.

1  supports dismissal of Laureate's copyright action.[7]

2  In *Cinebase*, the plaintiff alleged that defendants were infringing Cinebase's copyright for a specific computer program for management of high-resolution media. A central issue in *Cinebase* was whether the plaintiff could maintain a copyright infringement claim when there was no "completed marketable product." The *Cinebase* court concluded a claim for infringement of the specific but as of yet marketed product—*as to which there was no ambiguity and to which all parties agreed*—could proceed. 1998 WL 661465, at *5. Unlike in *Cinebase*, here, Laureate's claim is entirely ambiguous and admittedly made when Laureate did not, and cannot, allege that there is substantial similarity between any work of Teachscape and that of Laureate. Under no circumstances can *Cinebase* be read to suggest that a plaintiff can sue over every published work of a competitor without any specificity or factual basis for a claim of copyright infringement.

### B. Laureate's Deliberate Ignorance Of Whether The Allegedly Infringing Marygrove Course Materials Are Actually Substantially Similar To Laureate's Works Is Fatal To Its Copyright Claim.

Laureate asserts that Teachscape's "course materials," identified in the FAC as the titles to every course offering at Marygrove, are infringing "some or all" of Laureate's copyrights. *See* FAC, ¶ 25. Yet Laureate has admitted, as it must, that course titles and general subject matters (including program specializations, structures, and course subject matter) are not copyrightable. *Id.*, ¶ 17; Opp. p. 2, n.2. Thus, the "fact" that Marygrove degree programs offered in partnership with Teachscape generally cover the same subject matter and relate to the same degree specializations does nothing to support a finding that Teachscape actually infringed (copied) the courses Laureate claims to have developed and registered.[8]

---

[7] Not only does Laureate mention the unpublished decision in *Cinebase*, but it additionally presents certain pleadings filed in that case and quotes to a portion of a hearing in which the plaintiff's trade secrets claims were being discussed. While Teachscape believes nothing in the pleadings or files of the *Cinebase* case support Laureate's position, it does object to Laureate's request for judicial notice insofar as Laureate seems to suggest oral argument at a hearing or the situation in *Cinebase* is in any way analogous to the present action and suitable for judicial notice in this case.

[8] Laureate takes entirely inconsistent positions as to the relevancy of course titles and course

-6-
TEACHSCAPE'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. C07-3225 RS

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

Yet in a bizarre twist, Laureate now claims that its ignorance of what Teachscape's works actually are somehow justifies the filing of the present lawsuit. Laureate could not be more wrong.

Indisputably, prior to the filing of this action (and repeatedly thereafter), Teachscape offered Laureate the means by which to assess whether its suspicion of wrongdoing had any basis in fact—Teachscape would give Laureate all of these Marygrove course materials and Laureate would simply provide Teachscape with Laureate's copyright protected works so both parties could see for their own eyes what Laureate suspected was copied. At every turn, Teachscape's offers were rejected. To this day, Laureate has never articulated a single rational basis for rejecting Teachscape's offer, leaving Teachscape to conclude that either Laureate must already know there is no substantial similarity between the Marygrove course materials and Laureate's, or that it deliberately does not want to know that no such similarity exists. Whatever the case, the inescapable fact is that Laureate's present action regarding some or all of the Marygrove final course materials is plainly a "guess" based on a suspicion and hence dismissal is appropriate.[9]

---

programs. On the one hand, Laureate argues that because the Teachscape (actually Marygrove) degree course titles and programs appear on their face similar to Laureate's course titles, Laureate has presented "circumstantial facts strongly suggesting unlawful similarity". Opp. 11:4-5. Yet in its next breath, Laureate argues that the fact that a multitude of publicly offered degree programs all use similar course titles and programs (which one would expect with regard to master's degrees to teachers for "math" and "reading") is "irrelevant". Opp. p. 11, n. 2. Laureate cannot have it both ways. That the Marygrove degree program offerings for the same degree programs use similar titles is of no significance as to whether the *actual course material works* are substantially similar to any copyrighted work of Laureate. Moreover, as previously noted, if anything, the course titles apparently used by Laureate and those now at Marygrove suggest the actual course materials are not substantially similar.

[9] Even the cases cited by Laureate demonstrate that while infringement is not confined to exact reproduction, a plaintiff must still be able to show substantial similarity between the copyrighted product and the allegedly infringing product. *Bus. Trends Analysts, Inc. v. Freedonia Group, Inc.,* 887 F. 2d 399, 403(2d Cir. 1989) (court began its analysis with noting that "[c]opyright plaintiffs can prove infringement by demonstrating the defendants' access to the copyrighted work and a substantial similarity between the two works"); *M. Kramer Mfg. Co., Inc. v. Andrews*, 783 F. 2d 421, 445-46 (4th Cir. 1986) (after noting that "copying is … established by proof that the defendant had access to the plaintiff's work and produced work that is substantially similar to the plaintiff's work", court found that the computer programs were "virtually identical" and that the "dissimilarities" appeared to be the result of a studied effort to make minor distinctions); *Joshua Meier Co. v. Albany Novelty Mfg. Co.*, 236 F. 2d 144, 146 (2d

-7-

SONNENSCHEIN NATH & ROSENTHAL LLP
525 MARKET STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105-2708
(415) 882-5000

In an obvious attempt to avoid dismissal, Laureate now asserts that its copyright claim extends not only to the final Marygrove course materials, but also to all "drafts" of the same. Laureate thus argues that Teachscape's unwillingness to turn over to Laureate "first drafts" of all its course materials somehow justifies Laureate's failure to actually articulate or plead a cognizable copyright claim. Laureate's argument should be rejected.

First, and perhaps most obviously, Teachscape's purported refusal to turn over "drafts" (whatever that means) cannot justify filing suit on final course materials when Laureate rejected Teachscape's pre- and post-litigation offers to allow Laureate such review. Thus, no matter what Laureate claims now with regard to drafts, it is clear it does not, and by its own choice, cannot, state a viable claim that the final course materials are infringing.

For this simple reason, Laureate's continued reliance on *Hoffmann La Roche. Inc. v. Invamed Inc.*, 213 F.3d 1359 (Fed. Cir 2000), and *Intamin Ltd. v. Magnetar Tech. Corp.*, 483 F.3d 1328 (Fed. Cir. 2007), two patent infringement cases, to suggest that its ignorance of its own claim is justifiable, is wholly unwarranted. As noted in Teachscape's motion to dismiss the initial complaint and again its motion to dismiss the FAC, in *Hoffmann,* the plaintiff did not have the manufacturing processes of a drug it knew the defendant was selling before it filed suit. The defendant had refused to disclose the manufacturing process because of a confidentiality agreement it had with the manufacturer and the court observed it was "difficult to imagine what else [the plaintiffs] could have done to obtain facts relating to [the defendant's] alleged infringement of their process patents." *Hoffmann*, 213 F.3d at 1363-1364. Similarly, in *Intamin*, 483 F.3d at 1338, the technology of the patent "presented the patentee with unreasonable obstacles to any effort to obtain a sample…" Here, all Laureate had to do was accept Teachscape's offer and it could have easily discerned whether it truly had any viable

---

Cir. 1956) ("[t]he similarities are so numerous and substantial as to give rise to a strong inference of copying"); *see also Tenn. Fab. Co. v. Moultrie Mfg. Co.*, 421 F. 2d 279, 284 (5th Cir. 1970) (in concluding that defendant's redesign infringed plaintiff's copyright, court noted that defendant merely added additional intercepting straight lines to plaintiff's filigree-patterned room divider, which consisted of entirely intercepting straight lines and arc lines).

claim that the Marygrove published course materials were infringing.[10]

As to the "drafts", it should go without saying that a guess that potentially countless, unpublished "drafts" are infringing is even more a "guess" and "speculation" than Laureate's claim that the final course materials are copies of Laureate's work. Further, as reflected in the papers filed in connection with Teachscape's motion for protective order and Laureate's motion to compel production of "course materials", what exactly Laureate means when it suggests "drafts" are infringing, is manifestly unclear.[11]

Thus, as Laureate's opposition brief discloses, what is a "draft", an intermediate copy which would give rise to a separate claim of copyright infringement, may encompass many things and necessarily differs depending on the medium and particular work involved. To now suggest that its copyright claim extends to any and all (or some) "drafts" of final course material only serves to render Laureate's copyright infringement claim boundless and even more undefined and speculative than it was when Laureate first suggested in its initial complaint that all final Marygrove course materials may be infringing.

Nor can Laureate legitimately suggest that liability for a final work of educational course material that is *not* substantially similar (and hence is not infringing as a matter of law) can arise because a separate earlier iteration/copy may be substantially similar. While in theory, an

---

[10] Laureate's reliance on *Gero v. Seven-Up Co.,* 535 F. Supp. 212 (E.D.N. Y. 1982) is similarly misplaced. In that case, the plaintiff asserted that the defendant was using his copyrighted artwork in its commercials. His claim was not based on a "guess" as it was here, but rather, as evidenced in that case, based upon affidavits from literally dozens of people who stated they saw commercials using his artwork. Thus, in *Gero*, it simply was not fatal to plaintiff's claim that he himself did not see the commercial. Tellingly, the *Gero* court noted that copying may only be inferred when a plaintiff establishes both that the defendant had access and that the "two works are substantially similar." *Id.* at 215. It is also telling that the *Gero* court allowed literally six years of discovery before ultimately finding as a matter of law that the plaintiff had no viable copyright claim. Clearly, the court in *Gero*, which pre-dates *Bell Atlantic* by decades, could have benefited from the Supreme Court's admonition that "a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1967 (2007).

[11] Significantly, Teachscape's requests that Laureate actually explain in the context of its copyright claim what Laureate asserted "first drafts" to be was repeatedly and summarily rejected. For the first time in its opposition/reply to the discovery motions, Laureate attempts to explain what are "drafts".

-9-
TEACHSCAPE'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. C07-3225 RS

earlier copy may give rise to a copyright infringement claim *on that copy*, it cannot give rise to liability for a later actually exploited work that is not substantially similar.[12] No case cited by Laureate supports a different conclusion.[13]

Here, Laureate's claim centers upon its "guess" that the final Marygrove course materials in actual publication and use are infringing upon some or all of Laureate's copyrights.[14] Neither Teachscape nor this Court—nor Laureate for that matter—have any idea which of any of these works are infringing which, if any, of Laureate's copyrighted works. Under these circumstances, Laureate's copyright infringement claim fails as a matter of law. Teachscape's motion to dismiss should be granted.

### C. Plaintiffs' Conduct Regarding The Exchange Of Course Materials Supports Dismissal Of This Action.

In both its opposition to the present motion to dismiss, and its memoranda filed in connection with Laureate's on-going demand that Teachscape produce "first drafts" of "course

---

[12] Laureate cites to *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 566-68 (1985) apparently to suggest that even if the final, published course materials are not infringing, Teachscape's theoretical use of the materials in earlier "drafts" may nonetheless entitle Laureate to damages (Teachscape's profits) realized as a result of those final published works. Opp., 10:18-21. *Harper & Row* does not support such an assertion. In fact, *Harper & Row* had nothing to do with allegedly infringing unpublished "drafts" of works, but instead concerned whether a *published* article announcing Harper & Row's publication of a president's memoirs, which included verbatim quotes from Harper & Row's then, unpublished manuscript, constituted fair use. 471 U.S. at 570.

[13] Laureate's citations to computer software cases is unavailing to its cause. A cursory reading of both *Sony Computer Entm't, Inc. v. Connectix Corp.,* 203 F.3d 596 (9th Cir. 2000) and *Sega Enterprises Ltd. v. Accolade, Inc.,* 977 F.2d 1510 (9th Cir. 1992) demonstrate that both cases dealt with the unique issues relating to "reverse engineering" and "fair use" of computer codes and programs. In this case, Laureate is suing upon written and audiovisual educational materials. Laureate has cited to no case, and Teachscape is aware of none, where written and audiovisual works in English that are not substantially similar may nonetheless give rise to a claim for infringement of that final, exploited work even though the final work is not substantially similar. Certainly, Teachscape is not aware that Laureate is claiming it has registered for copyright protection of any computer software or coding.

[14] It is particularly telling that Laureate supposedly justifies its decision to "split" Plaintiffs' claims in two parallel actions and to pursue them simultaneously because they do not want to allow Teachscape further time "to exploit" Laureate's intellectual property unchecked. (Opp., 1:14-18.) Similarly, Laureate suggests that Teachscape's work "has in fact supplemented the market for Laureate's work." Plainly, the final Marygrove course offerings—the ones being "exploited"—are at the heart of Laureate's claim.

-10-
TEACHSCAPE'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. C07-3225 RS

materials", Laureate tries to make much of its February 19, 2008 correspondence in which Laureate for the first time addressed (rather than rejected out of hand) Teachscape's offer for a mutual exchange of allegedly infringing Marygrove final course material. However, a review of Laureate's correspondence, and Teachscape's response to the same, demonstrates beyond doubt that dismissal of this action is appropriate.

As the declarations and documents previously filed in this action demonstrate, Teachscape offered *pre-litigation* Laureate and Canter an eminently reasonable proposal for the mutual exchange of allegedly infringed and infringing Marygrove course materials about which Laureate complained. Plaintiffs' response to this offer was to hastily register 40 copyrights and file the present lawsuit. Despite Teachscape's belief that the case was frivolous and its concern that Plaintiffs' true motivation was to harass it, Teachscape reiterated its "apples to apples" offer numerous times. Each time, Plaintiffs rejected Teachscape's offer, and instead demanded that Teachscape unilaterally produce not only final course materials but also "first available drafts."

Significantly, in the parties' most recent meet and confer discussions, Laureate continued to reject Teachscape's exchange offer, and had indeed told Teachscape that if it wanted to know what were Laureate's copyrighted works, Teachscape would have to propound formal discovery or go to the Copyright Office to get the materials, even though it knew half the materials were not even available through the Copyright Office since Laureate had apparently encrypted all of the audiovisual materials. *See* Athanacio Decl. [Docket No. 74], ¶ 19. Critically, these discussions disclosed that even if Teachscape would accede to Laureate's demands for course materials (assuming it could), and even if Laureate concluded there was no substantial similarity in any work, Laureate would not acknowledge that dismissal was appropriate. *Id.*, ¶¶ 15, 18.

Knowing that this incredibly damning evidence of bad faith would come to light when Teachscape filed its opposition to Laureate's Motion to Compel "Course Materials", the day before Teachscape's opposition to Laureate's Motion to Compel was due, Laureate's counsel wrote to Teachscape's counsel to "offer" to resolve the discovery dispute. *See* Supplemental Declaration of Daniel Kassabian, Ex. 1 [Docket No. 81]. The offer is significant in several material respects. First, Laureate's offer to finally show Teachscape exactly what Laureate

-11-
TEACHSCAPE'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. C07-3225 RS

alleged was infringed was expressly conditioned upon Teachscape's production of "first drafts". Further, as before, Laureate refused to explain exactly what it considered the relevant "first drafts" to be.[15] Significantly, Laureate made no mention of the parallel state court action that Canter (a former co-plaintiff here) was vigorously prosecuting simultaneously and in which Canter propounded duplicative discovery. Perhaps most telling to Teachscape, Laureate made no commitment that it would dismiss this action if Laureate's review of the materials disclosed it had no claim. Rather, Laureate merely proposed that Teachscape's motion to dismiss be continued and the discovery motions withdrawn as moot. *Id.*

While Teachscape believed Laureate's post-filing litigation "fishing expedition" and Plaintiffs' splitting of this litigation into two actions was inappropriate, Teachscape responded in a way to facilitate the resolution of the present controversy.[16] *Id.*, Ex. 2. Specifically, Teachscape proposed that the parties would agree to stay the litigations between them and would immediately engage in the mutual exchange of Marygrove final course material and allegedly infringed Laureate materials so that the parties could understand what Plaintiffs claimed Teachscape was wrongfully exploiting and Teachscape could understand about what Plaintiffs complained. *Id.*, Ex. 2, p. 2. Providing for the parties' prompt review of these materials, Teachscape proposed the parties thereafter sit down to discuss in the context of the actual material at issue, what Laureate truly wanted and was concerned about insofar as "drafts" were concerned. *Id.* Presuming good faith by all, Teachscape agreed it would voluntarily produce the

---

[15] Laureate presumed that $5,000 would be sufficient to cover the time, burden and expense of trying to locate, identify and then produce all the "final" and "first draft" course materials.

[16] Significantly, while Laureate suggests in its papers in connection with the discovery motions that Teachscape only decided to file its motion for protective order after Laureate filed its motion to compel, indisputably, and as reflected in Laureate's counsel own declaration, the opposite is true: After it became apparent that Laureate would not acknowledge its obligation to dismiss this action if it learned there was no substantial similarity between any work of Teachscape and Laureate's own, Teachscape notified Laureate it would be filing a motion for protective order. Athanacio Decl., ¶ 18; Kassbian Decl. In Support of Motion to Compel, ¶ 10 [Docket No. 62]. That Laureate raced to file its motion to compel, seeking to have it heard before the agreed upon hearing date for Teachscape's motion to dismiss and motion for protective order, only goes to show that Laureate's threat of "scorched earth" litigation was no idle threat.

1   "drafts" if Laureate would simply agree that if Plaintiffs' review of the materials disclosed no

2   substantial similarity, Laureate would dismiss its copyright claim since the claim failed as a

3   matter of law. Consistent with Plaintiffs' statement in the Joint Case Management Statement,

4   Teachscape proposed the parties thereafter move to mediation. *Id. Laureate never responded*

5   *to Teachscape's offer.*

6   When this course of conduct is considered, it becomes even more evident that Laureate's

7   present action is based upon a "guess" by design. Laureate admittedly cannot state that there is

8   any substantial similarity between any of its copyrighted works and any work of Teachscape.

9   As such, Laureate makes a copyright claim that says **"all of my materials are copyrighted and**

10  **I think you may have copied them."** As this Court already noted, and consistent with the law

11  on copyright and Federal Rules of Civil Procedure, Laureate's copyright claim fails as a matter

12  of law. Teachscape's motion to dismiss the FAC should be granted.

### III. CONCLUSION

14  As evidenced by its current opposition to Teachscape's motion to dismiss and papers

15  filed in connection with Laureate's demand for discovery in this case, Laureate's sole defense to

16  filing this baseless action (now two actions) is that Teachscape supposedly refused to allow

17  Plaintiffs access to the allegedly infringing materials. Indeed, Laureate goes so far as to admit

18  that if it had taken Teachscape up on its repeated offer for the mutual exchange of final

19  Marygrove course materials, it could learn that the final course materials are not infringing. *See*

20  Opp., 9:18-20 (recognizing that while Laureate "doubt(s) it to be the case", the final course

21  materials may not be infringing).

22  Teachscape is not trying to avoid a determination of Laureate's copyright claim on the

23  merits. In fact, as the multitude of declarations (from both Plaintiffs and Teachscape) disclose,

24  Teachscape has reasonably done everything in its power to assuage Laureate's unfounded

25  suspicions with regard to the Marygrove course offerings. What Teachscape did not do, and will

26  not do, is to allow Plaintiffs to use litigation (and related motion practice and discovery) as a

27  basis on which to harass Teachscape and interfere with Teachscape's legitimate business. The

28  rules of this Court and well-settled case law provide that this Court is empowered to protect

-13-
TEACHSCAPE'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. C07-3225 RS

1  Teachscape from Laureate's baseless claims and fishing expedition with no end in sight.
2  Teachscape has properly availed itself of these avenues of relief.
3     Having been presented with irrefutable evidence that Laureate has consciously kept itself
4  in the dark, Laureate expands its copyright claim to include unpublished drafts in the hope this
5  Court will allow Laureate to proceed. Laureate's actions have created even more uncertainty
6  and ambiguity in its claim, and have rendered its copyright claim even more speculative than it
7  was before. Obviously, this "guess" with regard to the drafts represents even more rank
8  speculation than did Laureate's claim regarding the final published Marygrove course materials.
9  As was true in *Brown, supra*, Laureate cannot "attempt to mask a request for discovery as a
10 cause of action." 938 F.Supp at 632. As in *Brown*, dismissal is appropriate.

Date:  March 5, 2008                    SONNENSCHEIN NATH & ROSENTHAL LLP


                                        By       /S/
                                             GAYLE M. ATHANACIO

                                             Attorneys for Defendant
                                             TEACHSCAPE, INC.


27291703